

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

F I L E D

OCT 1 0 2017

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| (1) ARTHUR COPELAND, individually and on behalf of all others similarly situated, | ) ) |
| (2) BRANDON SPURGIN, individually and on behalf of all others similarly situated, and | ) ) |
| (3) BRAD MCGAHEY, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| (1) C.A.A.I.R., a domestic not for profit corporation, and | ) ) ) |
| (2) SIMMONS FOODS, INC., a foreign for profit business corporation, | ) ) ) |
| Defendants. | ) ) |

17 CV 5 6 4 TCK-JFJ

CASE NO.

ATTORNEY LIEN CLAIMED
JURY TRIAL DEMANDED

## COMPLAINT

COME NOW Plaintiffs, Arthur Copeland, Brandon Spurgin and Brad McGahey ("Plaintiffs"), and the employees they seek to represent ("Putative Class Members"), by and through their counsel of record, and for their Complaint against the above-listed Defendants, state as follows:

### A.    INTRODUCTORY STATEMENT

1.   Defendants conspired to profit from a vulnerable workforce under the guise of providing alcohol and drug counseling and rehabilitation services to Plaintiffs and Putative Class Members.

2.   Plaintiffs performed taxing, manual labor for Defendants in a poultry processing plant.

3.   Defendants failed to pay Plaintiffs' and Putative Class Members' compensation for work performed, in violation of state and federal law.

4.   Instead, Defendants only "payment" to Plaintiffs and Putative Class Members for the

1



work performed consisted of daily bologna sandwiches and a bunk-bed in a cramped dorm room.

5.   Consequently, Defendants' compensation scheme constitutes breach of contract, fraud, unjust enrichment, violation of the Fair Labor Standards Act, Oklahoma Protection of Labor Act, Oklahoma Minimum Wage Act and Oklahoma's Human Trafficking statutes, and involuntary servitude in violation of the thirteenth amendment to the U.S. Constitution and 18 U.S.C. §§ 1584, 1585 and 1589.

6.   Plaintiffs seek to recover, on behalf of themselves and the Putative Class Members, all unpaid wages and other damages allowed as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and as a nationwide collective action pursuant to 29 U.S.C. § 216(b) of the FLSA.   Plaintiffs also seek equitable relief on behalf of current and future employees of Defendants, to prohibit such illegal conduct in the future.

## B.   PARTIES, JURISDICTION & VENUE

7.   Plaintiffs and the employees they seek to represent ("Putative Class Members") are current and/or former employees employed by Defendants, who are/were housed in C.A.A.I.R's dormitories in/near Jay, Oklahoma and worked at Simmons Foods, Inc. ("Simmons").

8.   Plaintiff Arthur Copeland ("Copeland") was led to believe, through the mails of the United States, in a letter dated January 8, 2016, that C.A.A.I.R. was a drug and alcohol program offered through Oklahoma's "drug court". Based upon this misrepresentation, Copeland agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time.   At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to Copeland that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide free chicken processing services for Simmons without pay.   Upon arriving at C.A.A.I.R., Copeland was not allowed to have any contact with family for the first 30

days. He was not allowed to have visits with his family for several months. Copeland quickly learned that C.A.A.I.R. was not a drug and alcohol rehabilitation program, but rather a work camp program, under which he was required to provide free labor for Simmons Foods under constant threat of incarceration. Copeland worked on what was called the "live hang line" at Simmons Foods. As part of this work, he was expected to hang 60-62 chickens per minute. He worked full time on the live hand line in a totally dark room except for black light. Copeland was eventually "promoted" to position of sharpening knives and scissors of other workers who slaughtered the chickens. Copeland suffered a work-related fall at Simmons Foods, which caused serious injury and pain and suffering. Despite his injury and need for physician care, Copeland was threatened with return to prison if he was unable to work. Contrary to the representations upon which he relied, during his time in C.A.A.I.R., Copeland never received any professional drug or alcohol counseling/treatment. Rather, he was simply part of a full-time work camp labor force who was expected to work full time for Simmons Food, without compensation, and with threat of incarceration if he did not complete the one-year "program." Copeland worked for Simmons Foods through C.A.A.I.R.'s work camp for several months, without pay. Copeland routinely worked over 40 hours per workweek at Simmons Foods. Without any professional rehabilitation services, Copeland, who suffers from drug addiction, relapsed and was sent to prison after seven months in C.A.A.I.R., with nothing to show for his involuntary servitude.

