**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) ARTHUR COPELAND, | ) | |
| (2) BRANDON SPURGIN, | ) | |
| (3) BRAD MCGAHEY, | ) | |
| (4) STANLEY SHANE ALEXANDER, | ) | |
| (5) KEITH ALSPAUGH, | ) | |
| (6) DAVID BANKS, | ) | |
| (7) ROBERT BENKOWICH, | ) | |
| (8) JESSE BROWN, | ) | |
| (9) CODY BUMPAS, | ) | CASE NO. 17-CV-00564-TCK-JFJ |
| (10) CALEB BYRD, | ) | [PROPOSED] CLASS ACTION |
| (11) STEVEN COOK, | ) | ATTORNEY LIEN CLAIMED |
| (12) ARTHUR COPELAND, | ) | JURY TRIAL DEMANDED |
| (13) RYAN DORLAND, | ) | |
| (14) PATRICK DOYLE, | ) | |
| (15) KELLY FORD, | ) | |
| (16) KENNETH GENTRY, | ) | |
| (17) CHARLES GREENHAW, | ) | |
| (18) MICHAEL GREENHAW, | ) | |
| (19) MICHAEL WAYNE HARRELL, | ) | |
| (20) JARRET JONES, | ) | |
| (21) CALEB KLEIER, | ) | |
| (22) MARQUIS LUCKEY, | ) | |
| (23) DEXTER MACKAY, | ) | |
| (24) MICHAEL MCCARTNEY, | ) | |
| (25) BRAD MCGAHEY, | ) | |
| (26) LUCAS DON MILLER-ALLEN, | ) | |
| (27) BRANDON MILLS, | ) | |
| (28) JASON MIQUELI, | ) | |
| (29) DWAYNE MOSS, | ) | |
| (30) ROBERT NASHERT, | ) | |
| (31) JOSHUA NEWBURN, | ) | |
| (32) BOBBY GENE NICHOLS, | ) | |
| (33) TRAVIS OWENS, | ) | |
| (34) CHARLES RICKMAN, | ) | |
| (35) THOMAS RICO, | ) | |
| (36) KEVIN ROBISON, | ) | |
| (37) GILBERT SANDERS, JR., | ) | |
| (38) AUSTIN SMITH, | ) | |
| (39) BRANDON SPURGIN, | ) | |
| (40) BODHI CHANCE STARNS, | ) | |
| (41) TITUS STATON, | ) | |
| (42) NATHAN TURNER, | ) | |
| (43) JERRY WALL, | ) | |

| | |
|---|---|
| (44) MICHAEL WELGE, | ) |
| (45) DANIEL WEST, | ) |
| (46) JAMES WOLFE, | ) |
| (47) MICHAEL TRAVIS WYCHE, | ) |
| (48) DE'UNDRE WOODARD, | ) |
| (49) PABLO ANGELES and | ) |
| (50) CLINTON MEYER, | ) |
| | ) |
| Plaintiffs,[1] | ) |
| | ) |
| v. | ) |
| | **)** |
| (1) C.A.A.I.R., Inc., a domestic not for profit corporation, | ) |
| (2) SIMMONS FOODS, INC., a foreign for profit business corporation, | ) |
| (3) SIMMONS PET FOOD, INC., | ) |
| (4) JANET WILKERSON, | ) |
| (5) DON WILKERSON, | ) |
| (6) LOUISE DUNHAM, | ) |
| (7) JIM LOVELL, | ) |
| (8) DOES1-10, inclusive, | ) |
| | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

COME NOW Plaintiffs, Arthur Copeland, Brandon Spurgin, Brad McGahey, and all those who have filed Notice of Consent to Join this lawsuit ("Plaintiffs"), and the employees they seek to represent ("Putative Class Members"), by and through their counsel of record, and for their Second Amended Complaint against the above-listed Defendants, and state as follows:

## I.  INTRODUCTORY STATEMENT

1.  Defendants conspired to profit from a vulnerable workforce under the guise of providing alcohol and drug counseling and rehabilitation services to Plaintiffs and Putative Class Members.

---

[1]  Each Plaintiff brings his claims individually and on behalf of others similarly situated.

2.      Plaintiffs performed taxing, manual labor for Defendants in poultry and pet food processing plants.

3.      Defendants failed to pay Plaintiffs and Putative Class Members any compensation whatsoever for the work they performed, in violation of state and federal law.

4.      Instead, Defendants only "payment" to Plaintiffs and Putative Class Members consisted of daily bologna sandwiches and a bunk-bed in a cramped, unsanitary dorm room. In short, Defendants established and maintained a labor camp designed to generate profit and business advantages based on the exploitation of vulnerable young men.

5.      Defendants' conduct constitutes breach of contract, fraud, unjust enrichment, and violations of the Fair Labor Standards Act, the Racketeer Influenced and Corrupt Organizations Act, the Oklahoma Protection of Labor Act, the Oklahoma Minimum Wage Act, Arkansas minimum wage and overtime law, Missouri minimum wage and overtime law, Oklahoma's Human Trafficking statutes, the Trafficking Victims Protection Reauthorization Act, and the prohibition of involuntary servitude set forth in the thirteenth amendment to the U.S. Constitution.

6.      Plaintiffs seek to recover, on behalf of themselves and the Putative Class Members, all unpaid wages and other damages allowed as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and as a nationwide collective action pursuant to 29 U.S.C. § 216(b) of the FLSA. Plaintiffs also seek equitable relief on behalf of current and future employees of Defendants, to prohibit such illegal conduct in the future.

## II.      PARTIES, JURISDICTION & VENUE

7.      Plaintiffs and the Putative Class Members are current or former employees of Defendants who work or worked at Simmons Foods, Inc. ("Simmons") and/or Simmons Pet

Food, Inc. ("Simmons Pet Food") while housed at C.A.A.I.R.'s dormitories near Jay, Oklahoma.

