IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

**ARTHUR COPELAND,** et al.,

      Plaintiffs,

      v.

**C.A.A.I.R., INC., a not-for-profit corpo-
ration,** et al.,

      Defendants.

Case No.  17-CV-564-TCK-JFJ

---

## MOTION TO DISMISS AND BRIEF IN SUPPORT OF DEFENDANTS SIMMONS FOODS, INC. AND SIMMONS PET FOOD, INC.

---

Amy M. Stipe, OBA No. 18361
**GableGotwals**
One Leadership Square, Suite 1500
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: 405.235.5500
Facsimile: 405.235.2875
*sdunagan@gablelaw.com*
*astipe@gablelaw.com*

Chris S. Thrutchley, OBA No. 15859
John D. Russell, OBA No. 13343
Philip D. Hixon, OBA No. 19121
Justin A. Lollman, OBA No. 32051
**GableGotwals**
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone: 918.595.4800
Facsimile: 918.595.4990
*cthrutchley@gablelaw.com*
*jrussell@gablelaw.com*
*phixon@gablelaw.com*
*jlollman@gablelaw.com*

**Counsel for Defendants
Simmons Foods, Inc. and
Simmons Pet Food Inc.**

Dated: January 15, 2018

# TABLE OF CONTENTS

I. BACKGROUND .............................................................................................................. 2

    Arthur Copeland ....................................................................................................... 3

    Brandon Spurgin ...................................................................................................... 5

    Brad McGahey .......................................................................................................... 5

II. STANDARD OF REVIEW ............................................................................................. 7

III. ARGUMENT AND AUTHORITY ................................................................................. 7

  A.  Plaintiffs' involuntary servitude claims (Counts 13, 14, and 15) fail as a matter of law because Plaintiffs are all criminal offenders who chose to participate in the CAAIR program, and to perform work therein, as an alternative to incarceration ............................................................................................................. 7

  B.  Plaintiffs' § 1983 claim (Count 15) fails as a matter of law because Simmons, a private actor, is not alleged to have taken any action "under color of state law" ....... 8

  C.  Plaintiffs' forced-labor claim (Count 12) should be dismissed because the facts alleged conclusively show that Simmons did not unlawfully coerce anyone to work ............................................................................................................ 9

  D.  Plaintiffs' federal human-trafficking claim (Count 14) is predicated on their involuntary-servitude and forced-labor claims and should be dismissed for the same reasons ................................................................................................................... 11

  E.  Plaintiffs' state human-trafficking claim (Count 5) should be dismissed because the facts alleged conclusively show that Simmons did not unlawfully coerce their labor .................................................................................................................... 12

  F.  Plaintiffs' RICO claim (Count 4) fails because Plaintiffs have not (1) alleged a viable predicate offense or (2) pleaded their RICO claim with particularity .......................... 12

  G.  Alternatively, Plaintiffs involuntary servitude, forced labor, human trafficking, and RICO claims (Counts 4, 5, 12, 13, 14, and 15) should be dismissed under Rule 19 for failure to join a necessary and indispensable party, namely, the State of Oklahoma ................................................................................................... 13

  H.  Plaintiffs' FLSA claims (Counts 1 and 2) fail as a matter of law because they cannot show that they were "employees" of the Defendants during their time at CAAIR ...................................................................................................... 14

1.  An individual who performs work without promise or expectation
    of compensation but solely for personal purposes is not an employee
    under the FLSA ............................................................................................ 15

2.  Plaintiffs, like prisoners, are criminal offenders performing work for
    rehabilitative reasons as a consequence of their criminal violations.
    For the same reason prisoners generally aren't considered "employees,"
    Plaintiffs shouldn't be either ........................................................................ 18

3.  Plaintiffs' likely counterarguments lack merit and should be rejected. ........... 20

I.  Plaintiffs' state wage claims (Counts 6, 7, 8, 9, and 11) fail for the same reason
    as their FLSA claims: Plaintiffs cannot show they were "employees" of the
    Defendants ........................................................................................................ 23

J.  Plaintiffs' unjust enrichment claim (Count 10) fails because (1) Plaintiffs didn't
    have any reasonable expectation of compensation for their labor, and (2) Simmons
    has already paid for the Plaintiffs' labor ........................................................... 24

CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

### Cases

*Accord Morgan v. MacDonald,*
  41 F.3d 1291 (9th Cir. 1994) ........................................................................... 19

*AIG Agency, Inc. v. Missouri Gen. Ins. Agency, Inc.*,
  474 S.W.3d 222 (Mo. Ct. App. 2015) ................................................................ 24

*Alvarado Guevara v. I.N.S.*,
  902 F.2d 394 (5th Cir. 1990) ............................................................................ 21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................ 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 7

*Bennett v. Frank,*
  395 F.3d 409 (7th Cir. 2005) ...................................................................... 19, 20

*Berger v. Nat'l Collegiate Athletic Ass'n,*
  843 F.3d 285 (7th Cir. 2016) ............................................................................ 21

*Brooks v. George County, Miss.*,
  84 F.3d 157 (5th Cir. 1996) ................................................................................ 8

*Carolene Prod. Co. v. United States*,
  323 U.S. 18 (1944) ............................................................................................ 24

*Carter v. Dutchess Community College,*
  735 F.2d 8 (2d Cir. 1984) ................................................................................. 23

*Carter v. Primary Home Care of Hot Springs, Inc.*,
  No. 6:14-CV-6092, 2015 WL 11120563 (W.D. Ark. May 14, 2015) .................... 24

*Davis ex rel. Davis v. United States*,
  343 F.3d 1282 (10th Cir. 2003) ........................................................................ 14

*Doe v. Siddig,*
  810 F. Supp. 2d 127 (D.D.C. 2011) ..................................................................... 8

*Doty v. Elias,*
  733 F.2d 720 (10th Cir. 1984) .......................................................................... 15

*English v. Univ. of Tulsa*,
   No. 14-CV-0284-CVE-FHM, 2015 WL 4623942 (N.D. Okla. Aug. 3, 2015) ......................9

*Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*,
   883 F.2d 890 (10th Cir. 1989) ............................................................................14

*Farlow v. Peat, Marwick, Mitchell & Co.*,
   956 F.2d 982 (10th Cir. 1992) ...........................................................................13

*Fei Guan v. Bing Ran*,
   No. 1:17CV332 (JCC/IDD), 2017 WL 2881363 (E.D. Va. July 6, 2017) ............................12

*Franks v. Oklahoma State Indus.*,
   7 F.3d 971 (10th Cir. 1993) .........................................................................passim

*Gilbreath v. Cutter Biological, Inc.*,
   931 F.2d 1320 (9th Cir. 1991) ...........................................................................20

*Hale v. State of Ariz.*,
   993 F.2d 1387 (9th Cir. 1993) ...........................................................................19

*Hamilton v. Rogers Cty. Bd. of Cty. Comm'rs*,
   No. 14-CV-0754-CVE-TLW, 2015 WL 1528912 (N.D. Okla. Apr. 3, 2015) .......................... 2

*Harker v. State Use Indus.*,
   990 F.2d 131 (4th Cir. 1993) ............................................................................19

*Headley v. Church of Scientology Int'l*,
   687 F.3d 1173 (9th Cir. 2012) ......................................................................10, 12

*Henthorn v. Dep't of Navy*,
   29 F.3d 682 (D.C. Cir. 1994)...............................................................19, 21, 22, 23

*Immediato v. Rye Neck Sch. Dist.*,
   73 F.3d 454 (2d Cir. 1996) ...............................................................................7

*Irons v. U.S. Postal Serv.*,
   No. 10-CV-127-GKF-TLW, 2010 WL 1629007 (N.D. Okla. Apr. 20, 2010) ........................7

*Jendrzejczak v. Williams*,
   No. 6:13-CV-1239 GTS/TWD, 2014 WL 2533041 (N.D.N.Y. June 5, 2014)...................... 8

*John Roe I v. Bridgestone Corp.*,
   492 F. Supp. 2d 988 (S.D. Ind. 2007) .................................................................. 8

*Karp v. Gap, Inc.*,
   2014 WL 4924229 (D. Mass. Sept. 29, 2014)...........................................................25

*Lagayan v. Odeh*,
   199 F.Supp.3d 21 (D.D.C. 2016) ........................................................... 12

*Laird v. Tatum*,
   409 U.S. 824 (1972) ........................................................... 16

*Lee Deering Elec. Co. v. Pernikoff Const. Co.*,
   247 S.W.3d 577 (Mo. Ct. App. 2008)........................................................... 25

*Looney v. State*,
   49 P.3d 761 (Okla. Crim. App. 2002) ........................................................... 3

