# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

ARTHUR COPELAND, individually and
on behalf of all others similarly situated,
BRANDON SPURGIN, individually and on
behalf of all others similarly situated, and
BRAD MCGAHEY, individually and
on behalf of all others similarly situated,
*et al.*,

      Plaintiffs,

v.

C.A.A.I.R., INC.,
SIMMONS FOODS, INC.,
SIMMONS PET FOOD, INC.,
JANET WILKERSON,
DON WILKERSON,
LOUISE DUNHAM,
JIM LOVELL, and
DOES1-10, inclusive,

      Defendants.

Case No.  17-CV-00564-TCK-JFJ

## PLAINTIFFS' OPPOSITION TO DEFENDANTS SIMMONS FOODS, INC.'S AND SIMMONS PET FOOD, INC.'S MOTION TO DISMISS

**SMOLEN, SMOLEN & ROYTMAN, PLLC**
Daniel E. Smolen, OBA #19943
David A. Warta, OBA #20361
701 S. Cincinnati Ave.
Tulsa, OK 74119
Phone (918) 585-2667
Fax (918) 585-2669

**ACLU OF OKLAHOMA FOUNDATION**
Brady R. Henderson, OBA #21212
Amy N. Gioletti, OBA #30566
P.O. Box 1626
Oklahoma City, OK 73101
Phone (405) 525-3831
Fax (405) 524-2296

**AIMAN-SMITH & MARCY**
Carey A. James, CA Bar No. 269270*
Randall B. Aiman-Smith, CA Bar No.124599*
Reed W.L. Marcy, CA Bar No. 191531*
Hallie Von Rock, CA Bar No. 233152*
Brent A. Robinson, CA Bar No. 289373*
7677 Oakport St. Suite 1150
Oakland, CA 94621
Phone (510) 817-2711
Fax (510) 562-6830
*Admitted pro hac vice

**Attorneys for Plaintiffs, and all others similarly situated**

# TABLE OF CONTENTS

I.      Introduction .................................................................................................1

II.     Legal Standard ..............................................................................................1

   A.   The Legal Standard for Motions to Dismiss Under FRCP (12)(b)(6) ..............1

   B.   Simmons Fails to Observe the Legal Standard Controlling
        its Motion to Dismiss .................................................................................2

III.    Summary of Facts .........................................................................................3

IV.     Legal Analysis ............................................................................................. 6

   A.   Plaintiffs State a Claim Under the Fair Labor Standards Act ..........................6

   1.   Plaintiffs are "Employees" within the Meaning of the FLSA ..........................6

   2.   The Non-Binding Cases Relied Upon by Simmons
        Are Unavailing.............................................................................................7

   3.   The Defendants Understand CAAIR's Residents to be Employees .................9

   4.   Simmons's Attempt to Analogize Plaintiffs to Prisoners is Unavailing..........10

   B.   Plaintiffs State Claims for State Law Wage Violations...................................12

   C.   Plaintiffs State a Claim for Involuntary Servitude..........................................12

   D.   Plaintiffs State a Claim for Forced Labor .....................................................14

   1.   Simmons Obtains Forced Labor in Violation of 18 U.S.C. § 1589.................16

   E.   Plaintiffs State a Claim for Trafficking with Respect to
        Involuntary Servitude and Forced Labor .......................................................18

   F.   Plaintiffs State a Claim for State Law Human Trafficking..............................18

   G.   Plaintiffs State a Claim for Violation of the RICO Act ..................................19

   H.   Plaintiffs State a Claim for Unjust Enrichment .............................................21

I.    Dismissal for Non-Joinder of the State of Oklahoma is Not Warranted ................................................................................21

1.    The State of Oklahoma is Not an Indispensable Party ....................................22

    a.    Oklahoma's Joinder is Not Required Under FRCP 19 .............................22

    b.    Even if Joinder were Required, Dismissal Would Not be Warranted Because Oklahoma is Not Indispensable Party ......................24

J.    Plaintiffs Do Not Challenge the Dismissal of Their § 1983 Claim ................25

V.    Conclusion ................................................................................25

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................2

*Axis Specialty Ins. Co. v. Brickman Group LTD, LLC*,
2010 U.S.Dist.LEXIS 7969, *5 n.1 (E.D. Pa. 2010) ........................................23

*Barnett v. YMCA*, 1999 U.S.App.LEXIS 3412, *1-9 (8th Cir. 1999)..............................11

*Bell alt. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................2

*Camayo v. John Peroulis & Sons Sheep, Inc.*, 2012 U.S.Dist.LEXIS
136100, *15-16 n.6 (D. Colo. 2012)..................................................................16

*Carter v. Dutchess Comm. College*, 735 F.2d 8 (2nd Cir. 1984)......................................11

*ConnTech Dev. Co. v. Univ. of Connecticut Educ. Props., Inc.*,
102 F.3d 677 (2nd Cir. 1996)............................................................................23

*Cont'l Cas. Co. v. Am. Home Assurance Co.*,
2008 U.S.Dist.LEXIS 30106, *10-11 (S.D.N.Y. 2008)......................................22

*Danneskjold v. Hausrath*, 82 F.3d 37 (2nd Cir. 1996) ...................................11

*Delaware v. Bender*, 370 F.Supp. 1193 (D. Del. 1974)....................................25

*Echon v. Sacket*, 2017 U.S.Dist.LEXIS 152992, *42-43 (D. Colo. 2017) ......................16

*EEOC v. JBS USA, LLC*, 794 F.Supp.2d 1188 (D. Colo. 2011)......................................24

*EquiMed, Inc. v. Genstler*, 170 F.R.D. 175 (D. Kan. 1996) ...........................24

*Everbank Fin. Corp. v. Blair*, 2013 U.S.Dist.LEXIS,
*1 and n. 1 (N.D. Okla. 2013)............................................................................4

*Faith Temple Church v. Town of Brighton*,
2005 U.S.Dist.LEXIS 8065 (W.D.N.Y 2005) ...................................................23

*Godoy v. Rest. Opp. Ctr. of N.Y., Inc.*, 615 F.Supp.2d 186 (S.D.N.Y. 2009)......................9

*Hale v. Arizona*, 967 F.2d 1356, 1359 (9th Cir. 1992)`....................................................11

*Hamilton v. Rogers County Bd. Of County Comm'rs,*
2015 U.S.Dist.LEXIS 44104, *5 (N.D. Okla. 2015) ...........................................................3

*Henthorn v. Dep't of Navy*, 29 F.3d 682 (D.C. Cir. 1994) .................................................12

*Jones v. WD-4 Partnership, et al.*
(Cherokee County, Case No. CJ-2011-238) ........................................................................4

*Kuhn Constr. Co. v. Coastal Consultants, Inc.,*
723 F.Supp.2d 676 (D. Del 2010)......................................................................................22

*Luis v. Argent Mortg. Co., LLC*, 2013 U.S.Dist.LEXIS 117003,
*1 and n. 1 (N.D. Okla. 2013)...............................................................................................4

*Moffet v. Haliburton Energy Servs., Inc.*, 291 F.3d 1227 (10th Cir. 2002) ........................2

*Mojsilovic v. Okla. Ex rel. Bd. Of Regents*, 2015 U.S.Dist.LEXIS
44109, *11 (W.D. Okla. 2015) .................................................................................16,17,18

*Mojsilovic v. Okla. Ex rel. Bd. Of Regents*, 2015 U.S.Dist.LEXIS
44112, *8-9 (W.D. Okla. 2015) ..........................................................................................15

*Moretti v. Hertz Corp.*, 2016 U.S.Dist.LEXIS 40932, *11 (D. Del. 2016) ......................23

*Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017)....................................................16,17

*Northern Arapaho Tribe v. Harnsberger*, 697 F.3d 1272 (10th Cir. 2012)......................22

*Nunag-Tanedo v. Baton Rouge Par. Sch. Bd.*, 790 F.Supp.2d 1134
(C.D. Cal. 2011)..................................................................................................................18

*Oklahoma v. Tyson Foods, Inc., et al.*, United States District Court
for the Northern District of Oklahoma, Case No. 4:05-cv-00329-TCK-SAJ .....................3

*Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir. 1988)................................................7

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007)..........................2

*Rishell v. Jane Phillips Episcopal Mem.*, 94 F.3d 1407 (10th Cir. 1996)..........................24

*Sac & Fox Nation v. Norton*, 240 F.3d 1250 (10th Cir. 2001) ......................................23,24

*Sonnett v. Lankford*, 2016 U.S.Dist.LEXIS 191376, *6 (D. Wyo. 2016)....................23,24

*Sylvia v. Wisler*, 875 F.3d 1307 (10th Cir. 2017) ................................................................2

*St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.d2d 1169 (10th Cir. 1979) ......................3,4

*Sholer v. State ex rel. Dep't of Pub. Safety*, 149 P.3d 1040 (2006) ....................................5

*Tan v. Hogan*, 453 F.3d 1244 (10th Cir. 2006).................................................................19

*Tenn. v. Muscoda*, 321 U.S. 590 (1944) ..............................................................................7

*Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985)........ passim

*Vanskike v. Peters*, 974 F.2d 806 (7th Cir. 1992) .............................................................11

*Varlen Corp. v. Nat'l Union Fire Ins. Co.*, 2011 U.S.Dist.LEXIS,
*13-15 (N.D. Ill. 2011) ......................................................................................................23

*Vaughn v. Phoenix House Programs of New York, Inc.,*
2015 U.S.Dist.LEXIS 129275 (S.D.N.Y. 2015)...........................................................8,9,10

*Watson v. Graves*, 909 F.2d 1549 (5th Cir. 1990) .........................................................1,11

*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947)................................................6,7,8

*Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996) ......................................................7,8

*United States v. Alzanki*, 54 F.3d 994 (1st Cir. 1995).......................................................13

*United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011) .....................................................15

*United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008)..........................................13,15

*United States v. Kozminski*, 487 U.S. 931 (1988) ................................................................13

*United States v. Paris*, 2007 U.S.Dist.LEXIS 78418, *37-38 (D. Conn 2007) ................13

*United States v. Payment Processing Ctr., LLC,*
2006 U.S.Dist.LEXIS 75715, *13-14 (E.D. Pa. 2006) ........................................................23

*United States v. Reynolds*, 235 U.S. 133 (1914) ................................................................13

*United States v. Shackney*, 333 F.2d 475 (2nd Cir. 1964) ................................................13

## **Statutes**

18 U.S.C. §§ 1761-62 ..........................................................................................................12

18 U.S.C. § 1584 ..........................................................................................................13,15,18

18 U.S.C. § 1589 ...................................................................................................... passim

18 U.S.C. § 1590 ..................................................................................................................18

29 U.S.C. § 202(a)(1) and (b) ..........................................................................................11,12

29 U.S.C. §§ 203(e)(1), 203(s), 206(a), and 207(a) ..........................................................6

21 O.S. § 748 ........................................................................................................................19

21 O.S. § 742(A)(1), (5)(A) ................................................................................................19

43A Okl. St. § 3-415(A) ........................................................................................................3

# I. INTRODUCTION

The plaintiffs in this action are more than 50 men who were forced by private parties to live at a work camp and provide labor, under constant threat of incarceration, for which they received only substandard food and squalid housing. Some decades ago, the Fifth Circuit Court of Appeals considered the plight of inmates in a parish jail who provided labor to outside interests for approximately $20 a day. Reflecting on the situation, the Court stated:

> Up to now this court believed, apparently naively, that in the last decade of the twentieth century scenarios such as the one now before us no longer occurred in the county or parish jails of the rural south except in the imaginations of movie or television script writers. The egregious nature of this misanthropic situation in the instant case, however, disabuses of that incorrect misconception.

*Watson v. Graves*, 909 F.2d 1549, 1550-51 (5th Cir. 1990). Until recently, the people of Oklahoma clung to the same, apparently naive, belief entertained by the Fifth Circuit nearly 30 years ago. That changed when the plight of the residents of CAAIR, plaintiffs in the present action, was finally made public last year. With the present motion, two of the private corporations who benefitted from years of forced labor performed by vulnerable young men, Simmons Foods, Inc. and Simmons Pet Food, Inc. (together, "Simmons") seek to dismiss the claims of Arthur Copeland, Brandon Spurgin, and Brad McGahey (together, "Plaintiffs"). For the reasons set forth below, Plaintiffs respectfully submit that Simmons' motion must be denied.

# II. LEGAL STANDARD

## A. The Legal Standard for Motions to Dismiss Under FRCP 12(b)(6)

Simmons moves to dismiss for failure to state a claim pursuant to FRCP 12(b)(6). To succeed, Simmons must demonstrate that Plaintiffs failed to comply with FRCP 8(a)(1), which requires only that Plaintiffs' complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, Plaintiffs' complaint need

not set forth "detailed factual allegations," nor "a prima facie case for each element" of its claims. *Bell alt. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Sylvia v.* Wisler, 875 F.3d 1307, 1313, 1326 (10th Cir. 2017). Instead, the complaint need only plead facts sufficient to state a claim that is facially plausible. *Id*. at 1313. In considering a motion to dismiss under 12(b)(6), courts assume the truth of a plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); *Moffet v. Haliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).

**B.    Simmons Fails to Observe the Legal Standard Controlling its Motion to Dismiss**

A substantial portion of Simmons' motion relies on disputing the factual allegations in Plaintiffs' complaint and exculpatory arguments based on extrinsic "facts" not subject to judicial notice.[1] Such arguments, even if they were supported by evidence, are inappropriate for consideration at this stage of the litigation. Again, in considering a 12(b)(6) motion, "a court must accept as true all well-plead factual allegations" contained in Plaintiffs' complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2209). Simmons disregards this well-established principle, and goes further by premising its arguments on naked representations with no evidentiary foundation. The first two pages of Simmons' brief – which contain numerous factual contentions regarding Plaintiffs' motivations, CAAIR's operations, the efficacy and profitability of the CAAIR program, and other matters – are composed almost entirely of such bald assertions. Going further still, Simmons makes repeated misstatements about the factual contentions contained in Plaintiffs' complaint.[2]

---

[1] *See, e.g.,* Def. Brief at 10 ("Plaintiffs allege 'Defendants' unlawfully coerced their labor 'under the threat of incarceration.' This is nonsense").

[2] *Cf.*, for example, Def. Brief at 11 ("Plaintiffs still haven't alleged any facts suggesting Simmons ever made or knew about … warnings or 'threats' [of incarceration]….at no point do

In short, Simmons premises its motion on the facts as Simmons wishes they were, not as set forth in Plaintiffs' complaint. Its motion cannot succeed on this basis.

## III.   SUMMARY OF FACTS

CAAIR holds itself out as a long-term residential drug and alcohol recovery program. Doc. 42 ¶ 31. By law, only facilities certified by the Oklahoma Department of Mental Health and Substance Abuse Services may provide alcohol and drug treatment and rehabilitation services. *Id.* ¶ 32; 43A Okl. St. § 3-415(A). CAAIR, however, has never met the requirements for such certification, and provides virtually nothing in the way of legitimate treatment services for its residents, whom it calls "clients." Doc. 42 ¶¶ 32, 34; *see also*, Doc. 48 at 2 (CAAIR's Answer to Plaintiffs' Second Amended Complaint) (referring to residents as "clients").

