# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARTHUR COPELAND, individually and on behalf of all others similarly situated, BRANDON SPURGIN, individually and on behalf of all others similarly situated, and BRAD MCGAHEY, individually and on behalf of all others similarly situated, *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>C.A.A.I.R., INC.,<br>SIMMONS FOODS, INC.,<br>SIMMONS PET FOOD, INC.,<br>JANET WILKERSON,<br>DON WILKERSON,<br>LOUISE DUNHAM,<br>JIM LOVELL, and<br>DOES1-10, inclusive,<br><br>   Defendants. | Case No.  17-CV-00564-TCK-JFJ |

**PLAINTIFFS' SUR REPLY IN OPPOSITION TO DEFENDANTS SIMMONS FOODS, INC.'S AND SIMMONS PET FOOD, INC.'S MOTION TO DISMISS**

**SMOLEN, SMOLEN & ROYTMAN, PLLC**
Daniel E. Smolen, OBA #19943
David A. Warta, OBA #20361
701 S. Cincinnati Ave.
Tulsa, OK 74119
Phone (918) 585-2667
Fax (918) 585-2669

**ACLU OF OKLAHOMA FOUNDATION**
Brady R. Henderson, OBA #21212
Amy N. Gioletti, OBA #30566
P.O. Box 1626
Oklahoma City, OK 73101
Phone (405) 525-3831
Fax (405) 524-2296

**AIMAN-SMITH & MARCY**
Carey A. James, CA Bar No. 269270*
Randall B. Aiman-Smith, CA Bar No.124599*
Reed W.L. Marcy, CA Bar No. 191531*
Hallie Von Rock, CA Bar No. 233152*
Brent A. Robinson, CA Bar No. 289373*
7677 Oakport St. Suite 1150
Oakland, CA 94621
Phone (510) 817-2711
Fax (510) 562-6830
*Admitted pro hac vice

**Attorneys for Plaintiffs, and all others similarly situated**

I.     ARGUMENT

A.     **Plaintiffs' TVPRA Claims Require No Showing of Fraud**

Simmons' arguments regarding Plaintiffs' TVPRA claims are specious. Involuntary servitude includes labor obtained by "coercion through law or legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988). Forced labor includes labor obtained by threats of serious harm, including non-physical harm, or by abuse of legal process. 18 U.S.C. § 1589(a), (c)(2). "Abuse of law or legal process" means the use of a law or legal process "for any purpose for which the law was not designed." 18 U.S.C. 1589(c)(1). These claims do not "hinge" on fraud, nor do they include fraud as an element.

Plaintiffs' claims are straightforward. The Drug Court Act requires all participating treatment providers to be certified by the Oklahoma Department of Mental Health and Substance Abuse Services. 22 Okl. St. § 471.6(G); *see also*, 43A Okl. St. § 3-415(A). CAAIR is not certified, and is an unqualified participant in the drug court process. Doc. 42 ¶ 42; Doc. 48 ¶ 32. This is not a technical issue. By statutory definition, an Oklahoma drug court is a "judicial intervention process for substance abuse treatment." 22 Okl. St. § 471.1(A). By its own admission, however, "CAAIR does not provide treatment to its clients." Doc. 48 ¶¶ 31-33; Doc. 42 ¶ 32. By inserting itself into the drug court system, CAAIR diverts men from treatment facilities to CAAIR, where no treatment is provided and residents are forced to work for Simmons under threat of prison. *Id.* ¶ 35. This corruption of the requirements and purpose of the Drug Court Act is abuse of legal process in the purest possible sense.

This is a simple matter, and no question of fraud need enter the inquiry. Again, the purpose of the Drug Court Act is to provide a "judicial intervention process for substance abuse treatment." 22 Okl. St. § 471.1(A). CAAIR "does not provide treatment" (Doc. 48 ¶ 32; Doc 42 ¶¶ 31-33), and therefore necessarily uses the law for a purpose for which it was not designed.

