## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ARTHUR COPELAND, et al.,

       Plaintiffs,

v.

C.A.A.I.R., INC., a not-for-profit,
corporation, et al.,

       Defendants.

Case No.:  17-CV-564-TCK-JFJ

## PLAINTIFFS' RESPONSE TO C.A.A.I.R., INC.'S FIRST
## MOTION TO COMPEL DISCOVERY FROM ALL PLAINTIFFS

Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
David A. Warta, OBA #20361
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
danielsmolen@ssrok.com
bobblakemore@ssrok.com
davidwarta@ssrok.com
*Attorneys for Plaintiff*

September 27, 2018

# **TABLE OF CONTENTS**

Page

Table of Authorities..............…..………………..………….….....................................ii

Introduction.....………………....……………….….…….…....…………..1

Background.…………….....…………….....……......……………………………3

Argument and Authorities.………………………………………………....……7

    A.    CAAIR's Motion Contradicts Its Own Conduct, the Joint Status Report
    and the Court's Instruction, Further Burdening All Involved……………..7

        1. By Refusing to Produce Documents to Plaintiffs, CAAIR has Tacitly
        Agreed that a Discovery Stay is in Place……………………….....8

    B.    A Stay of Discovery is Appropriate and Necessary in This Case…….....10

        1.    It is Within a District Court's Discretion to Stay Discovery…......10

        2.    The Five Factors Within the Court's Discretion Weigh in Plaintiffs'
        Favor..........................................................................................12

        3.    CAAIR's Request That Plaintiffs Execute Authorizations
        Is Inappropriate.………………………………………………..13

        4.    Plaintiffs Should Not Be Compelled to Produce Their
        Tax Returns.………………………………………………………14

        5.    Plaintiffs Should Not Be Compelled to Produce Their
        Facebook Archives.………………………………………………15

Conclusion.…………….....……………....……......……………………………...18

*CASES*                                                                                                           *Page*

*Becker v. Securitas Sec. Services USA, Inc.,* 2007 WL 677711 (D. Kan. 2007)…......13, 14

*Biliske v. Am. Live Stock Ins. Co.*, 73 F.R.D. 124, 126 n.1 (W.D. Okla.1977)…………..15

*Bouchard v. Whetstone*, 2010 WL 1435484 (D. Colo. 2010)………………………...…14

*Bradbury Co., Inc. v. Teissier-Ducros, et al.*, 2004 WL 2781576 (D.Kan. 2014)……....14

*Brazos Valley Coalition for Life, Inc. v. City of Bryan, Texas*, 421 F.3d 314, 327
(5th Cir. 2005)…………………………………………………………………….…10

*Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2
(D.D.C. 2001)……………………………………………………………………….11

*Clinton v. Jones,* 520 U.S. 681, 683 (1997)…………………………………………...10

*Deherra v. Decker Truck Line, Inc.,* 2014 WL 37236, at *2 (D.Colo. 2014)………..….13

*Gordon v. T.G.R. Logistics, Inc.,* 321 F.R.D. 401, 403 (D. Wyo. 2017)……………...…18

*Grosvenor v. Qwest Communications Intern., Inc.,* 2010 WL 1413108, at *2
(D.Colo. 2010………………………………………………………………………..11

*Hilt v. SFC, Inc.,* 170 F.R.D. 182, 189 (D. Kan. 1997)…………………………………14

*In re Broiler Chicken Grower Litigation,* 2017 WL 3841912, at *2 (E.D. Okla. 2017)...10

*Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987)……………………………………...10

*Ogden v. All-State Career Sch.*, 299 F.R.D. 446, 450 (W.D. Pa. 2014)…………………16

*Riley v. U.S.*, 2012 WL 1231830, at *8 (D.Kan. 2012)………………………….……13

*Rohrbough v. Harris,* 549 F.3d 1313, 1321 (10th Cir. 2008)……………………………11

*Sanderson v. Winner,* 507 F.2d 477 (10th Cir. 1974), *cert. denied,* 421 U.S.
914 (1975)……………………………………………………………………………..14

*Sac & Fox Nation of Oklahoma v. Cuomo,* 193 F.3d 1162, 1164-65 (10th Cir. 1999)…..10

