IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

**ARTHUR COPELAND, et al.,**

Plaintiffs,

v.

**C.A.A.I.R., INC.**, **a not-for-profit corporation**, **et al.,**

Defendants.

Case No. 17-CV-564-TCK-JFJ

Jury Trial Demanded

## ANSWER TO SECOND AMENDED COMPLAINT OF DEFENDANTS SIMMONS FOODS, INC. AND SIMMONS PET FOOD, INC.

Defendants Simmons Foods, Inc. and Simmons Pet Food, Inc. (collectively, "Simmons") answer the Second Amended Complaint filed by Plaintiffs. At the outset, Simmons notes that Plaintiffs have failed to sue the proper Simmons entities. To avoid gamesmanship when answering, Simmons has treated allegations against an improper Simmons entity as an allegation against the proper entity. For each allegation in the Second Amended Complaint, Simmons recites the allegation and, thereafter, states its answer:

## I.    INTRODUCTORY STATEMENT

1.       Defendants conspired to profit from a vulnerable workforce under the guise of providing alcohol and drug counseling and rehabilitation services to Plaintiffs and Putative Class Members.

**ANSWER:** Simmons denies the allegations in paragraph 1.

2.       Plaintiffs performed taxing, manual labor for Defendants in poultry and pet food processing plants.

**ANSWER:**  Simmons admits some Plaintiffs performed labor at certain poultry and

pet food plants but denies the remaining allegations in paragraph 2.

3.      Defendants failed to pay Plaintiffs and Putative Class Members any compensation whatsoever for the work they performed, in violation of state and federal law.

> **ANSWER:** Simmons admits that neither it nor any other Simmons entity had a remunerative relationship with Plaintiffs or putative class members during their time in the CAAIR program. Simmons paid CAAIR competitive hourly rates for each hour worked by CAAIR participants at Simmons, ranging from $10 to $12 per hour and $15 to $18 per overtime hour worked. Simmons denies the remaining allegations in paragraph 3.

4.      Instead, Defendants only "payment" to Plaintiffs and Putative Class Members consisted of daily bologna sandwiches and a bunk-bed in a cramped, unsanitary dorm room. In short, Defendants established and maintained a labor camp designed to generate profit and business advantages based on the exploitation of vulnerable young men.

> **ANSWER:** Simmons denies the allegations in paragraph 4.

5.      Defendants' conduct constitutes breach of contract, fraud, unjust enrichment, and violations of the Fair Labor Standards Act, the Racketeer Influenced and Corrupt Organizations Act, the Oklahoma Protection of Labor Act, the Oklahoma Minimum Wage Act, Arkansas minimum wage and overtime law, Missouri minimum wage and overtime law, Oklahoma's Human Trafficking statutes, the Trafficking Victims Protection Reauthorization Act, and the prohibition of involuntary servitude set forth in the thirteenth amendment to the U.S. Constitution.

> **ANSWER:** Simmons denies the allegations in paragraph 5.

6.      Plaintiffs seek to recover, on behalf of themselves and the Putative Class Members, all unpaid wages and other damages allowed as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and as a nationwide collective action pursuant to 29 U.S.C. § 216(b) of the FLSA. Plaintiffs also seek equitable relief on behalf of current and fu-

ture employees of Defendants, to prohibit such illegal conduct in the future.

**ANSWER:** Simmons denies Plaintiffs are entitled to alleged unpaid wages, damages, or equitable relief and denies engaging in any illegal activity.

## II.   PARTIES, JURISDICTION AND VENUE

7.      Plaintiffs and the Putative Class Members are current or former employees of Defendants who work or worked at Simmons Foods, Inc. ("Simmons") and/or Simmons Pet Food, Inc. ("Simmons Pet Food") while housed at C.A.A.I.R.'s dormitories near Jay, Oklahoma.

**ANSWER:** Simmons admits some Plaintiffs and putative class members resided at CAAIR's dormitories near Jay, Oklahoma. Simmons further admits that some Plaintiffs and putative class members have gone on to secure employment with Simmons entities following their graduation from the CAAIR program. Simmons denies that any Plaintiffs or putative class members are or were "employees" of Simmons or any Simmons-affiliated entity during their time in the CAAIR program.

8.      Plaintiff Arthur Copeland ("Copeland") was led to believe, through the mails of the United States, in a letter dated January 8, 2016, that C.A.A.I.R. was a drug and alcohol program offered through Oklahoma's "drug court." Based on this misrepresentation, Copeland agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to Copeland that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide free chicken processing services for Simmons without pay. Upon arriving at C.A.A.I.R., Copeland was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. Copeland quickly learned that C.A.A.I.R. was not a drug and alcohol rehabilitation program, but rather a work camp program, under which he was required to provide free labor for Simmons Foods under constant threat of incarceration. Copeland worked on what was called the "live hang line" at Simmons

Foods. As part of this work, he was expected to hang 60-62 chickens per minute. He worked full time on the live hand line in a totally dark room except for black light. Copeland was eventually "promoted" to position of sharpening knives and scissors of other workers who slaughtered the chickens. Copeland suffered a work-related fall at Simmons Foods, which caused serious injury and pain and suffering. Despite his injury and need for physician care, Copeland was threatened with return to prison if he was unable to work. Contrary to the representations upon which he relied, during his time in C.A.A.I.R., Copeland never received any professional drug or alcohol counseling/treatment. Rather, he was simply part of a full-time work camp labor force who was expected to work full time for Simmons Food, without compensation, and with threat of incarceration if he did not complete the one-year "program." Copeland worked for Simmons Foods through C.A.A.I.R.'s work camp for several months, without pay. Copeland routinely worked over 40 hours per workweek at Simmons Foods. Without any professional rehabilitation services, Copeland, who suffers from drug addiction, relapsed and was sent to prison after seven months in C.A.A.I.R., with nothing to show for his involuntary servitude.

> **ANSWER:** Simmons denies that CAAIR is a "work camp" or that Simmons (or to its knowledge, CAAIR) threatened Copeland with incarceration. Simmons admits Copeland performed work on a live hang production line, but denies the work was performed at Simmons Foods. Simmons further admits Copeland suffered a fall while at the facilities of a Simmons-affiliated entity. Simmons is without sufficient information as to the remaining allegations in paragraph 8 and, therefore, denies the same.

9.      Plaintiff Brandon Spugin [sic] ("Spurgin") was led to believe, through the mails of the United States, that C.A.A.I.R. was a drug and alcohol program offered through Oklahoma's "drug court." Based upon this misrepresentation, Spurgin agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to Spurgin that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide chicken processing

services for Simmons Foods without pay. Upon arriving at C.A.A.I.R., Spurgin was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. Spurgin quickly learned that C.A.A.I.R. was not a drug and alcohol rehabilitation program, but rather a work camp program, under which he was required to provide free labor for Simmons Foods under constant threat of incarceration. Spurgin worked full-time at the Simmons Foods chicken processing plants without compensation under threat of incarceration. Spurgin routinely worked over 40 hours per workweek at Simmons Foods. Spurgin was working in a chicken processing plant one night in 2014 when a metal door crashed down on his head, damaging his spine and leaving him with chronic pain, according to medical records. C.A.A.I.R. filed for workers' compensation on his behalf and fraudulently pocketed the $4,500 in insurance payments. Spurgin received nothing. Three years later, Spurgin is still in pain and can no longer hold a full-time job.

**ANSWER:** Simmons denies that CAAIR is a "work camp" or that Simmons (or to its knowledge, CAAIR) threatened Spurgin with incarceration. Simmons admits Spurgin performed work at a Simmons-affiliated entity, but denies the work was at Simmons Foods. Simmons admits Spurgin was involved in an accident at the facilities of a Simmons-affiliated entity. Simmons is without sufficient information as to the remaining allegations in paragraph 9 and, therefore, denies the same.

10.     Plaintiff Brad McGahey ("McGahey") was led to believe, through the mails of the United States, that C.A.A.I.R. was a drug and alcohol rehabilitation program offered through Oklahoma's court system. Though McGahey was not addicted to anything, he was led to believe that this "rehabilitation" program was his only alternative to serving prison time for violating the terms of probation for a receipt of stolen property plea deal. Based upon this misrepresentation, McGahey agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to McGahey that C.A.A.I.R. was a work camp where he would be required, by threat

of incarceration, to provide chicken processing services for Simmons Foods without pay.

