## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARTHUR COPELAND, individually and on behalf of all others similarly situated, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> C.A.A.I.R., INC. a domestic not for profit corporation, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) CASE NO. 17-CV-00564-TCK-JFJ |

## PLAINTIFFS' MOTION TO MODIFY DISCOVERY OBLIGATIONS/ MOTION FOR PROTECTIVE ORDER

COME NOW, Plaintiffs Arthur Copeland, *et al.*, and respectfully move this Court to enter an order/protective order modifying Plaintiffs' discovery obligations by relieving them of any duty to produce Facebook archives. In support of this Motion, Plaintiffs show the Court the following:

### Introduction and Background

While Plaintiffs initially agreed to produce their "Facebook archives" subject to a search protocol (*see* Dkt. #90), it has proven to be a nearly impossible task. As previously reported to this Court, "[t]he primary problem we have encountered with the Facebook archives is that most the Plaintiff[s] (with whom we have good contact) do not have computers." Dkt. #105-5 at ¶ 34. Most of the Plaintiffs only have access to Facebook through their cell phones and it is more difficult to download a Facebook archive from a phone than from a computer, especially for people with limited technological capabilities. *Id.* Further, even in the few instances in which individual Plaintiffs were able to provide a Facebook archive, the search terms provided by Defendants were overly broad and yielded results that provided almost exclusively irrelevant, unresponsive information. More generally, for a number of reasons detailed in an affidavit previously filed with

1

this Court, it is difficult to contact Plaintiffs to provide even general written discovery. *See, e.g., id.* at ¶ 35. These problems are only compounded when attempting to obtain Facebook archives.

On September 11, 2019, the Court entered an Opinion and Order largely denying a Motion to Dismiss filed Defendants Simmons Foods, Inc. and Simmons Pet Food, Inc. (hereinafter, collectively referred to as "Simmons"). Importantly, the Court held and reasoned: "[i]n light of the four *Bonnette*[1] factors, the economic realities of the situation, and the policies behind the [Fair Labor Standards Act ("FLSA"], the Court finds that Plaintiffs have pled a claim that they were employees of Simmons for the purposes of FLSA coverage." *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2019 WL 4307125, at *4 (N.D. Okla. Sept. 11, 2019).[2] In making this ruling, the Court specifically rejected Simmons' argument that "Plaintiffs are not employees under FLSA because they performed work for Simmons without promise or expectation of compensation, but solely for personal purposes." *Copeland*, 2019 WL 4307125, at *5-6 (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295-301 (1985)).

Though not entirely clear, it would seem that Simmons' purpose in requesting Facebook archives from Plaintiffs was the hope that certain Facebook entries might bolster the argument that Plaintiffs were not "employees" for the purposes of the FLSA. That is, Simmons was hoping to find entries in which Plaintiffs conveyed positive messages about the CAAIR program or stated that they received some non-monetary benefit from working at a Simmons poultry processing plant without pay. It is Plaintiffs' view that the Court's ruling on the Motion to Dismiss greatly diminishes any arguable relevance the Facebook archives might have. Specifically, the Court's Opinion clarifies that, as a matter of law, the Plaintiffs' subjective expectations or beliefs about whether they

---

[1] This is a reference to *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).
[2] The Court's September 11 Opinion and Order provides a comprehensive summary of the claims, allegations and issues in this case.

were "employees" or were in a rehabilitative treatment program, are largely, if not entirely, irrelevant. Plaintiffs assert that the Court's ruling renders much of Defendants' discovery requests unduly burdensome in light of the "proportionality" analysis mandated by Rule 26(b)(1). *See* Fed. R Civ. P. 26(b)(1). For these reasons, Plaintiffs' should not be required to produce Facebook archives.

## Discussion

### A.   Pertinent Rules of Discovery / Standard of Review

Federal Rule of Civil Procedure 1 is the guidepost for resolution of discovery disputes. It provides that the rules of civil procedure should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R Civ. P. 1. Federal Rule of Civil Procedure 26(b)(1) governs the specific dispute in this case. As amended effective December 1, 2015 ("2015 Amendment"), Rule 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

For purpose of any requested information, courts must inquire: "(1) is the information privileged; (2) is it relevant to a claim or defense; and (3) is it proportional to the needs of the case." *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 402 (D. Wyo. 2017).

Perhaps the most meaningful change made by the 2015 Amendment to Rule 26(b)(1) was the increased emphasis on the concept of proportionality. The portion of the amended Rule emphasizes the court's obligation to consider proportionality factors when ruling on discovery disputes. *See* Fed. R. Civ. P. 26 Advisory Committee's note to 2015 amendment; *See also Nat'l R.R.*

3

*Passenger Corp. v. Cimarron Crossing Feeders*, LLC, No. 16–CV–1094–JTM–TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017). A "proportionality" analysis involves six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R Civ. P. 26(b)(1).

### B. The Facebook Archives Are Not "Proportional to the Needs of the Case"

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). Based on proportionality considerations, there is "good cause" for an order relieving Plaintiffs from the production of Facebook archives.