9.     Plaintiff Brandon Spugin ("Spurgin") was led to believe, through the mails of the United States, that C.A.A.I.R. was a drug and alcohol program offered through Oklahoma's "drug court". Based upon this misrepresentation, Spurgin agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to Spurgin that C.A.A.I.R. was a work camp

where he would be required, by threat of incarceration, to provide chicken processing services for Simmons Foods without pay. Upon arriving at C.A.A.I.R., Spurgin was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. Spurgin quickly learned that C.A.A.I.R. was not a drug and alcohol rehabilitation program, but rather a work camp program, under which he was required to provide free labor for Simmons Foods under constant threat of incarceration. Spurgin worked full-time at the Simmons Foods chicken processing plants without compensation under threat of incarceration. Spurgin routinely worked over 40 hours per workweek at Simmons Foods. Spurgin was working in a chicken processing plant one night in 2014 when a metal door crashed down on his head, damaging his spine and leaving him with chronic pain, according to medical records. C.A.A.I.R. filed for workers' compensation on his behalf and fraudulently pocketed the $4,500 in insurance payments. Spurgin received nothing. Three years later, Spurgin is still in pain and can no longer hold a full-time job.

10. Plaintiff Brad McGahey ("McGahey") was led to believe, through the mails of the United States, that C.A.A.I.R. was a drug and alcohol rehabilitation program offered through Oklahoma's court system. Though McGahey was not addicted to anything, he was led to believe that this "rehabilitation" program was his only alternative to serving prison time for violating the terms of probation for a receipt of stolen property plea deal. Based upon this misrepresentation, McGahey agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to McGahey that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide chicken processing services for Simmons Foods without pay.

11. Upon arriving at C.A.A.I.R., McGahey was not allowed to have any contact with family

4

for the first 30 days. He was not allowed to have visits with his family for several months. McGahey quickly learned that C.A.A.I.R. was not a rehabilitation program, but rather a work camp program, under which he was required to provide labor for Simmons Foods, without pay, under constant threat of incarceration. Beginning in 2010, at Simmons Foods, McGahey first went to work in evisceration, suctioning guts and blood out of slaughtered chickens speeding past him on metal hooks. Then he became a grader, arranging raw breasts, thighs and legs into orderly piles as they moved up a conveyor belt to packaging. It was monotonous work. During his time working in the processing plants, if McGahey got hurt or worked too slowly, his bosses threatened him with prison. McGahey routinely worked over 40 hours per workweek at Simmons Foods. McGahey was never paid a dime while working manual labor for the benefit of C.A.A.I.R. and Simmons Foods.

12. On May 27, 2010, three months into his time at C.A.A.I.R., while working at the Simmons processing plant, and while attempting to help an injured co-worker, McGahey's hand got stuck in the conveyor belt. McGahey suffered a "severe crush injury." The machine smashed his hand, breaking several bones and nearly severing a tendon in his wrist. When he finally yanked his wrist free, his hand was bent completely backward. One of C.A.A.I.R.'s top managers picked McGahey up at the plant and drove him to the local hospital. Doctors took X-rays of McGahey's hand, gave him a splint and ordered him not to work. After returning to the C.A.A.I.R. work camp, McGahey suffered in pain, and expected not to work in compliance with the doctor's orders. However, C.A.A.I.R. mandated that he work while injured. The C.A.A.I.R. administrators called McGahey lazy and accused him of hurting himself on purpose to avoid working. C.A.A.I.R. told him that he had to go back to work – either at Simmons or around the campus until his hand healed, which wouldn't count toward his one-year sentence. "You can

5

either work or you can go to prison," a C.A.A.I.R. administrator told him. McGahey's hand is permanently injured. In 2012, McGahey went to court for workers' compensation. CAAIR fought him every step of the way. In court in 2012, the program's attorneys argued that McGahey's recurring symptoms weren't the result of the accident in the chicken plant. Suffering in constant pain and from depression, McGahey is now addicted to pain medication.