8.    Plaintiff Arthur Copeland ("Copeland") was led to believe, through the mails of the United States, in a letter dated January 8, 2016, that C.A.A.I.R. was a drug and alcohol program offered through Oklahoma's "drug court".    Based upon this misrepresentation, Copeland agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time.    At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to Copeland that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide free chicken processing services for Simmons without pay.    Upon arriving at C.A.A.I.R., Copeland was not allowed to have any contact with family for the first 30 days.    He was not allowed to have visits with his family for several months.    Copeland quickly learned that C.A.A.I.R. was not a drug and alcohol rehabilitation program, but rather a work camp program, under which he was required to provide free labor for Simmons Foods under constant threat of incarceration.    Copeland worked on what was called the "live hang line" at Simmons Foods. As part of this work, he was expected to hang 60-62 chickens per minute. He worked full time on the live hand line in a totally dark room except for black light. Copeland was eventually "promoted" to position of sharpening knives and scissors of other workers who slaughtered the chickens. Copeland suffered a work-related fall at Simmons Foods, which caused serious injury and pain and suffering.    Despite his injury and need for physician care, Copeland was threatened with return to prison if he was unable to work.    Contrary to the representations upon which he relied, during his time in C.A.A.I.R., Copeland never received any professional drug or alcohol counseling/treatment.    Rather, he was simply part of a full-time work camp labor force who was expected to work full time for Simmons Food, without compensation, and with threat of incarceration if he did not complete the one-year "program."    Copeland worked for

Simmons Foods through C.A.A.I.R.'s work camp for several months, without pay. Copeland routinely worked over 40 hours per workweek at Simmons Foods. Without any professional rehabilitation services, Copeland, who suffers from drug addiction, relapsed and was sent to prison after seven months in C.A.A.I.R., with nothing to show for his involuntary servitude.

9. Plaintiff Brandon Spugin ("Spurgin") was led to believe, through the mails of the United States, that C.A.A.I.R. was a drug and alcohol program offered through Oklahoma's "drug court". Based upon this misrepresentation, Spurgin agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to Spurgin that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide chicken processing services for Simmons Foods without pay. Upon arriving at C.A.A.I.R., Spurgin was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. Spurgin quickly learned that C.A.A.I.R. was not a drug and alcohol rehabilitation program, but rather a work camp program, under which he was required to provide free labor for Simmons Foods under constant threat of incarceration. Spurgin worked full-time at the Simmons Foods chicken processing plants without compensation under threat of incarceration. Spurgin routinely worked over 40 hours per workweek at Simmons Foods. Spurgin was working in a chicken processing plant one night in 2014 when a metal door crashed down on his head, damaging his spine and leaving him with chronic pain, according to medical records. C.A.A.I.R. filed for workers' compensation on his behalf and fraudulently pocketed the $4,500 in insurance payments. Spurgin received nothing. Three years later, Spurgin is still in pain and can no longer hold a full-time job.

10. Plaintiff Brad McGahey ("McGahey") was led to believe, through the mails of the

United States, that C.A.A.I.R. was a drug and alcohol rehabilitation program offered through Oklahoma's court system. Though McGahey was not addicted to anything, he was led to believe that this "rehabilitation" program was his only alternative to serving prison time for violating the terms of probation for a receipt of stolen property plea deal. Based upon this misrepresentation, McGahey agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to McGahey that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide chicken processing services for Simmons Foods without pay.

11.     Upon arriving at C.A.A.I.R., McGahey was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. McGahey quickly learned that C.A.A.I.R. was not a rehabilitation program, but rather a work camp program, under which he was required to provide labor for Simmons Foods, without pay, under constant threat of incarceration. Beginning in 2010, at Simmons Foods, McGahey first went to work in evisceration, suctioning guts and blood out of slaughtered chickens speeding past him on metal hooks. Then he became a grader, arranging raw breasts, thighs and legs into orderly piles as they moved up a conveyor belt to packaging. It was monotonous work. During his time working in the processing plants, if McGahey got hurt or worked too slowly, his bosses threatened him with prison. McGahey routinely worked over 40 hours per workweek at Simmons Foods. McGahey was never paid a dime while working manual labor for the benefit of C.A.A.I.R. and Simmons Foods.

12.     On May 27, 2010, three months into his time at C.A.A.I.R., while working at the Simmons processing plant, and while attempting to help an injured co-worker, McGahey's hand got stuck in the conveyor belt. McGahey suffered a "severe crush injury." The machine smashed

his hand, breaking several bones and nearly severing a tendon in his wrist. When he finally yanked his wrist free, his hand was bent completely backward. One of C.A.A.I.R.'s top managers picked McGahey up at the plant and drove him to the local hospital. Doctors took X-rays of McGahey's hand, gave him a splint and ordered him not to work. After returning to the C.A.A.I.R. work camp, McGahey suffered in pain, and expected not to work in compliance with the doctor's orders. However, C.A.A.I.R. mandated that he work while injured. The C.A.A.I.R. administrators called McGahey lazy and accused him of hurting himself on purpose to avoid working. C.A.A.I.R. told him that he had to go back to work – either at Simmons or around the campus until his hand healed, which wouldn't count toward his one-year sentence. "You can either work or you can go to prison," a C.A.A.I.R. administrator told him. McGahey's hand is permanently injured. In 2012, McGahey went to court for workers' compensation. C.A.A.I.R. fought him every step of the way. In court in 2012, the program's attorneys argued that McGahey's recurring symptoms weren't the result of the accident in the chicken plant. Suffering in constant pain and from depression, McGahey is now addicted to pain medication.

13.     Stanley Shane Alexander, Keith Alspaugh, David Banks, Robert Benkowich, Jesse Brown, Cody Bumpas, Caleb Byrd, Steven Cook, Arthur Copeland, Ryan Dorland, Patrick Doyle, Kelly Ford, Kenneth Gentry, Charles Greenhaw, Michael Greenhaw, Michael Wayne Harrell, Jarret Jones, Caleb Kleier, Marquis Luckey, Dexter Mackay, Michael McCartney, Brad McGahey, Lucas Don Miller-Allen, Brandon Mills, Jason Miqueli, Dwayne Moss, Robert Nashert, Joshua Newburn, Bobby Gene Nichols, Travis Owens, Charles Rickman, Thomas Rico, Kevin Robison, Gilbert Sanders, Jr., Austin Smith, Brandon Spurgin, Bodhi Chance Starns, Titus Staton, Nathan Turner, Jerry Wall, Michael Welge, Daniel West, James Wolfe, Michael Travis Wyche, De'Undre Woodard have each filed Notice of Consent to Join this suit as Plaintiffs, both

for purposes of a collective action pursuant to 29 U.S.C. § 216(b), and as to all other causes of action alleged.