*Malipurathu v. Jones*,
   No. CIV-11-646-W, 2012 WL 3822197 (W.D. Okla. June 11, 2012) ...................................... 3

*Matherly v. Andrews*,
   859 F.3d 264 (4th Cir. 2017) ........................................................... 21

*McCall v. S. Cent. Steel, Inc.*,
   No. 2:13-CV-00241-CLS, 2015 WL 4550386 (N.D. Ala. July 28, 2015) ................................ 9

*McMaster v. State of Minn.*,
   30 F.3d 976 (8th Cir. 1994) ........................................................... 19

*Miller v. Dukakis*,
   961 F.2d 7 (1st Cir. 1992) ........................................................... 21

*Muchira v. Al-Rawaf*,
   850 F.3d 605 (4th Cir. 2017) ........................................................... 10, 11, 12

*N. Arapaho Tribe v. Harnsberger*,
   697 F.3d 1272 (10th Cir. 2012)........................................................... 13, 14

*Nicastro v. Clinton*,
   882 F. Supp. 1128 (D.D.C. 1995) ........................................................... 15

*Phillip v. Mondragon*,
   42 F.3d 1406 (10th Cir. 1994)........................................................... 23

*Powell v. U.S. Cartridge Co.*,
   339 U.S. 497 (1950)........................................................... 20

*Republic of Philippines v. Pimentel*,
   553 U.S. 851 (2008) ........................................................... 14

*Sanders v. Hayden*,
   544 F.3d 812 (7th Cir. 2008) ........................................................... 21

*Schrock v. Wyeth, Inc.*,
  727 F.3d 1273 (10th Cir. 2013) ...................................................................7

*Schumann v. Collier Anesthesia, P.A.*,
  803 F.3d 1199 (11th Cir. 2015)...................................................................14

*Shaffer v. Direct Media, Inc.*,
  No. CIV-10-774-D, 2012 WL 681718 (W.D. Okla. Feb. 2, 2012) ........................................23

*Smith v. Dart*,
  803 F.3d 304 (7th Cir. 2015) ...................................................................21

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ...................................................................13

*Tolentino v. Starwood Hotels & Resorts Worldwide Inc.*,
  437 S.W.3d 754 (Mo. 2014)...................................................................24

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
  471 U.S. 290 (1985)...................................................................15, 16

*Transportation All. Bank, Inc. v. Arrow Trucking Co.*,
  2011 WL 221863 (N.D. Okla. Jan. 21, 2011) ...................................................................13

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*,
  614 F.3d 1163 (10th Cir. 2010) ...................................................................13

*United States v. Dann*,
  652 F.3d 1160 (9th Cir. 2011) ...................................................................10

*United States v. Kozminski*,
  487 U.S. 931 (1988)...................................................................7

*Vanskike v. Peters*,
  974 F.2d 806 (7th Cir. 1992) ...................................................................15, 19, 21

*Vaughn v. Phoenix House Programs of New York*,
  No. 14-CV-3918 (RA), 2016 WL 4223748 (S.D.N.Y. Aug. 9, 2016)...................................................................18, 21

*Vaughn v. Phoenix House Programs of New York*,
  No. 14-CV-3918 RA, 2015 WL 5671902 (S.D.N.Y. Sept. 25, 2015) ...................................................................17, 18, 21

*Villarreal v. Woodham*,
  113 F.3d 202 (11th Cir. 1997)...................................................................21

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947)...................................................................16, 18

*Watson v. Graves,*
909 F.2d 1549 (5th Cir. 1990) ........................................................ 7, 8, 23

*West v. Atkins,*
487 U.S. 42 (1988) ........................................................................ 8

*Williams v. Meese,*
926 F.2d 994 (10th Cir. 1991).................................................... 19, 20

*Williams v. Strickland,*
87 F.3d 1064 (9th Cir. 1995).................................................... 16, 17

*Winters v. Bd. of Cty. Commissioners of Muskogee Cty.,*
No. CIV-11-441-JHP, 2015 WL 501930 (E.D. Okla. Feb. 5, 2015)....................................24

## Statutes

Ark. Code Ann. § 11-4-203 ........................................................23

Ark. Code Ann. §§ 11-4-210–211 ...............................................23

Mo. Ann. Stat. § 290.500 ..........................................................23

Mo. Ann. Stat. §§ 290.502, 290.502..........................................23

Okla. Stat. tit. 21, § 748............................................................12

Okla. Stat. tit. 22, § 471..............................................................3

Okla. Stat. tit. 40, § 197............................................................23

Okla. Stat. tit. 40, §165.............................................................23

## Other Authorities

18 U.S.C. § 1589 ................................................................... 9, 10

18 U.S.C. § 1590 ...................................................................... 11

18 U.S.C. § 1961 ...................................................................... 13

29 U.S.C. § 203 ............................................................14, 15, 23

29 U.S.C. § 206 ...................................................................... 14

29 U.S.C. § 207 ...................................................................... 14

42 U.S.C. § 1983 ....................................................................... 8

Trafficking Victims Protection Reauthorization Act ..................................................... 7, 9, 10, 11

1955 Okla. Sess. Laws. 240 ............................................................................................ 24

1968 Ark. Acts. 25 .......................................................................................................... 24

1983 OK AG 126 ............................................................................................................ 24

1990 Mo. Legis. Serv. H.B. 1881 ................................................................................... 24

Minimum Wage Act of the State of Arkansas ................................................................. 24

Minimum Wage Act,
    ch. 426 1965 Okla. Sess. Laws 836 ......................................................................... 24

Homer Cummings, *"They All Come Out"*, 67 Fed. Probation 9 (2003) ..................... 1

James V. Bennett, *Of Prisons and Justice* 322 (1961) ................................................. 1

Robert Johnson, *Hard Time: Understanding and Reforming the Prison* 8 (3d ed. 2002) ............... 1

Stephen P. Garvey, *Freeing Prisoners' Labor*, 50 Stan. L. Rev. 339 (1998) ............... 1

U.S. Const. amend XIII .................................................................................................. 7

U.S. Const. amend. XI .................................................................................................... 14

Prison is not a pleasant place. Overcrowded and underfunded, prisons often lack the resources to do anything more than warehouse people. "They don't instruct or correct. They merely contain."[1] Prison is a place of "grindingly dull routine interrupted by occasional flashes of violence and brutality."[2] The idleness of prison life has been described as degrading, stultifying, and soul-deadening.[3] It's an environment that often fosters more bad behavior than it corrects, leaving prisoners ill-prepared for life on the outside and often unemployable.

Plaintiffs in this case are criminal offenders who, during their sentencings, were all given a choice: prison or a residential addiction-recovery program known as CAAIR. They all chose CAAIR. They chose CAAIR—a non-profit program—because it offered the chance to break the cycle of crime and addiction. They chose CAAIR because they wanted to develop job skills in a structured, drug-free environment. And, above all, they chose CAAIR because they knew that it, rather than prison, offered the best chance at avoiding a life of recidivism. No one forced Plaintiffs to go to CAAIR or to work at Simmons.[4] They all chose to do so. They could've left CAAIR and Simmons at any time. Some do. But they didn't. And that should be where this story ends.

Now, however, Plaintiffs ask this Court to rewrite the terms of their sentencing. Rather than having to choose between prison and CAAIR, they demand a third option: a paycheck. They seek to turn what would have been a one-way ticket to prison into a money-making venture. But the law doesn't support them. Plaintiffs were not enslaved. Nor were they employees. Rather, they were criminal offenders voluntarily participating in a work-based, addiction-recovery program. They didn't choose to enter CAAIR expecting to make money.  They chose CAAIR to avoid prison and recover from addiction. If Plaintiffs didn't like the form of work-based rehabilitation they received, they should've quit and gone to prison—not stuck around to sue the organizations and people who

---

[1] Robert Johnson, *Hard Time: Understanding and Reforming the Prison* 8 (3d ed. 2002).

[2] Stephen P. Garvey, *Freeing Prisoners' Labor*, 50 Stan. L. Rev. 339, 341 (1998).

[3] James V. Bennett, *Of Prisons and Justice* 322 (1961); Homer Cummings, *"They All Come Out"*, 67 Fed. Probation 9, 10 (2003).

[4] Defendants Simmons Foods, Inc. and Simmons Pet Foods, Inc. are referred to as "Simmons."

were trying to help them turn their lives around. And while that alternative may sound harsh, the brute fact remains that, without CAAIR and Simmons, prison was the Plaintiffs' self-determined destiny. Plaintiffs should not be allowed to sue CAAIR and Simmons for the choices they made.