In fact, drug and alcohol treatment was never the intended purpose of CAAIR. Doc. 42 ¶ 33. CAAIR was formed by Janet Wilkerson and Rodney Dunnam – both executives at Peterson Farms, Inc. ("Peterson Farms"), a chicken processing company acquired by Simmons in 2008 – and by Louise Dunnam, a human resources professional. *Id.*; *see also*, **Ex. A** at 93:18-25, 97:22-98:11, 105:8-12 (identifying Janet Wilkerson as vice president of human resources at Peterson Farms and Rodney Dunnam as having had "several capacities" at the company).[3] None of these individuals had any background whatsoever in drug and alcohol treatment. Doc. 42 ¶ 33.

---

the Plaintiffs identify any threating statements made or known by Simmons") with Doc. 42 ¶ 11 ("During his time working in the [Simmons] processing plants, if McGahey got hurt or worked too slowly, his bosses threatened him with prison") and ¶ 35 ("C.A.A.I.R. staff, as well as staff at Simmons … facilities, threaten to send the putative class members to prison if their work is deemed unsatisfactory or if they complain that they cannot work due to injuries").

[3] This deposition was filed in *Oklahoma v. Tyson Foods, Inc., et al.*, United States District Court for the Northern District of Oklahoma, Case No. 4:05-cv-00329-TCK-SAJ. Accordingly, it is subject to judicial notice without converting Simmons' motion to a motion for summary judgment. *See*, *Hamilton v. Rogers County Bd. Of County Comm'rs*, 2015 U.S.Dist.LEXIS 44104, *5 (N.D. Okla. 2015) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169,

In connection with the formation of CAAIR, the founders hired a consultant named Raymond Jones, at an agreed rate of $250,000 a year, to perform various duties. **Ex. B** at Exhibit A, § 5 (Business Consulting Agreement); **Ex. C** at p. 2 ¶¶ 2, 4 and pp. 4-5 ¶¶ 1, 3.[4] The founders later described this agreed payment as an "investment" giving rise to "a reasonable expectation of a return." **Ex. C** at p. 5 ¶ 3.

The president of Peterson Farms, Blake Evans, directly participated in the negotiations which eventually resulted in the creation of CAAIR. **Ex. E** at p.1; **Ex. F** (identifying Blake Evans as Peterson Farm's registered agent and president).[5] Decatur State Bank, which was owned by Peterson Holding Company, whose chairman was Blake Evans, loaned $974,000 to the founders of CAAIR. **Ex. G**; **Ex. H** (identifying Peterson Holding Company as the owner of Decatur State Bank and Blake Evans as the chairman of Peterson Holding Company).[6] Approximately a year later, Peterson Farms was sold to Simmons. Doc. No. ¶ 33. Mr. Evans eventually decided not to participate in CAAIR for "personal reasons." **Ex. E** at p. 1.

---

1172 (10th Cir. 1979)) ("the Court may take judicial notice of 'facts which are a part of its public records'"). Ms. Wilkerson was present at this deposition. CAJ Dec., **Ex. A** at 3:17-18.

[4] *Jones v. WD-4 Partnership, et al.* was an action filed in Oklahoma state court (Cherokee County, Case No. CJ-2011-238), which included as defendants several of the defendants in the present action, including CAAIR, Janet Wilkerson, Donald Wilkerson, and Louise Dunnam. The Court in the present action may take judicial notice of, *inter alia*, the pleadings in the *Jones* action. *See, Luis v. Argent Mortg. Co., LLC*, 2013 U.S.Dist.LEXIS 117003, *1 and n. 1 (N.D. Okla. 2013); *Everbank Fin. Corp. v. Blair*, 2013 U.S.Dist.LEXIS, *1 and n. 1 (N.D. Okla. 2013) (citing *id.*).

[5] Blake Evans' status as the president of Peterson Farms is subject to judicial notice pursuant to FRE 201(b)(2) because it is a matter of public record and can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

[6] The referenced facts supported by Exhibits G and H are subject to judicial notice pursuant to FRE 201(b)(2) because they are contained in public records and can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Created by poultry executives and HR professionals with no alcohol or drug treatment background, CAAIR's purpose was and is to provide income to itself and its founders while providing cheap labor to private corporations. Doc. 42 ¶ 33.

Pursuant to his contract with the founders of CAAIR, Mr. Jones was to "leverage" his putative personal influence and "valuable contacts and relationships" with Oklahoma district attorneys, drug court judges, and drug court administrators to open "doors of opportunity" for "the benefit of" the founders. **Ex. C** at pp. 4-6, ¶¶ 1, 3, 5, 10-11. Plaintiffs contend this was an unlawful lobbying contract used to abuse legal process for the founders' own ends.[7]

Pursuant to his contract with the founders, Mr. Jones was also charged with "securing an employment contract for [CAAIR] clients from Simmons Foods." **Ex. B** at Exhibit A, § 1. Subsequently, CAAIR obtained a "contract for the employment of clients with Simmons Foods." **Ex. D** at Exhibit 1, Interrogatory No. 4; *see also,* **Ex. D** at Exhibit 1, Interrogatory No. 3 (referencing "an employment contract for clients from Simmons Foods").

CAAIR locates and controls vulnerable persons, many of whom desperately need meaningful treatment, and compels them to work full-time for Simmons (and other corporations with whom CAAIR contracts). Doc. 42 ¶ 33. Simmons submits cash payment directly to CAAIR for the discounted work performed by CAAIR's residents. *Id*. ¶¶ 4, 34.

By misrepresenting itself as a legitimate treatment facility, CAAIR receives many of its residents by way of Oklahoma's drug courts. *Id*. ¶¶ 8-10, 34. Only after their arrival at CAAIR do these residents discover that CAAIR is not a legitimate rehabilitation program, and that they

---

[7] *See, Sholer v. State ex rel. Dep't of Pub. Safety*, 149 P.3d 1040, 1045 (2006) ("lobbying contracts which contemplate the use of personal influence and solicitation, rather than appealing to the merits of the issue, are often viewed as contrary to public policy and void"). There is no evidence that this contract was ever disclosed to the targeted officials.

will be provided no meaningful treatment.  *Id.* ¶¶ 8-10, 34.  CAAIR keeps its residents in squalid living conditions, provides them with substandard food, limits their contact with the outside world, denies them adequate medical care, and compels their labor by regular threats of imprisonment emanating from both CAAIR and Simmons staff.  *Id.* ¶¶ 4, 8-9, 11-12, 14, 34-35.

## IV.     LEGAL ANALYSIS

### A.     Plaintiffs State a Claim Under the Fair Labor Standards Act

#### 1.     Plaintiffs are "Employees" within the Meaning of the FLSA

Plaintiffs' status as "employees" under the FLSA is established by binding precedent. *See*, *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985).  In *Alamo Foundation*, the United States Supreme Court, on facts nearly identical to those here, held that the residents of a putative religious foundation that derived its income from work performed by its residents at commercial businesses, including hog farms, were employees within the meaning of the FLSA.  *Id.* at 292-303.  The foundation's residents – most of whom were former "drug addicts, derelicts, or criminals" – received no cash salaries for their labor.  *Id.* at 292.