1

This is doubly true for Simmons. By its own account, Simmons is a "private actor" with no connection to any public institution. Doc No. 49 at 8-9. Simmons is a poultry company – "that's it." *Id*. Nevertheless, Simmons staff directly threaten CAAIR residents with prison for failure to perform labor. Doc. 42 ¶ 35. Quite obviously, poultry companies cannot threaten people with prison, and the best Simmons can do is argue derivative legitimacy through CAAIR. Again, however, CAAIR is not qualified to provide treatment under the Act, provides no treatment, and instead uses threats of prison only to compel labor for private profit. Doc. 48 ¶¶ 31-33; Doc. 42 ¶¶ 4, 31-33. Because CAAIR itself uses the law for purposes for which it was not designed, Simmons cannot claim derivative legitimacy through CAAIR.

In fact, this would be true even if CAAIR did provide treatment to its residents. First, the Drug Court Act establishes incarceration as one possible sanction for a participant's failure to comply with a treatment plan. 22 Okl. St. §§ 471.1(G)(8), 471.6(D)(2), 471.7(E). The determination of whether to sanction a participant, and what sanction to impose, remains solely with the drug court judge. 22 Ok. St. § 471.7(A), (E). The Act does not deputize treatment providers – much less private third parties like Simmons – to issue their own threats of prison,[1] and issuing such threats to compel labor is an abuse of law.

Second, even if CAAIR provided meaningful treatment in accordance with the purpose of the Act, threats of prison to compel labor for private profit are aimed at an objective for which the Act was not designed, and cannot be construed as "legitimate." Even where the law contemplates a sanction involving the government, a private party who threatens that sanction for the purpose of compelling labor violates the TVPRA. For example, in *Ruiz v. Fernandez*, F.Supp.2d 1055, 1075-77 (E.D. Wash. 2013), defendant argued that he was justified in warning workers that he would contact immigration authorities if they failed to work because leaving his

---

[1] Simmons obliquely acknowledges this fact by stating that "it is not controlled by the state," does not "carry out any traditional state functions," and does not act "under color of state law." Doc. 49 at 8-9. By making these claims, Simmons has abandoned any argument that it has somehow been delegated the authority to issue threats of prison.

employ would violate the workers' visas. The court rejected this argument, holding that immigration laws "are not intended to help employers retain employees through threats of deportation." *Id.* Similarly, in *Ramos v. Hoyle*, 2008 U.S. Dist. LEXIS 102677, *11 (S.D. Fla. 2008), the court denied defendants' motion to dismiss, rejecting the argument that threatening employees with a loss of immigration status if they left employment was a "'truthful statement and not an abuse of legal process.'"[2] Here, Plaintiffs allege that defendants threaten prison for the purpose of compelling labor for private profit. Doc. 42 ¶¶ 7, 33, 35, 121, 150. Compelling labor for profit is not the purpose of the Drug Court Act, and Simmons' threats therefore necessarily violate the TVPRA without regard to the status of CAAIR.

Simmons' contention that Plaintiffs' were "free to leave" CAAIR does not change this result. First, this argument is premised on impermissible (and unsupported) factual contentions about the "options" CAAIR residents "could've" pursued as an alternative to labor, and fails for this reason alone. Second, "The TVPRA does not require that plaintiffs be kept under literal lock and key," and the "free to leave" argument, even when premised on a developed factual record properly before the court, is routinely rejected as a basis for disposing of TVPRA claims. *Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014); *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 2017 U.S. Dist. LEXIS 218523, *14 (E.D.N.Y. 2017); *Joseph v. Signal Int'l*, 2015 U.S. Dist. LEXIS 33870, *45-47 (E.D. Tex. 2015); *Samuel v. Signal Int'l,* 2015 U.S. Dist. LEXIS 25486, *17-18 (E.D. Tex. 2015); *Elat v. Ngoubene*, 993 F.Supp.2d 497, 529-30 (D. Md. 2014); *Guobadia v. Irowa*, 103 F.Supp.3d 325, 335 (E.D.N.Y. 2015). Plaintiffs lived in squalid,

---

[2] *See also, Mojsilovic v. Okla. ex rel. Bd. of Regents*, 2015 U.S. Dist. LEXIS 44109, *12 (W.D. Okla. 2015) ("although an employer may legitimately advise an employee that termination may result in a change in visa status, utilizing that fact to force labor is not permitted by the law"); *Ramos-Madrigal v. Mendiola* Forestry, 799 F.Supp.2d 958, 960-61 (W.D. Ark. 2011) (denying motion to dismiss based on defendant's argument that he did not violate the TVPRA by informing workers that he would contact immigration if they left work before the end of their term); *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F.Supp.2d 1134, 1146 (C.D. Cal. 2011) ("Threatening deportation for violation of immigration laws clearly falls within the concept and definition of abuse of legal process since the alleged objective for such conduct was to intimidate and coerce Plaintiffs into forced labor").