*Shaw v. Management & Training Corp.,* 2005 WL 375666 (D. Kan. 2005)……………14

*Smith v. Hillshire Brands*, No. 13-2605-CM, 2014 WL 2804188, at **4–5
(D. Kan. June 20, 2014)……………………………………………………...…16, 17

*String Cheese Incident, LLC v. Stylus Shows, Inc.,* 2006 WL 894955, at *2
(D.Colo. 2006)………………………………………………………………………..12

*Uto v. Job Site Services, Inc.,* 269 F.R.D. 209, 212 (E.D.N.Y. 2010)………………..14

*United States v. Microsoft Corp.,* 165 F.3d 952, 959 (D.C. Cir. 1999)…………………11

*Valverde v. Xclusive Staffing, Inc.,* 2016 WL 8737774 (D. Colo. 2016)………………..11

*Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 797 (10th Cir. 2013)……………………10

Come Now the Plaintiffs, Arthur Copeland, et al., by and through their attorneys of record and for their response to Defendant C.A.A.I.R., INC.'S ("CAAIR") First Motion to Compel Discovery From All Plaintiffs (Dkt. #81), and respectfully request the Court deny Defendant's Motion. In support, Plaintiffs show the Court the following:

**INTRODUCTION**

The Defendants in this case conspired to profit from a vulnerable workforce under the guise of providing alcohol and drug counseling and rehabilitation services to Plaintiffs and Putative Class Members. Plaintiffs performed taxing, dangerous manual labor for Defendants in poultry and pet food processing plants, often working far more than 40 hours per week, including weekend "community service" projects at CAAIR staff members' personal homes and other endeavors completely unrelated to drug and alcohol treatment. If clients disobey any instructions from CAAIR staff, they are commonly threatened with expulsion from the program and incarceration.

CAAIR holds itself out as a long-term residential drug and alcohol program. Dkt. #42 ¶ 31. However, by law, only facilities certified by the Oklahoma Department of Mental Health and Substance Abuse Services (ODMHSAS) may provide alcohol and drug treatment and rehabilitation services. *Id*. at ¶ 32; 43A Okl. St. § 3-415(A). CAAIR is not certified as a treatment provider by ODMHSAS and does not employ any counselors licensed by ODMHSAS. Dkt. #42 at ¶¶ 32; 34. CAAIR secretes these facts from the courts and "clients."

While CAAIR advertises itself as a not-for-profit organization, the founders of CAAIR long ago recognized the significant financial reward that could be gained from

Plaintiffs' labor. In 2007, CAAIR founders agreed to pay Raymond Jones[1] to assist them in establishing a relationship with Simmons and performing other consulting services crucial to launching CAAIR. CAAIR agreed to pay Mr. Jones $250,000 per year, from February 5, 2007 through December 31, 2011, in return for which he was expected to perform several services, including "securing an employment contract for clients from Simmons Foods." Ex. 1, Petition of Raymond Jones at pp. 4-5. The CAAIR founders had a "reasonable expectation of a return on its investment" with Jones, "that it would receive valuable consideration in return for [Jones's] compensation." Ex. 2, WD-4 Partnership Answer and Counterclaims at 5. The CAAIR founders eventually secured the Simmons contract, which is paramount to CAAIR's continued existence. Simmons similarly benefits from the arrangement, by avoiding its usual tremendous turnover rate through its CAAIR-provided captive workforce, and by paying CAAIR a reduced rate for the unpaid labor it supplies.

In the Joint Status Report, Simmons and CAAIR both agreed to stay discovery pending the Court's ruling on Simmons's Motion to Dismiss. Plaintiffs later agreed to conduct limited discovery with CAAIR. Plaintiff produced substantive responses to 23 sets of CAAIR's discovery requests. CAAIR only produced documents responsive to one of 48 requests for production, and now admits to withholding all others, due to Plaintiffs' "insistence on a stay." The reality is that CAAIR has operated according to the stay contemplated in the JSR for the last four months. CAAIR's motion should be denied.

---

[1] Jones operates DARP, Inc., which also provides unpaid labor to poultry processors, and is currently involved in similar litigation in *Fochtman, et al. v. DARP, Inc. et al.*, 18-CV-05047-TLB (W.D. Ark.).