11.      **ANSWER:** Simmons denies that CAAIR is a "work camp" and that McGahey was "required, by threat of incarceration, to [work] for Simmons Foods without pay." Simmons is without sufficient information as to the remaining allegations in paragraph 10 and, therefore, denies the same. Upon arriving at C.A.A.I.R., McGahey was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. McGahey quickly learned that C.A.A.I.R. was not a rehabilitation program, but rather a work camp program, under which he was required to provide labor for Simmons Foods, without pay, under constant threat of incarceration. Beginning in 2010, at Simmons Foods, McGahey first went to work in evisceration, suctioning guts and blood out of slaughtered chickens speeding past him on metal hooks. Then he became a grader, arranging raw breasts, thighs and legs into orderly piles as they moved up a conveyor belt to packaging. It was monotonous work. During his time working in the processing plants, if McGahey got hurt or worked too slowly, his bosses threatened him with prison. McGahey routinely worked over 40 hours per workweek at Simmons Foods. McGahey was never paid a dime while working manual labor for the benefit of C.A.A.I.R. and Simmons Foods.

**ANSWER:** Simmons admits McGahey performed work at a Simmons-affiliated entity, but denies the work was at Simmons Foods. Simmons also admits that it did not pay McGahey wages, because he was not a Simmons employee. Simmons paid CAAIR competitive hourly rates, well over minimum wage, for McGahey's labor. Simmons is without sufficient information as to McGahey's position and job duties at this time and, therefore, denies the same. Simmons denies the remaining allegations in paragraph 11.

12.      On May 27, 2010, three months into his time at C.A.A.I.R., while working at the Simmons processing plant, and while attempting to help an injured co-worker, McGahey's hand got stuck in the conveyor belt. McGahey suffered a "severe crush injury." The machine smashed his hand, breaking several bones and nearly severing a tendon in his wrist. When he finally

yanked his wrist free, his hand was bent completely backward. One of C.A.A.I.R.'s top managers picked McGahey up at the plant and drove him to the local hospital. Doctors took X- rays of McGahey's hand, gave him a splint and ordered him not to work. After returning to the C.A.A.I.R. work camp, McGahey suffered in pain, and expected not to work in compliance with the doctor's orders. However, C.A.A.I.R. mandated that he work while injured. The C.A.A.I.R. administrators called McGahey lazy and accused him of hurting himself on purpose to avoid working. C.A.A.I.R. told him that he had to go back to work—either at Simmons or around the campus until his hand healed, which wouldn't count toward his one-year sentence. "You can either work or you can go to prison," a C.A.A.I.R. administrator told him. McGahey's hand is permanently injured. In 2012, McGahey went to court for workers' compensation. C.A.A.I.R. fought him every step of the way. In court in 2012, the program's attorneys argued that McGahey's recurring symptoms weren't the result of the accident in the chicken plant. Suffering in constant pain and from depression, McGahey is now addicted to pain medication.

**ANSWER:** Simmons admits McGahey suffered an injury to his hand at the facilities of a Simmons-affiliated entity. Simmons is without sufficient information as to the other allegations in paragraph 12 and, therefore, denies the same.

13.     Stanley Shane Alexander, Keith Alspaugh, David Banks, Robert Benkowich, Jesse Brown, Cody Bumpas, Caleb Byrd, Steven Cook, Arthur Copeland, Ryan Dorland, Patrick Doyle, Kelly Ford, Kenneth Gentry, Charles Greenhaw, Michael Greenhaw, Michael Wayne Harrell, Jarret Jones, Caleb Kleier, Marquis Luckey, Dexter Mackay, Michael McCartney, Brad McGahey, Lucas Don Miller-Allen, Brandon Mills, Jason Miqueli, Dwayne Moss, Robert Nashert, Joshua Newburn, Bobby Gene Nichols, Travis Owens, Charles Rickman, Thomas Rico, Kevin Robison, Gilbert Sanders, Jr., Austin Smith, Brandon Spurgin, Bodhi Chance Starns, Titus Staton, Nathan Turner, Jerry Wall, Michael Welge, Daniel West, James Wolfe, Michael Travis Wyche, De'Undre Woodard have each filed Notice of Consent to Join this suit as Plaintiffs, both for purposes of a collective action pursuant to 29 U.S.C. § 216(b), and as to all other causes of

action alleged.

**ANSWER:** Simmons denies Brandon Spurgin, Brad McGahey, Brandon Mills, and Bodhi Chance Starns have filed Notices of Consent. Simmons further denies that a Notice of Consent is effective as to any claim other than Plaintiffs' FLSA claims. Simmons admits the remaining allegations of Paragraph 13.

14.     Collectively, while living at C.A.A.I.R. and working at Simmons or Simmons Pet Food, in addition to performing grueling work for no pay, these men experienced numerous, serious injuries, including head, knee, and back injuries, acid burns and other injuries for which they were not provided appropriate medical care. When Plaintiffs reported injuries to Simmons, Simmons insisted they were "contract labor," denied treatment for work-sustained injuries, and informed Plaintiffs that it was C.A.A.I.R.'s responsibility to provide treatment. C.A.A.I.R. routinely funneled injured workers to a doctor in Siloam Springs with ties to C.A.A.I.R., in order to obtain releases for Plaintiffs to return to work at Simmons. Furthermore, C.A.A.I.R. pressured one Plaintiff to return to work two days after his 2 month-old son died, before the viewing and funeral had taken place. C.A.A.I.R. would not allow those in its program to take prescribed psychotropic medicines. On one such occasion, it was apparent that a resident who had been denied prescribed medicine was emotionally unstable. C.A.A.I.R. responded by dismissing him from the program and forcing him off the rural property at night during a rainstorm, leaving him with no means to contact anyone to rescue him. C.A.A.I.R. often sent employees Jim Lovell and others on recruiting trips to jails across Oklahoma, in order to secure free labor for the C.A.A.I.R./Simmons scheme.

**ANSWER:** Simmons denies the allegations in paragraph 14 to the extent they are directed at Simmons. Simmons is without sufficient information to admit or deny the remaining allegations in paragraph 14 and, therefore, deny the remaining allegations.

15.     Defendant Christian Alcoholics & Addicts in Recovery, Inc. ("C.A.A.I.R.") is an Oklahoma corporation, registered as a charitable organization, with its principal place of business

in Jay, Oklahoma. C.A.A.I.R. does substantial business in this judicial district.

**ANSWER:** Simmons admits the first sentence of paragraph 15. Simmons is without sufficient information as the second sentence of paragraph 15 and, therefore, denies the same.

16.     Defendant Simmons Foods, Inc. ("Simmons") is an Arkansas, for-profit business corporation headquartered in Siloam Springs, Arkansas. Simmons Foods does substantial business in Oklahoma and in this judicial district. Simmons Foods operates a processing plant in Fairland, Oklahoma, and contracts for labor with C.A.A.I.R. in Oklahoma. Simmons Foods also operates processing plants in Southwest City, Missouri, and Decatur, Arkansas.

**ANSWER:** Simmons admits the allegations in the first and second sentences of paragraph 16. Simmons further admits that it contracts for labor with CAAIR in Oklahoma, as alleged in the second half of the third sentence, and pays CAAIR a competitive hourly rate well in excess of the minimum wage for each hour of work performed by CAAIR participants at a Simmons site. Simmons denies the remaining allegations in paragraph 16.

17.     Defendant Simmons Pet Food, Inc. ("Simmons Pet Food") is an Arkansas for-profit business corporation headquartered in Siloam Springs, Arkansas. Simmons Pet Food does substantial business in Oklahoma and in this judicial district. Simmons Pet Food maintains operations in Fort Gibson, Oklahoma, and contracts for labor with C.A.A.I.R. in Oklahoma. Simmons Pet Food also operates a processing plant in Decatur, Arkansas.

**ANSWER:** Simmons admits the allegations in the first, second, and fourth sentences of paragraph 17. Simmons denies the third sentence of paragraph 17.

18.     Defendant Janet Wilkerson is a natural person. Ms. Wilkerson is a co-founder of C.A.A.I.R. and is C.A.A.I.R.'s chief executive officer.

**ANSWER:** Simmons admits the allegations in paragraph 18.

19.     Defendant Don Wilkerson is a natural person. Mr. Wilkerson is a co-founder of

C.A.A.I.R. and is C.A.A.I.R.'s vice president of operations.