**First**, the relevance of the Facebook archives, if any, is miniscule. Put another way, the Facebook archives carry virtually zero "importance … in resolving the issues…." Plaintiffs filed their Second Amended Complaint on December 6, 2017, bringing federal and state wage claims (including claims under the FLSA), Racketeer Influenced and Corrupt Organizations ("RICO") Act claims, a Missouri common law claim, an Oklahoma state human trafficking claim, and several claims under the Trafficking Victims Protection Act ("TVPRA"). *See* Dkt. #42. In order to successfully prosecute the wage claims, Plaintiffs must be "employees" of CAAIR and/or Simmons. Defendants have argued that Plaintiffs are not "employees" as defined by the FLSA. "In cases where a plaintiff is in the rehabilitative custody of an institution and in cases where a plaintiff has alleged joint employment—both the case here— courts have looked to factors set out in *Bonnette v. Cal. Health & Welfare Agency*. These factors are whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions

4

of employment, (3) determined the rate and method of payment, or (4) maintained employment records. 704 F.2d 1465, 1470 (9th Cir. 1983)." *Copeland*, 2019 WL 4307125, at *3.

In seeking dismissal of Plaintiffs' wage claims, Simmons argued that Plaintiffs are not employees under FLSA because they performed work for Simmons without promise or expectation of compensation, but solely for personal purposes. This Court rejected that argument, reasoning as follows:

> While it is true that the FLSA does not reach workers who carry out activities without the promise or expectation of compensation, but only for their own personal pleasure or profit, alleged employers cannot use this principle to shield all otherwise-covered work in which workers obtain more than just a financial benefit. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295-301, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). In *Alamo*, the Supreme Court held that despite the workers' own insistence that they were merely volunteering for the institution that rehabilitated them, the fact that the workers were completely dependent on the Foundation for long periods meant that the workers must have expected to receive in-kind benefits in exchange for their services. Id. The Court accordingly held that exempting these employees from the FLSA would exert downward pressure on wages in competing businesses, undermining the FLSA's goal of preventing labor conditions detrimental to worker well-being. *Id.*
>
> Similarly, in this case, though Plaintiffs started working for Simmons through their association with a rehabilitation facility that cared for their basic needs, they have alleged they worked in excess of full time for Simmons, and that Simmons purchased their labor either at a discounted rate or with a donation to C.A.A.I.R. These allegations plausibly allege that construing Plaintiffs as volunteers and exempting them from the FLSA would artificially lower Simmons's costs and undermine the FLSA's goal of preventing unfair competition.

*Copeland*, 2019 WL 4307125, at *5.

Thus, to the extent that any Plaintiff had a subjective belief that he "performed work for Simmons without promise or expectation of compensation, but solely for personal purposes", such belief would have little, if any, relevance in this case.  And the likelihood that Plaintiffs expressed such an intent on Facebook is negligible.  The employment status will be proved by more objective evidence, such as Simmons and CAAIR's own employment records.  *See, e.g.,* Dkt. #105-1 – 105-5.  Plaintiffs should not be put to the burdensome task, based on their resources and level of

sophistication, of providing Facebook archives to facilitate a fishing expedition for irrelevant information concerning their subjective beliefs concerning employment.

**Second,** "the burden or expense of the proposed discovery outweighs [the] likely benefit" of the Facebook archives. As stated above, the undersigned counsel has found it nearly impossible to obtain Facebook archives from this group of Plaintiffs. Most of the Plaintiffs are impoverished, struggle with addiction, have no access to a computer and live transient lives. While more fortunate citizens would have little difficulty obtaining a Facebook archive, such is not the case for these Plaintiffs. Securing the Facebook archives has proven to be an extreme burden. What's more, even if the Plaintiffs could readily obtain the Facebook archives, such archives would largely, if not entirely, consist of wholly irrelevant and personal information. As one court remarked with respect to discovery of Facebook posts:

> The problem is that such vast information [in the form of a Facebook archive] has the potential to generate additional discovery or impact trial testimony. It's not difficult to imagine a plaintiff being required to explain every statement contained within a lengthy Facebook history in which he or she expressed some degree of angst or emotional distress or discussing life events which could be conceived to cause emotion upset, but which is extremely personal and embarrassing. There is also substantial risk that the fear of humiliation and embarrassment will dissuade injured plaintiffs from seeking recovery for legitimate damages or abandon legitimate claims.

*Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 403–04 (D. Wyo. 2017).

As argued above, to the extent Plaintiffs' subjective beliefs about their employment status has any relevancy, it is nominal, at most. Assuming that any of the Plaintiffs comminuted such beliefs via Facebook, the evidence would likely be deemed inadmissible under Rules 401, 402 and/or 403. While the benefit of the Facebook archive is almost nonexistent, the burden on Plaintiffs in producing the material is substantial.

**Third,** there is a wide disparity between the resources available to Plaintiff and the

resources of Defendants.

In sum, there is good cause for the Court to enter an order relieving Plaintiffs from the obligation of producing Facebook archives.

WHEREFORE, premises considered, Plaintiffs respectfully request that the Court enter an order/protective order modifying Plaintiffs' discovery obligations by relieving them of any duty to produce Facebook archives.

>Respectfully,
>
>/s/ Robert M. Blakemore
>Daniel Smolen, OBA #19943
>Robert M. Blakemore, OBA #18656
>David A. Warta, OBA #20361
>Smolen & Roytman
>701 South Cincinnati Avenue
>Tulsa, OK 74119
>Phone: (918) 585-2667
>Fax:    (918) 585-2669
>
>***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

>/s/ Robert M. Blakemore