13. Defendant C.A.A.I.R., Inc. ("CAAIR") is a domestic, not-for-profit corporation based in Jay, Oklahoma.

14. Defendant Simmons Foods, Inc. ("Simmons") is a foreign, private, for profit corporation with headquarters in Siloam Springs, Arkansas.

15. Jurisdiction over Plaintiffs' FLSA Claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

16. Subject Matter Jurisdiction is also conferred on this Court by 28 U.S.C. §1337 and over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

17. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343 to secure protection of, and to redress deprivations of, rights secured by the Thirteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

18. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

19. Venue is properly laid in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and by 29 U.S.C. § 216(b), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## C. FLSA COVERAGE

20. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

21. Plaintiffs and Putative Class Members performed manual labor for Defendants, with the primary task of processing raw chicken on an assembly line.

22. As described herein, at all material times, Defendants have been employers within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

23. As described herein, at all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. *See* 29 U.S.C. § 203(s)(1). Defendants have had and continue to have employees engaged in commerce. *See Id.*

24. Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard of $500,000.

25. As described herein, at all material times, Plaintiffs and Putative Class Members were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

26. As described herein, Defendants had an interrelation of operations between the companies, and a common business purpose – providing labor for the processing of raw chicken for wholesale and retail distribution. Defendants also directly or indirectly controlled the terms of employment of Plaintiffs and Putative Class Members.

27. Defendants either directly or indirectly controlled the hours worked by Plaintiffs and Putative Class Members.

7

28. Defendants directed the work of Plaintiffs and Putative Class Members.

29. Defendants both directly or indirectly maintained communication with Plaintiffs and Putative Class Members and received updates as to the status of their work.

30. Defendants provided guidance on how each assigned task was to be performed by Plaintiffs and Putative Class Members.

31. Thus, Defendants are each directly liable for the violations in this case.

## D.  COLLECTIVE AND CLASS ALLEGATIONS

32. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

33. Plaintiffs and Putative Class Members, all males, entered into agreements with CAAIR, through which Plaintiffs and Putative Class Members agreed to live at CAAIR's facility in Jay, Oklahoma, and to perform unspecified work while at the facility.  In return, CAAIR agreed to provide Plaintiffs and Putative Class Members professional drug and alcohol counseling, as well as rehabilitative services.

34. Upon arrival at the CAAIR facility, Plaintiffs and Putative Class members are housed in bunk-beds in a cramped metal building.  They are transported daily to Simmons, a $1.4 billion poultry production company, where the men process raw chicken on assembly lines for Simmons. The processed chicken will eventually be shipped to retailers and restaurants, including Walmart, KFC, and Popeye's Louisiana Kitchen.  Simmons also produces pet food for PetSmart and Rachael Ray's Nutrish brand.

35. CAAIR requires Plaintiffs and Putative Class Members to forfeit all wages earned from the grueling work at Simmons. Simmons then pays CAAIR a discounted, contracted rate for the free labor performed by Plaintiffs and Putative Class Members.

8

36. On its website, CAAIR touts itself as a "faith based, long term drug and alcohol recovery program." Despite this claim, a review of the Oklahoma State Board of Licensed Alcohol and Drug Counselors membership roster indicates that CAAIR does not employ any licensed drug and alcohol counselors to assist the hundreds of recovering addicts it employs. Therefore, Plaintiffs and Putative Class Members do not receive the primary benefit CAAIR promises – a drug and alcohol recovery program – in return for forfeiting all wages earned while working at Simmons. The only "compensation" Plaintiffs and Putative Class Members receive are meals consisting primarily of bologna sandwiches, as well as the aforementioned communal bunk-bed housing.