14. Collectively, while living at C.A.A.I.R. and working at Simmons or Simmons Pet Food, in addition to performing grueling work for no pay, these men experienced numerous, serious injuries, including head, knee, and back injuries, acid burns and other injuries for which they were not provided appropriate medical care. When Plaintiffs reported injuries to Simmons, Simmons insisted they were "contract labor," denied treatment for work-sustained injuries, and informed Plaintiffs that it was C.A.A.I.R.'s responsibility to provide treatment. C.A.A.I.R. routinely funneled injured workers to a doctor in Siloam Springs with ties to C.A.A.I.R., in order to obtain releases for Plaintiffs to return to work at Simmons. Furthermore, C.A.A.I.R. pressured one Plaintiff to return to work two days after his 2 month-old son died, before the viewing and funeral had taken place. C.A.A.I.R. would not allow those in its program to take prescribed psychotropic medicines. On one such occasion, it was apparent that a resident who had been denied prescribed medicine was emotionally unstable. C.A.A.I.R. responded by dismissing him from the program and forcing him off the rural property at night during a rainstorm, leaving him with no means to contact anyone to rescue him. C.A.A.I.R. often sent employees Jim Lovell and others on recruiting trips to jails across Oklahoma, in order to secure free labor for the C.A.A.I.R./Simmons scheme.

15. Defendant Christian Alcoholics & Addicts in Recovery, Inc. ("C.A.A.I.R.") is an Oklahoma corporation, registered as a charitable organization, with its principal place of business in Jay, Oklahoma. C.A.A.I.R. does substantial business in this judicial district.

16. Defendant Simmons Foods, Inc. ("Simmons") is an Arkansas, for-profit business corporation headquartered in Siloam Springs, Arkansas. Simmons Foods does substantial

business in Oklahoma and in this judicial district. Simmons Foods operates a processing plant in Fairland, Oklahoma, and contracts for labor with C.A.A.I.R. in Oklahoma. Simmons Foods also operates processing plants in Southwest City, Missouri, and Decatur, Arkansas.

17. Defendant Simmons Pet Food, Inc. ("Simmons Pet Food") is an Arkansas for-profit business corporation headquartered in Siloam Springs, Arkansas. Simmons Pet Food does substantial business in Oklahoma and in this judicial district. Simmons Pet Food maintains operations in Fort Gibson, Oklahoma, and contracts for labor with C.A.A.I.R. in Oklahoma. Simmons Pet Food also operates a processing plant in Decatur, Arkansas.

18. Defendant Janet Wilkerson is a natural person. Ms. Wilkerson is a co-founder of C.A.A.I.R. and is C.A.A.I.R.'s chief executive officer.

19. Defendant Don Wilkerson is a natural person. Mr. Wilkerson is a co-founder of C.A.A.I.R. and is C.A.A.I.R.'s vice president of operations.

20. Defendant Louise Dunham is a natural person. Ms. Dunham is a co-founder of C.A.A.I.R. and is C.A.A.I.R.'s vice president of finance.

21. Defendant Jim Lovell is a natural person. Mr. Lovell is C.A.A.I.R.'s vice president of program management.

22. Jurisdiction over Plaintiffs' FLSA Claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

23. Subject Matter Jurisdiction is also conferred on this Court by 28 U.S.C. §1337 and over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

24. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343 to secure protection of, and to redress deprivations of, rights secured by the Thirteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the

protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

25.    This Court has supplemental subject matter jurisdiction under 28 U.S.C § 1367 for all claims asserted under the laws of Oklahoma, Missouri, and Arkansas (the "State Law Claims") because these claims are part of the same case and controversy as the FLSA and RICO claims; the federal and State Law Claims derive from a common nucleus of operative fact; the State Law Claims will not substantially dominate over the FLSA claims; and exercising supplemental jurisdiction will be in the interests of judicial economy, convenience, fairness, and comity.

26.    Independently, this Court has original subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, in that the estimated damages involved in this action will exceed $5,000,000 and the parties to this action are residents of different states.

27.    This Court has specific personal jurisdiction for all claims against the defendants because the defendants have availed themselves of the privileges of conducting business in Oklahoma and a substantial portion of the events giving rise to this suit, including the contracting and transmission of unlawful labor, occurred in Oklahoma and resulted from defendants' contacts with this forum.

28.    This Court has general personal jurisdiction for all claims against the defendants because their affiliations with the State of Oklahoma are sufficiently continuous and systematic to render the defendants essentially at home in this state.  Further, this Court has general person jurisdiction over defendants C.A.A.I.R., Janet Wilkerson, Don Wilkerson, Rodney Dunham, Louise Dunham, and Jim Lovell because C.A.A.I.R. is incorporated and has its principal place of business in Oklahoma, and because the individually named defendants are residents of

Oklahoma.

29.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events, acts, and or omissions giving rise to the claims asserted in this suit occurred in this District.

30.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food are subject to this Court's personal jurisdiction and therefore reside in this District, and because defendant Janet Wilkerson, Don Wilkerson, Rodney Dunham, Louise Dunham, and Jim Lovell are natural persons who reside in this District.

## III.     FACTUAL ALLEGATIONS

31.     C.A.A.I.R. holds itself out as a long-term residential drug and alcohol recovery program.  In fact, however, C.A.A.I.R., is not certified as a treatment provider by the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS"), and C.A.A.I.R. provides no meaningful treatment for its residents.

32.     43A Okl. St. § 3-415(A) provides that only facilities certified by the Oklahoma Board of Mental Health and Substance Abuse Services ("OBMHSAS")[2] may provide alcohol and drug treatment and rehabilitation services.[3]  C.A.A.I.R. does not meet, and has never met, the requirements for such certification, and provides virtually nothing in the way of legitimate treatment services for its residents, which it calls "clients."

33.     In fact, drug and alcohol treatment was never the intended purpose of C.A.A.I.R..

---

[2] The OBMHSAS is the governing board of the ODMHSAS.  43A Okl. St. § 2-101(A)(2).
[3] Similarly, in its Adult Treatment Court Manual, promulgated pursuant to section 471.10(B) of the Oklahoma Drug Court Act (22 Okl. St. § 471, *et seq*.), the ODMHSAS provides that treatment agencies utilized by the state's drug courts must be contracted with the ODMHSAS for treatment or be certified by the ODMHSAS.