Contrary to the Plaintiffs' conclusory allegations, Simmons did not participate in the CAAIR program to enrich itself or to exploit a vulnerable source of labor. It did so because the company's leadership genuinely believes that criminal offenders deserve a second chance, that prison is failing those who struggle with addiction, and that the CAAIR program actually works. Neither Simmons nor CAAIR profited from the Plaintiffs' labor. Simmons paid CAAIR market rate for the Plaintiffs' work, and CAAIR used that money to keep offering its desperately needed services. It's because of this arrangement that CAAIR can offer its services free of charge to indigent criminal offenders, like many of the Plaintiffs, who cannot afford other residential, addiction-recovery programs. If, as Plaintiffs contend, this arrangement amounts to "employment" or "involuntary servitude," vital programs like CAAIR will cease to exist. Criminal offenders won't be given the choice between CAAIR and prison. They'll just go to prison. Neither the wage nor the human-trafficking statutes cited by the Plaintiffs were meant to foreclose such alternative sentencing options. The Court should dismiss Plaintiffs' claims with prejudice.

## I. BACKGROUND

The following facts are derived from the Complaint and the Plaintiffs' state court criminal files. Because Plaintiffs were each sent to CAAIR as a consequence of their criminal violations, records of their criminal proceedings are relevant and may be considered at this stage without converting this motion to one for summary judgment. *See Hamilton v. Rogers Cty. Bd. of Cty. Comm'rs*, No. 14-CV-0754-CVE-TLW, 2015 WL 1528912, at *2 (N.D. Okla. Apr. 3, 2015).

CAAIR is a residential addiction-recovery program headquartered in Jay, Oklahoma. CAAIR often receives clients via the Oklahoma and Arkansas drug-court programs. CAAIR's rehabilitative model is primarily work-based; clients reside at the organization's facilities in Jay and perform work at various nearby companies, including Simmons. Simmons pays CAAIR directly for this labor,

2

and CAAIR uses that money to cover its operating expenses. Clients are not paid for the work they perform in the CAAIR program.

Plaintiffs in this case are criminal offenders who, during their criminal proceedings, were all given a choice: prison or CAAIR. They all chose CAAIR. No one forced Plaintiffs to choose CAAIR or to remain in the program. They were free to quit at any time. Only three of the forty-seven named Plaintiffs make any specific allegations against Simmons. They are Arthur Copeland, Brandon Spurgin, and Brad McGahey.

### Arthur Copeland

In August 2009, Arthur Copeland was charged with four counts of uttering a forged instrument in Grady County District Court. Ex. 1 at 2–3. He pleaded guilty to all four charges and was later sentenced to seven years' imprisonment with all but the first five years suspended. *Id.* at 4–19. In November 2014, while serving his suspended sentence, Copeland was again charged in Grady County District Court with one count of possession of methamphetamine and one count of possession of drug paraphernalia. *Id.* at 19–20. As a result, the District Attorney moved to revoke Copeland's 2009 suspended sentence. *Id.* at 21–24. That revocation motion recounted several other probation violations, including at least three prior instances of methamphetamine use. *Id.*

In January 2015, Copeland agreed to enter the Grady County Drug Court program pursuant to plea agreement in which he pleaded guilty both to the probation violations associated with his 2009 conviction and his newly-filed 2014 charges. *Id.* at 25–30.[5] Under that agreement, if Copeland successfully completed the program, all charges, including the application to revoke his suspended sentence, would be dismissed. If unsuccessful, the court would revoke his suspended sentence in full and concurrently sentence him to ten years' imprisonment for his 2014 charges. *Id.* at 28, 30.

---

[5] In Oklahoma, drug court is a diversionary sentencing program which operates much in the same way as a deferred sentence. *Looney v. State*, 49 P.3d 761, 763 (Okla. Crim. App. 2002). For more information on the Oklahoma drug court program *see* Okla. Stat. tit. 22, § 471, *et seq.,* and *Malipurathu v. Jones*, No. CIV-11-646-W, 2012 WL 3822197, at *5–7 (W.D. Okla. June 11, 2012).

During his first year in the drug court program, Copeland repeatedly violated program rules. *Id.* at 32–33. During that time, he was found to have used methamphetamine on at least ten separate occasions and, as a result, was sanctioned to a total of 32 days in jail. *Id.* He was also ordered to enter Healthy Lifestyles, an inpatient drug treatment program. He entered that program in July 2015 and successfully completed it one month later. *Id.* at 33. But that success was short lived. Within weeks of completing the program, Copeland was again found to have used methamphetamine and again was sanctioned with jail time. *Id.*

By December 2015, the State had enough and moved to terminate Copeland's participation in the drug court program. *Id.* at 31, 34. The violation report attached to the District Attorney's application summarized the State's reasoning:

> Arthur Joshua Copeland was accepted into the Grady County Drug Court program on 1-26-15 and since that time has made a pattern of violating multiple rules that were designed to aid his recovery. He is in arrears of $715.00 to the District Attorney for supervision fees and of $740.00 to the Grady County Court Clerk. He used methamphetamine on 4-20-15, 4-27-15, 5-24-15, 6-6-15, 6-19-15, 6-21-15, 6-22-15 and 10-29-15. He has been sanctioned to 32 days in jail and completion of an inpatient substance abuse treatment program for these violations of his court ordered rules and conditions. He has not been sanctioned for using methamphetamine on 11-30-15 and 12-9-15.
>
> Arthur Joshua Copeland has refused to accept the help that the Grady County Drug Court has offered him and he continues to violate the court ordered rules and conditions that he accepted upon his sentencing to drug court.

*Id.* at 33, 36.

In January 2016, the State withdrew its application to terminate after Copeland agreed to enter the CAAIR program. *Id.* at 37–40. While at CAAIR, Copeland remained under the supervision of the Grady County Drug Court. *Id.* at 43. During a drug check in August 2016, Copeland tested positive for methamphetamine and admitted to using opiates and alcohol. *Id.* As a result, the District Attorney again applied to terminate Copeland's participation in the drug court program. *Id.* at 41, 44. Copeland pleaded guilty to the violations alleged in the application and was sentenced

4

according to the terms of his plea agreement to ten years' imprisonment with all but the first five years suspended. *Id.* at 47–59. Copeland is currently serving that sentence.

### Brandon Spurgin

In February 2012, Brandon Spurgin was charged with four counts of uttering a forged instrument in Stephens County District Court. Ex. 2 at 2–3. He later pleaded guilty to all four charges and received a seven year deferred sentence. *Id.* at 4–17. In July 2013, Spurgin was again charged in Stephens County District Court with possession of methamphetamine. *Id.* at 18. As a result, the District Attorney moved to accelerate his 2012 deferred sentence. *Id.* at 19–20

In February 2014, Spurgin agreed to enter the Stephens County Drug Court program pursuant to plea agreement in which he pleaded guilty both to the probation violations associated with his 2012 deferred sentence as well as his newly-filed 2013 charges. *Id.* at 21–37. Under that agreement, if Spurgin successfully completed the program, all charges, including the application to accelerate his deferred sentence, would be dismissed. *Id.* at 24. If unsuccessful, the court would accelerate his deferred judgment and sentence him to a total consecutive term, on both his 2012 and 2013 cases, of 15 years' imprisonment. *Id.*

After two weeks in the drug court program, Spurgin failed a drug test and was incarcerated pending entry into a drug and alcohol recovery program. *Id.* at 38.  On March 20, 2014, Spurgin was released for entry into the CAAIR program. *Id.* He successfully completed the CAAIR program on September 21, 2014. All charges against Spurgin were later dismissed. *Id.* at 39–40.

### Brad McGahey

In September 2008, Brad McGahey was charged with one count of knowingly concealing stolen property in Marshall County District Court. Ex. 3 at 2. He pleaded guilty to the offense and received a five year deferred sentence. *Id.* at 3–15. In July 2009, the District Attorney moved to accelerate McGahey's deferred sentence based on a variety of probation violations. *Id.* at 16–17. The court later found that McGahey had violated the terms of his probation and set his case for sentencing. *Id.* at 18.

At sentencing, the court expressed concern about McGahey's flippant attitude toward probation, characterizing him as a "scofflaw," who "tries to blow off everything and … to find the easy way out of everything." *Id.* at 53. The court then gave McGahey a choice: prison or CAAIR. McGahey chose CAAIR:

> THE COURT: …. [W]hat I'm going to do in this case is I'm going to give him a choice. Either go to a treatment center where he would stay and work even [if] he doesn't have a drug and alcohol problem…. I have CAAIR specifically in mind where he would stay a minimum of nine months or I can send him to the penitentiary…. I'm going to give him that choice if you want to talk to him.