The Court observed that two criteria were necessary to bring the work performed by these individuals within the scope of the FLSA: (1) the foundation's status as an enterprise engaged in commerce, and (2) the residents' status as "employees" within the meaning of the Act.  *Id.* at 295.[8]  Finding the first condition satisfied, the Court turned to the question of the residents' status as employees.  The Court first observed, citing *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947), that individuals who perform labor without the expectation of compensation are not employees within the meaning of the FLSA.  *Alamo Foundation*, 471 U.S. at 295.  The Court then found, however, that unlike the laborers in *Portland Terminal*, the foundation's residents

---

[8] The requirements are established and defined by, *inter alia*, 29 U.S.C. §§ 203(e)(1), 203(s), 206(a), and 207(a).

were dependent on the foundation, for long periods of time, to provide them with food, shelter, clothing, transportation, and medical benefits.  *Id*. at 293, 301.  The expected receipt of these in-kind benefits, the Court held, established the residents' status as employees under the FLSA.  *Id*. at 301-02.  This was true despite the fact that all testifying residents of the foundation considered themselves volunteers, because FLSA rights cannot be waived.  *Id*. at 293, 301-02.

Similarly, CAAIR's residents receive no cash salaries, reside at the facility for extended periods of time, and are dependent on CAAIR for food and shelter.  Doc. No. ¶¶ 4, 31, 34; *see also*, Doc. 48 at 1 (asserting that CAAIR is a "long term (12-month) recovery center").  This firmly establishes them as employees under *Alamo Foundation*.  471 U.S. at 293, 301.[9]

## 2.    The Non-Binding Cases Relied Upon by Simmons Are Unavailing

Simmons relies on two non-binding cases that are easily distinguishable.  In the first, *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), the Ninth Circuit determined that a resident at the Salvation Army who performed work without compensation was not an employee pursuant to the FLSA.  *Williams* was determined on summary judgment with the benefit of a developed factual record.  *Id*. at 1065.  In determining that the plaintiff was not an employee, the court observed that, under *Portland Terminal*, a laborer is not an employee where his "work serves only his advantage," and the putative employer receives "no immediate advantage" from his work.  *Id*. at 1066 (quoting *Portland Terminal*, 330 U.S. at 1052-53).  Based on the factual record before it, including testimony from the plaintiff to the effect that he worked for

---

[9] Plaintiffs' status as employees is further buttressed by the general principle that the FLSA's definition of "employee" is broadly construed.  *See*, *Patel v. Quality Inn South*, 846 F.2d 700, 702 (11th Cir. 1988); *see also, Tenn. v. Muscoda*, 321 U.S. 590, 597 (1944) (The FLSA is "remedial and humanitarian in purpose" and "must not be interpreted or applied in a narrow, grudging manner").

therapeutic purposes, the court then determined that the plaintiff's "relationship with Salvation Army was solely rehabilitative" and that he was therefore not an employee. *Id*. at 1067.

This is the polar opposite of the situation here, where Plaintiffs were provided no meaningful rehabilitative services, worked solely for the benefit of the defendants, did not work for their own therapeutic interests, and provided labor to a private institution created by poultry industry executives for the sole purpose of exploiting labor for the profit of its founders and corporate partners. Doc. 42 ¶¶ 4, 8-10, 31-34. Simply put, while *Williams* involved a situation that was "solely rehabilitative" and from which the defendant received "no immediate advantage," the present situation is solely exploitative with *all* advantage inuring to the defendants.

The second non-binding case relied upon by Simmons is *Vaughn v. Phoenix House Programs of New York, Inc.*, 2015 U.S.Dist.LEXIS 129275 (S.D.N.Y. 2015). Before discussing the facts of *Phoenix House*, Plaintiffs observe that the FLSA portion of that decision has been vacated. 2018 U.S.App.LEXIS 987, *5-6 (2nd Cir. 2018). In any case, however, *Phoenix House* is inapposite. As an initial matter, the district court in *Phoenix House* simply ignored *Alamo Foundation* and applied a standard clearly foreclosed by the Supreme Court's decision. The *Phoenix House* court observed that the plaintiff in that action did not enter the program "for the purpose of receiving monetary compensation." 2015 U.S.Dist.LEXIS 129275, *23. This is not the standard for establishing an expectation of compensation under the FLSA. As *Alamo House* states: "Under *Portland Terminal*, a compensation agreement may be 'implied' as well as 'express,' and the fact the compensation was received primarily in the form of benefits rather than in cash is in this context immaterial. These benefits are … wages in another form." *Alamo House*, 471 U.S. at 301 (internal citation omitted).

Beyond this, the *Phoenix House* court based its decision on the fact that the plaintiff worked exclusively at *Phoenix House*, that his labor therefore did not "compete with private employers," and therefore did not fall within the scope of the FLSA. *Phoenix House*, 2015 U.S.Dist.LEXIS 129275, *24. This is not the case here, where Plaintiffs worked for Simmons – a private company in direct competition with other commercial enterprises. The *Phoenix House* court also found the FLSA inapplicable because the plaintiff in that case "did not produce goods sold in commerce, but instead provided services for the treatment facility. *Id.* at *25.[10] The court also determined that the FLSA did not apply because "Plaintiff's work assignments were designed to train and rehabilitate" (*id.* at *24) and because plaintiff received the "principle benefit" of his labor. *Id.* at *23. Here, in contrast, the Plaintiffs' labor is not designed to "train and rehabilitate" but rather solely to generate profits for the defendants. Doc. No. 42 ¶¶ 4, 33-34. In contrast to the Phoenix House program, moreover, CAAIR was designed from the beginning solely for this purpose. *Id.*; *see also*, all facts set forth in Section III above.

### 3. The Defendants Understand CAAIR's Residents to be Employees

CAAIR and its founders explicitly describe their residents' relationship with Simmons as one of "employment." **Ex. B** at Exhibit A, §1 (referencing "an *employment* contract for [CAAIR] clients from Simmons Foods") (emphasis added); **Ex. D** at Exhibit 1, Interrogatory No. 4 (referencing "contract for the *employment* of clients with Simmons Foods") (emphasis added); **Ex. D** at Exhibit 1, Interrogatory No. 3 (referencing "an *employment* contract for clients from Simmons Foods") (emphasis added). At least two of CAAIR's founders are former HR

---

[10] For the public policy rationale underlying this interstate commerce inquiry, *see, Godoy v. Rest. Opp. Ctr. of N.Y., Inc.*, 615 F.Supp.2d 186, 191-92 (S.D.N.Y. 2009) (quoting *Alamo Foundation*, 471 U.S. at 296) ("The United States Supreme Court 'has consistently construed the FLSA liberally to apply the furthest reaches consistent with congressional direction, recognizing that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standard of decency'").

professionals who certainly understand the distinction between "employment" and other types of labor relationships. **Ex. A** at 93:18-25 (identifying Janet Wilkerson as vice president of human resources at Peterson Farms); Doc. No. ¶ 33. It is therefore reasonable to infer that Simmons, prior to this suit, understood CAAIR's residents to be its employees, and that its present position is disingenuous at best.

4.      **Simmons's Attempt to Analogize Plaintiffs to Prisoners is Unavailing**

Lastly, Simmons's attempt to analogize Plaintiffs to prisoners is misguided. First, CAAIR's residents are *not* prisoners, but rather persons who are supposed to be provided legitimate treatment in a *non-penal* institution. Simmons has provided no authority other than *Phoenix House* – an out-of-circuit, now-vacated district court decision with distinguishable facts – to support the proposition that the Prison analogy should be extended as Simmons requests. Second, Simmons' argument relies on its assertion that CAAIR's residents perform work "for rehabilitative reasons." Def. Brief at 21; *see also*, *id.* at 20 (stating that Plaintiffs perform "work for rehabilitative reasons"), 22 ("Plaintiffs chose to work solely for rehabilitative reasons"). This assertion contests facts established by Plaintiffs' complaint, and is impermissible for purposes of a motion to dismiss. Third, Simmons' argument relies on the repeated assertion that Plaintiffs perform work "without any express of implied agreement for compensation." *Id.* at 20; *see also*, *id.* at 21 (no "promise or expectation of pay"), 22 (same). Supreme Court precedent, however, establishes that where, as here, laborers are totally dependent on a putative employer for extended periods, they necessarily expect to receive food and shelter, and an implied compensation agreement exists. *Alamo Foundation*, 471 U.S. 290, 293-94, 301.