isolated, oppressive conditions; were controlled by a party with organized, superior access to the courts; and were threatened with a single option: work for Simmons or go to prison. Doc. 42 ¶¶ 4, 8-9, 11-12, 14, 34-35. Whether Simmons' threats, considered objectively in light of these circumstances, would compel a reasonable person to perform labor[3] rather than pursue another "option" is a question for the jury and cannot be resolved at the pleading stage with speculative hypotheticals.[4]

If, despite the foregoing, Simmons continues to insist that Plaintiffs must plead detailed allegations of fraud, Plaintiffs are able and willing to do so.

### B.  Plaintiffs Have Properly Pled that they are Employees Under the FLSA

Plaintiffs are employees for purposes of the FLSA. *Alamo Foundation* is controlling. Like Plaintiffs here, the residents of Alamo Foundation were putative addicts, worked at commercial business, received no cash wages, resided at the facility for long periods, and were dependent on the foundation for food and shelter. *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 292-93, 301-02 (1985). With respect to the question of an expectation of compensation, the Court held that food and shelter are "wages in another form." *Id*. 301-02. Where a person expects these items in exchange for his labor, an implied compensation agreement exists, and the person is an employee. *Id*. Here, Plaintiffs allege they were provided food and shelter (albeit in a meager and unsanitary form) as "payment" for their labor. Doc. 42 ¶ 4. For purposes of a motion to dismiss, this ends the inquiry.

Simmons' attempts to distinguish *Alamo Foundation* are misplaced. First, Simmons' contends that Plaintiffs received food and shelter not "in exchange for" their labor, but rather

---

[3] This is a legal standard, not, as Simmons contends, and "allegation." *See*, 18 U.S.C. § 1589(c)(2); *Aguilera v. Aegis Communs. Grp., LLC*, 72 F. Supp. 3d 975, 978 (W.D. Mo. 2014) ("threat considered from the vantage point of a reasonable person"); *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017) ("The test of undue pressure is an objective one").

[4] In its reply, Simmons describes evidence not before the Court and purports to explain what that evidence will show. Doc. 62 at 4-5. This attempt to inject consideration of unseen evidence into a motion to dismiss (or any motion) is improper.

because "CAAIR freely provided those benefits incidental to the rehabilitation Plaintiffs sought." This is not only an impermissible factual contention, it is simply wrong. As CAAIR has already admitted, CAAIR residents "*pay for their stay* at the facility *by working* at local work providers." Doc. 48 at 2 (emphasis added).

Next, Simmons argues that Plaintiffs fail to allege that they "actually considered … room and board to be 'compensation.'" This is irrelevant. The question is whether Plaintiffs expected to receive room and board, not whether they subjectively labeled those items compensation. *Alamo Foundation* makes this clear. There, all testifying residents asserted that they were "volunteers" working only for religious reasons. 471 U.S. at 293, 300-02. One "typical" resident testified that "'no one ever expected any kind of compensation.'" *Id*. The Court dismissed this testimony as immaterial, observing that the test of employment under the FLSA is one of "economic reality," not putative employees' subjective understanding. *Id*.

Next, Simmons claims that "Plaintiffs entered CAAIR for rehabilitation and to avoid prison – not for room and board." This contention is also irrelevant. The question is whether Plaintiffs expected to receive room and board for their labor. The additional question of whether this expectation was their sole motivation for entering CAAIR or for working is a criterion of Simmons' own invention. Again, *Alamo Foundation* makes this clear. There, the residents testified that they worked "only for religious and evangelical reasons." *Id*. No one claimed to have entered the foundation for room and board. This fact, however, had no bearing on the "economic reality" inquiry, under which the expectation of food and shelter for labor – not the subjective priority ascribed to those items – is determinative. *Id.*