## **BACKGROUND**

Plaintiffs filed their Complaint (Dkt. #2) on October 10, 2017. They filed an Amended Complaint (Dkt. #5) on October 12, 2017 and a Second Amended Complaint (Dkt. #16) on November 9, 2017. CAAIR filed an Answer (Dkt. #48) to the SAC on January 15, 2018 and Defendant Simmons Foods, Inc. and Simmons Pet Food, Inc. ("Simmons") filed a Motion to Dismiss (Dkt. #49) the same day. Plaintiffs filed their Response to Simmons's Motion to Dismiss (Dkt. #54) on February 5, 2018. On March 12, 2018, Simmons filed its Reply to Plaintiffs' Response (Dkt. #62). On January 29, 2018, the parties filed their JSR (Dkt. #51), which reflects the parties' agreement that discovery would not commence until ***after*** the court resolves Simmons's Motion to Dismiss. The JSR states that "[t]he parties agree it would be premature for the Court to issue a scheduling order until <u>after</u> the Court has resolved Defendants' Motions to Dismiss," and that the "Pre-Class Certification Discovery Period" shall be "12 months commencing upon the Court's resolution of Simmons' Motion to Dismiss." The JSR could not be clearer – discovery is not to begin until ***after*** the court has resolved Simmons' Motion to Dismiss. Judge Kern then entered a Minute Order (Dkt. #52) finding "good cause for delay in issuing a scheduling order in this case, as Defendants Simmons Foods, Inc., and Simmons Pet Food, Inc., have filed a Motion to Dismiss, which should first be resolved."

The parties filed their JSR on Monday, January 29, 2018. On the preceding Friday, January 26, CAAIR mailed interrogatories, document requests, and admission requests for 15 plaintiffs to Plaintiffs' counsel. CAAIR was fully aware of the terms of the JSR – that discovery was not to commence until after the resolution of Simmons'

Motion to Dismiss – when it mailed these discovery requests. CAAIR chose to disregard those terms and proceed with its requests. On February 8, 2018, CAAIR issued 12 more sets of discovery requests to Plaintiffs.

By email to Defendants' counsel dated February 27, 2018, Plaintiffs' counsel reiterated the parties' agreement in the JSR to stay discovery, noted that CAAIR's 27 sets of discovery were premature, and requested that Defendants abide by that agreement. Ex. 3, Feb. 27, 2018 email. After conferring with Defendants' counsel via conference call on March 7, 2018, Plaintiffs' counsel ultimately agreed that, while it was not willing to concede its position regarding the discovery stay memorialized in the JSR, Plaintiffs would respond *only* to the 27 sets of discovery from CAAIR that had already been issued. CAAIR agreed to not serve any new discovery to Plaintiffs until after April 30.

After the conference, on March 12, 2018, Chris Thrutchley, counsel for Simmons, sent an email to all parties' counsel that stated, "[t]his is to confirm and make clear that ***the agreement between CAAIR and Plaintiffs doesn't involve Simmons and plaintiffs [sic]. No agreements have been reached concerning discovery between Simmons and Plaintiffs***, though Simmons did express a willingness to discuss the topic." Ex. 4, March 12, 2018 email. Plaintiffs and Simmons have not reached any other agreements concerning discovery, other than those memorialized in the JSR.

Subsequently, between April 4 and April 13 of 2018, Simmons issued interrogatories and requests for production to 64 named Plaintiffs (which amounted to 4992 requests) without consulting Plaintiffs. Despite the agreement in the JSR that discovery would not begin until after the resolution of Simmons' Motion to Dismiss, both Simmons and CAAIR began issuing an overwhelming number of requests to Plaintiffs.

On March 13, 2018, Carey James[2] issued discovery requests to CAAIR, Don Wilkerson, Janet Wilkerson, Jim Lovell, and Louise Dunnam. On May 16, 2018, CAAIR, Don Wilkerson, Janet Wilkerson, and Jim Lovell responded to Plaintiffs' initial discovery requests. However, the responses were deficient in several respects. For example, CAAIR was issued 48 Requests for Production of Documents. CAAIR has produced responsive documents to exactly **one** of the requests, the Plaintiffs' client files, which primarily consisted of the self-serving intake documents that Plaintiffs were required to sign upon entry to CAAIR, in addition to certain court documents, drug test results, and injury reports. None of the documentation produced involved Plaintiffs' employment with Simmons or CAAIR's business relationship with Simmons. Ex. 5, Defendant CAAIR's first discovery response; Ex. 6, index of documents received from CAAIR. While CAAIR's counsel promised that they would produce other responsive documents on a "rolling" basis, as of over four months later, no such documents have been produced. CAAIR admitted in its Motion to Compel that it "has additional documents to produce, but production has been delayed due to Plaintiffs' insistence on a stay of discovery." Dkt. #81 at 9 n. 4. CAAIR inconsistently insists that there is no stay on discovery, yet admits that it has been withholding documents from Plaintiffs due to the parties' agreement that discovery is currently stayed.