> **ANSWER:** Simmons admits the allegations in paragraph 19.

20.     Defendant Louise Dunham is a natural person. Ms. Dunham is a co-founder of C.A.A.I.R. and is C.A.A.I.R.'s vice president of finance.

> **ANSWER:** Simmons admits the allegations in paragraph 20.

21.     Defendant Jim Lovell is a natural person. Mr. Lovell is C.A.A.I.R.'s vice president of program management.

> **ANSWER:** Simmons admits the allegations in paragraph 21.

22.     Jurisdiction over Plaintiffs' FLSA Claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

> **ANSWER:** Paragraph 22 states a legal conclusion to which no answer is required. To the extent an answer is required, Simmons denies the allegation.

23.     Subject Matter Jurisdiction is also conferred on this Court by 28 U.S.C. §1337 and over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

> **ANSWER:** Paragraph 23 states a legal conclusion to which no answer is required. To the extent an answer is required, Simmons denies the allegation.

24.     The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343 to secure protection of, and to redress deprivations of, rights secured by the Thirteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

> **ANSWER:** Paragraph 24 states a legal conclusion to which no answer is required. To the extent an answer is required, Simmons denies the allegation.

25.     This Court has supplemental subject matter jurisdiction under 28 U.S.C § 1367 for all claims asserted under the laws of Oklahoma, Missouri, and Arkansas (the "State Law

Claims") because these claims are part of the same case and controversy as the FLSA and RICO claims; the federal and State Law Claims derive from a common nucleus of operative fact; the State Law Claims will not substantially dominate over the FLSA claims; and exercising supplemental jurisdiction will be in the interests of judicial economy, convenience, fairness, and comity.

> **ANSWER:** Paragraph 25 states a legal conclusion to which no answer is required. To the extent an answer is required, Simmons denies the allegation.

26.     Independently, this Court has original subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, in that the estimated damages involved in this action will exceed $5,000,000 and the parties to this action are residents of different states.

> **ANSWER:** Paragraph 26 states a legal conclusion to which no answer is required. To the extent an answer is required, Simmons denies the allegation.

27.     This Court has specific personal jurisdiction for all claims against the defendants because the defendants have availed themselves of the privileges of conducting business in Oklahoma and a substantial portion of the events giving rise to this suit, including the contracting and transmission of unlawful labor, occurred in Oklahoma and resulted from defendants' contacts with this forum.

> **ANSWER:** Simmons admits personal jurisdiction exists. Simmons denies the remaining allegations and characterizations in paragraph 27.

28.     This Court has general personal jurisdiction for all claims against the defendants because their affiliations with the State of Oklahoma are sufficiently continuous and systematic to render the defendants essentially at home in this state. Further, this Court has general person jurisdiction over defendants C.A.A.I.R., Janet Wilkerson, Don Wilkerson, Rodney Dunham, Louise Dunham, and Jim Lovell because C.A.A.I.R. is incorporated and has its principal place of business in Oklahoma, and because the individually named defendants are residents of Oklahoma.

**ANSWER:** Simmons admits that personal jurisdiction exists. Simmons is without sufficient information as to the remaining allegations in paragraph 28 and, therefore, denies the same.

29.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events, acts, and or omissions giving rise to the claims asserted in this suit occurred in this District.

**ANSWER:** Simmons admits that venue is proper in this District.

30.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food are subject to this Court's personal jurisdiction and therefore reside in this District, and because defendant Janet Wilkerson, Don Wilkerson, Rodney Dunham, Louise Dunham, and Jim Lovell are natural persons who reside in this District.

**ANSWER:** Simmons admits that venue is proper in this District, but denies the remaining allegations in paragraph 30.

## III.   FACTUAL ALLEGATIONS

31.     C.A.A.I.R. holds itself out as a long-term residential drug and alcohol recovery program. In fact, however, C.A.A.I.R., is not certified as a treatment provider by the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS"), and C.A.A.I.R. provides no meaningful treatment for its residents.

**ANSWER:** Simmons admits CAAIR is a long-term drug and alcohol recovery program that provides meaningful and desperately needed services for its clients and that it is not certified as a "treatment provider" by the ODMHSAS. Simmons denies the remaining allegations and characterizations in paragraph 31.

32.     43A Okl. St. § 3-415(A) provides that only facilities certified by the Oklahoma Board

of Mental Health and Substance Abuse Services ("OBMHSAS") may provide alcohol and drug treatment and rehabilitation services. C.A.A.I.R. does not meet, and has never met, the requirements for such certification, and provides virtually nothing in the way of legitimate treatment services for its residents, which it calls "clients."

**ANSWER:** Simmons admits that CAAIR is not a treatment provider as defined by the ODMHSAS and Title 43A, and that CAAIR does not provide "treatment" (as defined by statute) to its clients. CAAIR is a long-term recovery program that provides legitimate and desperately needed services for its clients, and Simmons therefore denies the remaining allegations in paragraph 32.

33.      In fact, drug and alcohol treatment was never the intended purpose of C.A.A.I.R. Rather, C.A.A.I.R. was started by defendant Wilkerson, a former executive at Peterson Farms, Inc. ("Peterson"), a chicken processing company acquired by Simmons in 2008; by Rodney Dunnam, also a former executive at Peterson; and by Louise Dunnam, a purported HR specialist. None of these founders had any background in drug and alcohol treatment. C.A.A.I.R.'s purpose was and is to provide income to itself and its founders while providing cheap labor to third-party agricultural interests affiliated with C.A.A.I.R. C.A.A.I.R.'s business model is to locate and control vulnerable persons, many of whom are desperately in need of meaningful treatment; compel them to work fulltime for Simmons Foods, Simmons Pet Food, and other corporations with whom C.A.A.I.R. contracts; and keep all of their wages. C.A.A.I.R. calls this forced labor "treatment" while denying its patients any semblance of actual psychiatric or medical care.

**ANSWER:** Simmons admits CAAIR is a recovery program founded by Janet Wilkerson, Donald Wilkerson, Rodney Dunnam, and Louise Dunnam. Simmons denies the remaining allegations in paragraph 33.

34.      Many residents arrive at C.A.A.I.R. by way of Oklahoma's drugs courts. This stream of forced laborers is procured by C.A.A.I.R.'s uniform misrepresentations that it is a legitimate treatment facility. Once clients are sent to C.A.A.I.R. for supposed treatment, C.A.A.I.R.

immediately denies them any treatment and instead sends them to work for private corporations. The work performed for these third-parties, including Simmons Foods and Simmons Pet Food, is grueling and frequently dangerous. The putative class members, including both Named Plaintiffs, who comprise C.A.A.I.R.'s residents regularly work over 40 hours a week at Simmons Foods and Simmons Pet Food facilities. They receive no wages for this work, let alone premium wages for overtime worked. Instead, the Simmons defendants make donations to C.A.A.I.R. in return for the free labor and/or pays C.A.A.I.R. a discounted rate for the work performed, and C.A.A.I.R. keeps all such compensation.

**ANSWER:** Simmons admits many of CAAIR's clients are referred by Oklahoma drug courts, and the clients are not paid wages for the work they perform in the program. Simmons denies the remaining allegations in paragraph 34.

35.     C.A.A.I.R.'s mistreatment of it [sic] residents does not stop with forced labor for no pay. When putative-class-member-workers are injured they are not provided with adequate, or often any, medical care and are instead ordered to work while injured. C.A.A.I.R. staff, as well as staff at Simmons Foods and Simmons Pet Food facilities, threaten to send the putative class members to prison if their work is deemed unsatisfactory or if they complain that they cannot work due to injuries. C.A.A.I.R. even files workers compensation claims on behalf of its injured residents, and then keeps every penny paid for such claims. Defendant Wilkerson has openly admitted to this conduct, publicly stating: "That's the way it works." "Yes, we did keep [the workers compensation money of clients]," Wilkerson stated. "Right, wrong or indifferent, that's what happened."

**ANSWER:** Simmons denies the allegations in paragraph 35.

36.     Defendants are and were joint and co-employers of Plaintiffs and all C.A.A.I.R. residents because, inter alia, all defendants direct, control, and supervise the work performed by these employees; these employees' work is an integral part of the defendants' businesses; and the defendants control the employment conditions of these employees.