37. CAAIR and Simmons Foods are joint employers, in that both are involved in the direction and control of Plaintiffs' and Putative Class Members' work. CAAIR and Simmons both derive an economic benefit from the slave labor performed by Plaintiffs and Putative Class Members.

38. Plaintiffs have actual knowledge that Putative Class Members have also been denied compensation.

39. Putative Class Members perform or have performed the same or similar work as Plaintiffs.

40. Putative Class Members are not exempt from the provisions of the FLSA, or any other law that prohibits them from being paid for the free-market labor they perform.

41. As such, Putative Class Members are similar to Plaintiffs in terms of job duties, pay structure, and the denial of wages.

42. Defendants' failure to provide compensation to Plaintiffs and Putative Class Members and to subject them to involuntary servitude is the result of generally applicable policies or

practices, and does not depend on the personal circumstances of each Putative Class Member.

43. The collective experiences of Plaintiffs, with respect to pay, are typical of the experiences of the Putative Class Members.

44. The specific job titles or precise job responsibilities of each Putative Class Member does not prevent collective or class treatment.

45. All Putative Class Members, irrespective of their particular job requirements, are entitled to compensation.   Defendants failed to pay Plaintiffs and Putative Class Members minimum wage and overtime wages as mandated by state and/or and federal law.

46. Defendants utilized the same pay structure regardless of the location of employment of a particular Putative Class Member.

47. Although the exact amount of damages may vary among Putative Class Members, the damages for the Putative Class Members can be calculated by a formula.   The claims of all Putative Class Members arise from a common nucleus of facts.   Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all Putative Class Members.

48. The Rule 23 Putative Class Members are properly defined as follows:

All current and former C.A.A.I.R./Simmons employees who worked at any time during the ten (10) year period before the date of the Complaint to present, who were subjected to involuntary servitude, and were not paid at least minimum wage for all hours worked.

49.  The FLSA Putative Class Members are properly defined as follows:

    a.  All current and former C.A.A.I.R./Simmons employees who worked at any time during the three (3) year period before the date of the Petition to present, who were employed by C.A.A.I.R. and Simmons, who were not paid at least minimum

wage for all hours worked;

    b.  All current and former C.A.A.I.R./Simmons employees who worked at any time during the three (3) year period before the date of the Petition to present, who were not paid one and one half times the minimum wage rate for all hours worked over 40 in a workweek.

50. Defendants are jointly and severally liable for the unlawful actions alleged herein of their owners, officers, managers, employees, agents, representatives, subsidiaries, predecessors, successors, and/or other persons and/or entities for whom they are legally responsible.

51. Plaintiffs' and Putative Class Members' claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

52. The Class satisfies the numerosity standards. The class is believed to comprise over 1,000 employees.  As a result, joinder of all members is impracticable.

53. There are questions of law or fact common to the Class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

    a.  Whether Defendants failed to pay Putative Class Members minimum wage for all hours worked;

    b.  Whether Defendants failed to keep accurate records of the actual time Putative Class Members spent performing compensable activities;

    c.  Whether Defendants' compensation policies and practices are illegal;

    d.  If Defendants violated the FLSA, whether such violations were willful;

    e.  Whether Defendants' actions constitute fraud;

    f.  Whether Defendants' actions constitute breach of contract;

g.  Whether Defendants were unjustly enriched through their exploitation of the Class;

h.  Whether Defendants' conduct constitutes human trafficking;

i.  Whether Defendants' subjected Plaintiffs and the Class to involuntary servitude;

j.  Whether Defendants' conduct warrants injunctive relief in favor of the Class to prohibit current and future exploitation of the Class.

54. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the state law claims.

55. Plaintiffs' claims are collectively typical of those of the Class in that Putative Class Members have been employed by Defendants as non-exempt hourly workers, were subject to the same or similar uncompensated rest periods, were paid based upon an artificially reduced hourly rate, were not paid for promised incentives and were not paid the proper overtime rate during weeks when incentives were earned.  Plaintiffs and Putative Class Members were all subject to Defendants' nationwide policies in regard to payment of wages and the methods by which Defendants calculated wage payments.

56. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted and/or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

57. Plaintiffs are adequate representatives of the class because their interests do not conflict

with the interests of the members of the class they seek to represent. Plaintiffs, and their undersigned counsel, who have experience prosecuting complex wage and hour, employment, and/or other complex civil litigation, will fairly and adequately protect the interests of the members of the class.

58. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## F.  CAUSES OF ACTION

### COUNT I: FAIR LABOR STANDARDS ACT— FAILURE TO PAY MINIMUM WAGE

59. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

60. Defendants are engaged in commerce and are employers covered by and subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

61. Plaintiffs and Putative Class Members are subject to the provisions of the FLSA.

62. Defendants' failure to compensate Plaintiffs and Putative Class Members was willful and not based on a good faith and reasonable belief that its conduct complied with the FLSA.

63. As such, Defendants' failure to pay Plaintiffs and Putative Class Members minimum wage violates the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and renders Defendants jointly and severally liable to Plaintiffs and Putative Class Members, for unpaid wages, liquidated damages, interest, expenses, attorneys' fees, and costs.

## COUNT II: FAIR LABOR STANDARDS ACT— FAILURE TO PAY OVERTIME

64. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

65. At times when Plaintiffs and Putative Class Members worked more than 40 hours in a workweek, they were entitled to receive one and one-half times their respective hourly rate for all hours worked over 40 in a workweek. Therefore, Plaintiffs and Putative Class Members who worked more than 40 hours in a workweek, did not receive the required compensation under the FLSA.

66. As such, Defendants' failure to pay Plaintiffs and Putative Class Members violated the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and renders Defendants jointly and severally liable to Plaintiffs and Putative Class Members, for unpaid wages, liquidated damages, interest, expenses, attorneys' fees, and costs.

## COUNT III: OKLAHOMA PROTECTION OF LABOR ACT—FAILURE TO PAY UNPAID WAGES AND MINIMUM WAGE IN VIOLATION OF 40 O.S. § 161, *et seq.*

67. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

68. Defendants are employers covered by and subject to the Oklahoma Protection of Labor Act, 40 O.S. § 161, *et seq.* and the Oklahoma Minimum Wage Act, 40 O.S. § 197.1, *et seq.*

69. Defendants had a statutory duty under Oklahoma law to compensate Plaintiff and Putative Class Members a regular hourly wage for all hours worked.

70. Defendants' failure to pay all wages due to Plaintiffs and Putative Class Members was

willful. More specifically, Defendant's wrongful acts violate 40 O.S. § 165.3 (B).[1]

71. Defendants' willful failure to pay all wages due to Plaintiff and Putative Class Members, in violation of 40 O.S. § 165.3 and 40 O.S. § 197.9, permits Plaintiff and Putative Class Members to recover liquidated damages in addition to their unpaid wages, penalties, interest, expenses, reasonable attorneys' fees and costs.

## COUNT IV: BREACH OF CONTRACT

72. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

73. Defendant CAAIR entered into employment agreements with Plaintiffs and Putative Class Members, through which Defendants agreed to provide Plaintiffs and Putative Class Members drug and alcohol counseling and rehabilitation.

74. The employment agreement was supported by consideration.

75. Plaintiffs and Putative Class Members performed work for Defendants in compliance with the agreement.

76. Defendants breached the agreement by not compensating Plaintiffs and Putative Class Members as promised.

77. Plaintiffs and Putative Class Members enjoyed a contractual right to receive the services that were offered by Defendants.

78. Plaintiffs and Putative Class Members had an expectation to receive the promised

---

[1] B. "If an employer fails to pay an employee wages as required under subsection A of this section, such employer shall be additionally liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller...."

compensation.