Rather, C.A.A.I.R. was started by defendant Wilkerson, a former executive at Peterson Farms, Inc. ("Peterson"), a chicken processing company acquired by Simmons in 2008; by Rodney Dunnam, also a former executive at Peterson; and by Louise Dunnam, a purported HR specialist. None of these founders had any background in drug and alcohol treatment. C.A.A.I.R.'s purpose was and is to provide income to itself and its founders while providing cheap labor to third-party agricultural interests affiliated with C.A.A.I.R.. C.A.A.I.R.'s business model is to locate and control vulnerable persons, many of whom are desperately in need of meaningful treatment; compel them to work fulltime for Simmons Foods, Simmons Pet Food, and other corporations with whom C.A.A.I.R. contracts; and keep all of their wages. C.A.A.I.R. calls this forced labor "treatment" while denying its patients any semblance of actual psychiatric or medical care.

34.     Many residents arrive at C.A.A.I.R. by way of Oklahoma's drugs courts. This stream of forced laborers is procured by C.A.A.I.R.'s uniform misrepresentations that it is a legitimate treatment facility. Once clients are sent to C.A.A.I.R. for supposed treatment, C.A.A.I.R. immediately denies them any treatment and instead sends them to work for private corporations. The work performed for these third-parties, including Simmons Foods and Simmons Pet Food, is grueling and frequently dangerous. The putative class members, including both Named Plaintiffs, who comprise C.A.A.I.R.'s residents regularly work over 40 hours a week at Simmons Foods and Simmons Pet Food facilities. They receive no wages for this work, let alone premium wages for overtime worked. Instead, the Simmons defendants make donations to C.A.A.I.R. in return for the free labor and/or pays C.A.A.I.R. a discounted rate for the work performed, and C.A.A.I.R. keeps all such compensation.

35.     C.A.A.I.R.'s mistreatment of it residents does not stop with forced labor for no pay. When putative-class-member-workers are injured they are not provided with adequate, or

often any, medical care and are instead ordered to work while injured. C.A.A.I.R. staff, as well as staff at Simmons Foods and Simmons Pet Food facilities, threaten to send the putative class members to prison if their work is deemed unsatisfactory or if they complain that they cannot work due to injuries. C.A.A.I.R. even files workers compensation claims on behalf of its injured residents, and then keeps every penny paid for such claims. Defendant Wilkerson has openly admitted to this conduct, publicly stating: "That's the way it works." "Yes, we did keep [the workers compensation money of clients]," Wilkerson stated. "Right, wrong or indifferent, that's what happened."

36.     Defendants are and were joint and co-employers of Plaintiffs and all C.A.A.I.R. residents because, *inter alia*, all defendants direct, control, and supervise the work performed by these employees; these employees' work is an integral part of the defendants' businesses; and the defendants control the employment conditions of these employees.

37.     Defendants acted in concert to engage in the conduct complained of herein by virtue of mutual arrangements and contracts to provide labor for the production of agricultural products for commerce, to withhold wages, and to hold Named Plaintiffs and all C.A.A.I.R. residents in involuntary servitude.

38.     Defendant Wilkerson is chief executive officer of C.A.A.I.R., which is an enterprise engaged in and affecting interstate commerce by virtue of its provision of labor to defendants Simmons Foods and Simmons Pet Food, which manufacture products for interstate commerce, and by virtue of its transportation of that labor across state lines. As C.A.A.I.R.'s CEO, defendant Wilkerson is employed by and is associated with C.A.A.I.R.. Further, as C.A.A.I.R.'s CEO, Ms. Wilkerson is responsible for devising and implementing C.A.A.I.R. policy, a fundamental and essential component of which is involuntary servitude, a racketeering

activity under 18 U.S.C. § 1961. Defendant Wilkerson therefore conducts the affairs of C.A.A.I.R. through a pattern of racketeering activity, which is, in fact, the basis of C.A.A.I.R.'s entire business model.

39.     Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food conspire with defendant Wilkerson to engage in this conduct by executing explicit agreements and contracts for the provision of involuntary labor, agreeing to withhold wages from C.A.A.I.R. residents, transmitting earned wages directly to C.A.A.I.R., receiving labor transported across state lines by C.A.A.I.R., and operating businesses which substantially rely on unpaid, unlawful labor.

**A.     Facts Related to Willfulness of Violations**

40.     The violations of law described herein were and are knowing, intentional, and willful. Defendants have engaged, and continue to engage, in the conduct alleged herein by systematic, calculated policy. Defendants are advised by sophisticated and informed legal counsel and human resources professionals who were, or should have been, aware of the legal requirements violated by the conduct alleged herein. Defendants therefore acted in knowing violation of the law.

**IV.     COLLECTIVE ACTION ALLEGATIONS**

**A.     FLSA Class Definition**

41.     Named Plaintiffs bring causes of action one and two as a nationwide opt-in collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the following class (the "FLSA Class"):

> All persons who, at any time from three years prior to the filing of this
> action through the trial date, have performed work at any Simmons Foods
> or Simmons Pet Food facility while residing at C.A.A.I.R..

42.     The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from defendants' records, and potential class members may easily and quickly be notified of the pendency of this action.

**B.      FLSA Requirements**

43.     Named Plaintiffs and the members of the putative FLSA Class are or were, at all relevant times, employees engaged in commerce or the production of goods for commerce, and are or were employed by enterprises (namely, C.A.A.I.R., Simmons Foods, and Simmons Pet Food) engaged in commerce or the production of goods for commerce as contemplated by 29 U.S.C. § 206(a) and 207(a).

44.     Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Rodney Dunham and Louise Dunham are "employers" as that term is defined by 29 U.S.C. § 203(d); and are "enterprises engaged in commerce or in the production of goods for commerce" as that term is defined by 29 U.S.C. § 203(s)(1)(A), including by virtue of respective annual gross volumes of sales and business exceeding $500,000.

45.     None of the exemptions from the FLSA's minimum wage and overtime requirements, including those contained in 29 U.S.C. § 213, apply to Named Plaintiffs or to the members of the FLSA Class.

**V.      CLASS ACTION ALLEGATIONS**

**A.      Rule 23 Class Definitions**

**1.      The RICO Rule 23 Class**

46.     Named Plaintiffs bring causes of action three and four as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "RICO Rule 23 Class"):

All persons who, at any time from four years prior to the filing of this action

through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R..

### 2.     The Oklahoma Human Trafficking Rule 23 Class

47.     Named Plaintiffs bring cause of action five as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Oklahoma Human Trafficking Rule 23 Class"):

All persons who, at any time from five years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R..