> MR. SWARTZ: I think I can make that answer for him, Your Honor. He'll go to the work center, Your Honor.

> THE COURT: Okay. It's a treatment center. It's CAAIR. It is a lot of work. They work six days a week and they go to AA meetings and things like that at night. Maybe that might change his view toward people and toward authority and dealing with other people….

> ….

> …. Now, Mr. McGahey, the CAAIR Treatment Center is a good place where they'll treat you fair and work you hard, but it will give you an opportunity to make some changes in your life okay.

> THE DEFENDANT: Yes, sir.

> THE COURT: ….There are people that will really care about you there, not saying that the Department of Corrections doesn't, but there's people that really care about you there.

> THE DEFENDANT: Will I get to see people?

> THE COURT: You will not have any overnight passes, but they will allow visitors pursuant to their rules. It's in Jay, Oklahoma. But don't try to play fast and loose with the rules or they'll kick you out and then you'll end up in the penitentiary if they kick you out.

*Id.* at 54, 57. The court went on to explain that if McGahey completed the CAAIR program he would receive a five-year suspended sentence; otherwise, he would be sentenced to five years' imprisonment. *Id.* at 55. McGahey failed to successfully complete the CAAIR program and was remanded to the Marshall County jail on or about June 30, 2010. *Id.* at 59.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When applying this standard, a court must accept as true all well-pleaded factual allegations and then ask whether those facts state a plausible claim for relief. *See id.* at 679. Allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" "are not entitled to the assumption of truth." *Id.* at 678–79.

## III. ARGUMENT AND AUTHORITY

**A.    Plaintiffs' involuntary servitude claims (Counts 13, 14, and 15) fail as a matter of law because Plaintiffs are all criminal offenders who chose to participate in the CAAIR program, and to perform work therein, as an alternative to incarceration.**

Plaintiffs' causes of action in Counts 13, 14, and 15 are all premised, either in whole or in part, on claims of involuntary servitude. Because Plaintiffs had a choice between prison and CAAIR and were free to leave at any time, their involuntary servitude claims fail as a matter of law.

Both the Thirteenth Amendment and § 1584 of the Trafficking Victims Protection Reauthorization Act ("TVPRA") prohibit "involuntary servitude." *See* U.S. Const. amend XIII, § 1; 18 U.S.C. § 1584. Involuntary servitude is defined as "the compulsion of services by the use or threatened use of physical or legal coercion." *United States v. Kozminski*, 487 U.S. 931, 948 (1988). Compulsion in this context is a high bar. When an individual "has a choice, even though it is a painful one, there is no involuntary servitude." *Irons v. U.S. Postal Serv.*, No. 10-CV-127-GKF-TLW, 2010 WL 1629007, at *1 (N.D. Okla. Apr. 20, 2010) (quoting *Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990)); *accord Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 459–60 (2d Cir. 1996). Relevant here, that means a person who is lawfully subject to incarceration or confinement cannot state a claim for involuntary servitude merely because he or she, when given the choice,

chose to work rather than remain in confinement. *See Watson*, 909 F.2d at 1552 (prisoners); *Brooks v. George County, Miss.*, 84 F.3d 157, 162–63 (5th Cir. 1996) (pretrial detainees).

Plaintiffs in this case are criminal offenders who, during their criminal proceedings, were all given a choice: prison or CAAIR. They all chose CAAIR. No one forced Plaintiffs to choose CAAIR or to stick with it. They were free to choose to leave at any time. Some do. But they didn't. Because Plaintiffs all had a choice and thus weren't unlawfully compelled to work, their involuntary servitude claims in Counts 13, 14, and 15 fail as a matter of law. Dismissal is required.

**B.      Plaintiffs' § 1983 claim (Count 15) fails as a matter of law because Simmons, a private actor, is not alleged to have taken any action "under color of state law."**

Plaintiffs at one point assert an involuntary-servitude claim under 42 U.S.C. § 1983. In addition to the reasons just stated, that claim fails as a matter of law because Plaintiffs do not (and cannot) allege that Simmons was acting under color of state law.

"[F]ederal district courts have consistently held that the Thirteenth Amendment itself does not provide a private right of action for damages." *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 997 (S.D. Ind. 2007). Thus, one asserting a claim under the amendment must prosecute that claim via a statutory remedy. *Doe v. Siddig*, 810 F. Supp. 2d 127, 135 (D.D.C. 2011). Here, Plaintiffs assert their Thirteenth Amendment claim under 42 U.S.C. § 1983. That statute provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. The color-of-state-law element "requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (cleaned up). Notably, this requirement still applies to involuntary-servitude claims under the statute even though the Thirteenth Amendment itself does not require any state action. *See Jendrzejczak v. Williams*, No. 6:13-CV-1239 GTS/TWD, 2014 WL 2533041, at *8–9 (N.D.N.Y. June 5, 2014).

Plaintiffs here do not allege *any* facts—none—suggesting that Simmons, a private actor, was acting under color of state law. Simmons is a family-owned manufacturer of poultry, pet, and feed

ingredient products. That's it. It is not controlled by the State nor does it carry out any traditional state functions. The fact that Plaintiffs may have performed work at Simmons while on a deferred sentence does not transform the company into a state actor. *Cf. McCall v. S. Cent. Steel, Inc.*, No. 2:13-CV-00241-CLS, 2015 WL 4550386, at *3 (N.D. Ala. July 28, 2015) (holding the mere allegation that a prisoner working at a private company through a work-release program is not enough to meet § 1983's color-of-state-law requirement); *English v. Univ. of Tulsa*, No. 14-CV-0284-CVE-FHM, 2015 WL 4623942, at *5 (N.D. Okla. Aug. 3, 2015) (discussing various tests for determining when actions of a private party occur under color of state law). Because Plaintiffs have not alleged any facts showing that Simmons took any action "under color of state law," dismissal is required.

### C.    Plaintiffs' forced-labor claim (Count 12) should be dismissed because the facts alleged conclusively show that Simmons did not unlawfully coerce anyone to work.

Plaintiffs next allege they were forced to work for Simmons under "threat of incarceration" in violation of § 1589 of the TVPRA. That claim fails because (1) it is not unlawful under the TVPRA to warn someone of the adverse but legitimate consequences of their actions, and (2) Plaintiffs do not allege either that Simmons threatened anyone with incarceration or that Simmons knew of such threats.

The TVPRA is a criminal statute with a civil remedy provision. *See* 18 U.S.C. §§ 1589–1595. The "forced labor" provision of the statute, at issue here, reads in relevant part as follows:

> **(a)** Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> > **(1)** by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> >
> > **(2)** by means of serious harm or threats of serious harm to that person or another person;
> >
> > **(3)** by means of the abuse or threatened abuse of law or legal process; or
> >
> > **(4)** by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished as provided under subsection (d).

9

18 U.S.C. § 1589(a). Section 1589 of the TVPRA was "intended to effectuate the constitutional prohibitions against slavery and involuntary servitude." *Muchira v. Al-Rawaf*, 850 F.3d 605, 625 (4th Cir. 2017). In particular, the statute was meant to broaden the concept of involuntary servitude to "reach cases in which persons are held in a condition of servitude through nonviolent coercion." *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011). To state a claim under the statute, one must show that the defendant (1) knowingly (2) provided or obtained a person's labor or services (3) though a prohibited form of coercion, namely, (i) "force, threats of force, physical restraint, or threats of physical restraint," (ii) "serious harm or threats of serious harm," (iii) "abuse or threatened abuse of law or legal process," or (iv) "any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a).

Plaintiffs allege "Defendants" unlawfully coerced their labor "under the threat of incarceration." This is nonsense. Plaintiffs chose to participate in the CAAIR program, and thus to work at Simmons, as an alternative to prison. If Plaintiffs didn't like the work-based recovery program, they could have quit at any time. That their failure to complete the program would've resulted in a lengthy prison term does not mean their labor was unlawfully coerced. The TVPRA prohibits only "improper threats or coercion," *not* "permissible warnings of adverse but legitimate consequences." *Muchira*, 850 F.3d at 624 (cleaned up) (quoting *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012)). Were the law otherwise, parents wouldn't be allowed to discipline their children for not doing chores. Employers would be subject to criminal sanction for threatening absent employees with termination. And any judge who has ever sentenced a criminal to a work-based recovery program or to community service as an alternative to prison would be guilty of a federal crime. Nothing in the text or history of the TVPRA suggests it was meant to have

such far-reaching effects. *Id.* at 620, 624.[6] Incarceration was a legitimate, court-imposed consequence of each Plaintiff's failure to complete the CAAIR program. Dismissal is required.