Fourth, and perhaps most fundamentally, Simmons's argument fails because it focuses exclusively on the wrong kind of prison labor. A person's status as a prisoner does not foreclose

employee status under the FLSA. *Carter v. Dutchess Comm. College*, 735 F.2d 8, 15 (2nd Cir. 1984); *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992). Rather, "there are two distinctly different 'inmate' situations that engender prisoners' claims of FLSA coverage" – those involving work performed inside the prison, and those involving "inmates working outside of the prison under the supervision of private contractors." *Watson*, 909 F.2d at 1553-1554. Prisoners performing work in the latter scenario have been held to be employees. *See, id.* at 1554-56; *Barnett v. YMCA*, 1999 U.S.App.LEXIS 3412, *1-9 (8th Cir. 1999); *see also*, *Hale v. Arizona*, 967 F.2d 1356, 1359, 1366-69 (9th Cir. 1992) (applying FLSA to prisoners who made products for sale outside the prison). Here, the cases cited by Simmons, with the exception of a single district court case discussed below, concern prisoners working in, and for, prisons. Moreover, one of the primary inquiries relevant to the FLSA's coverage of prisoners is whether they make products entering the stream of commerce for private consumption. Where they do, one of the principle purposes of the FLSA – the prevention of unfair competition – is implicated, thus militating in favor of FLSA coverage. *See*, 29 U.S.C. § 202(a)(1) and (b); *Hale*, 967 F.2d at 1363; *Danneskjold v. Hausrath*, 82 F.3d 37, 44 (2nd Cir. 1996). Here, CAAIR residents working at Simmons produce goods for interstate commerce. Doc. 42 ¶¶ 4, 38. Accordingly, even accepting Simmons' prison analogy, the FLSA must be applied to CAAIR's residents. This is particularly true because CAAIR is not, in fact, a prison, and the goods its residents produce for Simmons are not regulated by the Ashurst-Sumners Act, 18 U.S.C. §§ 1761-62, thus allowing Simmons dual unfair advantages over its competitors.

Finally, the sole case cited by Simmons concerning work performed outside of prison, *Henthorn v. Dep't of Navy*, 29 F.3d 682 (D.C. Cir. 1994), cannot apply to the facts of this case because it would create an exception to the FLSA's coverage that would vitiate the entire

purpose of the Act. *Henthorn* provides that a prisoner is not an employee within the meaning of the FLSA if his "labor is compelled" and he does not "freely contract…" with an outside employer. *Id*. at 686. The FLSA is premised upon the congressional finding that the presence, "in industries engaged in commerce," of labor conditions "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," causes the further spread of such labor conditions and "constitutes an unfair method of competition in commerce." 29 U.S.C. § 202(a). The policy of the United States embodied in the Act is to "correct" and "eliminate" these conditions. 29 U.S.C. § 202(b). Application of *Henthorn* to the present case would allow private corporations who, like CAAIR and Simmons, have gained advantage by fraud and abuse of legal process, to escape FLSA coverage and undermine the purposes of Congress simply by gaining sufficient control over laborers to deprive them of all choice, strip them of the freedom of contract, and compel their labor. Nothing in the Act countenances such a result.

**B.     Plaintiffs State Claims for State Law Wage Violations**

Simmons next asserts that Plaintiffs fail to state a claim for state wage law violations because the relevant state laws utilize the FLSA's definition of "employee." However, as explained in the preceding section, Plaintiffs are employees within the meaning of the FLSA, and their state law wage claims are thus properly stated.

**C.     Plaintiffs State a Claim for Involuntary Servitude**

Plaintiffs properly state a claim for involuntary servitude in violation of 18 U.S.C. § 1584. The Supreme Court has defined involuntary servitude as "the "compulsion of services by the use or threatened use of physical or legal coercion." *United States v. Kozminski*, 487 U.S.

931, 948 (1988). Involuntary servitude also "encompasses those cases in which the defendant holds the victim in servitude by placing the victim in fear" of such coercion. *Id*. at 952.

Here, CAAIR and Simmons staff regularly threaten CAAIR residents that they will be sent to prison if they do not perform work for Simmons. Doc. No. ¶¶ 8-9, 11-12, 35, 133. This is the very essence of legal coercion, and labor performed in response to such threats is involuntary servitude. *See*, *United States v. Shackney*, 333 F.2d 475, 486 (2nd Cir. 1964) (§ 1584 "can be satisfied by a credible threat of imprisonment"); *United States v. Alzanki*, 54 F.3d 994, 1004 (1st Cir. 1995) (quoting *id*.) (involuntary servitude present where the victim "reasonably believed she was left with no alternative to continued servitude that was not the equivalent of 'imprisonment or worse'").[11]

Simmons argues that a resident's initial entry into CAAIR is a "choice." Even if true, any such choice – made *before* arrival at CAAIR – is irrelevant to Plaintiffs' claims. The relevant inquiry is not whether Plaintiffs "chose" to enter CAAIR, but whether the alternative they ultimately faced – work at Simmons or go to prison – was a legitimate one. It was not.

Once a resident arrives at CAAIR, he discovers that he is in a labor camp with no rehabilitative purpose. Doc. 42 ¶¶ 8-11, 31-33. Any legitimate choice has vanished. CAAIR conceals its origins and misrepresents itself as a treatment facility to gain total control. *Id.* ¶¶ 8-

---

[11] *See also*, *United States v. Kaufman*, 546 F.3d 1242, 1248, 1259-65 (10th Cir. 2008) (resident of putative treatment center for the mentally ill was subjected to involuntary servitude where, *inter alia*, he overheard another resident threatened with internment in a mental hospital and plausibly feared similar placement "if he did not comply with the various directives [of defendants], including the demand for farm work"); *Kozminski*, 487 U.S. at 943 (quoting *United States v. Reynolds*, 235 U.S. 133, 146, 150 (1914)) ("compulsion of services by constant fear of imprisonment under the criminal laws violated rights intended to be secured by the Thirteenth Amendment") (internal punctuation omitted); *United States v. Paris*, 2007 U.S.Dist.LEXIS 78418, *37-38 (D. Conn 2007) (legal coercion present where defendant threatened to report victim "for outstanding arrest warrants or bond violations if she did not continue working for him").

10, 34, 133. No meaningful rehabilitative services are provided. *Id*. ¶¶ 8-10, 33-34, 133. Avoidance of prison is contingent on performance of labor for Simmons. *Id*. ¶¶ 8-11, 35. This was never the bargain offered to Plaintiffs by any court. Imposing this illegitimate alternative on Plaintiffs is legal coercion in its purest sense.