As it must, Simmons acknowledges that *Alamo Foundation*'s central holding – that an expectation of room and board for labor creates an employment relationship – is the law. *See*, Doc. 62 at 11; 471 U.S. at 301-02 and n. 23; 29 U.S.C. § 203(m). Simmons attempts, however, to distinguish *Alamo Foundation* on the basis that it is premised on a "factual finding" not

5

present here.  Specifically, Simmons contends that the workers in *Alamo Foundation* "actually expected to receive in-kind benefits in exchange for their services," while Plaintiffs here did not. Doc. 62 at 9.  This is just a circular way of arguing the facts.  This is a motion to dismiss, and Simmons' "factual finding" is established here by Plaintiffs' complaint, and by CAAIR's admission that its residents "pay for their stay at the facility by working."  Doc. 48 at 2.  This is a simple matter raising no issue of a "sweeping per se rule."  Plaintiffs allege they received room and board as "payment," CAAIR admits it, and the inquiry is over.  *Id*; Doc. 42 ¶ 4.

Simmons' own reasoning requires the same conclusion.  Simmons admits that it pays CAAIR wages for Plaintiffs' labor, and that CAAIR uses this money to provide its "services." Doc. 49 at 2; Doc. 62 at 14-15.  Plaintiffs' receipt of room and board is therefore directly contingent on labor – no work, no services.  Attempting to sever this direct link, Simmons relies on an artifice spun from whole cloth, namely, that CAAIR "freely" provides room and board "incidental" to rehabilitation.  *Id*. at 11.  This is an act of pure imagination.  As Simmons itself observes, "the test of employment under the FLSA is one of reality, not legal fiction." *Id.* at 9. This being so, Simmons' motion cannot succeed.

The same result also prevails without regard to *Alamo Foundation*.  The test for employment under the FLSA is the "economic reality" test.  *Alamo Foundation*, 471 U.S. at 301; *Dole v. Snell*, 875 F.2d 802, 804-05 (10th Cir. 1989).  The "focal point" of this test is "whether the individual is economically dependent on the business to which he renders service."  *Id*.; *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994).  Here, Simmons cannot deny that Plaintiffs were completely dependent on defendants, and can evade FLSA coverage only by arguing the same artifice just described – that Plaintiffs' dependence on defendants for food and shelter was unrelated to labor, and that these items were "freely provided" independent of the obligation to work.  Again, however, this is a fiction, and is contrary to Plaintiffs' complaint and CAAIR's admission.

Simmons' specter of "absurd results" cannot withstand scrutiny. No argument raised by Plaintiffs "would mean prisoners would always be employees … if they perform any work and receive room and board." Prisoners' economic dependence on the prison does not arise from a labor relationship. The state pays for incarceration; provision of cells and food is not contingent on labor for private companies. Further, the Drug Court Act establishes treatment as an alternative to incarceration, not its equivalent. The Act authorizes and provides for "substance abuse treatment," and does not contemplate treatment providers as effectuating penal confinement; authorizes "confinement" during treatment for a maximum of 5 days; and provides that participants cannot be incarcerated after completing a treatment plan. 22 Okl. St. §§ 471.1(A), (G)(8)(d); 471.2(B)(7); 471.6(D)(2). Lastly, and most simply, neither CAAIR nor Simmons are, in fact, prisons – Simmons is a poultry company with no connection to any public institution, and CAAIR is not even a licensed treatment center. As for Simmons' purported concern for other rehabilitation programs, no facts related to the nature of other programs – or how they may or may not be similar to CAAIR, a detailed question of fact – are before this Court for purposes of this motion to dismiss. The essence of Plaintiffs' claims, however, is that CAAIR is *not* like other programs – it was created by the poultry industry, financed by an institution connected to the poultry industry, is not certified by the state, provides no treatment, and threatens prison for profit. Doc. 54 at 3-6; Doc. 42 ¶¶ 31-33, 35. Simmons' concerns in this regard, even if they were based on evidence properly before the Court, are therefore misplaced.

Simmons also attempts to evade FLSA coverage with impermissible (and unsupported) factual contentions regarding the putative rehabilitative value of work performed at Simmons. Doc. 62 at 14 (asserting that work at Simmons "was meant" to foster "self-worth" and rehabilitation). These "facts" are not before this Court, but the following facts are: Plaintiffs performed grueling and dangerous work, frequently resulting in serious injuries for which they were denied medical care, and with no rehabilitative purpose. Doc. 42 ¶¶ 8-12, 14, 34-35.