By April 30, 2018, and before the CAAIR defendants had provided any responses to Plaintiffs' discovery, Plaintiffs served 23 of the 27 responses to CAAIR's initial discovery requests. Plaintiffs requested a 30-day extension to complete the remaining

---

[2] Carey A. James, Randall B. Aiman-Smith, Reed W.L. Marcy, Hallie Von Rock, and Brent A. Robinson of the law firm Aiman-Smith & Marcy (the "Withdrawn Attorneys") previously represented Plaintiffs.

four requests, to which CAAIR agreed. The following day, May 1, 2018, CAAIR issued discovery requests to an additional 38 Plaintiffs.  On May 16, 2018, Withdrawn Attorney James emailed counsel for CAAIR suggesting a staggered schedule for completing the outstanding discovery requests. Ex. 7, May 16 email chain. Counsel for CAAIR agreed to the proposed schedule. *Id*.  Importantly, it wasn't until after Withdrawn Attorney James's email that CAAIR produced its deficient responses to Plaintiffs' discovery requests. Ex. 8, May 16 email re: CAAIR document production.

On May 16, 2018, Simmons sent a letter to Mr. Aiman-Smith detailing an onerous (and premature) proposed discovery schedule. Ex. 9, May 16, 2018 Thrutchley Letter to Aiman-Smith. The letter requested responses to Simmons's previous requests as well as the right to begin deposing Plaintiffs approximately 30 days after receiving discovery responses. These requests amounted to over 100 sets of additional discovery to which Plaintiffs never agreed.  On June 13, 2018, Withdrawn Attorneys mailed a CD containing blanket objections to 65 sets of discovery requests to Simmons.  On June 18, 2018, the court issued its Order granting Withdrawn Attorneys' Motion to Withdraw. Dkt. #70.

Plaintiffs' current counsel emailed counsel for Defendants on June 22, 2018 reiterating Plaintiffs' view that discovery had not yet begun and that Plaintiffs had ***never*** agreed to engage in discovery with Simmons while Simmons's Motion to Dismiss was pending.  Ex. 10, June 22, 2018 Smolen Email to Thrutchley. Further, the undersigned noted that "[w]hile Plaintiffs previously agreed to operate outside of [the JSR] parameters regarding initial discovery propounded by CAAIR, at the time such agreement was made,

it was never contemplated, much less agreed, that Defendants would propound and Plaintiffs would answer an *additional* 100+ sets of discovery." *Id*.

Plaintiffs' view on discovery has been consistent throughout these proceedings: that the "Pre-Class Certification Discovery Period" shall be "12 months commencing upon the Court's resolution of Simmons' Motion to Dismiss." Dkt. # 51 at 7. And while CAAIR argues that it has been cooperative with regard to Plaintiffs' limited discovery requests, in reality CAAIR has only provided vague, incomplete responses to interrogatories and has limited its production to those documents least likely to support Plaintiffs' claims. Notably, CAAIR failed to produce *any* communications between it and Simmons, despite the fact that their business relationship as it relates to Plaintiffs' claims spans *eleven years*.

On August 31, 2018, Simmons filed its Motion to Compel Plaintiffs' Responses to First and Second Discovery Requests (Dkt. #79), to which Plaintiffs responded on September 20, 2018 (Dkt. #83). On September 6, 2018, CAAIR filed its Motion to Compel Discovery from All Plaintiffs (Dkt. #81).

## ARGUMENT AND AUTHORITES

### A. CAAIR's Motion Contradicts Its Own Conduct, the Joint Status Report and the Court's Instruction, Further Burdening All Involved

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Class action lawsuits are inherently lengthy and complex, and this one, that contains fifteen (15) causes of action, is particularly arduous.