**ANSWER:** Simmons denies the allegations in paragraph 36.

37.     Defendants acted in concert to engage in the conduct complained of herein by virtue of mutual arrangements and contracts to provide labor for the production of agricultural products for commerce, to withhold wages, and to hold Named Plaintiffs and all C.A.A.I.R. residents in involuntary servitude.

**ANSWER:** Simmons denies the allegations in paragraph 37.

38.     Defendant Wilkerson is chief executive officer of C.A.A.I.R., which is an enterprise engaged in and affecting interstate commerce by virtue of its provision of labor to defendants Simmons Foods and Simmons Pet Food, which manufacture products for interstate commerce, and by virtue of its transportation of that labor across state lines. As C.A.A.I.R.'s CEO, defendant Wilkerson is employed by and is associated with C.A.A.I.R. Further, as C.A.A.I.R.'s CEO, Ms. Wilkerson is responsible for devising and implementing C.A.A.I.R. policy, a fundamental and essential component of which is involuntary servitude, a racketeering activity under 18 U.S.C. § 1961. Defendant Wilkerson therefore conducts the affairs of C.A.A.I.R. through a pattern of racketeering activity, which is, in fact, the basis of C.A.A.I.R.'s entire business model.

> **ANSWER:** Simmons admits Janet Wilkerson is CAAIR's CEO, and Simmons makes work opportunities available to help CAAIR fulfill its charitable mission and to help CAAIR clients break the self-destructive cycle of addiction, crime, and incarceration. Simmons denies the remaining allegations in paragraph 38.

39.     Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food conspire with defendant Wilkerson to engage in this conduct by executing explicit agreements and contracts for the provision of involuntary labor, agreeing to withhold wages from C.A.A.I.R. residents, transmitting earned wages directly to C.A.A.I.R., receiving labor transported across state lines by C.A.A.I.R., and operating businesses which substantially rely on unpaid, unlawful labor.

**ANSWER:** Simmons denies the allegations in paragraph 39.

**A.  Facts Related to Willfulness of Violations**

40.    The violations of law described herein were and are knowing, intentional, and will-ful. Defendants have engaged, and continue to engage, in the conduct alleged herein by systematic, calculated policy. Defendants are advised by sophisticated and informed legal counsel and human resources professionals who were, or should have been, aware of the legal requirements violated by the conduct alleged herein. Defendants therefore acted in knowing violation of the law.

**ANSWER:** Simmons denies the allegations in paragraph 40.

## IV.   COLLECTIVE ACTION ALLEGATIONS

**A.  FLSA Class Definition**

41.    Named Plaintiffs bring causes of action one and two as a nationwide opt-in collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the following class (the "FLSA Class"):

> All persons who, at any time from three years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 41 does not contain any factual allegations to which a response is warranted. Simmons denies that any collective or class is appropriate for these claims.

42.    The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from defendants' records, and potential class members may easily and quickly be notified of the pendency of this action.

**ANSWER:** Paragraph 42 does not contain any factual allegations to which a response is warranted. Simmons denies a basis for providing notice exists.

**B.  FLSA Requirements**

43.     Named Plaintiffs and the members of the putative FLSA Class are or were, at all relevant times, employees engaged in commerce or the production of goods for commerce, and are or were employed by enterprises (namely, C.A.A.I.R., Simmons Foods, and Simmons Pet Food) engaged in commerce or the production of goods for commerce as contemplated by 29 U.S.C. § 206(a) and 207(a).

**ANSWER:** Simmons denies the allegations in paragraph 43.

44.     Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Rodney Dunham and Louise Dunham are "employers" as that term is defined by 29 U.S.C. § 203(d); and are "enterprises engaged in commerce or in the production of goods for commerce" as that term is defined by 29 U.S.C. § 203(s)(1)(A), including by virtue of respective annual gross volumes of sales and business exceeding $500,000.

**ANSWER:** Simmons denies the allegations in paragraph 44.

## V.    CLASS ACTION ALLEGATIONS

### A.    Rule 23 Class Definitions

#### 1.   The RICO Rule 23 Class

45.     None of the exemptions from the FLSA's minimum wage and overtime require-ments, including those contained in 29 U.S.C. § 213, apply to Named Plaintiffs or to the mem-bers of the FLSA Class.

**ANSWER:** Simmons denies the allegations in paragraph 45.

46.     Named Plaintiffs bring causes of action three and four as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "RICO Rule 23 Class"):

> All persons who, at any time from four years prior to the filing of this action
> through the trial date, have performed work at any Simmons Foods or Simmons
> Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 46 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims.

2. **The Oklahoma Human Trafficking Rule 23 Class**

47.     Named Plaintiffs bring cause of action five as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Oklahoma Human Trafficking Rule 23 Class"):

> All persons who, at any time from five years prior to the filing of this action
> through the trial date, have performed work at any Simmons Foods or Simmons
> Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 47 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims.

3. **The Arkansas Wage Law Rule 23 Class**

48.     Named Plaintiffs bring causes of action six and seven as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Arkansas Wage Law Rule 23 Class"):

> All persons who, at any time from three years prior to the filing of this action
> through the trial date, have performed work at any Simmons Foods or Simmons
> Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 48 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims.

4. **The Missouri Wage Law Rule 23 Class**

49.     Named Plaintiffs bring causes of action eight and nine as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Missouri Wage Law Rule 23 Class"):

All persons who, at any time from two years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 49 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims.

### 5. **Missouri Unjust Enrichment Rule 23 Class**

50.     Named Plaintiffs bring cause of action ten as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Missouri Unjust Enrichment Rule 23 Class"):

All persons who, at any time from five years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 50 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims.

### 6. **The Oklahoma Wage Law Rule 23 Class**

51.     Named Plaintiffs bring causes of action eleven as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "Oklahoma Wage Law Rule 23 Class"):

All persons who, at any time from two years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 51 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims.

### 7. **The Trafficking Victims Protection Reauthorization Act Rule 23 Class**

52.     Named Plaintiffs bring causes of action twelve, thirteen and fourteen as a class action pursuant to FRCP 23 on behalf of themselves and the following class (the "TVPRA Class"):

All persons who, at any time from ten years prior to the filing of this action through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 52 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims.

## B.   Propriety of Certification Under FRCP 23(a)

### 1.   Numerosity

53.    The members of the RICO, Oklahoma Human Trafficking, Arkansas Wage Law, Missouri Wage Law, and Missouri Unjust Enrichment Rule 23 Classes are so numerous that joinder of all members is impracticable. The exact number is currently unknown to Named Plaintiffs, but each of these classes likely includes between 800 and 1,500 putative class members.

**ANSWER:** Paragraph 53 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims or that the numerosity requirement is met.

### 2. Adequacy

54.    Named Plaintiffs will fairly and adequately represent the interests of the RICO, Oklahoma Human Trafficking, Arkansas Wage Law, Missouri Wage Law, and Missouri Unjust Enrichment Rule 23 Classes. Named Plaintiffs are members of these classes and were subject to the same policies and practices as the other members of those classes. Named Plaintiffs have retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class action litigation. Named Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the various classes and have the financial resources to do so. Neither Named Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed classes.

**ANSWER:** Paragraph 54 does not contain any factual allegations to which a response

is warranted. Simmons denies that any class is appropriate for these claims or that the adequacy requirement is met.

### 3. Commonality

55. There are numerous question of law and fact common to the RICO, Oklahoma Human Trafficking, Arkansas Wage Law, Missouri Wage Law, and Missouri Unjust Enrichment Rule 23 Classes. These questions include, but are not limited to, the following: (1) Whether the practices complained of herein are unlawful; (2) whether the practices alleged herein to be in violation of the FLSA were willful; (3) whether the actions complained of herein constitute holding persons to involuntary servitude; and, if so, (4) whether defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food conspired with defendant Wilkerson to conduct the affairs of C.A.A.I.R. through a pattern of racketeering activity.

**ANSWER:** Paragraph 55 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate for these claims or that the commonality requirement is met.

### C. Propriety of Certification Under FRCP 23(b)(3)

#### 1. Predominance

56. Questions of law and fact common to class members predominate over any questions affecting only individual members. The predominant issues in this litigation will be whether the common practices of the defendants violate the FLSA, the RICO Act, the TVPRA and the laws of Oklahoma, Arkansas, and Missouri. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Moreover, there are no unusual difficulties likely to be encountered in the management of this case as a class action.

**ANSWER:** Paragraph 56 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate in this this case. Simmons alleges that individual questions will predominate.