79. Defendants' breaches caused damages to Plaintiffs and Putative Class Members.

80. Defendants' breach of contract renders Defendants liable to Plaintiffs and Putative Class Members.

## COUNT V: FRAUD

81. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

82. Defendants falsely represented that Plaintiffs and Putative Class Members would receive drug and alcohol counseling rehabilitation as part of the compensation due to Plaintiff and Putative Class Members. Defendants knew that this assertion was false, or made such assertion recklessly without knowledge of the truth, with the intention that Plaintiffs and Putative Class Members would act upon such assertion by agreeing to employment with Defendants. Plaintiffs and Putative Class Members relied to their detriment on the false assertion by accepting employment with Defendants.

83. Due to Defendants' misrepresentations, Plaintiff and Putative Class Members suffered damages.

84. Defendants' misrepresentations render them liable to Plaintiffs and Putative Class members.

## COUNT VI: HUMAN TRAFFICKING FOR LABOR, IN VIOLATION OF 21 O.S. § 748 and 21 O.S. § 748.2

85. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

86. Defendants enticed, harbored, maintained, transported, provided or obtained Plaintiffs and Putative Class Members through deception, force, fraud, threat or coercion for the purposes

of engaging Plaintiffs and Putative Class Members in labor.

87. Defendants benefited financially from participation in a venture that has engaged in an act of trafficking Plaintiffs and Putative Class Members for labor.

88. Plaintiffs and Putative Class Members suffered harm due to the illegal acts of Defendants.

### COUNT VII: INVOLUNTARY SERVITUDE IN VIOLATION OF THE THIRTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND 18 U.S.C. §§ 1584, 1585 AND 1589 (Against Both Defendants)

89. Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90. Plaintiffs and Putative Class Members bring this claim for relief under the private cause of action for violation of Thirteenth Amendment to the United States Constitution (pursuant to 42 U.S.C. § 1983) and under 18 U.S.C. §§ 1584, 1585 and 1589, which prohibit involuntary servitude.

91. As alleged herein, the Defendants held Plaintiffs and the Putative Class Members in involuntary servitude, under false pretenses of a "rehabilitation" program, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of incarceration.

92. Through such actions, Defendants directed, assisted, conspired, and acted in concert with each other to create and perpetuate a system of involuntary servitude prohibited by the Thirteenth Amendment to the United States Constitution and 18 U.S.C. §§ 1584, 1585 and 1589.

93. As a direct and proximate result of these actions, Plaintiffs and the Putative Class Members have suffered economic losses.

94. As a direct and proximate result of these actions, Plaintiffs have suffered emotional and

psychological pain and suffering.

95. As a direct and proximate result of these actions, Copeland, Spurgin and McGahey suffered physical injuries and lost income, including lost employment opportunities.

96. Plaintiffs and the Putative Class are therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## COUNT VIII: UNJUST ENRICHMENT

97. Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

98. Plaintiffs rendered valuable services to Defendants with a reasonable expectation of being compensated;

99. Defendants knowingly accepted the benefit of the services; and

100.  Defendants were unfairly benefitted by the services since no compensation was paid to Plaintiffs and Putative Class Members.

### PRAYER FOR RELIEF

Plaintiffs and Putative Class Members respectfully request relief and pray for judgment against Defendants, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), for the following:

A.  Unpaid wages;

B.  Liquidated damages in an amount equal to the unpaid wages;

C.  Statutory penalties;

D.  Economic damages;

E.  Compensatory damages;

F.  Punitive damages;

G.  All costs, expenses, and attorneys' fees;

H.  Pre-judgment interest, calculated at the maximum rate allowed by law;

I.  Post-judgment interest at the legal rate from the date of the judgment until paid in full;

J.  Injunctive relief, to prohibit further illegal conduct by Defendants; and

K.  Such other and further relief as the Court may deem just and appropriate.

     Plaintiffs and Putative Class Members reserve the right to amend their demand for judgment as new information is discovered during the course of this case.

> Respectfully submitted,
> **SMOLEN, SMOLEN & ROYTMAN, PLLC**
>
> By: _____
> Daniel E. Smolen, OBA #19943
> David A. Warta, OBA #20361
> 701 S. Cincinnati Ave.
> Tulsa, OK 74119
> Phone (918) 585-2667
> Fax (918) 585-2669
> *Attorneys for Plaintiffs, and all others*
> *similarly situated*