### 3.     The Arkansas Wage Law Rule 23 Class

48.     Named Plaintiffs bring causes of action six and seven as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Arkansas Wage Law Rule 23 Class"):

All persons who, at any time from three years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility in the state of Arkansas while residing at C.A.A.I.R..

### 4.     The Missouri Wage Law Rule 23 Class

49.     Named Plaintiffs bring causes of action eight and nine as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Missouri Wage Law Rule 23 Class"):

All persons who, at any time from two years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or

Simmons Pet Food facility in the state of Missouri while residing at C.A.A.I.R..

### 5. The Missouri Unjust Enrichment Rule 23 Class

50. Named Plaintiffs bring cause of action ten as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Missouri Unjust Enrichment Rule 23 Class"):

All persons who, at any time from five years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility in the state of Missouri while residing at C.A.A.I.R..

### 6. The Oklahoma Wage Law Rule 23 Class

51. Named Plaintiffs bring causes of action eleven as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Oklahoma Wage Law Rule 23 Class"):

All persons who, at any time from two years prior to the filing of this action through the trial date, have performed work on behalf of C.A.A.I.R. at any Simmons Foods or Simmons Pet Food facility.

### 7. The Trafficking Victims Protection Reauthorization Act Rule 23 Class

52. Named Plaintiffs bring causes of action twelve, thirteen and fourteen as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "TVPRA Class"):

All persons who, at any time from ten years prior to the filing of this action

17

through the trial date, have performed work on behalf of C.A.A.I.R., at any Simmons Foods or Simmons Pet Food facility.

**B.**     **Propriety of Certification Under FRCP 23(a)**

**1.**     **Numerosity**

53.     The members of the RICO, Oklahoma Human Trafficking, Arkansas Wage Law, Missouri Wage Law, and Missouri Unjust Enrichment Rule 23 Classes are so numerous that joinder of all members is impracticable. The exact number is currently unknown to Named Plaintiffs, but each of these classes likely includes between 800 and 1,500 putative class members.

**2.**     **Adequacy**

54.     Named Plaintiffs will fairly and adequately represent the interests of the RICO, Oklahoma Human Trafficking, Arkansas Wage Law, Missouri Wage Law, and Missouri Unjust Enrichment Rule 23 Classes. Named Plaintiffs are members of these classes and were subject to the same policies and practices as the other members of those classes. Named Plaintiffs have retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class action litigation. Named Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the various classes and have the financial resources to do so. Neither Named Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed classes.

**3.**     **Commonality**

55.     There are numerous question of law and fact common to the RICO, Oklahoma Human Trafficking, Arkansas Wage Law, Missouri Wage Law, and Missouri Unjust Enrichment Rule 23 Classes. These questions include, but are not limited to, the following: (1) Whether the

practices complained of herein are unlawful; (2) whether the practices alleged herein to be in violation of the FLSA were willful; (3) whether the actions complained of herein constitute holding persons to involuntary servitude; and, if so, (4) whether defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food conspired with defendant Wilkerson to conduct the affairs of C.A.A.I.R. through a pattern of racketeering activity.

### C. Propriety of Certification Under FRCP 23(b)(3)

#### 1. Predominance

56. Questions of law and fact common to class members predominate over any questions affecting only individual members. The predominant issues in this litigation will be whether the common practices of the defendants violate the FLSA, the RICO Act, the TVPRA and the laws of Oklahoma, Arkansas, and Missouri. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Moreover, there are no unusual difficulties likely to be encountered in the management of this case as a class action.

#### 2. Superiority

57. The class action mechanism is superior to any alternatives that might exist for the fair and efficient adjudication of these claims. Prosecution of this case as a class action will permit a large number of injured parties to pursue their common claims in a single forum, at the same time, which will promote efficiency, prevent duplication of evidence and efforts, and preserve judicial resources and the resources of the parties. A class action will avoid potentially inconsistent results in numerous individual trials or other judicial actions. Further, class treatment is the only realistic means by which Named Plaintiffs and the proposed class members can effectively litigate against a large, well-represented corporate entities like defendants. In the absence of a class action, the defendants will be unjustly enriched by the retention of the fruits

and benefits of their unlawful conduct. A multiplicity of repetitive individual actions would also place an enormous burden on the courts.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Failure to Pay Minimum Wages in Violation of the FLSA
### 29 U.S.C. § 206(a)
### (Brought by Named Plaintiffs on Behalf of the FLSA Class Against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, and Louise Dunham)

62.    Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

63.    At all times material herein, the FLSA Named Plaintiffs and each member of the FLSA Class have been entitled to the rights, protections, and benefits provided by the FLSA, 29 U.S.C. § 201, *et seq.*

64.    As alleged herein, defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Rodney Dunham and Louise Dunham have violated the FLSA, including 29 U.S.C. § 206(a), by failing to pay minimum wages.

65.    As a direct and proximate result of these defendants's failure to pay minimum wages in violation of the FLSA, Named Plaintiffs and the members of the FLSA Class have been injured and have sustained damages, including lost compensation, in an amount to be proved at trial.

66.    Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have acted neither in good faith nor with reasonable grounds to believe that their actions complied with the FLSA. Accordingly, Named Plaintiffs and the FLSA Class are entitled to recover liquidated damages pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find that these defendants acted in good faith, Named Plaintiffs and the FLSA Class are entitled to an award of

pre-judgment interest at the applicable legal rate.

67.     Accordingly, pursuant to 29 U.S.C. § 216(b), Named Plaintiffs seek, on behalf of themselves and the FLSA Class, damages, liquidated damages, interest, attorney's fees, costs, and such other legal and equitable relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207(a)**
**(Brought by Named Plaintiffs on Behalf of the FLSA Class Against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, and Louise Dunham)**

68.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

69.     At all times material herein, the FLSA Named Plaintiffs and each member of the FLSA Class have been entitled to the rights, protections, and benefits provided by the FLSA, 29 U.S.C. § 201, *et seq.*

70.     As alleged herein, Named Plaintiffs and the members of the FLSA class have worked, and continue to work, on a regular basis, more than 40 hours a week.

71.     As alleged herein defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have failed to pay Named Plaintiffs and the members of the FLSA Class any compensation when they work more than 40 hours in a week, and have thereby violated the FLSA, including 29 U.S.C. § 207(a).