Alternatively, the Court should dismiss Plaintiffs' forced-labor claims for failing to allege any well-pleaded facts regarding Simmons's conduct or mental state. Even if the TVPRA does prohibit Simmons from warning Plaintiffs that their failure to complete the CAAIR program could result in incarceration (and again, it doesn't), Plaintiffs still haven't alleged any facts suggesting Simmons ever made or knew about any such warnings or "threats." They, for example, don't say who made these "threats," when these alleged "threats" were made, or what precisely was said. Rather, they just allege they were required to work "under constant threat of incarceration." That conveniently conclusory and vague phrase is Plaintiffs' way of trying to stick Defendants with liability for sentencing decisions made by immune state officials. The "constant threat" to which Plaintiffs refer arises from their criminal sentences. Judges and district attorneys made those "threats"—not Simmons—and each Plaintiff agreed to being under that constant threat by accepting the court's terms. At no point do the Plaintiffs identify any threatening statements made or known of by Simmons. The Court should dismiss Plaintiffs' forced-labor claims (Count 12) with prejudice.

## D. Plaintiffs' federal human-trafficking claim (Count 14) is predicated on their involuntary-servitude and forced-labor claims and should be dismissed for the same reasons.

Plaintiffs next allege they were unlawfully trafficked for labor in violation of § 1590 of the TVPRA. Section 1590 makes it unlawful for any person to knowingly recruit, harbor, transport, provide, or obtain by any means, any person for labor or services in violation of the TVPRA. *See* 18 U.S.C. § 1590(a). To state a claim under this section, a plaintiff must adequately allege a viable predicate offense under the TVPRA. *See id.*; *Fei Guan v. Bing Ran*, No. 1:17CV332 (JCC/IDD),

---

[6] *Cf. also United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014) (warning "we should not—without a clear expression of Congressional intent—transform a statute passed to implement the Thirteenth Amendment against slavery or involuntary servitude into one that generally makes it a crime for a person in loco parentis to require household chores"); *Roman v. Tyco Simplex Grinnell*, No. 8:16-CV-3449-T-33AEP, 2017 WL 3394295, at *5 (M.D. Fla. Aug. 8, 2017) ("Even if his supervisor directly threatened to fire Roman if Roman refused the job assignment, Roman has not explained why this went beyond a legitimate warning of a consequence of refusing to do his job.").

2017 WL 2881363, at *5 (E.D. Va. July 6, 2017); *Lagayan v. Odeh*, 199 F.Supp.3d 21, 29 (D.D.C. 2016). For the reasons previously stated, Plaintiffs have not done that here. The Court should dismiss Plaintiff's federal trafficking claim (Count 14) with prejudice.

**E.    Plaintiffs' state human-trafficking claim (Count 5) should be dismissed because the facts alleged conclusively show that Simmons did not unlawfully coerce their labor.**

Like their TVPRA claims, Plaintiffs' state human-trafficking claim fails because the facts alleged fail to show Simmons unlawfully coerced anyone to work. Oklahoma's statute prohibits obtaining a person's labor "through deception, force, fraud, threat or coercion." Okla. Stat. tit. 21, § 748(A)(5) & (B). Like the TVPRA, the statute defines unlawful "coercion," in relevant part, as compelling, forcing or intimidating a person to act by:

    **a.**    threats of harm or physical restraint against any person,

    **b.**    any act, scheme, plan, or pattern intended to cause a person to believe that performing, or failing to perform, an act would result in serious physical, financial, or emotional harm or distress to or physical restraint against any person, [or]

    **c.**    the abuse or threatened abuse of the law or legal process….

*Id.* § 748(A)(1). As with the TVPRA, there is no indication Oklahoma's statute was meant to outlaw "warnings of adverse but legitimate consequences." *Muchira*, 850 F.3d at 624 (quoting *Headley*, 687 F.3d at 1180). Accordingly, the Court should dismiss Plaintiffs' state claim for the same reasons as their TVPRA claims.

**F.    Plaintiffs' RICO claim (Count 4) fails because Plaintiffs have not (1) alleged a viable predicate offense or (2) pleaded their RICO claim with particularity.**

Plaintiffs next assert a RICO claim based on the alleged TVPRA violations discussed above. This claim fails as a matter of law because Plaintiffs have not (1) alleged an actionable TVPRA violation or (2) pleaded their RICO claim with particularity.

To state a civil RICO claim, a plaintiff "must allege the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453

F.3d 1244, 1269 (10th Cir. 2006). "Racketeering activity" is defined as "any 'act which is indict-able' under federal law." *See id.* 1261 (quoting 18 U.S.C. § 1961(1)(B)). Because civil RICO claims are subject to Rule 9(b)'s heightened pleading requirement, "plaintiffs must sufficiently allege *each* element of a RICO violation *and* its predicate acts of racketeering with particularity." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992) (emphasis added); *see also Transportation All. Bank, Inc. v. Arrow Trucking Co.*, 2011 WL 221863, at *6 (N.D. Okla. Jan. 21, 2011).

Plaintiffs fail to allege a plausible RICO claim against Simmons for at least two reasons. First, they don't allege the elements of a RICO claim with particularity, instead relying on a series of conclusory allegations. *See* Dkt. #16 at 13-14, ¶¶ 38-39. They, for example, don't identify who at Simmons was engaged in racketeering activity or when, where, or how that activity occurred. *See U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010) (noting Rule 9(b) requires a plaintiff "to plead the who, what, when, where and how of the alleged claim" (cleaned up)). Second, Plaintiffs don't allege any viable predicate acts of racketeering. The only alleged racketeering activity are Plaintiffs' TVPRA claims. As previously discussed, these claims are legally deficient. The Court should dismiss Plaintiffs' RICO claim with prejudice.

**G. Alternatively, Plaintiffs involuntary servitude, forced labor, human trafficking, and RICO claims (Counts 4, 5, 12, 13, 14, and 15) should be dismissed under Rule 19 for failure to join a necessary and indispensable party, namely, the State of Oklahoma.**

Finally, even if Simmons's grounds for dismissal were wrong (and they aren't), Plaintiffs' involuntary servitude, forced labor, human trafficking, and RICO claims must still be dismissed under Rule 19. That rule requires dismissal where (1) an absent party claims an interest in the subject matter of a case, *i.e.*, it is "necessary," (2) joinder of the absent party isn't feasible, and (3) in equity and good conscience, the action cannot proceed without the absent party, *i.e.*, the absentee is "indispensable." *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1277–85 (10th Cir. 2012).

Rule 19 requires dismissal because the State of Oklahoma is a necessary and indispensable party for those claims and its joinder is not feasible. *First*, the State is a necessary party under Rule 19(a)(1)(B) because it has several interests in this case, none of which it could adequately protect

if these claims were allowed to proceed in its absence. These interests include (1) not having its judgments and sentences collaterally attacked, (2) defending the decisions of its judges and district attorneys from claims that could potentially subject them to criminal and civil liability, and (3) defending its ability to sentence offenders to work-based rehabilitation programs as an alternative to prison. *Second*, joinder of the State is infeasible because it is immune from suit. *See id.* at 1282; U.S. Const. amend. XI. And *finally*, the State is indispensable because (1) a judgment in Plaintiffs' favor will prejudice the State's ability to protect its interests;[7] (2) such prejudice cannot be minimized by narrowing the relief requested; (3) a judgment rendered in the State's absence will likely result in further litigation against state officials and, thus, would be inadequate;[8] and (4) litigating this case in the State's absence effectively vitiates its sovereign immunity.[9]

## H.    Plaintiffs' FLSA claims (Counts 1 and 2) fail as a matter of law because they cannot show that they were "employees" of the Defendants during their time at CAAIR.

Plaintiffs next assert minimum wage and overtime claims under the FLSA. Because the facts alleged, and those subject to judicial notice, conclusively show that Plaintiffs weren't employees of the Defendants during their time at CAAIR, the Court should dismiss these claims with prejudice.

To prevail on an FLSA wage claim, a plaintiff must show that he or she was an "employee" of the defendant. *See* 29 U.S.C. §§ 206(a), 207(a). As courts often note, the FLSA's definition of this key term is a notoriously unhelpful. *See Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207 n.6 (11th Cir. 2015) (collecting cases). The Act defines an "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and the term "employ" as "suffer or permit to

---

[7] *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1291 (10th Cir. 2003) (noting that "the prejudice inquiry under Rule 19(b) is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest" (cleaned up)).

[8] *See id.* at 1293 (noting that a judgment is "inadequate" under Rule 19(b)(3) if it "could well lead to further litigation and possible inconsistent judgments").