Beyond this, the stark realties at CAAIR clearly demonstrate that residents are not free to leave without the reasonable expectation of legal coercion. CAAIR was created by the poultry industry, for the purpose of private profit, and obtains residents by concealing its origins and purposes, and by misrepresenting itself as a legitimate treatment facility. Doc. 42. ¶¶ 4, 8-11, 33-34, 133. CAAIR houses residents in unsanitary conditions, provides them with substandard food, regularly threatens them with prison, demands that they perform grueling work even when suffering from severe injuries, denies them the treatment they were promised, is manifestly unconcerned with their welfare, and maintains almost total control over every aspect of their lives, including access to the outside world and contact with loved ones. *Id*. ¶¶ 4, 8-9, 11-12, 14, 34-35. For individuals living in such conditions, it is objectively reasonable to believe that any attempt to leave, even for legitimate purposes, will result in a negative report to the court placing them in immediate, unjustified danger of incarceration.

**D.      Plaintiffs State a Claim for Forced Labor**

Cause of Action 12 properly states a claim for forced labor in violation of 18 U.S.C. § 1589. Section 1589 prohibits labor obtained by, *inter alia*: (1) threats of physical restraint, (2) serious harm or threats of serious harm, (3) abuse or threatened abuse of law or legal process, or (4) any scheme, plan, or pattern intended to cause the victim to believe that, by failing to perform labor, he will suffer serious harm or physical restraint. 18 U.S.C. § 1589(a).

In enacting § 1589, Congress sought to expand the "limited definition of coercion under § 1584," and to "combat severe forms of worker exploitation that do not rise to the level of involuntary servitude." *Kaufman*, 546 F.3d at 1261 (internal punctuation omitted). The statute reflects Congress' recognition that "the means used by modern-day traffickers are increasingly subtle," and is therefore intended to "reach cases in which persons are held in a condition of servitude through nonviolent coercion." *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) (internal punctuation omitted).

As used in § 1589, "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2). "Abuse or threatened abuse of law or legal process" means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed." 18 U.S.C. 1589 (c)(1). The same conduct can constitute several types of forced labor proscribed by § 1589. For example, labor compelled by threat of deportation is obtained by threat of serious harm and by abuse of legal process. *Mojsilovic v. Okla. Ex rel. Bd. Of Regents*, 2015 U.S.Dist.LEXIS 44112, *8-9 (W.D. Okla. 2015).

The question of whether a defendant's conduct is sufficient to compel involuntary labor must be viewed in light of the surrounding circumstances and is therefore "particularly difficult on the sparse record of a motion to dismiss." *Mojsilovic v. Okla. Ex rel. Bd. Of Regents*, 2015 U.S.Dist.LEXIS 44109, *11 (W.D. Okla. 2015) (quoting *Camayo v. John Peroulis & Sons Sheep, Inc.*, 2012 U.S.Dist.LEXIS 136100, *15-16 n.6 (D. Colo. 2012)).

The classic hallmarks of forced labor are well-recognized: (1) "squalid or otherwise intolerable living conditions," (2) "extreme isolation (from family and the outside world)," (3) "threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation)," and (4) "exploitation of the victim's lack of education and familiarity with the English language." *Echon v. Sacket*, 2017 U.S.Dist.LEXIS 152992, *42-43 (D. Colo. 2017) (quoting *Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017)). All of these conditions, with the exception of linguistic incapacity, are present here. Doc. 42 ¶ 4 (food and living conditions), ¶¶ 8-9 (isolation, threats), ¶¶ 11-12 (isolation, threats, lack of medical care), ¶ 14 (lack of medical care), ¶ 35 (inadequate medical care, threats). Nevertheless, Simmons contends that Plaintiffs fail to state a claim for forced labor. Once again, Simmons is incorrect.

### 1. Simmons Obtains Forced Labor in Violation of 18 U.S.C. § 1589

Pursuant to a jointly devised and executed scheme, CAAIR and Simmons use regular threats of incarceration to compel the labor of vulnerable young men who they control by virtue of misrepresentations to courts, the public, and CAAIR's residents themselves. *Id.* ¶¶ 4, 8-11, 33-35, 38-39. By engaging in this conduct, Simmons obtains forced labor by threats of physical restrain, abuse and threatened abuse of law and legal process, threats of serious harm, and a scheme intended to compel labor by fear of serious harm or physical restraint. *See*, 18 U.S.C. § 1589(a).

Simmons does not deny that incarceration can constitute physical restraint, "serious harm,"[12] or abuse of legal process within the meaning of § 1589. Instead, Simmons maintains

---

[12] In addition to incarceration clearly qualifying as "any harm, whether physical or nonphysical" as contemplated by § 1589, prison also entails financial harm (because an incarcerated individual cannot earn a living or support his or her family) and reputational harm (as evidenced, for example, by the reduced employment prospects and potential loss of standing in the community

that its conduct does not violate § 1589 because, according to Simmons, Plaintiffs do not allege that Simmons made threats of incarceration or was aware of such threats, and because threats to CAAIR residents are merely warnings of "adverse but legitimate consequences."

First, the contention that Plaintiffs do not allege threats of incarceration by Simmons is simply incorrect. Plaintiffs' complaint expressly states that "C.A.A.I.R. staff, as well as staff at Simmons Foods and Simmons Pet Food facilities, threaten to send the putative class members to prison if their work is deemed unsatisfactory or if they complain that they cannot work due to injuries," and that while plaintiff McGahey worked for Simmons, "his boss threatened him with prison." Doc. 42 ¶¶ 11, 35. Aside from these explicit references to Simmons, Plaintiffs' complaint contains several references to threats of incarceration without specific reference to the speaker. *Id*. ¶¶ 8-10. These references are more than sufficient to give rise to a reasonable inference that these statements emanated from all defendants, including Simmons. Such references are more than sufficient to satisfy the pleading required by FRCP 8(a). As Plaintiffs' complaint makes clear, constant threats are a regular feature of daily life for CAAIR's residents.

Second, Simmons' reliance on *Muchira* for the proposition that "permissible warnings of adverse but legitimate consequences" do not violate § 1589 is misplaced. Here, prison is threatened solely for failure to provide work for Simmons. Doc. 42 ¶¶ 8-11, 35. Even if CAAIR were a legitimate treatment facility, these threats would violate § 1589. *See, Mojsilovic*, 2015 U.S.Dist.LEXIS 44109, *12 ("although an employer may legitimately advise an employee that termination may result in a change in visa status, *utilizing that fact to force labor is not permitted by the law*") (emphasis added).

---

faced by ex-prisoners), both of which fall within the definition of "serious harm" contained in § 1589(c)(2).

In any case, however, neither CAAIR nor Simmons provide any meaningful rehabilitative services.  Doc. 42 ¶¶ 8-10, 31-33.  The Oklahoma Drug Court Act contemplates prison as a consequence of the failure to complete a *bona fide* "substance abuse treatment" program.  22 Okl. St. § 471.1(A).  Nothing in the Act provides that an institution authorized by a drug court to provide treatment may ignore that directive and instead threaten prison for objectives of its own devising.  This is the very definition of abuse of legal process, and it has been CAAIR's *raison d'etre* from the beginning.  Doc. 42 ¶ 33; *see also,* Section III, above.

CAAIR is a creation of the poultry industry, essentially devised to serve as a *sub-rosa*, external HR department.  Doc 42 ¶ 33; *see also,* Section III, above.  It obtains residents from drug courts only by concealing its origins and purpose, and by misrepresenting itself as a treatment facility.  Doc. 42 ¶¶ 8-10, 33-34, 121, 133; *see also,* Section III, above.  Neither it nor Simmons can rely on this very misconduct to excuse further misconduct.[13]

E.  **Plaintiffs State a Claim for Trafficking with Respect to Involuntary Servitude and Forced Labor**

As explained above, Plaintiffs have stated claims for violations of §§ 1584 and 1589, and their § 1590 claim therefore stands.