7

Nevertheless, Simmons contends that "Plaintiffs offer no explanation why the work in *Williams* was meaningfully rehabilitative to escape FLSA coverage, but Plaintiffs' work wasn't." This is simple: None of the above facts were present in *Williams*, which, in any case, was decided on summary judgment and based on a factual finding derived from plaintiff's testimony that his work was rehabilitative. 87 F.3d 1064, 1065, 1067.[5] Further, here, all three of the named Plaintiffs suffered serious injuries while working for Simmons, with two of these experiencing long-term, debilitating effects. Doc. 42 ¶¶ 8-12. Simmons is free to argue at a later date that its work is nonetheless "rehabilitative," but bald assertions to this effect have no bearing on its current motion.

Lastly, Plaintiffs' injuries have further relevance to FLSA coverage. CAAIR carries worker's compensation for its residents, files claims for injured residents, and keeps the proceeds. *Id*. ¶¶ 9, 35. Worker's compensation is available only for workers under an "employment" contract "to labor for agreed 'wages.'" *Beall v. Altus Pub. Sch. Dist.*, 632 P.2d 400, 402-03 (Ok. 1981). If Plaintiffs are employees who receive wages for purposes of worker's compensation, they are also employees under the FLSA.

### C. Plaintiffs' State Law Claims are Properly Pled

Because Plaintiffs are employees under the FLSA and have properly plead their TVPRA claims, Plaintiffs have properly pled their state wage law and human trafficking claims.

### D. Plaintiffs Have Stated a Claim for Violation of the RICO Act

The principle that a RICO "enterprise" must exist "separate and apart from the pattern of racketeering activity" is no longer good law. *United States v. Hutchinson*, 573 F.3d 1011, 1020-

---

[5] *Williams* is inapposite for several other reasons. There, the court found no implied compensation agreement because plaintiff worked for a "sense of self-worth" and his relationship with Salvation Army was "solely rehabilitative." 87 F.3d at 1067. These are factual findings not present here. The *Williams* plaintiff was also required to offset the costs of his room and board from income sources unrelated to his labor. *Id*. at 1068 ("the fact that Williams was required to offset the cost of these benefits distinguishes the case from *Alamo*"). Lastly, Plaintiff worked only for the Salvation Army, not for an outside, for-profit company. *Id*. at 1065.

22 (10th Cir. 2009) (an enterprise need have "no purpose or economic significance beyond or independent of the group's pattern of racketeering activity"); *Crowe v. Clark*, 552 F.App'x 796, 800 (10th Cir. 2014) ("an enterprise need not exist separate and apart from a pattern of racketeering activity"). Nor does an enterprise require a specific "decision making framework" as urged by Simmons. *Hutchinson*, 573 F.3d at 1020-22. Nor must Plaintiffs allege that Simmons "conducted or participated" in the enterprise. This is the standard for 18 U.S.C. § 1962(c); *Reves v. Ernst & Young*, 113 S.Ct. 1163, 1170 (1993) (cited by Simmons). Plaintiffs' § 1962(c) claim alleges that defendant Wilkerson (person) conducted the affairs of CAAIR (enterprise) through a pattern of racketeering activity. Doc. 42 ¶¶ 38, 75-78. This satisfies the statute. 18 U.S.C. § 1962(c); *Cedric Kushner Promotions, LTD v. King*, 533 U.S. 158 (2001). Plaintiffs' RICO claim against Simmons alleges that Simmons violated § 1962(d) by conspiring with Ms. Wilkerson to violate § 1962(c). Doc. 42 ¶¶ 39, 79-83. This claim requires no allegation that Simmons "conducted or participated" in the enterprise itself.

### E. Plaintiffs Have Stated a Claim for Unjust Enrichment

Simmons' arguments regarding Plaintiffs' unjust enrichment claim are incorrect. First, an "expectation of compensation" is not an element of this claim. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010); *Hertz Corp. v. RAKS Hospitality,* 196 S.W.3d 536, 543 (Mo. Ct. App. 2006) (elements). The cases cited by Simmons are *quantum meruit* cases and are thus inapposite. Second, Simmons was unjustly enriched despite its payments to CAAIR. Simmons paid a discounted rate for Plaintiffs' labor (Doc. 42 ¶ 34), and was unjustly enriched by the amount it saved (full market rate minus amount actually paid). Plaintiffs are entitled to recover the difference.