CAAIR's Motion to Compel contradicts the JSR and violates Judge Kern's Minute Order, which found, "good cause for delay in issuing a scheduling order in this case, as Defendants Simmons Foods, Inc., and Simmons Pet Food, Inc., have filed a Motion to Dismiss, which should first be resolved." Dkt. #52. It is a waste of all parties' and the Court's time and resources to conduct discovery that may ultimately become moot following the resolution of Simmons' Motion to Dismiss, as certain of Plaintiffs' claims are dependent upon participation of both CAAIR and Simmons. For example, Plaintiffs' fourth cause of action in their Second Amended Complaint, Violation of the RICO Act, 18 U.S.C. §§ 1961 and 1962(d), inherently involves cooperation between both Simmons and CAAIR. Dkt. #16 at 22-23. Further, CAAIR's complaints about Plaintiffs' refusal to defy the JSR and Judge Kern's Order are hypocritical, as they admittedly have withheld a substantial number of documents requested by Plaintiffs. Accordingly, CAAIR's Motion to Compel Discovery from All Plaintiffs should be denied.

**1. By Refusing to Produce Documents to Plaintiffs, CAAIR has Tacitly Agreed that a Discovery Stay is in Place**

CAAIR's attempt to compel complete discovery from Plaintiffs is not only inappropriate, premature, and in conflict with the parties' agreed upon JSR, it is also hypocritical. Withdrawn Attorneys issued five sets of discovery to CAAIR and its executives on March 13, 2018. Over two months later, on May 16, 2018, four of the Defendants, CAAIR, Don Wilkerson, Janet Wilkerson, and Jim Lovell responded to Plaintiffs' requests. The Defendants that did return requests failed to adequately answer Plaintiffs' interrogatories and only produced documents responsive to one production request, which were the CAAIR client files regarding named Plaintiffs. Further, while Defendants promised to produce responsive documents to other requests, they have failed

to do so. *See* CAAIR, Inc's Responses to Plaintiff Arthur Copeland's First Set of Discovery Requests No. 1-3, 8, 9, 11, 12, 14-20, 22, 25, 26, 32, 33, 35-43, and 45-48, Ex. 5. To date, CAAIR has not provided any of the documents responsive to those requests. CAAIR noted in its Motion to Compel that it "has additional documents to produce, but production has been delayed due to Plaintiffs' insistence on a stay of discovery." Dkt. #81 at 9, n.4. CAAIR's assertion that it has "responded" to Plaintiffs' requests is misleading, at best. CAAIR claims that it has produced "over 4000 pages of documents at Plaintiff Copeland's request." Dkt. #81 at 9. While technically true, these referenced documents are primarily the named Plaintiffs' intake documents related to their time at CAAIR, such as the client contract, basic expectations, dress code, various disclaimers and authorizations.

It is also curious that CAAIR and Simmons both cite the urgency of proceeding with discovery that could dispel the damaging claims made against them, yet both CAAIR and Simmons waited over a month before responding to Plaintiffs' counsels' June 22 proposal to limit discovery to third-party requests. Plaintiffs' June 22 proposal further allowed CAAIR to cease the "rolling production" of documents responsive to Plaintiff's discovery requests. Ex 10, Email from Smolen to Thrutchley. CAAIR apparently accepted that piece of Plaintiff's proposal, as it hasn't produced any documents since.

**Importantly, however, Plaintiffs have not badgered Defendants to supplement their half-hearted responses, as it is Plaintiffs' view that the pre-class certification discovery period has not yet commenced, a position that CAAIR has obviously endorsed by its own inaction**.