### 2. **Superiority**

57.     The class action mechanism is superior to any alternatives that might exist for the fair and efficient adjudication of these claims. Prosecution of this case as a class action will permit a large number of injured parties to pursue their common claims in a single forum, at the same time, which will promote efficiency, prevent duplication of evidence and efforts, and preserve judicial resources and the resources of the parties. A class action will avoid potentially inconsistent results in numerous individual trials or other judicial actions. Further, class treatment is the only realistic means by which Named Plaintiffs and the proposed class members can effectively litigate against a large, well-represented corporate entities like defendants. In the absence of a class action, the defendants will be unjustly enriched by the retention of the fruits and benefits of their unlawful conduct. A multiplicity of repetitive individual actions would also place an enormous burden on the courts.

**ANSWER:** Paragraph 56 does not contain any factual allegations to which a response is warranted. Simmons denies that any class is appropriate in this case.

## VI.     <u>CAUSES OF ACTION</u>

**FIRST CAUSE OF ACTION**
**Failure to Pay Minimum Wages in Violation of the FLSA**
**29 U.S.C. § 206(a)**
**(Brought by Named Plaintiffs on Behalf of the FLSA Class Against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, and Louise Dunham)**

62.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.[1]

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

---

[1] The Second Amended Complaint does not have any paragraphs numbered 58–61.

63.     At all times material herein, the FLSA Named Plaintiffs and each member of the FLSA Class have been entitled to the rights, protections, and benefits provided by the FLSA, 29 U.S.C. § 201, *et seq.*

**ANSWER:** Simmons denies the allegations in paragraph 63.

64.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Rodney Dunham and Louise Dunham have violated the FLSA, including 29 U.S.C. § 206(a), by failing to pay minimum wages.

**ANSWER:** Simmons denies the allegations in paragraph 64.

65.     As a direct and proximate result of these defendants's [sic] failure to pay minimum wages in violation of the FLSA, Named Plaintiffs and the members of the FLSA Class have been injured and have sustained damages, including lost compensation, in an amount to be proved at trial.

**ANSWER:** Simmons denies the allegations in paragraph 65.

66.     Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have acted neither in good faith nor with reasonable grounds to believe that their actions complied with the FLSA. Accordingly, Named Plaintiffs and the FLSA Class are entitled to recover liquidated damages pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find that these defendants acted in good faith, Named Plaintiffs and the FLSA Class are entitled to an award of pre-judgment interest at the applicable legal rate.

**ANSWER:** Simmons denies the allegations in paragraph 66.

67.     Accordingly, pursuant to 29 U.S.C. § 216(b), Named Plaintiffs seek, on behalf of themselves and the FLSA Class, damages, liquidated damages, interest, attorney's fees, costs, and such other legal and equitable relief as the Court deems just and proper.

**ANSWER:** Paragraph 67 does not contain any factual allegations to which a response

is required. Simmons denies that Plaintiffs are entitled to the relief requested.

## SECOND CAUSE OF ACTION
### Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207(a) (Brought by Named Plaintiffs on Behalf of the FLSA Class Against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, and Louise Dunham)

68.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

69.     At all times material herein, the FLSA Named Plaintiffs and each member of the FLSA Class have been entitled to the rights, protections, and benefits provided by the FLSA, 29 U.S.C. § 201, *et seq.*

**ANSWER:** Simmons denies the allegations in paragraph 69.

70.     As alleged herein, Named Plaintiffs and the members of the FLSA class have worked, and continue to work, on a regular basis, more than 40 hours a week.

**ANSWER:** Simmons denies the allegations in paragraph 70.

71.     As alleged herein defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have failed to pay Named Plaintiffs and the members of the FLSA Class any compensation when they work more than 40 hours in a week, and have thereby violated the FLSA, including 29 U.S.C. § 207(a).

**ANSWER:** Simmons admits Defendants did not pay Plaintiffs any wages because they were not employees. Simmons denies the remaining allegations in paragraph 71.

72.     As a direct and proximate result of these defendants' failure to pay overtime wages in violation of the FLSA, Named Plaintiffs and the members of the FLSA Class have been injured and have sustained damages, including lost compensation, in an amount to be proved at trial.

**ANSWER:** Simmons denies the allegations in paragraph 72.

73.      Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have acted neither in good faith nor with reasonable grounds to believe that their actions complied with the FLSA. Accordingly, Named Plaintiffs and the FLSA Class are entitled to recover liquidated damages pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find that these defendants acted in good faith, Named Plaintiffs and the FLSA Class are entitled to an award of pre-judgment interest at the applicable legal rate.

**ANSWER:** Simmons denies the allegations in paragraph 73.

74.      Accordingly, pursuant to 29 U.S.C. § 216(b), Named Plaintiffs seek, on behalf of themselves and the FLSA Class, damages, liquidated damages, interest, attorney's fees, costs, and such other legal and equitable relief as the Court deems just and proper.

**ANSWER:** Paragraph 74 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs are entitled to the relief requested.

### THIRD CAUSE OF ACTION
**Violation of the RICO Act, 18 U.S.C. §§ 1961 and 1962I**
**(Brought by Named Plaintiffs on Behalf of the RICO Rule 23 Class Against Defendant Janet Wilkerson)**

75.      Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

76.      As alleged herein, defendant Janet Wilkerson has conducted the affairs of C.A.A.I.R. through a pattern of racketeering activity (namely, holding persons in involuntary servitude) in violation of 18 U.S.C. § 1962I.

**ANSWER:** Simmons denies the allegations in paragraph 76.

77.      As a direct and proximate result of this conduct, Named Plaintiffs and the members

of the RICO Rule 23 Class have been injured in an amount to be proved at trial.

**ANSWER:** Simmons denies the allegations in paragraph 77.

78.     Accordingly, pursuant to 18 U.S.C. § 1964I, Named Plaintiffs seek treble damages, attorney's fees, and costs on behalf of themselves and the members of the RICO Rule 23 Class.

**ANSWER:** Paragraph 78 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs are entitled to the relief requested.

### FOURTH CAUSE OF ACTION
Violation of the RICO Act, 18 U.S.C. §§ 1961 and 1962(d)
(Brought by Named Plaintiffs on Behalf of the RICO Rule 23 Class Against
Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)

79.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

80.     As alleged herein, defendant Janet Wilkerson has conducted the affairs of C.A.A.I.R. through a pattern of racketeering activity (namely, holding persons in involuntary servitude) in violation of 18 U.S.C. § 1962I.

**ANSWER:** Simmons denies the allegations in paragraph 80.

81.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have conspired with defendant Wilkerson in this conduct in violation of 18 U.S.C. § 1962(d).

**ANSWER:** Simmons denies the allegations in paragraph 81.

82.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the RICO Rule 23 Class have been injured.

**ANSWER:** Simmons denies the allegations in paragraph 82.

83.     Accordingly, pursuant to 18 U.S.C. § 1964I, Named Plaintiffs seek treble damages, attorney's fees, and costs on behalf of themselves and the members of the RICO Rule 23 Class.

**ANSWER:** Paragraph 83 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs are entitled to the relief requested.

### FIFTH CAUSE OF ACTION
**Human Trafficking for Labor, in Violation of 21 O.S. § 748 And 21 O.S. § 748.2 (Brought by Named Plaintiffs on Behalf of the Rule 23 Oklahoma Human Trafficking Class Against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovell)**

84.     Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

85.     Defendants enticed, harbored, maintained, transported, provided or obtained Plaintiffs and Putative Class Members through deception, force, fraud, threat or coercion for the purposes of engaging Plaintiffs and Putative Class Members in labor.

**ANSWER:** Simmons denies the allegations in paragraph 85.

86.     Defendants benefited financially from participation in a venture that has engaged in an act of trafficking Plaintiffs and Putative Class Members for labor.

**ANSWER:** Simmons denies the allegations in paragraph 86.

87.     Plaintiffs and Putative Class Members suffered harm due to the illegal acts of Defendants.

**ANSWER:** Simmons denies the allegations in paragraph 87.

88.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Oklahoma Human Trafficking Rule 23 Class have been injured in an amount to be proved

at trial.

> **ANSWER:** Simmons denies the allegations in paragraph 88.

89.     The conduct of defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food as alleged herein has resulted in serious damage to the public welfare; has resulted in substantial profit to defendants in excess of $10,000,000; has been ongoing for an extended period exceeding eight years; was undertaken with the full knowledge of defendants; and was perpetrated by a substantial number of defendants' employees.