72.     As a direct and proximate result of these defendants' failure to pay overtime wages in violation of the FLSA, Named Plaintiffs and the members of the FLSA Class have been injured and have sustained damages, including lost compensation, in an amount to be proved at trial.

73.     Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have acted neither in good faith nor with reasonable grounds to believe that their actions complied with the

FLSA. Accordingly, Named Plaintiffs and the FLSA Class are entitled to recover liquidated damages pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find that these defendants acted in good faith, Named Plaintiffs and the FLSA Class are entitled to an award of pre-judgment interest at the applicable legal rate.

74. Accordingly, pursuant to 29 U.S.C. § 216(b), Named Plaintiffs seek, on behalf of themselves and the FLSA Class, damages, liquidated damages, interest, attorney's fees, costs, and such other legal and equitable relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Violation of the RICO Act, 18 U.S.C. §§ 1961 and 1962(c)**
**(Brought by Named Plaintiffs on Behalf of the RICO Rule 23 Class Against Defendant Janet Wilkerson)**

75. Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

76. As alleged herein, defendant Janet Wilkerson has conducted the affairs of C.A.A.I.R. through a pattern of racketeering activity (namely, holding persons in involuntary servitude) in violation of 18 U.S.C. § 1962(c).

77. As a direct and proximate result of this conduct, Named Plaintiffs and the members of the RICO Rule 23 Class have been injured in an amount to be proved at trial.

78. Accordingly, pursuant to 18 U.S.C. § 1964(c), Named Plaintiffs seek treble damages, attorney's fees, and costs on behalf of themselves and the members of the RICO Rule 23 Class.

**FOURTH CAUSE OF ACTION**
**Violation of the RICO Act, 18 U.S.C. §§ 1961 and 1962(d)**
**(Brought by Named Plaintiffs on Behalf of the RICO Rule 23 Class Against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)**

79. Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

80. As alleged herein, defendant Janet Wilkerson has conducted the affairs of C.A.A.I.R. through a pattern of racketeering activity (namely, holding persons in involuntary servitude) in violation of 18 U.S.C. § 1962(c).

81. As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have conspired with defendant Wilkerson in this conduct in violation of 18 U.S.C. § 1962(d).

82. As a direct and proximate result of this conduct, Named Plaintiffs and the members of the RICO Rule 23 Class have been injured.

83. Accordingly, pursuant to 18 U.S.C. § 1964(c), Named Plaintiffs seek treble damages, attorney's fees, and costs on behalf of themselves and the members of the RICO Rule 23 Class.

**FIFTH CAUSE OF ACTION**
**HUMAN TRAFFICKING FOR LABOR, IN VIOLATION OF 21 O.S. § 748 and 21 O.S. § 748.2 (Brought by Named Plaintiffs on Behalf of the Rule 23 Oklahoma Human Trafficking Class Against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovell)**

84. Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

85. Defendants enticed, harbored, maintained, transported, provided or obtained Plaintiffs and Putative Class Members through deception, force, fraud, threat or coercion for the purposes of engaging Plaintiffs and Putative Class Members in labor.

86. Defendants benefited financially from participation in a venture that has engaged in an act of trafficking Plaintiffs and Putative Class Members for labor.

87. Plaintiffs and Putative Class Members suffered harm due to the illegal acts of Defendants.

88. As a direct and proximate result of this conduct, Named Plaintiffs and the

members of the Oklahoma Human Trafficking Rule 23 Class have been injured in an amount to be proved at trial.

89.     The conduct of defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food as alleged herein has resulted in serious damage to the public welfare; has resulted in substantial profit to defendants in excess of $10,000,000; has been ongoing for an extended period exceeding eight years; was undertaken with the full knowledge of defendants; and was perpetrated by a substantial number of defendants' employees.

90.     Accordingly, pursuant to Okl. St. § 748.2(B), Named Plaintiffs seek actual damages, punitive damages, attorney's fees, and costs on behalf of themselves and the members of the Oklahoma Human Trafficking Rule 23 Class.


### SIXTH CAUSE OF ACTION
**Failure to Pay Minimum Wages in Violation of Arkansas Law**
**A.C.A. § 11-4-210(a) (Brought by Named Plaintiffs on Behalf of Arkansas Wage Law Rule 23 Class Against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)**

91.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

92.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Arkansas Wage Law Rule 23 Class minimum wages in violation of A.C.A. § 11-4-210(a).

93.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Arkansas Wage Law Rule 23 Class have been injured in an amount to be proved at trial.

94.     Accordingly, pursuant to A.C.A. § 11-4-218(a), Named Plaintiffs seek damages, liquidated (double) damages, attorney's fees, and costs on behalf of themselves and the members

of the Arkansas Wage Law Rule 23 Class.

**SEVENTH CAUSE OF ACTION**
**Failure to Pay Overtime Wages in Violation of Arkansas Law**
**A.C.A. § 11-4-211(a)**
**(Brought by Named Plaintiffs on Behalf of Arkansas Wage Law Rule 23 Class Against**
**Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)**

95.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

96.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Arkansas Wage Law Rule 23 Class overtime wages in violation of A.C.A. § 11-4-211(a).

97.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Arkansas Wage Law Rule 23 Class have been injured in an amount to be proved at trial.

98.     Accordingly, pursuant to A.C.A. § 11-4-218(a), Named Plaintiffs seek damages, liquidated (double) damages, attorney's fees, and costs on behalf of themselves and the members of the Arkansas Wage Law Rule 23 Class.

**EIGHTH CAUSE OF ACTION**
**Failure to Pay Minimum Wages in Violation of Missouri Law**
**§ 290.502 R.S.Mo.**
**(Brought by Named Plaintiffs on Behalf of Missouri Wage Law Rule 23 Class Against**
**Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)**

99.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

100.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Missouri Wage Law Rule 23 Class minimum wages in violation of § 290.502 R.S.Mo.

101.     As a direct and proximate result of this conduct, Named Plaintiffs and the

members of the Missouri Wage Law Rule 23 Class have been injured in an amount to be proved at trial.

102.     Accordingly, pursuant to § 290.527 R.S.Mo., Named Plaintiffs seek damages, liquidated (double) damages, attorney's fees, and costs on behalf of themselves and the members of the Arkansas Wage Law Rule 23 Class.