[9] *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) ("A case may not proceed when a required-entity sovereign is not amenable to suit."); *Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) (same).

work," *id.* § 203(g). Because this definition is so vague, "courts have developed several tests to determine exactly which workers the FLSA covers." *Nicastro v. Clinton*, 882 F. Supp. 1128, 1130 (D.D.C. 1995). Some of these tests involve complex, multifactored inquires, such as those differentiating employees from independent contractors, *see Doty v. Elias*, 733 F.2d 720, 723 (10th Cir. 1984), while others are more clear cut, such as those distinguishing employees from prisoners or students, *see, e.g.*, *Franks v. Oklahoma State Indus.*, 7 F.3d 971, 972 (10th Cir. 1993).

But regardless of the test employed, the one irreducible requirement of *any* employment relationship under the FLSA is a bargained-for exchange of labor for compensation, in short, a "remunerative relationship." *See Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992). This basic requirement explains why volunteers, trainees, prisoners, and students generally aren't considered "employees" under the FLSA. And it is this requirement that dooms the Plaintiffs' FLSA claims. Plaintiffs did not enter the CAAIR program to earn a living. Rather, they are criminal offenders who entered the program for rehabilitation as an alternative to prison. They were never promised compensation, nor did they ever expect to receive any. For this reason alone, dismissal is required.

This argument proceeds in three steps. First, it outlines the basic Supreme Court case law conditioning employee-status on the existence of a remunerative relationship. It then discusses how courts have applied this requirement in the analogous situation of prison labor. And finally, it preemptively addresses some of the more obvious counterarguments Plaintiffs are likely to make.

### 1. An individual who performs work without promise or expectation of compensation but solely for personal purposes is not an employee under the FLSA.

The one requirement of *any* employment relationship under the FLSA is a bargained-for exchange of labor for compensation, commonly referred to as a "remunerative relationship." *See Vanskike*, 974 F.2d at 809. As the Supreme Court has long held, "[a]n individual who, 'without promise or expectation of compensation, but solely for his personal purposes …, work[s] in activities carried on by other persons either for their pleasure of profit,' is outside the sweep of the Act." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985) (quoting *Walling v.*

*Portland Terminal Co.*, 330 U.S. 148, 152 (1947)). This requirement is grounded in the purposes of the FLSA and, quite frankly, common sense. As Justice Black explained, writing for the Court in *Portland Terminal*, the FLSA "was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another."[10] *Id.* Rather, "[t]he Act's purpose as to wages was to insure that every person whose employment *contemplated compensation* should not be compelled to sell his services for less than the prescribed minimum wage." *Id.* (emphasis added).

"Compensation" under the FLSA is not a limited concept. "[A] compensation agreement may be 'implied' as well as 'express.'" *Alamo*, 471 U.S. at 301. Moreover, "the fact that … compensation [is provided] primarily in the form of benefits rather than cash is … immaterial." *Id.* Rather, what matters is that the putative employee "*expected* to receive" compensation, either in the form of cash or in-kind benefits, "in *exchange* for [his or her] services." *Id.* (emphasis added).

Two cases involving non-profit addiction recovery programs, each with facts similar to those here, help to underscore the importance of the Supreme Court's requirement that a putative employee must have entered the program expecting to be paid. The first is *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1995). Like the present case, *Williams* involved an FLSA claim brought by a participant in the Salvation Army's rehabilitative work-therapy program. As part of the program, "the Salvation Army offer[ed] beneficiaries room, board, work therapy, and spiritual and religious counseling." *Id.* at 1065. Beneficiaries signed an "Admittance Statement," disclaiming any employment relationship and were "required to apply for general assistance and food stamps and turn those benefits over to the Army to offset the cost of their room and board." *Id.* Robert Williams applied for and was admitted for treatment of alcohol addiction. He remained in the program about six months, "engag[ing] in work therapy on a full-time basis." *Id.* He spent three months restoring

---

[10] Justice Black was a principal architect of the FLSA during his time as a Senator. *See Laird v. Tatum*, 409 U.S. 824, 831 (1972). "Not only did he introduce one of the early versions of the Act, but as Chairman of the Senate Labor and Education Committee he presided over lengthy hearings on the subject of the bill and presented the favorable report of that Committee to the Senate." *Id.*

furniture, which the Salvation Army sold in its thrift stores, and three months sorting food, clothes, and donations. *Id.* Williams was ultimately dismissed from the program for drinking. *Id.*

Williams later sued the Salvation Army, alleging he was an "employee" under the FLSA and entitled to minimum wage and overtime pay. The Ninth Circuit disagreed. Relying on *Portland Terminal* and *Alamo*, the court concluded Williams was not an FLSA "employee" because he "had neither an express nor an implied agreement for compensation with the Salvation Army." *Id.* at 1067. In so holding, the court reasoned that Williams's "Admittance Statement" disclaimed any express agreement for compensation and that there was never an implied agreement because "Williams's relationship with the Salvation Army was solely rehabilitative." *Id.* "Williams's work therapy," the court concluded, "was not performed in exchange for in-kind benefits, but rather was performed to give him a sense of self-worth, accomplishment, and [to] enable[] him to overcome his drinking problems and reenter the economic market place." *Id.* In short, Williams did not receive room and board in exchange for work. "Rather, these benefits were given to Williams to enable him to pursue his rehabilitation and Williams was required to help offset their costs." *Id.*

The second case underscoring the importance of the requirement that a putative employee must have entered the program expecting to be paid is *Vaughn v. Phoenix House Programs of New York*, No. 14-CV-3918 RA, 2015 WL 5671902 (S.D.N.Y. Sept. 25, 2015). *Vaughn* involved a criminal offender who "agreed to participate in an in-patient drug treatment program," known as Phoenix House, "in lieu of a prison sentence." *Id.* at 1. Like CAAIR, the Phoenix House program was primarily work based. *See id.* Residents in the program were required to work 48 hours per week, all without pay. *Id.* After completing an 18-month stint in the program, Mark Vaughn sued Phoenix House, alleging he was an "employee" and entitled to minimum wage and overtime pay. *Id.* at 7–8. The Southern District of New York rejected the claim. *Id.* Granting Phoenix House's motion to dismiss, the court concluded Vaughn was not an "employee" because he "did not agree to participate in the … program for the purpose of receiving monetary compensation," but rather did so "to resolve the criminal charges against him." *Id.* at 8; *see also Vaughn v. Phoenix House Programs*

17

*of New York*, No. 14-CV-3918 (RA), 2016 WL 4223748, at *4 (S.D.N.Y. Aug. 9, 2016) (rejecting Vaughn's attempt to later replead his FLSA claim). Because the facts alleged conclusively showed that Vaughn wasn't selling his labor, the court held that his FLSA claims failed as a matter of law.

Here, *Portland Terminal*, *Alamo*, and their progeny doom the Plaintiffs' FLSA claims. There is not a single fact alleged in the Complaint—not one—suggesting Plaintiffs either enrolled in the CAAIR program or performed work while in the program based on any express or implied agreement for pay. Rather, as Plaintiffs acknowledge (and as their court records confirm), they all chose to enter the CAAIR program as an alternative to prison and solely for rehabilitative reasons. Like the recovery program in *Williams*, CAAIR's model is based on a combination of work therapy and spiritual and religious counseling. And while Plaintiffs would certainly like to transform this case into a trial over the efficacy of those methods (which they malign as meaningless and illegitimate), the fact remains that Plaintiffs worked in the program "for their own advantage," "without promise or expectation of compensation." *Portland Terminal*, 330 U.S. at 152; *see also Vaughn*, 2016 WL 4223748 at *4 ("Even if, as Vaughn alleges, his work at Phoenix House was not [a part] of his treatment plan or his treatment goals, he [still] was not an employee under the FLSA because the principal benefit of Plaintiff's participation in the program was to him and [he] did not agree to participate in the … program for the purpose of receiving monetary compensation." (cleaned up)). In short, Plaintiffs didn't enroll in CAAIR to earn a living. Dismissal is required.

### 2. *Plaintiffs, like prisoners, are criminal offenders performing work for rehabilitative reasons as a consequence of their criminal violations. For the same reason prisoners generally aren't considered "employees," Plaintiffs shouldn't be either.*

Plaintiffs' inability to plead or prove an employment relationship becomes only more obvious when their case is compared to the analogous situation of prison labor. The rule that employment under the FLSA requires a "remunerative relationship" finds its clearest application in the prison labor context. Although prisoners are often required (or allowed) to perform work during their time in prison, such labor almost never gives rise to an employment relationship. This is because prison

labor often "does not stem from any … bargained-for exchange of labor for consideration." *Vanskike*, 974 F.2d at 809.[11] Prisoners "do not have the right freely to sell their labor." *Henthorn*, 29 F.3d at 686 (quoting *Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir. 1993) (en banc)). "When [prisoners] are assigned work within the prison for purposes of training and rehabilitation, they have not contracted with the government to become its employees. Rather, they are working as part of their sentences of incarceration." *Vanskike*, 974 F.2d at 810; *see also supra* note 11. And while that relationship "may contain some elements commonly present in an employment relationship, … [t]he primary purpose of [the] association is incarceration, not employment." *Franks*, 7 F.3d at 972 (quoting *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)). Simply put, "[p]eople are not imprisoned for the purpose of enabling them to earn a living." *Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005).