F.  **Plaintiffs State a Claim for State Law Human Trafficking**

Simmons next asserts that Plaintiffs fail to state a claim for human trafficking for labor in violation of 21 O.S. § 748.  This is incorrect.  Section § 748 contains prohibitions similar to those contained in 18 U.S.C. § 1589, proscribing labor obtained by physical restraint, any scheme intended to cause a person to believe that failure to perform labor will result in emotional harm,

---

[13] In fact, CAAIR's uniform misrepresentations formulated to obtain clients are yet further support for Plaintiffs' § 1589 claim.  *See, Nunag-Tanedo v. Baton Rouge Par. Sch. Bd.*, 790 F.Supp.2d 1134, 145 (C.D. Cal. 2011) ("the TVPA not only protects victims from the most heinous human trafficking crimes, but also various types of fraud and extortion leading to forced labor").

distrust, or physical restraint, the abuse and threatened abuse of law or legal process, or fraud. 21 O.S. § 742(A)(1), (5)(A). As explained in Section IV(D), above, Simmons' conduct violated these proscriptions, and Plaintiffs properly state a claim for violation of § 748 on this basis. Simmons' attempt to avoid this conclusion by misconstruing its threats of prison for failure to comply with its private objectives as warnings of "legitimate consequences" fails for the same reasons discussed in Section IV(C) and (D), above.

### G.     Plaintiffs State a Claim for Violation of the RICO Act

Simmons next asserts that Plaintiffs' second RICO claim (count 4) is insufficient. This argument is based, in part, on a misunderstanding of the elements of Plaintiffs' claim. Relying on *Tan v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006), Simmons contends that, to state a RICO claim, Plaintiffs "must allege the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Def. Brief at 12 (quoting *id.*). These, however, are the elements of a § 1962(c) claim. *Tan*, 453 F.3d at 1269. Plaintiffs' RICO claim against Simmons is brought under § 1962(d), which establishes liability for any person who conspires to violate subsections (a), (b), or (c) of § 1962. Plaintiffs' RICO claim against Simmons alleges that Simmons conspired with defendant Wilkerson to violate § 1962(c). Doc. 42 ¶¶ 75-83. Because Simmons fails to make this distinction, most of its argument is inapplicable to the claim it challenges and must be disregarded.

In any case, both of Plaintiffs' RICO claims are properly pled. As for Plaintiffs' § 1962(c) claim against defendant Wilkerson, Plaintiffs state that defendant Wilkerson is employed (participation) by CAAIR (enterprise); that Mrs. Wilkerson acts as CAAIR's CEO responsible for devising and implementing CAAIR policy (participation); that a fundamental and essential component of CAAIR's policy is involuntary servitude (pattern, racketeering activity); that such

conduct is a RICO predicate act under § 1961; and that Ms. Wilkerson therefore conducts the affairs of CAAIR through a pattern of racketeering activity. *Id.* ¶ 18, 38. (For facts related to underlying RICO predicate acts, *see*, *id.* ¶¶ 4, 8-12, 33-35.)

As for Plaintiffs' § 1962(d) claim against the remaining defendants, including Simmons, Plaintiffs state that these defendants conspired with Ms. Wilkerson to engage in the conduct described in the preceding paragraph by "executing explicit agreements and contracts for the provision of involuntary labor, agreeing to withhold wages from C.A.A.I.R. residents, transmitting earned wages directly to C.A.A.I.R., receiving labor transported across state lines by C.A.A.I.R., and operating business which substantially relied on unpaid, unlawful labor." *Id.* ¶ 39; *see also, id.* ¶ 37. This is more than sufficient to state a claim.

Simmons' contention that Plaintiffs must expressly name each individual at Simmons who engaged in this conduct, and that Plaintiffs fail to provide other particulars is absurd. Plaintiffs complaint (and the facts subject to judicial notice described in Section III, above) allege that Simmons is engaged in a large-scale, long-term, on-going relationship with CAAIR premised on the provision of forced labor; describes the location of CAAIR and Simmons' facilities; describes how labor and money is exchanged between the entities; and provides a number of other particulars. *Id.* ¶¶ 4, 8-12, 15-17, 33-35, 37-39; Section III, above. Again, this is more than sufficient to state a claim. If need be, however, Plaintiffs are ready to amend to add a multitude of particulars uncovered since filing their operative complaint.

### H. Plaintiffs State a Claim for Unjust Enrichment

Simmons next asserts that Plaintiffs fail to state a claim for unjust enrichment under Missouri Law because: (1) Plaintiffs must show that they had an expectation of profit, and (2) Simmons has "already paid for the Plaintiffs' labor." These arguments fail. First, there is no

requirement under Missouri law that a plaintiff have an "expectation of profit" to prevail on an unjust enrichment claim. Simmons inserts this purported requirement from a Massachusetts case examining Massachusetts law. Def. Brief at 24-25. Second, Simmons was unjustly enriched by Plaintiffs' labor despite the fact that it made payments to CAAIR. Simmons obtained labor at a discounted rate from CAAIR's residents, gained a business advantage, and profited in so doing. Doc. 42 ¶ 4, 33-34. Plaintiffs are entitled to recover, at the very least, the difference between: (1) the market value of their labor, and (2) the rate actually paid to CAAIR by Simmons.

## I.    Dismissal for Non-Joinder of the State of Oklahoma is Not Warranted

Simmons' argument rests, in part, on a basic misunderstanding of Plaintiffs' claims. Plaintiffs do not challenge the conduct of any official in the State of Oklahoma, and the elements of Plaintiffs' claims require no such inquiry. No element of any claim in this action requires a showing that any referral to CAAIR was improper. Plaintiffs make no such assertion, and this question is irrelevant to their claims. Proof of liability in this action rests solely on establishing that the defendants' conduct, once residents arrive at CAAIR, is unlawful. This should be obvious. Courts, for example, regularly order attendance at Alcoholics Anonymous meetings. If a person attending such a meeting were made to perform involuntary labor after his arrival, such misconduct would, quite obviously, not be attributable to the state. Nor is it here. The defendants in this action engaged in their misconduct on their own, and they cannot evade liability by seeking to conflate their own conduct with that of public officials of Oklahoma.

### 1.    The State of Oklahoma is Not an Indispensable Party

An absent party is "indispensable" for purposes of dismissal under Rule 19 only where: (1) joinder of the party is required under Rule 19(a); (2) joinder is not feasible; *and* (3) the action cannot, in equity and good conscience, proceed without the absent party. *Northern Arapaho*

*Tribe v. Harnsberger*, 697 F.3d 1272, 1278-79 (10th Cir. 2012). Here, joinder of the State of Oklahoma is not necessary, and, even if it were, equity and good conscience allow this case to proceed in its absence.

<strong>a.</strong>  <strong>Oklahoma's Joinder is Not Required Under Rule 19</strong>

Simmons asserts that Oklahoma is a required party under Rule 19(a)(1)(B) because, according to Simmons, "it has several interests in this case, none of which it could adequately protect if these claims were allowed to proceed in its absence." This argument fails because Oklahoma has claimed no interest in this case, and because the putative interests identified by Simmons are illusory and speculative.