### F. Rule 19 Does Not Counsel Dismissal

Simmons' arguments for the joinder of Oklahoma are disingenuous, vague, and fatally attenuated. First, Simmons is a poultry company. It has no connection to the State, and its

joinder arguments are a transparent attempt to evade accountability for its conduct. Rule 19 does not countenance "self-serving attempts to assert interests on behalf of" non-parties to escape court jurisdiction. *ConnTech Dev. Co. v. Univ. of Conn. Educ.*, 102 F.3d 677, 683 (2d Cir. 1996). Next, Simmons' contention that Oklahoma has claimed an interest in this case by passing the Drug Court Act is frivolous. If such an ethereal connection sufficed, no case could proceed without a state party. *All* litigation involves laws passed by government entities. Congress passed the FLSA, but no one claims the federal government is a necessary party to this suit.[6] Next, Simmons' assertions regarding the impact of this case on the State's interests are vague and speculative. Simmons makes broad claims about "economic and social interests," the prison system, unemployment, and the drug court program (all based on improper factual contentions), but fails to demonstrate how holding a single unlicensed treatment center accountable for unlawful conduct could even potentially impact those areas. Simmons' asserts an undefined impact on legitimate rehabilitation programs, but no evidence of the structure, operations, number, or even identity of these programs is before this Court, nor does Simmons explain how these entities might be impacted. Lastly, the assertion that the State must be joined to prevent the possibility of State suits against Simmons, with no explanation of what these suits would entail or how they may come about, is too speculative for consideration. *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1280 (10th Cir. 2012) ("The key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy" Rule 19).

---

[6] *State v. Tyson Foods, Inc.* is inapposite. That case involved the pollution of specific, identified waterways. 258 F.R.D. 472, 473, 477-78 (N.D. Okla. 2009). The Court found that an absent party, the Cherokee Nation, claimed an interest because, first, a written agreement submitted to the court between plaintiff and the Nation expressly claimed this interest. *Id.* The Court then found that the Nation's laws supported a claimed interest because they explicitly sought the regulation of the discrete waterways at issue – the physical subject matter of the suit. *Id.* No such direct connection is present here, where the functioning, authority, and jurisdiction of Oklahoma's drug courts is not at issue. Simmons' expansive reading of Rule 19 amounts to the proposition that any time plaintiffs allege a failure to satisfy the requirements of a law, the state must be joined.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Simmons' motion be denied.

Respectfully submitted,

| | |
|---|---|
| **SMOLEN, SMOLEN & ROYTMAN, PLLC** | **AIMAN-SMITH & MARCY** |
| *David A. Warta* | *Carey A. James* |
| David A. Warta, OBA #20361<br>Daniel E. Smolen, OBA #19943<br>701 S. Cincinnati Ave.<br>Tulsa, OK 74119<br>Phone (918) 585-2667<br>Fax (918) 585-2669<br>Attorney for Plaintiffs, and all others similarly situated | Carey A. James, CA Bar No. 269270*<br>Randall B. Aiman-Smith, CA Bar No.124599*<br>Reed W.L. Marcy, CA Bar No. 191531*<br>Hallie Von Rock, CA Bar No. 233152*<br>Brent A. Robinson, CA Bar No. 289373*<br>7677 Oakport St. Suite 1150<br>Oakland, CA 94621<br>Phone (510) 817-2711<br>Fax (510) 562-6830<br>Attorney for Plaintiffs, and all others similarly situated<br>*Admitted pro hac vice |
| **ACLU OF OKLAHOMA FOUNDATION** | |
| *Amy N. Gioletti* | |
| Amy N. Gioletti, OBA #30566<br>Brady R. Henderson, OBA #21212<br>P.O. Box 1626<br>Oklahoma City, OK 73101<br>Phone (405) 525-3831<br>Fax (405) 524-2296 | |

## CERTIFICATE OF SERVICE

I hereby certify that on the day of filing, I transmitted a true and correct copy of the above document using the Court's ECF system, so that the same will be served electronically to all those registered to receive filing notices for this case, including the attorneys for all parties herein.

s/ David A. Warta