**B. A Stay of Discovery is Appropriate and Necessary in This Case**

**1. It is Within a District Court's Discretion to Stay Discovery**

While the Federal Rules of Civil Procedure do not expressly provide for discovery stays, "within [a district court's] discretion to control discovery and its own docket lies the ability to stay discovery." *In re Broiler Chicken Grower Litigation*, 2017 WL 3841912, at *2 (E.D. Okla. 2017). "[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 683 (1997). A court may stay discovery *sua sponte* pending resolution of a motion to dismiss. *See Sac & Fox Nation of Oklahoma v. Cuomo*, 193 F.3d 1162, 1164–65 (10th Cir. 1999) (affirming dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction, where district court dismissed case before any discovery, which it stayed *sua sponte* pending resolution of the motion to dismiss) *Id*. Should this court exercise its discretionary power to stay discovery, CAAIR may demonstrate prejudice by showing that it needs particular discovery to respond to dispositive motions, *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 797 (10th Cir. 2013) (unpublished decision, cited for persuasive value); *Brazos Valley Coalition for Life, Inc. v. City of Bryan, Texas*, 421 F.3d 314, 327 (5th Cir. 2005); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987), or that discoverable information may be lost during the pendency of the stay. *Clinton v. Jones*, 520 U.S. at 707-08. CAAIR has not and can not show that any such prejudice exists.

Further, Rule 26(c) permits the court to issue an order protecting a party from discovery that will cause "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The 'good cause' standard of Rule 26(c) is 'highly flexible, having been designed to accommodate all relevant interests as they arise.'"

*Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10ᵗʰ Cir. 2008) quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999). Stays of discovery pending Motions to Dismiss are common in complex class action lawsuits. *See, e.g., Valverde v. Xclusive Staffing, Inc.*, 2016 WL 8737774 (D. Colo. 2016). A stay of discovery pending the determination of a dispositive motion "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Grosvenor v. Qwest Communications Intern., Inc.*, 2010 WL 1413108, at *2 (D.Colo. 2010) (quoting *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001)).

The cases cited, *supra*, involved parties filing motions to stay discovery that the court ultimately granted for good reason. ***Importantly, Judge Kern has already ordered that discovery is not to begin until the resolution of Simmons' Motion to Dismiss.*** Judge Kern's Order found**,** "good cause for delay in issuing a scheduling order in this case, as Defendants Simmons Foods, Inc., and Simmons Pet Food, Inc., have filed a Motion to Dismiss, which should first be resolved." CAAIR attempts to argue that since the parties completed their Rule 26(f) discovery conference in January of 2018, they are free to engage in discovery, "unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice." Fed. R. Civ. P. 26(d)(3). However, the parties' agreement in the JSR that the Pre-Class Certification Period shall be "12 months ***commencing*** upon the Court's resolution of Simmons' Motion to Dismiss" (Dkt. #51 at 7) (emphasis added) communicates the exact stipulation that discovery is currently improper. The JSR also states that the "parties request the Court set a scheduling conference, if needed, <u>after </u>resolving Simmons' Motion to

Dismiss." *Id.* It was clearly contemplated by the parties in the JSR, and recognized by Judge Kern after reviewing the JSR, that discovery would begin upon resolution of the Motion to Dismiss.

**2. The Five Factors Within the Court's Discretion Weigh in Plaintiffs' Favor**

In *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. 2006), the court articulated five factors to consider when determining if a stay of discovery is appropriate: 1. Plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; 2. The burden on the defendants; 3. The convenience to the court; 4. The interests of persons not parties to the civil litigation; and 5. The public interest. A stay consistent with the JSR and Judge Kern's Order would not cause potential prejudice of a delay to Plaintiffs in this case, as the parties have already agreed in the JSR that, if any claim is certified, eighteen months of total discovery would be necessary following resolution of the Motion to Dismiss. (Dkt. 51, at p. 8). While Plaintiffs' have an interest in proceeding expeditiously in this matter, they also have a strong interest in not wasting valuable time and resources conducting premature discovery that could become moot.

A stay would also not burden the Defendants, as it could potentially conserve resources depending upon the Court's ruling on the Motion to Dismiss. CAAIR's argument that conducting discovery before the resolution of Simmons' Motion to Dismiss will somehow protect its reputation lacks merit. The JSR provides for a pre-class certification discovery period of 12 months. Simply abiding by the JSR will not harm CAAIR's reputation more than its own conduct already has.

Similarly, it is "certainly more convenient for the Court to stay discovery until it is clear that the case will proceed." *Deherra v. Decker Truck Line, Inc.*, 2014 WL 37236, at *2 (D. Colo. 2014). The fourth factor also weighs in favor of a stay, as it is possible both parties will seek a vast number of documents from third-parties via subpoena that could become moot after the resolution of Simmons' Motion to Dismiss. The fifth factor also weighs in favor of a stay, as "[a]voiding wasteful efforts by the Court clearly serves [public interest]." *Id.* All five of the *String Cheese* factors weigh in favor of a stay. Defendants have not demonstrated that they will be burdened by a delay in discovery and it is clear that conducting discovery while Simmons' Motion to Dismiss is pending would be premature and potentially extremely wasteful.