> **ANSWER:** Simmons denies the allegations in paragraph 89.

90.     Accordingly, pursuant to Okl. St. § 748.2(B), Named Plaintiffs seek actual damages, punitive damages, attorney's fees, and costs on behalf of themselves and the members of the Oklahoma Human Trafficking Rule 23 Class.

> **ANSWER:** Paragraph 90 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs are entitled to the relief requested.

**SIXTH CAUSE OF ACTION**
**Failure to Pay Minimum Wages in Violation of Arkansas Law**
**A.C.A. § 11-4-210(a) (Brought by Named Plaintiffs on Behalf of Arkansas**
**Wage Law Rule 23 Class Against Defendants C.A.A.I.R., Simmons Foods,**
**and Simmons Pet Food)**

91.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

> **ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

92.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Arkansas Wage Law Rule 23 Class minimum wages in violation of A.C.A. § 11-4-210(a).

> **ANSWER:** Simmons admits it did not pay Plaintiffs any wages because they were not

employees. Simmons denies the remaining allegations of paragraph 92.

93.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Arkansas Wage Law Rule 23 Class have been injured in an amount to be proved at trial.

**ANSWER:** Simmons denies the allegations in paragraph 93.

94.     Accordingly, pursuant to A.C.A. § 11-4-218(a), Named Plaintiffs seek damages, liquidated (double) damages, attorney's fees, and costs on behalf of themselves and the members 25 of the Arkansas Wage Law Rule 23 Class.

**ANSWER:** Paragraph 94 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs are entitled to the relief requested.

## SEVENTH CAUSE OF ACTION
### Failure to Pay Overtime Wages in Violation of
### Arkansas Law A.C.A. § 11-4-211(a)
### (Brought by Named Plaintiffs on Behalf of Arkansas Wage Law Rule 23 Class
### Against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)

95.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

96.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Arkansas Wage Law Rule 23 Class overtime wages in violation of A.C.A. § 11-4-211(a).

**ANSWER:** Simmons admits it did not pay Plaintiffs any wages because they were not employees. Simmons denies the remaining allegations of paragraph 96.

97.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Arkansas Wage Law Rule 23 Class have been injured in an amount to be proved at trial.

**ANSWER:** Simmons denies the allegations in paragraph 97.

98.     Accordingly, pursuant to A.C.A. § 11-4-218(a), Named Plaintiffs seek damages, liquidated (double) damages, attorney's fees, and costs on behalf of themselves and the members of the Arkansas Wage Law Rule 23 Class.

**ANSWER:** Paragraph 98 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs are entitled to the relief requested.

**EIGHTH CAUSE OF ACTION**
**Failure to Pay Minimum Wages in Violation of**
**Missouri Law § 290.502 R.S.Mo.**
**(Brought by Named Plaintiffs on Behalf of Missouri Wage Law Rule 23 Class**
**Against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)**

99.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

100.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Missouri Wage Law Rule 23 Class minimum wages in violation of § 290.502 R.S.Mo.

**ANSWER:** Simmons admits it did not pay Plaintiffs any wages because they were not employees. Simmons denies the remaining allegations of paragraph 100.

101.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Missouri Wage Law Rule 23 Class have been injured in an amount to be proved at trial.

**ANSWER:** Simmons denies the allegations in paragraph 101.

102.     Accordingly, pursuant to § 290.527 R.S.Mo., Named Plaintiffs seek damages, liquidated (double) damages, attorney's fees, and costs on behalf of themselves and the members of the Arkansas Wage Law Rule 23 Class.

**ANSWER:** Paragraph 102 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs are entitled to the relief requested.

### NINTH CAUSE OF ACTION
**Failure to Pay Overtime Wages in Violation of**
**Missouri Law § 290.505 R.S.Mo.**
**(Brought by Named Plaintiffs on Behalf of Missouri Wage Law Rule 23 Class**
**Against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food)**

103.    Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

104.    As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Missouri Wage Law Rule 23 Class overtime wages in violation of § 290.505 R.S.Mo.

**ANSWER:** Simmons admits it did not pay Plaintiffs any wages because they were not employees. Simmons denies the remaining allegations of paragraph 104.

105.    As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Missouri Wage Law Rule 23 Class have been injured in an amount to be proved at trial.

**ANSWER:** Simmons denies the allegations in paragraph 105.

106.    Accordingly, pursuant to § 290.527 R.S.Mo., Named Plaintiffs seek damages, liquidated (double) damages, attorney's fees, and costs on behalf of themselves and the members of the Arkansas Wage Law Rule 23 Class.

**ANSWER:** Paragraph 106 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs are entitled to the relief requested.

## TENTH CAUSE OF ACTION
### Unjust Enrichment in Violation of Missouri Common Law
### (Brought by Named Plaintiffs on Behalf of Missouri Unjust Enrichment Rule
### 23 Class Against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet
### Food)

107.    Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

108.    As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have failed to pay Named Plaintiffs and the Members of the Missouri Unjust Enrichment Class wages for their hours worked.

**ANSWER:** Simmons admits it did not pay Plaintiffs any wages because they were not employees. Simmons denies the remaining allegations of paragraph 108.

109.    As a result of this conduct, Named Plaintiffs and the Members of the Missouri Unjust Enrichment Rule 23 Class were forced to forfeit money for the benefit of these defendants, and these defendants thus knowingly and willingly obtained monetary benefits to which they were not entitled.

**ANSWER:** Simmons denies the allegations in paragraph 109.

110.    Under these circumstances, it would be inequitable for these defendants to retain these monetary benefits at the expense of Named Plaintiffs and the Members of the Missouri Unjust Enrichment Rule 23 Class.

**ANSWER:** Simmons denies the allegations in paragraph 110.

111.    By engaging in this conduct, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have been unjustly enriched at the expense of Named Plaintiffs and the Members of the Missouri Unjust Enrichment Rule 23 Class, and are required, in equity and good conscience,

to compensate said plaintiffs for harm suffered as a result of these actions.

**ANSWER:** Simmons denies the allegations in paragraph 111.

112.     As a direct and proximate result of this unjust enrichment, Named Plaintiffs and the members of the Missouri Unjust Enrichment Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by of the benefit conferred by said plaintiffs.

**ANSWER:** Simmons denies the allegations in paragraph 112.

### ELEVENTH CAUSE OF ACTION
**Oklahoma Protection of Labor Act—Failure to Pay Unpaid Wages and
Minimum Wage in Violation of 40 O.S. § 161, *et seq.***

113.     Plaintiffs and Putative Class Members incorporate the preceding paragraphs herein by reference.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

114.     Defendants are employers covered by and subject to the Oklahoma Protection of Labor Act, 40 O.S. § 161, et seq. and the Oklahoma Minimum Wage Act, 40 O.S. § 197.1, *et seq.*

**ANSWER:** Simmons admits it is an employer but denies it employed Plaintiffs or any other CAAIR clients. Simmons denies the remaining allegations in paragraph 114.

115.     Defendants had a statutory duty under Oklahoma law to compensate Plaintiff and Putative Class Members a regular hourly wage for all hours worked.

**ANSWER:** Simmons denies the allegations in paragraph 115.

116.     Defendants' failure to pay all wages due to Plaintiffs and Putative Class Members was willful. More specifically, Defendant's wrongful acts violate 40 O.S. § 165.3 (B).

**ANSWER:** Simmons denies the allegations in paragraph 116.

117.     Defendants' willful failure to pay all wages due to Plaintiff and Putative Class Mem-

bers, in violation of 40 O.S. § 165.3 and 40 O.S. § 197.9, permits Plaintiff and Putative Class Members to recover liquidated damages in addition to their unpaid wages, penalties, interest, expenses, reasonable attorneys' fees and costs.

**ANSWER:** Simmons denies the allegations in paragraph 117.

## TWELFTH CAUSE OF ACTION
**Forced Labor in Violation of the Trafficking Victims Protection Act of 2000, as Reauthorized through the Trafficking Victims Protection Reauthorization Act Of 2003, 2005, 2008 And 2013 ("TVPRA")**
**(18 U.S.C. §§ 1589(A) and 1595)**

118.    Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

119.    Plaintiffs and Putative Class Members bring this claim for relief under the private cause of action for violation of the TVPRA (§ 1589(a)), which prohibits forced labor.