### NINTH CAUSE OF ACTION
**Failure to Pay Overtime Wages in Violation of Missouri Law**
**§ 290.505 R.S.Mo.**
**(Brought by Named Plaintiffs on Behalf of Missouri Wage Law Rule 23 Class Against**
**Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)**

103.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

104.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Missouri Wage Law Rule 23 Class overtime wages in violation of § 290.505 R.S.Mo.

105.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Missouri Wage Law Rule 23 Class have been injured in an amount to be proved at trial.

106.     Accordingly, pursuant to § 290.527 R.S.Mo., Named Plaintiffs seek damages, liquidated (double) damages, attorney's fees, and costs on behalf of themselves and the members of the Arkansas Wage Law Rule 23 Class.

### TENTH CAUSE OF ACTION
**Unjust Enrichment in Violation of Missouri Common Law**
**(Brought by Named Plaintiffs on Behalf of Missouri Unjust Enrichment Rule 23 Class**
**Against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)**

107.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

108.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet

Food have failed to pay Named Plaintiffs and the Members of the Missouri Unjust Enrichment Class wages for their hours worked.

109.     As a result of this conduct, Named Plaintiffs and the Members of the Missouri Unjust Enrichment Rule 23 Class were forced to forfeit money for the benefit of these defendants, and these defendants thus knowingly and willingly obtained monetary benefits to which they were not entitled.

110.     Under these circumstances, it would be inequitable for these defendants to retain these monetary benefits at the expense of Named Plaintiffs and the Members of the Missouri Unjust Enrichment Rule 23 Class.

111.     By engaging in this conduct, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have been unjustly enriched at the expense of Named Plaintiffs and the Members of the Missouri Unjust Enrichment Rule 23 Class, and are required, in equity and good conscience, to compensate said plaintiffs for harm suffered as a result of these actions.

112.     As a direct and proximate result of this unjust enrichment, Named Plaintiffs and the members of the Missouri Unjust Enrichment Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by of the benefit conferred by said plaintiffs.

**ELEVENTH CAUSE OF ACTION**
**Oklahoma Protection of Labor Act—Failure to Pay Unpaid Wages And Minimum Wage in Violation of 40 O.S. § 161,** *et seq.*

113.     Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

114.     Defendants are employers covered by and subject to the Oklahoma Protection of Labor Act, 40 O.S. § 161, *et seq.* and the Oklahoma Minimum Wage Act, 40 O.S. § 197.1, *et seq.*

115.     Defendants had a statutory duty under Oklahoma law to compensate Plaintiff and

Putative Class Members a regular hourly wage for all hours worked.

116.    Defendants' failure to pay all wages due to Plaintiffs and Putative Class Members was willful. More specifically, Defendant's wrongful acts violate 40 O.S. § 165.3 (B).[4]

117.    Defendants' willful failure to pay all wages due to Plaintiff and Putative Class Members, in violation of 40 O.S. § 165.3 and 40 O.S. § 197.9, permits Plaintiff and Putative Class Members to recover liquidated damages in addition to their unpaid wages, penalties, interest, expenses, reasonable attorneys' fees and costs.

**TWELFTH CAUSE OF ACTION**
**FORCED LABOR in Violation of the Trafficking Victims Protection Act of 2000, AS REAUTHORIZED THROUGH THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2003, 2005, 2008 AND 2013 ("TVPRA")**
**(18 U.S.C. §§ 1589(a) and 1595)**

118.    Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

119.    Plaintiffs and Putative Class Members bring this claim for relief under the private cause of action for violation of the TVPRA (§ 1589(a)), which prohibits forced labor.

120.    Under 18 U.S.C. § 1589(a), it is unlawful to "knowingly provid[e] or obtain[] the labor or services of a person ... (1) by means of force, threats of force, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means ofthe abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe

---

[4] B. "If an employer fails to pay an employee wages as required under subsection A of this section, such employer shall be additionally liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller...."

that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

121.    As alleged herein, the Defendants held Plaintiffs and the Putative Class Members in a state of forced labor, under false pretenses of a "rehabilitation" program, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of abuse of law or legal process; and/or a scheme, plan, or pattern intended to cause Plaintiffs and the Putative Class Members to believe that if they did not perform the labor or services, they would suffer serious harm, including psychological, financial, or reputational harm, or incarceration, in violation of the forced labor provision of the TVPRA, 18 U.S.C. § 1589(a).

122.    Defendants executed a scheme, plan, or pattern (i.e., a forced labor camp billed as a drug and alcohol rehabilitation program) intended to cause Plaintiffs and the Putative Class Members to believe that if they did not continue to work for Defendants, they would suffer serious harm by threats of incarceration and by controlling their living conditions. Such a scheme is prohibited by 18 U.S.C. § 1589(a)(1) and (2).

123.    Under 18 U.S.C. § 1589(b), it is unlawful to "knowingly benefit[], financially or by receiving anything of value, from participating in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any such means."

124.    As alleged herein, Defendants knowingly benefited, financially or by receiving something of value, from participation in a venture that violated 18 U.S.C. § 1589(a), knowing or in reckless disregard of the fact that the venture was engaging in activity that violated § 1589(a).

125.     C.A.A.I.R. benefitted financially by receiving funding from Simmons Foods and others in connection with its maintenance of an illegal forced labor program. Simmons Foods benefitted financially from this enterprise by utilizing the cheap and captive, and unlawful, work force provided by C.A.A.I.R.

126.     The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

127.     As a direct and proximate result of these actions, Plaintiffs and the Putative Class Members have suffered economic and non-economic damages.

128.     Plaintiffs and the Putative Class are therefore entitled to recover damages to account for the full value of their losses, including but not limited to emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

## THIRTEENTH CAUSE OF ACTION
## INVOLUNTARY SERVITUDE IN VIOLATION OF TVPRA
## (18 U.S.C. §§ 1584 and 1595)

129.     Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

130.     Plaintiffs and Putative Class Members bring this claim for relief under the private cause of action for violation of the TVPRA (§ 1584), which prohibits involuntary servitude.

131.     Under 18 U.S.C. § 1584(a), it is unlawful to "knowingly and willfully hold[] to involuntary servitude or sell[] into any condition of involuntary servitude, any other person for any term, or bring[] within the United States any person so held."

132.     "Involuntary servitude" includes "a condition of servitude induced by means of... any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter

into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or... the abuse or threatened abuse of the legal process." 22 U.S.C. § 7102(5).