Based on this reasoning, courts (including the Tenth Circuit) flatly reject the idea that Congress intended to provide minimum wage protection to prison inmates. Prisoners who bring FLSA cases often argue they should be considered "employees" because (1) the FLSA's definition of an "employee"—any person suffered or permitted to work—is exceedingly broad, and (2) although the statute exempts certain workers from coverage, it does not specifically exclude prison laborers. Every circuit to address this argument has rejected it.[12] It has been rebuffed as "whimsical,"[13] "outlandish,"[14] and "singularly unconvincing."[15] Judge Trott's discussion of the argument in *Gilbreath*, which the Tenth Circuit has endorsed, provides the standard reasoning:

---

[11] *Accord Morgan v. MacDonald*, 41 F.3d 1291, 1293 (9th Cir. 1994); *McMaster v. State of Minn.*, 30 F.3d 976, 980 (8th Cir. 1994); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 686 (D.C. Cir. 1994); *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993).

[12] *Harker*, 990 F.2d at 133; *Bennett*, 395 F.3d at 410; *McMaster*, 30 F.3d at 979–80; *Franks*, 7 F.3d at 972.

[13] *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991).

[14] *Bennett*, 395 F.3d at 410.

[15] *Franks*, 7 F.3d at 972.

> [I]t is singularly unconvincing that the statutory scheme's *failure* to include "prisoners" on an extensive list of workers who are excepted expressly from the FLSA coverage provides somehow a rationale to bring them within the statute's mandate. It is equally plausible, indeed more so, that in view of the manifest purpose of Congress in enacting the FLSA, it did not cross any member's mind—even for a moment—that felons serving hard time in prison and working in the process would be covered by this economic protection.

*Franks*, 7 F.3d at 972–973 (quoting *Gilbreath* 931 F.2d at 1325); *accord Bennett*, 395 F.3d at 410. This understanding of the FLSA's purpose and scope is bolstered by its history. As described both by President Roosevelt and the Act's sponsor, the FLSA was intended "to protect the fundamental interests of *free* labor." *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 516 (1950) (emphasis added).

Here, for the same reason prisoners aren't "employees," Plaintiffs aren't either. Like prisoners, Plaintiffs are criminal offenders performing work for rehabilitative reasons without any express or implied agreement for compensation. Plaintiffs all pleaded guilty to crimes. As a result, they were all given the option of either going to prison or completing the rehabilitation program at CAAIR. They all chose CAAIR. They could've chosen to leave at any time. But they didn't. Plaintiffs did not enter the CAAIR program to earn a living or expecting to be paid. They entered it for rehabilitation and as an alternative to prison. There is no allegation Plaintiffs were ever promised wages or had any expectation of receiving any. And while their relationship with the Defendants "may contain some elements commonly present in an employment relationship," the fact still remains that "[t]he primary purpose of [the] association [was rehabilitation], not employment." *Franks*, 7 F.3d at 972 (quoting *Williams*, 926 F.2d at 997). Dismissal is required.

### 3. *Plaintiffs' likely counterarguments lack merit and should be rejected.*

Plaintiffs will likely offer a variety of counterarguments in an attempt to salvage their defective FLSA claims. Some of those counterarguments are so obvious (and so obviously wrong) that it's worth disposing of them here. Three stand out in particular.

*First*, Plaintiffs will likely argue the existence of an employment relationship is an inherently fact-bound inquiry and, thus, should not be decided on a motion to dismiss. This is wrong. Although employee-status under the FLSA can be (and often is) a highly fact-intensive inquiry, that

is not invariably the case. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 294 (7th Cir. 2016). Certain work relationships are so far removed from the ordinary circumstances of traditional, free-market employment as to fall outside the FLSA as a matter of law. *See, e.g.*, *Franks*, 7 F.3d at 972–973 (prisoners); *Berger*, 843 F.3d at 291–94 (student athletes); *Villarreal v. Woodham*, 113 F.3d 202, 207 (11th Cir. 1997) (pretrial detainees); *Vaughn*, 2015 WL 5671902 at \* 7–8 (criminals participating in residential addiction recovery programs). This most often occurs where, as here, the facts alleged conclusively show there is no remunerative relationship between the worker and putative employer. *See, e.g.*, *Vanskike*, 974 F.2d at 809; *Henthorn*, 29 F.3d at 686–87; *Franks*, 7 F.3d at 972; *Vaughn*, 2016 WL 4223748, at \*4. Here, this basic requirement is fatal to Plaintiffs' FLSA claims. No amount of discovery will change the fact that Plaintiffs are criminals who chose to perform work solely for rehabilitative reasons—as an alternative to prison—without any express or implied agreement for compensation. For this reason alone, dismissal is required.

*Second*, Plaintiffs will likely argue they aren't prisoners and, thus, the prison cases cited above are distinguishable and irrelevant. This is a red herring. Although Plaintiffs aren't prisoners, they are like prisoners in all relevant respects when it comes to the FLSA. Like prisoners, Plaintiffs are criminal offenders who, as a consequence of their crimes, are performing work for rehabilitative reasons without any promise or expectation of pay. Courts regularly apply FLSA cases dealing with prison labor to analogous custodial and/or rehabilitative work relationships, including cases involving pretrial detainees,[16] alien detainees,[17] civilly committed persons,[18] and—relevant here—criminal offenders who elect to participate in residential drug treatment as an alternative to prison.[19] This Court should do the same here.

---

[16] *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015); *Villarreal*, 113 F.3d at 207.

[17] *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990).

[18] *Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017); *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008);  *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992).

[19] *Vaughn*, 2015 WL 5671902 at \* 7–8; *Vaughn*, 2016 WL 4223748, at \*4.

*Finally*, Plaintiffs may argue that even if they are like prisoners in some respects, they still shouldn't be denied employee-status under the FLSA because they, unlike most prisoners, performed work for a private company in a noncustodial setting. These facts change nothing. Regardless of where or for whom they worked, Plaintiffs chose to work solely for rehabilitative reasons without any promise or expectation of pay. Because Plaintiffs can't show they entered CAAIR or worked at Simmons with the intent to sell their labor, their FLSA claims fail as a matter of law.

The D.C. Circuit's decision in *Henthorn* is instructive on this point. *See* 29 F.3d at 686–87. *Henthorn* involved a prisoner who performed janitorial and grounds-keeping work at a nearby naval air station. The Bureau of Prisons paid him $ 0.12 an hour for his work. The Navy paid him nothing. The prisoner later sued both agencies, arguing he should be considered an "employee" under the FLSA and, thus, entitled to minimum wage and overtime pay. Each side pointed to a different facet of the parties' relationship as dispositive. For his part, the prisoner argued he should be considered an employee under the FLSA because he worked off prison grounds. The government, meanwhile, argued the prisoner wasn't an "employee" because he worked for public, rather than a private, employer. The D.C. Circuit rejected both distinctions, holding instead that a prisoner asserting an FLSA claim must show he freely contracted with a non-prison employer to sell his labor:

> Neither the inside/outside nor the public/private distinction alone provides an adequate answer to which prisoner work situations should be covered by the FLSA.
>
> ….
>
> … [W]e hold that a prerequisite to finding that an inmate has "employee" status under the FLSA is that the prisoner has freely contracted with a non-prison employer to sell his labor. Under this analysis, where an inmate participates in a non-obligatory work release program in which he is paid by an outside employer, he may be able to state a claim under the FLSA for compensation at the minimum wage. However, where the inmate's labor is compelled and/or where any compensation he receives is set and paid by his custodian, the prisoner is barred from asserting a claim under the FLSA, since he is definitely not an "employee." At the pleading stage, this means that a federal prisoner seeking to state a claim under the FLSA must allege that his work was performed without legal compulsion and that his compensation was set and paid by a source other than the Bureau of Prisons itself.

*Id.* at 685–87. *Henthorn* makes clear that, regardless of where they work or who they work for, prisoners cannot assert claims under the FLSA absent some showing of a bargained-for exchange of labor for compensation.[20] Plaintiffs cannot make that showing here.[21] Dismissal is required.