First, joinder of an absent party is required under Rule 19(a)(1)(B) only where the party "claims an interest relating to the subject of the action." "Where there is no showing that the absent party actually has claimed an interest relating to the subject of the action, the court may deny a motion to dismiss." *Kuhn Constr. Co. v. Coastal Consultants, Inc.*, 723 F.Supp.2d 676, 692 (D. Del 2010) (denying dismissal where absent party "has taken no action in the current case to assert that it has any interest in the subject matter of this case"); *Cont'l Cas. Co. v. Am. Home Assurance Co.*, 2008 U.S.Dist.LEXIS 30106, *10-11 (S.D.N.Y. 2008) ("For a party to be necessary within the meaning of Rule 19(a)(1)(B)(i), the absent party must be the one claiming the interest. A party named in the litigation cannot assert the interest on the absent party's behalf") (internal citation omitted); *ConnTech Dev. Co. v. Univ. of Connecticut Educ. Props., Inc.*, 102 F.3d 677, 683 (2nd Cir. 1996) (the language of Rule 19 does not provide for "self-serving attempts to assert interests on behalf of" non-parties).[14] Here, the State of Oklahoma has

---

[14] *See also, Axis Specialty Ins. Co. v. Brickman Group LTD, LLC*, 2010 U.S.Dist.LEXIS 7969, *5 n.1 (E.D. Pa. 2010); *Moretti v. Hertz Corp.*, 2016 U.S.Dist.LEXIS 40932, *11 (D. Del. 2016); *United States v. Payment Processing Ctr., LLC*, 2006 U.S.Dist.LEXIS 75715, *13-14 (E.D. Pa.

taken no action to claim an interest in this case, and Simmons cannot assert such an interest on its behalf.  This alone defeats Simmons' joinder argument.

Second, Simmons' assertion that Oklahoma could not adequately protect the putative interests posited by Simmons is speculative at best.  *See also, Sac & Fox Nation v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001) ("an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria"); *see also*, *Sonnett v. Lankford*, 2016 U.S.Dist.LEXIS 191376, *6 (D. Wyo. 2016) (discussing *id*.).  The three putative interests identified by Simmons are described in short, conclusory terms and without discussion of even *potential* factual outcomes.  Def. Brief at 14. Accordingly, Simmons' assertions probably do not even rise to the level of speculation.  Again, this alone defeats Simmons' joinder argument.

Beyond this, however, the putative interests identified by Simmons are simply not impacted by Plaintiffs' claims.  A finding of liability is this case will establish that the defendants act unlawfully once residents arrive at CAAIR.  This will not serve as a basis for the collateral attack of any Oklahoma judgment.  It will simply mean that, once residents arrive at CAAIR, the defendants cannot engage in unlawful conduct.  Nor is there even a remote possibility that liability in this case will subject Oklahoma's "judges and district attorneys" to potential "criminal and civil liability."  As previously stated, the defendants here acted alone, and the question of their unlawful conduct does not fall on the shoulders of Oklahoma's public servants, who were themselves misled by the defendants.  Moreover, judges are shielded, and district attorneys likely shielded, from suit by judicial and quasi-judicial immunity, respectively. Nor will liability in this case impair the state's ability to utilize "work-based rehabilitation programs."  Plaintiffs do not even challenge the States' ability to utilize *CAAIR itself*; they

_____

2006); *Varlen Corp. v. Nat'l Union Fire Ins. Co.*, 2011 U.S.Dist.LEXIS, *13-15 (N.D. Ill. 2011); *Faith Temple Church v. Town of Brighton*, 2005 U.S.Dist.LEXIS 8065, *15-16 (W.D.N.Y 2005).

simply argue that the defendants are liable for unlawful conduct imposed on residents after they arrive.

Finally, even if all the foregoing were incorrect (it is not), the putative interests of the state would be vindicated by success on the merits in defendants' favor. The defendants seek to prove that their practices were legal. Any such finding would foreclose the (speculative) risks to the state identified by Simmons. Accordingly, even under Simmons' view of the world, the State's interests are adequately represented and its joinder is not necessary. *See, Sonnett*, 2016 U.S.Dist.LEXIS 191376, *6 (citing *EquiMed, Inc. v. Genstler*, 170 F.R.D. 175, 179 (D. Kan. 1996)) ("joinder of absent party not necessary if interests are adequately represented by the parties present"); *see also, Rishell v. Jane Phillips Episcopal Mem.*, 94 F.3d 1407, 1411-12 (10th Cir. 1996) (similar).

> **b.** **Even if Joinder were Required, Dismissal Would Not be Warranted Because Oklahoma is Not an Indispensable Party**

Like Simmons' assertions regarding the necessity of joinder, its indispensability arguments are conclusory and offered with no factual explanation, are therefore speculative, and cannot succeed. *See, e.g., EEOC v. JBS USA, LLC*, 794 F.Supp.2d 1188 (D. Colo. 2011) (quoting *Sac*, 240 F.3d at 1259) ("The key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria").

Even if the mind is allowed to speculate, however, Simmons' arguments are without merit. Simmons first argues that "a judgment in Plaintiffs' favor will prejudice the State's ability to protect its interests." This is simply a repeat of Simmons' 19(a) arguments and is invalid for the same reasons discussed above. Simmons also argues that "a judgment rendered in the State's absence will likely result in further litigation against state officials." Simmons does not explain how this might come about, probably because it is not possible. The defendants' conduct once

residents arrive at CAAIR is not imputable to anyone else, much less the State. The possibility of the suits imagined by Simmons is also obviated by sovereign immunity (recognized by Simmons itself), as well as judicial and quasi-judicial immunity. Next, Simmons argues that litigating Plaintiffs' claims without the State "vitiates its sovereign immunity." This cannot be. Oklahoma is neither a required party under Rule 19(a), nor an actual party to this suit, and its sovereign immunity is simply not impacted. Lastly, Simmons argues that any "prejudice" to the State "cannot be minimized by narrowing the relief requested." Such a narrowing, however, is not necessary because Simmons has not established any prejudice in the first place. Moreover, even if Simmons were able to identify any potential prejudice rising beyond speculation, it could effectively be addressed by this Court's powers under Rule 19(b)(2), including by a protective provision in any judgment providing that the State of Oklahoma shall not be prejudiced by such judgment. *See, Delaware v. Bender*, 370 F.Supp. 1193, 1197-98 (D. Del. 1974).

**J.      Plaintiffs Do Not Challenge the Dismissal of their § 1983 Claim**

Plaintiffs do not challenge the dismissal of their § 1983 claim (count 15).

**V.      CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Simmons' motion be denied.


Respectfully submitted,

____s/Amy Gioletti_____

**ACLU OF OKLAHOMA**
**FOUNDATION**

Amy N. Gioletti, OBA #30566
Brady R. Henderson, OBA #21212
P.O. Box 1626

**AIMAN-SMITH & MARCY**

Carey A. James, CA Bar No. 269270*
Randall B. Aiman-Smith, CA Bar No.124599*
Reed W.L. Marcy, CA Bar No. 191531*
Hallie Von Rock, CA Bar No. 233152*

Oklahoma City, OK 73101
Phone (405) 525-3831
Fax (405) 524-2296
Attorneys for Plaintiffs, and all others
similarly situated

**SMOLEN, SMOLEN & ROYTMAN,
PLLC**

David A. Warta, OBA #20361
Daniel E. Smolen, OBA #19943
701 S. Cincinnati Ave.
Tulsa, OK 74119
Phone (918) 585-2667
Fax (918) 585-2669
Attorneys for Plaintiffs, and all others
similarly situated

Brent A. Robinson, CA Bar No. 289373*
7677 Oakport St. Suite 1150
Oakland, CA 94621
Phone (510) 817-2711
Fax (510) 562-6830
Attorneys for Plaintiffs, and all others
similarly situated
*Admitted pro hac vice

CERTIFICATE OF SERVICE

I hereby certify that on the day of filing, I transmitted a true and correct copy of the above and forgoing document using the Court's ECF system, so that the same will be served electronically to all those registered to receive filing notices for this case, including the attorneys for all parties herein.

____s/Amy Gioletti_____