### 3. CAAIR's Request That Plaintiffs Execute Authorizations is Inappropriate

Contrary to CAAIR's assertion, it is improper to compel Plaintiffs to execute employment, mental health, and medical records authorizations. "Rule 34 allows a party to 'serve on any other party a request within the scope of Rule 26(b),' including production requests that permit the requesting party 'to inspect, copy, test or sample…[documents] in the responding party's possession, custody or control.'" *Riley v. U.S.*, 2012 WL 1231830, at *8 (D. Kan. 2012). However, nowhere in Rule 34 is there a provision "requiring a party to sign a release or authorization so that the requesting party may obtain a document directly from a non-party." *Id.* Courts have consistently denied a party's motion to compel individuals from signing authorizations to release records, as the Federal Rules of Civil Procedure instruct that the proper route to obtaining these records is a third-party subpoena. *See, e.g. Becker v. Securitas Sec. Services USA, Inc.,*

2007 WL 677711 (D. Kan. 2007); *Shaw v. Management & Training Corp.,* 2005 WL 375666 (D. Kan. 2005); *Bouchard v. Whetstone*, 2010 WL 1435484 (D. Colo. 2010).

### 4. Plaintiffs Should Not Be Compelled to Produce Their Tax Returns

CAAIR argues that Plaintiffs' tax returns for any year during which they participated in the CAAIR program are relevant to the employment relationship inquiry. It is CAAIR's belief that if Plaintiffs "contend they received wages in the form or room and board, they should have reported such 'wages' to the IRS on their annual income tax returns." Dkt. #81 at 18. Tax returns are generally not discoverable. *Sanderson v. Winner,* 507 F.2d 477 (10th Cir. 1974), *cert. denied,* 421 U.S. 914 (1975). Public policy protects against the production of tax returns, and courts do not favor compelling their production. *Hilt v. SFC, Inc.,* 170 F.R.D. 182, 189 (D. Kan. 1997). Courts utilize a two-prong test to determine whether tax returns must be produced. *Bradbury Co., Inc. v. Teissier-Ducros, et al.*, 2004 WL 2781576 (D.Kan. 2014). First, the court must find that the returns are relevant to the subject matter of the action. *Id.* Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable. *Id.* The party moving for production of tax returns generally bears the burden of showing that the tax returns are relevant and that there is a compelling need. *Id.*; *Uto v. Job Site Services, Inc.*, 269 F.R.D. 209, 212 (E.D.N.Y. 2010).

Although tax returns do not enjoy an absolute privilege from discovery, due to the public policy against unnecessary public disclosure of tax returns, "a Court should not require the production of tax returns where the information sought is readily obtainable by other means or from other sources."

*Biliske v. Am. Live Stock Ins. Co.*, 73 F.R.D. 124, 126 n.1 (W.D. Okla.1977). In this case, CAAIR seeks to establish whether Plaintiffs notified the IRS of the value of food and housing CAAIR provided Plaintiffs. However, that information is readily and exclusively obtainable by CAAIR, which provided the food and housing, and is the only entity that is – or should be – in the possession of financial information that would establish such value. CAAIR presumably has access to all records that would establish the purported value of the food and housing provided to Plaintiffs. Furthermore, in order for Plaintiffs to provide the IRS the value of such food and housing, CAAIR would have had to first provide Plaintiffs a W-2 form identifying the value CAAIR provided to each Plaintiff in Box 1 of an IRS W-2 form. CAAIR never provided W-2 forms to Plaintiffs, and therefore Plaintiffs could not have provided such information to the IRS. Even if CAAIR had provided Plaintiffs the required W-2 forms, it would already possess the information requested.

As such, Plaintiffs' tax returns are not remotely, much less reasonably calculated, to lead to the discovery of admissible evidence. Therefore, Plaintiffs' production of such documents should be denied.