**ANSWER:** Paragraph 119 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs have stated or can state an actionable claim for relief under the TVPRA.

120.    Under 18 U.S.C. § 1589(a), it is unlawful to "knowingly provid[e] or obtain[] the labor or services of a person ... (1) by means of force, threats of force, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

**ANSWER:** Simmons admits paragraph 120 accurately quotes 18 U.S.C. § 1589(a).

Simmons denies it or any other Defendant has violated the provision.

121.    As alleged herein, the Defendants held Plaintiffs and the Putative Class Members in a state of forced labor, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of abuse of law or legal process; and/or a scheme, plan, or pattern intended to cause Plaintiffs and the Putative Class Members to believe that if they did not perform the labor or services, they would suffer serious harm, including psychological, financial, or reputational harm, or incarceration, in violation of the forced labor provision of the TVPRA, 18 U.S.C. § 1589(a).

**ANSWER:** Simmons denies the allegations in paragraph 121.

122.    Defendants executed a scheme, plan, or pattern (i.e., a forced labor camp billed as a drug and alcohol rehabilitation program) intended to cause Plaintiffs and the Putative Class Members to believe that if they did not continue to work for Defendants, they would suffer serious harm by threats of incarceration and by controlling their living conditions. Such a scheme is prohibited by 18 U.S.C. § 1589(a)(1) and (2).

**ANSWER:** Simmons denies the allegations in paragraph 122.

123.    Under 18 U.S.C. § 1589(b), it is unlawful to "knowingly benefit[], financially or by receiving anything of value, from participating in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any such means."

**ANSWER:** Simmons admits paragraph 123 accurately quotes 18 U.S.C. § 1589(b). Simmons denies it or any other Defendant has violated the provision.

124.    As alleged herein, Defendants knowingly benefited, financially or by receiving something of value, from participation in a venture that violated 18 U.S.C. § 1589(a), knowing or in reckless disregard of the fact that the venture was engaging in activity that violated § 1589(a).

**ANSWER:** Simmons denies the allegations in paragraph 124.

125.     C.A.A.I.R. benefitted financially by receiving funding from Simmons Foods and others in connection with its maintenance of an illegal forced labor program. Simmons Foods benefitted financially from this enterprise by utilizing the cheap and captive, and unlawful, work force provided by C.A.A.I.R.

**ANSWER:** Simmons denies the allegations in paragraph 125.

126.     The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

**ANSWER:** Paragraph 119 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs have stated or can state an actionable claim for relief under the TVPRA.

127.     As a direct and proximate result of these actions, Plaintiffs and the Putative Class Members have suffered economic and non-economic damages.

**ANSWER:** Simmons denies the allegations in paragraph 127.

128.     Plaintiffs and the Putative Class are therefore entitled to recover damages to account for the full value of their losses, including but not limited to emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** Simmons denies the allegations in paragraph 128.

**THIRTEENTH CAUSE OF ACTION**
**Involuntary Servitude in Violation of TVPRA**
**(18 U.S.C. §§ 1584 and 1595)**

129.     Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:** Simmons incorporates its answers to all preceding paragraphs by reference as though fully set forth herein.

130.    Plaintiffs and Putative Class Members bring this claim for relief under the private cause of action for violation of the TVPRA (§ 1584), which prohibits involuntary servitude.

**ANSWER:** Paragraph 130 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs have stated or can state an actionable claim for relief under the TVPRA.

131.    Under 18 U.S.C. § 1584(a), it is unlawful to "knowingly and willfully hold[] to involuntary servitude or sell[] into any condition of involuntary servitude, any other person for any term, or bring[] within the United States any person so held."

**ANSWER:** Simmons admits paragraph 131 accurately quotes 18 U.S.C. § 1584(a). Simmons denies it or any other Defendant has violated the provision.

132.    "Involuntary servitude" includes "a condition of servitude induced by means of... any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or... the abuse or threatened abuse of the legal process." 22 U.S.C. § 7102(5).

**ANSWER:** Simmons admits paragraph 132 accurately quotes 22 U.S.C. § 7102(5). Simmons denies Plaintiffs were held in involuntary servitude.

133.    As alleged herein, the Defendants held Plaintiffs and the Putative Class Members in involuntary servitude, under false pretenses of a "rehabilitation" program, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of serious harm, including incarceration.

**ANSWER:** Simmons denies the allegations in paragraph 133.

134.    Defendants' threats and coercion caused Plaintiffs and the Putative Class Members to reasonably believe that they had no alternative but to continue to work for Defendants.

**ANSWER:** Simmons denies the allegations in paragraph 134.

135.    The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

**ANSWER:** Paragraph 135 does not contain any factual allegations to which a response is required. Simmons denies that Plaintiffs have stated or can state an actionable claim for relief under the TVPRA.

136.    As a direct and proximate result of these actions, Plaintiffs and the Putative Class Members have suffered economic and non-economic damages.

**ANSWER:** Simmons denies the allegations in paragraph 136.

137.    Plaintiffs and the Putative Class are therefore entitled to recover damages to account for the full value of their losses, including but not limited to emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** Simmons denies the allegations in paragraph 137.

### FOURTEENTH CAUSE OF ACTION
**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of the TVPRA (18 U.S.C. §§ 1590 and 1595)**

138.    Plaintiffs and Putative Class Members reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

139.    Under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit[], harbor[],transport[], provide[], or obtain[] by any means, any person for [peonage, slavery, involuntary servitude, or forced labor]."

**ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

140.    As alleged herein, the Defendants knowingly recruited, harbored, transported, provided and/or obtained Plaintiffs and the Putative Class Members, bringing them to the

C.A.A.I.R. facility, under false pretenses of a "rehabilitation" program, for the purpose of involuntary servitude and forced labor in violation of the trafficking provision of the TVPRA, 18 U.S.C. § 1590(a).

**ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

141.     As alleged herein, Defendants attempted to and did violate the prohibitions against involuntary servitude and forced labor set forth in 18 U.S.C. §§ 1584(a) and 1589(a) and (b).

**ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

142.     The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

**ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

143.     As a direct and proximate result of these actions, Plaintiffs and the Putative Class Members have suffered economic and non-economic damages.

**ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

144.     Plaintiffs and the Putative Class are therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

**ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

145.     Plaintiffs and the Putative Class are therefore entitled to recover damages to account for the full value of their losses, including but not limited to emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

### FIFTEENTH CAUSE OF ACTION
**Involuntary Servitude and Forced Labor in Violation of the Thirteenth
Amendment to the United States Constitution
(Pursuant to 42 U.S.C. § 1983)**

146.     Plaintiffs and Putative Class Members reallege and incorporate by reference each

and every allegation contained in the preceding paragraphs as if fully set forth herein.

      **ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

147.     The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1.

      **ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

148.     Shortly after its passage, the Supreme Court held that the Amendment "is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." *Civil Rights Cases*, 109 U.S. 3, 20, 3 S.Ct. 18, 27 L.Ed. 835 (1883).

      **ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

149.     The Thirteenth Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery. *See Slaughter–House Cases*, 83 U.S. 36, 69, 16 Wall. 36, 21 L.Ed. 394 (1872) ("The word servitude is of larger meaning than slavery...."); *see also Pollock v. Williams*, 322 U.S. 4, 17–18, 64 S.Ct. 792, 88 L.Ed. 1095 (1944) (noting that the "undoubted aim of the Thirteenth Amendment ... was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States").

      **ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

150.     As alleged herein, the Defendants held Plaintiffs and the Putative Class Members in involuntary servitude, under false pretenses of a "rehabilitation" program, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of serious harm, including incarceration, in violation of the Thirteenth Amendment.

      **ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

151.     As a direct and proximate result of these actions, Plaintiffs and the Putative Class Members have suffered economic and non-economic damages.