133.    As alleged herein, the Defendants held Plaintiffs and the Putative Class Members in involuntary servitude, under false pretenses of a "rehabilitation" program, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of serious harm, including incarceration.

134.    Defendants' threats and coercion caused Plaintiffs and the Putative Class Members to reasonably believe that they had no alternative but to continue to work for Defendants.

135.    The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

136.    As a direct and proximate result of these actions, Plaintiffs and the Putative Class Members have suffered economic and non-economic damages.

137.    Plaintiffs and the Putative Class are therefore entitled to recover damages to account for the full value of their losses, including but not limited to emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**FOURTEENTH CAUSE OF ACTION**
**TRAFFICKING WITH RESPECT TO PEONAGE, SLAVERY, INVOLUNTARY SERVITUDE, OR FORCED LABOR IN VIOLATION OF THE TVPRA, (18 U.S.C. §§ 1590 and 1595)**

138.    Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

139.     Under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit[],
harbor[],transport[], provide[], or obtain[] by any means, any person for [peonage, slavery,
involuntary servitude, or forced labor]."

140.     As alleged herein, the Defendants knowingly recruited, harbored, transported,
provided and/or obtained Plaintiffs and the Putative Class Members, bringing them to the
C.A.A.I.R. facility, under false pretenses of a "rehabilitation" program, for the purpose of
involuntary servitude and forced labor in violation of the trafficking provision of the TVPRA, 18
U.S.C. § 1590(a).

141.     As alleged herein, Defendants attempted to and did violate the prohibitions
against involuntary servitude and forced labor set forth in 18 U.S.C. §§ 1584(a) and 1589(a) and
(b).

142.     The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

143.     As a direct and proximate result of these actions, Plaintiffs and the Putative Class
Members have suffered economic and non-economic damages.

144.     Plaintiffs and the Putative Class are therefore entitled to recover damages in an
amount to be proven at trial, including attorneys' fees.

145.     Plaintiffs and the Putative Class are therefore entitled to recover damages to
account for the full value of their losses, including but not limited to emotional distress, lost
wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct,
and reasonable attorneys' fees for Defendants' wrongful conduct.

**FIFTEENTH CAUSE OF ACTION**
**INVOLUNTARY SERVITUDE AND FORCED LABOR**
**IN VIOLATION OF THE THIRTEENTH AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
**(PURSUANT TO 42 U.S.C. § 1983)**

146.    Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

147.    The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1.

148.    Shortly after its passage, the Supreme Court held that the Amendment "is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." *Civil Rights Cases,* 109 U.S. 3, 20, 3 S.Ct. 18, 27 L.Ed. 835 (1883).

149.    The Thirteenth Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery. *See Slaughter–House Cases,* 83 U.S. 36, 69, 16 Wall. 36, 21 L.Ed. 394 (1872) ("The word servitude is of larger meaning than slavery...."); *see also Pollock v. Williams,* 322 U.S. 4, 17–18, 64 S.Ct. 792, 88 L.Ed. 1095 (1944) (noting that the "undoubted aim of the Thirteenth Amendment ... was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States").

150.    As alleged herein, the Defendants held Plaintiffs and the Putative Class Members in involuntary servitude, under false pretenses of a "rehabilitation" program, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of serious harm, including incarceration, in violation of the Thirteenth Amendment.

151.    As a direct and proximate result of these actions, Plaintiffs and the Putative Class Members have suffered economic and non-economic damages.

152.    Plaintiffs and the Putative Class are therefore entitled to recover damages in an

amount to be proven at trial, including attorneys' fees.

153.    Plaintiffs and the Putative Class are therefore entitled to recover damages to account for the full value of their losses, including but not limited to emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

## VII.    PRAYER FOR RELIEF

154.    WHEREFORE, Named Plaintiffs, on behalf of themselves and the members of the FLSA Class, pray for relief as follows:

155.    Designation this action as a collective action on behalf of the proposed FLSA Class, and prompt issuance of notice to all class members apprising them of the pendency of this action and their right to join pursuant to 29 U.S.C. § 216(b);

156.    A declaration that defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food are financially responsible for sending notice to all members of the FLSA Class;

157.    Designation of Smolen, Smolen & Roytman and Aiman-Smith & Marcy as the attorneys representing the putative collective action plaintiffs;

158.    Declaratory judgment that the practices complained of herein are unlawful under the FLSA;

159.    An award of unpaid minimum and overtime wages and liquidated damages to be paid by defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food to the FLSA Class;

160.    Costs and expenses of this action, including reasonable expert and attorney's fees;

161.    Pre-judgment and post-judgment interest, as provided by law; and

162.    Any and all further legal and equitable relief deemed necessary, just, and proper by this Court.

163.    And WHEREFORE, Named Plaintiffs, on behalf of themselves and all members of the Rule 23 Classes, pray for relief as follows:

164.    Certification of this action as a class action pursuant to FRCP 23;

165.    Designation of Named Plaintiffs as representatives of the Rule 23 Classes;

166.    That defendants, at their own expense, be ordered to provide full and adequate notice as required in class actions to all members of the Rule 23 Classes;

167.    That defendants be ordered to pay all amounts owed to the Rule 23 Classes arising out of the actions complained of herein, including wages, economic and non-economic damages, statutory penalties, liquidated damages, punitive damages, interest, and costs;

168.    That this Court determine, and provide declaratory judgment, that the practices complained of herein were done willfully, knowingly, and intentionally;

169.    For attorney's fees as provided by statutory and common law;

170.    For such other legal and equitable relief as the Court may deem just and proper.

Plaintiffs and Putative Class Members reserve the right to amend their demand for judgment as new information is discovered during the course of this case.

Respectfully submitted,


/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
David A. Warta, OBA #20361
**SMOLEN, SMOLEN & ROYTMAN, PLLC**
701 S. Cincinnati Ave.
Tulsa, OK 74119
Phone (918) 585-2667
Fax (918) 585-2669

and

Carey A. James (CA Bar No. 269270)
Randall B. Aiman-Smith (CA Bar No.124599)
Reed W.L. Marcy (CA Bar No. 191531)
Hallie Von Rock (CA Bar No. 233152)
Brent A. Robinson (CA Bar No. 289373)
**AIMAN-SMITH & MARCY**
7677 Oakport St. Suite 1150
Oakland, CA 94621
Phone (510) 817-2711
Fax (510) 562-6830

*Attorneys for Plaintiffs, and all
others similarly situated*