In sum, there is no refuge for Plaintiffs' FLSA claims. Plaintiffs are criminal offenders who enrolled in CAAIR and performed work at Simmons for their own benefit without any promise or expectation of compensation. For the reasons previously stated, these facts fail to give rise to an employment relationship as a matter of law. No amount of discovery or repleading can change the Plaintiffs' situation. The Court should dismiss the Plaintiffs' FLSA claims with prejudice.

I.      **Plaintiffs' state wage claims (Counts 6, 7, 8, 9, and 11) fail for the same reason as their FLSA claims: Plaintiffs cannot show they were "employees" of the Defendants.**

Plaintiffs also assert state minimum-wage and overtime claims under Arkansas, Missouri, and Oklahoma law. Like the FLSA, these state wage statutes all condition their protections on the existence of an employment relationship. *See* Ark. Code Ann. §§ 11-4-210–211; Mo. Ann. Stat. §§ 290.502, 290.502; Okla. Stat. tit. 40, § 197.2. They all use the FLSA's definition of "employee."[22]

---

[20] The Tenth Circuit's prior decisions suggest it would follow *Henthorn*. *See Franks*, 7 F.3d at 972 (holding that prisoners who perform work in prison are not FLSA "employees" because the "primary purpose of their association is incarceration, not employment"); *Phillip v. Mondragon*, 42 F.3d 1406 (10th Cir. 1994) (unpublished) (holding that a prisoner performing work for a private company on prison grounds was not an FLSA employee); *see also Shaffer v. Direct Media, Inc.*, No. CIV-10-774-D, 2012 WL 681718, at *2–3 (W.D. Okla. Feb. 2, 2012) (holding that a prisoner performing work for a private telemarking company wasn't an FLSA employee).

[21] Plaintiffs may point to *Watson*, 909 F.2d at 1551, and *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), as evidence that a prisoner's work outside the prison for a private employer necessarily gives rise to an employment relationship. That conclusion doesn't follow, however, because, as noted in *Henthorn*, both *Watson* and *Carter* involved prisoners who had a remunerative relationship with their putative employers. *See Watson*, 909 F.2d at 1551–52, 1555–56; *Carter*, 735 F.2d at 14; *see also Henthorn*, 29 F.3d at 686 (nothing that *Watson* and *Carter* involved prisoner who were "voluntarily selling [their] labor in exchange for a wage").

[22] *Compare* 29 U.S.C. § 203(d)–(e), (g), *with* Ark. Code Ann. § 11-4-203, *and* Mo. Ann. Stat. § 290.500(3), (4), *and* Okla. Stat. tit. 40, §§ 165.1, 197.4(c)–(e).

Moreover, they were all adopted well after the Supreme Court's decision in *Portland Terminal*.[23] Thus, under well settled rules of statutory construction, these statutes should be interpreted in accordance with their federal counterpart, including the federal case law discussed above. *See Carolene Prod. Co. v. United States*, 323 U.S. 18, 26 (1944) (noting the "general rule that adoption of the wording of a statute from another legislative jurisdiction, carries with it the previous judicial interpretations of the wording").[24]

Because Plaintiffs cannot show they were employees of Defendants under the FLSA, their state wage claims fail for the same reason. Dismissal is required.

**J.     Plaintiffs' unjust enrichment claim (Count 10) fails because (1) Plaintiffs didn't have any reasonable expectation of compensation for their labor, and (2) Simmons has already paid for the Plaintiffs' labor.**

Finally, Plaintiffs assert an unjust enrichment claim under Missouri law. The Court should dismiss this claim because Plaintiffs cannot show Simmons accepted and retained the benefit of Plaintiffs' labor under unjust circumstances.

To prevail on "an unjust enrichment claim, a plaintiff must show, (1) it conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances that are inequitable or unjust." *AIG Agency, Inc. v. Missouri Gen. Ins. Agency, Inc.*, 474 S.W.3d 222, 228 (Mo. Ct. App. 2015). Regarding the third element, to establish that a benefit was unjustly retained, a plaintiff must show (1) that he or she "had a

---

[23] Minimum Wage Act of the State of Arkansas, 1968 Ark. Acts. 25; Act of May 2, 1990, 1990 Mo. Legis. Serv. H.B. 1881; Minimum Wage Act, ch. 426 1965 Okla. Sess. Laws 836; Act of June 6, 1955, 1955 Okla. Sess. Laws. 240.

[24] *See also Carter v. Primary Home Care of Hot Springs, Inc.*, No. 6:14-CV-6092, 2015 WL 11120563, at *2, *6 (W.D. Ark. May 14, 2015) (noting that the Arkansas Minimum Wage Act "is generally interpreted in the same manner as the FLSA"); *Tolentino v. Starwood Hotels & Resorts Worldwide Inc.*, 437 S.W.3d 754, 757 n.3 (Mo. 2014) (noting that Missouri Minimum Wage Law is interpreted in accordance with the FLSA); *Winters v. Bd. of Cty. Commissioners of Muskogee Cty.*, No. CIV-11-441-JHP, 2015 WL 501930, at *5 (E.D. Okla. Feb. 5, 2015) (noting that "Oklahoma legislature has adopted the federal standards for minimum wages"); 1983 OK AG 126, ¶ 6 (looking to the FLSA when interpreting the term "employee" under the Oklahoma Protection of Labor Act).

reasonable expectation of compensation for the benefit conferred," *Karp v. Gap, Inc.*, 2014 WL 4924229, at *2 (D. Mass. Sept. 29, 2014), and (2) the defendant did not pay for the benefit, *see Lee Deering Elec. Co. v. Pernikoff Const. Co.*, 247 S.W.3d 577, 582–83 (Mo. Ct. App. 2008).

Plaintiffs here cannot show that Simmons was unjustly enriched. First, for reasons already covered, Plaintiffs cannot show they had any reasonable expectation of compensation for their labor. Plaintiffs allege no facts suggesting they expected compensation, much less that an expectation would be reasonable. Second, even if Plaintiffs could show a reasonable expectation of compensation (and they can't), they still can't recover against Simmons because Simmons has already paid for their labor. Simmons pays CAAIR for the work performed. That CAAIR uses the money to cover the cost of recovery services provided to Plaintiffs, rather than paying the Plaintiffs, does not mean Simmons was unjustly enriched. *See id.* (holding a subcontractor can't maintain an unjust enrichment claim against a landowner if the landowner has already paid the general contractor for the benefit conferred). For these reasons, the Court should dismiss Plaintiffs' unjust enrichment claim against Simmons with prejudice.

## CONCLUSION

For the foregoing reasons, Simmons moves the Court to dismiss Plaintiffs' Second Amended Complaint with prejudice.  Simmons further requests that the Court grant Simmons such other relief as the Court deems just and proper, including but not limited to reasonable attorney fees and costs incurred in being forced to defend against claims which are clearly shown to be without a good faith basis in fact or law by virtue of readily accessible and publicly available records.

Respectfully submitted,

/s/Christopher S. Thrutchley

Christopher S. Thrutchley, OBA No. 15859
John D. Russell, OBA No. 13343
Philip D. Hixon, OBA No. 19121
Justin A. Lollman, OBA No. 32051
**GABLEGOTWALS**
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone: 918.595.4800
Facsimile: 918.595.4990
*cthrutchley@gablelaw.com*
*jrussell@gablelaw.com*
*phixon@gablelaw.com*
*jlollman@gablelaw.com*

- and -

Amy M. Stipe, OBA No. 18361
**GABLEGOTWALS**
One Leadership Square, Suite 1500
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: 405.235.5500
Facsimile: 405.235.2875
*sdunagan@gablelaw.com*
*astipe@gablelaw.com*

**COUNSEL FOR DEFENDANTS
SIMMONS FOODS, INC. AND
SIMMONS PET FOOD INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of the Electronic Filing to the following ECF registrants:

Daniel E. Smolen – *danielsmolen@ssrok.com*
David A. Warta – *davidwarta@ssrok.com*
Brent A. Robinson – *bar@asmlawyers.com*
Carey A. James – *caj@asmlawyers.com*
Hallie Von Rock – *hvr@asmlawyers.com*
Randall B. Aiman-Smith – *ras@asmlawyers.com*
Reed WL Marcy – *rwlm@asmlawyers.com*

**Counsel for Plaintiffs**

Denelda Richardson – *drichardsoncourts@rhodesokla.com*
Michael P. Robertson – *mrobertson@rhodesokla.com*
Randall Edwin Long – *rlong@rhodesokla.com*

**Counsel for Defendants,**
**C.A.A.I.R., Janet Wilkerson,**
**Don Wilkerson, and Jim Lovell**

/s/ Christopher S. Thrutchley