**5. Plaintiffs Should Not Be Compelled to Produce Their Facebook Archives**

Parties may obtain discovery only when:

[It] is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

Defendants seek an entire Facebook file download from each plaintiff, beginning January 1, 2010. It is clear that such a request is improper.

> Ordering plaintiff to permit access to or produce complete copies of his social networking accounts would permit defendant to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable.

*Smith v. Hillshire Brands*, No. 13-2605-CM, 2014 WL 2804188, at \*\*4–5 (D. Kan. June 20, 2014) (quoting *Ogden v. All-State Career Sch.*, 299 F.R.D. 446, 450 (W.D. Pa. 2014)).

Requiring all named Plaintiffs to produce the **entire contents of their Facebook archives** would violate several of the elements described in Rule 26. First, there is a plethora of information in Plaintiffs' Facebook profiles that is wholly irrelevant to this case. Next, the information CAAIR desires from Plaintiffs' Facebook pages is neither important nor dispositive of anything, and the required burden would far outweigh any potential benefit. For example, even if some Plaintiffs have stated that they are sober after having completed CAAIR, those hypothetical statements do not prove causation. Just because someone is sober months after having left CAAIR does not mean CAAIR's "counseling" was the proximate cause of their sobriety. Further, even in the event that CAAIR has helped some Plaintiffs achieve sobriety, that fact is in no way relevant to Plaintiffs' claims. Plaintiffs were forced to work long hours at difficult and dangerous jobs and were not paid for their labor. Stray Facebook comments will not dispute those facts. Finally, the violation of Plaintiffs' privacy that would result from releasing their Facebook archives far outweighs any potential benefits. Defendants would have access to the following information if Plaintiffs' produced their Facebook archives: all of Plaintiffs' friends, their hometowns, every time they've sent or received a message, every

status update, all of their IP addresses, their last location, likes on other sites, linked accounts, logins and logouts, credit card numbers they may have saved, phone numbers, photographs, advertisements they've clicked on, and potentially even a list of phone calls and text messages they've sent. *See, e.g.* Ex. 11, CNBC News, "How to download a copy of everything Facebook knows about you," and Ex. 12, Washington Post, "Here's how to download all your data from Facebook. It might be a wake-up call."

Relevant case law (that CAAIR has ignored) echoes Plaintiffs' concerns. "Although it is apparent to the court that plaintiff's social networking activity that references in any way defendant or matters asserted in plaintiff's complaint is relevant, it is less apparent why unfettered access to plaintiff's social media activity over the past year and a half is relevant." *Smith v. Hillshire Brands,* 2014 WL 2804188, at *4 (D. Kan. 2014) ("Defendant is no more entitled to such unfettered access to plaintiff's personal email and social networking communications than it is to rummage through the desk drawers and closets in plaintiff's home.") *Id.* Courts have recognized "that a discovery request for unfettered access to social networking accounts – even when temporarily limited – would permit defendant 'to cast too wide a net' for relevant information." *Id.* Allowing Defendants access to the entirety of Plaintiffs' Facebook archives in search of a few possible stray comments about sobriety is clearly not proportional to the needs of the case.

Additionally, CAAIR argues that it is not burdensome to produce Plaintiffs' Facebook archives because the act of downloading the data is quick and efficient. However, "[j]ust because information can be retrieved quickly and inexpensively does not resolve the issue. Discovery can be burdensome even as it is inexpensive. Courts have

long denied discovery of information which was easy to obtain, but which was not discoverable." *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 403 (D. Wyo. 2017). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). There is substantial risk of releasing potentially embarrassing, personal, and/or humiliating information about Plaintiffs if they are forced to produce their entire Facebook archives. Accordingly, this request should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny CAAIR's Motion to Compel Discovery Responses From All Plaintiffs in its entirety, and grant Plaintiffs all such other relief that is just and equitable.

Respectfully submitted,


**SMOLEN, SMOLEN & ROYTMAN, PLLC**


s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
David A. Warta, OBA #20361
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
danielsmolen@ssrok.com
bobblakemore@ssrok.com
davidwarta@ssrok.com
***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2018, I electronically transmitted Plaintiffs' Response to Simmons's Motion to Compel Plaintiffs' First and Second Discovery Requests to all ECF registrants of record:

s/Daniel E. Smolen
Daniel E. Smolen