     **ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

152.     Plaintiffs and the Putative Class are therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

     **ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

153.     Plaintiffs and the Putative Class are therefore entitled to recover damages to account for the full value of their losses, including but not limited to emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

     **ANSWER:** This claim has been dismissed. Dkt. #115. No answer is required.

## VII.  **PRAYER FOR RELIEF**

154.     WHEREFORE, Named Plaintiffs, on behalf of themselves and the members of the FLSA Class, pray for relief as follows:

     **ANSWER:** Paragraph 154 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

155.     Designation this action as a collective action on behalf of the proposed FLSA Class, and prompt issuance of notice to all class members apprising them of the pendency of this action and their right to join pursuant to 29 U.S.C. § 216(b);

     **ANSWER:** Paragraph 155 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

156.     A declaration that defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food are financially responsible for sending notice to all members of the FLSA Class;

**ANSWER:** Paragraph 156 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

157.     Designation of Smolen, Smolen & Roytman and Aiman-Smith & Marcy as the attorneys representing the putative collective action plaintiffs;

**ANSWER:** Paragraph 157 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

158.     Declaratory judgment that the practices complained of herein are unlawful under the FLSA;

**ANSWER:** Paragraph 158 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

159.     An award of unpaid minimum and overtime wages and liquidated damages to be paid by defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food to the FLSA Class;

**ANSWER:** Paragraph 159 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

160.     Costs and expenses of this action, including reasonable expert and attorney's fees;

**ANSWER:** Paragraph 160 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

161.     Pre-judgment and post-judgment interest, as provided by law; and

**ANSWER:** Paragraph 161 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

162.     Any and all further legal and equitable relief deemed necessary, just, and proper by this Court.

**ANSWER:** Paragraph 162 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

163.     And WHEREFORE, Named Plaintiffs, on behalf of themselves and all members of the Rule 23 Classes, pray for relief as follows:

**ANSWER:** Paragraph 163 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

164.     Certification of this action as a class action pursuant to FRCP 23;

**ANSWER:** Paragraph 164 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

165.     Designation of Named Plaintiffs as representatives of the Rule 23 Classes;

**ANSWER:** Paragraph 165 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

166.     That defendants, at their own expense, be ordered to provide full and adequate notice as required in class actions to all members of the Rule 23 Classes;

**ANSWER:** Paragraph 166 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

167.     That defendants be ordered to pay all amounts owed to the Rule 23 Classes arising out of the actions complained of herein, including wages, economic and non-economic damages, statutory penalties, liquidated damages, punitive damages, interest, and costs;

**ANSWER:** Paragraph 167 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

168.     That this Court determine, and provide declaratory judgment, that the practices complained of herein were done willfully, knowingly, and intentionally;

**ANSWER:** Paragraph 168 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

169.     For attorney's fees as provided by statutory and common law;

**ANSWER:** Paragraph 169 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

170.     For such other legal and equitable relief as the Court may deem just and proper.

**ANSWER:** Paragraph 170 does not contain any factual allegations to which a response is warranted. Simmons denies that Plaintiffs are entitled to any of the relief they seek.

## AFFIRMATIVE DEFENSES AND AVOIDANCES

Simmons asserts the following affirmative defenses and avoidances:

1.     Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted.

2.     Plaintiffs' Second Amended Complaint fails to plead fraud with particularity.

3.     Plaintiffs' and putative class members' claims are barred by applicable statute of limitations, statutes of repose, and/or latches.

4.     Plaintiffs' and putative class members' claims are barred by waiver, estoppel, and/or release.

5.     Plaintiffs' and putative class members' claims are not appropriate for resolution via a class or collective action.

6.     Plaintiffs and putative class members entered the CAAIR program with full knowledge of what the program entailed and were free to leave at any time. Defendants did not coerce, much less unlawfully coerce, Plaintiffs and/or putative class members to provide labor.

7.     Neither Simmons nor any Simmons-affiliated entity has or had an employment relationship with Plaintiffs or putative class members during their time in the CAAIR program. Plaintiffs and putative class members performed work in the program without promise or expectation of compensation and solely for personal purposes.

8.      Plaintiffs' Second Amended Complaint fails to state a claim for punitive damages.

9.      Plaintiffs' and putative class members' claim for punitive damages are limited and capped by applicable provisions of federal and state law, including the United States Constitution and the Oklahoma, Arkansas and Missouri Constitutions.

10.     Plaintiffs' and putative class members' FLSA and state wage claims are barred to the extent any of the work performed was de minimis.

11.     To the extent Plaintiffs and/or putative class members seek to recover for personal injuries, their recovery is limited or barred by the doctrine of contributory or comparative negligence. Further, if Plaintiffs and/or putative class members are found to be employees, any claims for personal injuries are limited under applicable state workers' compensation laws. Any alleged damages for personal injury are barred or limited the extent they are the result of preexisting injuries or conditions or causes independent from Defendants.

12.     In the event Simmons is found liable to Plaintiffs, Simmons claims a setoff or credit for the value of all services, accommodations, goods and benefits provided to Plaintiffs, either directly or in conjunction with CAAIR.

13.     Plaintiffs and putative class members would be unjustly enriched and given a windfall if awarded any damages.

14.     Simmons acted in good faith and on reasonable grounds in determining that Plaintiffs and putative class members were not "employees" of Simmons during their time in the CAAIR program.

15.     Simmons did not willfully or recklessly violate the FLSA or state wage law.

16.     In the event Simmons is found liable to Plaintiffs, any such liability is based on a bona fide and reasonable dispute of fact and law.

17.     Plaintiffs and putative class members failed to mitigate their alleged damages. Their

recovery is limited and/or barred under the doctrine of avoidable consequences.

18.     Plaintiffs failed to join necessary and indispensable parties.

19.     Plaintiffs' claims against Simmons are barred by the doctrine of payment. the Simmons entities at which Plaintiffs and putative class members worked paid CAAIR competitive rates, well over minimum wage for Plaintiffs' and putative class members' labor.

20.     Plaintiffs' and putative class members' claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

21.     For Plaintiffs and putative class members currently in the CAAIR program pursuant to a drug court order, suspended or deferred sentence, or any other court-ordered program, their claims are barred under *Younger v. Harris*, 401 U.S. 37 (1971).

22.     Plaintiffs' claims are barred in whole or in part to the extent the work they performed falls within exemptions or exceptions provided under the FLSA or under Oklahoma, Arkansas, or Missouri minimum wage statutes. Simmons further invokes and is entitled to any exemptions or exceptions applicable to CAAIR.

23.     Plaintiffs' and putative class members' claims are barred by assumption of risk.

24.     Plaintiffs' and putative class members' claims are barred by the doctrine of judicial estoppel.

25.     Plaintiffs' and putative class members' claims are barred by the doctrine of consent (express or implied).

26.     If Plaintiffs and putative class members are determined to be employees of Simmons, their federal and state wage claims are barred by the doctrine of assignment, having assigned the hourly wages paid by Simmons to CAAIR.

27.     Plaintiffs' and putative class members' claims are barred as a matter of law because they amount to false claims.

28.      Simmons reserves the right to assert further affirmative defenses as they become evident through discovery and further investigation.

29.      Simmons adopts and incorporates by reference any defenses asserted by any other Defendant to the extent they are applicable to Simmons.

WHEREFORE, Simmons respectfully requests that the Court enter judgment in favor of Simmons, and against Plaintiffs, and further requests that the Court award Simmons such other relief as the Court deems just and proper, including its attorneys' fees and costs.

DATED: SEPTEMBER 25, 2019

Respectfully submitted,

*/s/Christopher S. Thrutchley*
Christopher S. Thrutchley, OBA No. 15859
John D. Russell, OBA No. 13343
Philip D. Hixon, OBA No. 19121
Justin A. Lollman, OBA No. 32051
GABLEGOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone: 918.595.4800
Facsimile: 918.595.4990

–and–

Amy M. Stipe, OBA No. 18361
GABLEGOTWALS
One Leadership Square, Suite 1500
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: 405.235.5500
Facsimile: 405.235.2875

COUNSEL FOR DEFENDANTS
SIMMONS FOODS, INC. AND
SIMMONS PET FOOD INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2019, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of the Electronic Filing to the following ECF registrants:

Daniel E. Smolen—*danielsmolen@ssrok.com*
David A. Warta—*davidwarta@ssrok.com*
Robert M. Blakemore—*bobblakemore@ssrok.com*
Megan E. Lambert—*mlambert@aclu.org*
**Counsel for Plaintiffs**

Denelda L. Richardson—*drichardsoncourts@rhodesokla.com*
Michael P. Robertson—*mrobertson@rhodesokla.com*
Randall E. Long—*rlong@rhodesokla.com*
**Counsel for Defendants,**
**C.A.A.I.R. Inc., Janet Wilkerson,**
**Don Wilkerson, and Jim Lovell**

*/s/Christopher S. Thrutchley*
Christopher S. Thrutchley