IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ARTHUR COPELAND, individually and on
behalf of all others similarly situated; et al.,

    Plaintiffs,

v.    Case No. 17-CV-564-TCK-JFJ

C.A.A.I.R., INC., a domestic not for profit
corporation; et al.,

    Defendants.

**OPINION AND ORDER**

Before the Court is Defendant C.A.A.I.R, Inc. ("CAAIR"), Janet Wilkerson, and Don Wilkerson's (collectively, "Moving Defendants") Motion to Quash or Modify Plaintiffs' Third-Party Document Subpoenas ("Motion to Quash") (ECF No. 128).

## I.    Procedural Background[1]

In the Second Amended Complaint, forty-seven individual Plaintiffs assert claims against several Defendants for violations of the Fair Labor Standards Act ("FLSA"); the wage laws of Oklahoma, Missouri, and Arkansas; the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"); the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"); and other laws. Plaintiffs assert all claims on behalf of themselves and other similarly situated. Plaintiffs seek to certify an FLSA opt-in class, and further seek to certify seven classes under Federal Rule of Civil Procedure 23.

---

[1] The Opinion and Order of United States District Judge Terence Kern sets forth Plaintiffs' factual allegations and claims. *See Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2019 WL 4307125, at *2 (N.D. Okla. Sept. 11, 2019). This Order assumes familiarity with that Opinion and Order.

In October of 2018, the Court permitted the parties to conduct discovery pending resolution of a motion to dismiss, over Plaintiffs' objection. *See* ECF Nos. 88 (hearing minutes), 97 (order). The parties have since been exchanging written discovery.[2] In July of 2019, the Court granted motions to compel filed by Defendants, but the Court declined to recommend any dismissal sanctions or issue warnings regarding Plaintiffs' non-compliance with discovery. ECF Nos. 113 (hearing minutes), 114 (order).

In September of 2019, the district judge denied the pending motion to dismiss, permitting nearly all claims to proceed, and referred scheduling issues to the undersigned. After denying Plaintiffs' motion to modify certain discovery obligations, *see* ECF No. 147, the Court conducted a scheduling conference, conducted a hearing on the pending Motion to Quash, and took all issues under advisement. The Court is currently delaying entry of a schedule, pending resolution of issues raised by Plaintiffs during the hearing regarding what Plaintiffs and claims will remain in the case. *See* ECF No. 154. This Opinion and Order addresses only the Motion to Quash, which is unaffected by the pending scheduling issues.

## II. Challenged Subpoenas

On September 27, 2019, Plaintiffs issued third party subpoenas duces tecum to the following individuals and entities pursuant to Federal Rule of Civil Procedure 45: (1) individuals and companies that contracted with CAAIR to provide counseling or educational services to CAAIR ("Counselors"); (2) Doug Cox ("Cox"), a CAAIR board member; (3) the bank where

---

[2] The parties exchanged written discovery on both class certification and merits issues, and neither party requested to limit this initial written discovery to class certification issues.

Moving Defendants currently hold bank accounts ("Bank");[3] and (4) the accounting firm used by Moving Defendants ("Accountant") (collectively, "Subpoenaed Parties").

Plaintiffs requested the following from all Subpoenaed Parties: all documents[4] in your possession, custody, or control that "refer or relate to" a long list of individuals and entities, including: BJR, WD-4,[5] Defendant CAAIR, Defendant Janet Wilkerson, Defendant Don Wilkerson, Defendant Louise Dunnam, Defendant Rodney Dunnam, Doug Cox, Blake Evans, and Defendant Simmons Foods, without time limitation.[6] Plaintiffs requested the following additional items from Counselors and Cox: all documents in your possession, custody, or control that refer or relate in any way to the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS"), without time limitation; and all state and federal tax returns for the years you provided services to CAAIR or served as a board member for CAAIR. Plaintiffs requested the following additional items from Counselors only: all documents in your possession, custody, or control that refer or relate to any certifications held by you at any time; and all documents in your possession, custody, or control that refer or relate in any way to your licensure, including but not

---

[3] Plaintiffs issued one subpoena to Grand Savings Bank and another to Grand Savings Bank on behalf of Decatur State Bank, which was a predecessor of Grand Savings Bank. The two subpoenas request identical items.

[4] "Documents" is defined in the Subpoenas with a list of specific items, and includes attachments to documents, all responses elicited by such documents, and all communications reflecting, referring to, or relating to those documents.

[5] BJR, LLC was an entity formed by the Wilkersons and an individual named Blake Evans, who was involved in the initial plans to create the CAAIR program. According to CAAIR, the BJR entity was abandoned when Evans disassociated from CAAIR and the Wilkersons. WD-4 is a partnership that operated for a short time and preceded the formation of CAAIR as a non-profit entity.

[6] The requests for documents that refer or relate to Blake Evans and Simmons Foods contained the following additional language: "to the extent such documents refer or relate in any way whatsoever to WD-4, CAAIR, BJR, Janet Wilkerson, Don Wilkerson, Louise Dunnam, and/or Rodney Dunnam."

limited to correspondence, applications, approvals, denials, reviews, renewals, suspensions, and revocations.

## III. Legal Standards

### A. Rule 45/Rule 26 Limits on Document Subpoenas

Rule 45 subpoenas are considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. United States*, 164 F.R.D. 556, 556-57 (N.D. Okla. 1995). A subpoena is therefore subject to Rule 26(b)(1)'s requirements and must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case. *See Spraggins v. Reg'l Med. Ctr.*, 2010 WL 5137439, at *1 (D. Kan. Dec. 10, 2010) ("A subpoena must be within the proper scope of discovery . . . ."); *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, No. 8:05-CV-119-T-23TBM, 2006 WL 905517, at *2 (M.D. Fla. Apr. 7, 2006) ("[A] court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production.").

A subpoena must also avoid subjecting a third party to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). In determining whether undue burden exists, the Court balances the need for discovery against the burden imposed on the person ordered to produce the documents; the status of a person as a non-party is a factor that weighs against disclosure. *Speed-Trac Tech. v. Estes Exp. Lines, Inc.*, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008) (internal quotation omitted). The Court considers the relevance of the documents, the requesting party's need for the documents, the breadth of the request, the time period covered, the particularity of the request, and the burden imposed. *Id.*

### B. Standing to Challenge Third-Party Subpoenas

"Absent a claim of privilege, or personal or proprietary interest, a party lacks standing to challenge a subpoena served on a third party." *Clark v. Johnson*, No. 14-CV-582-JED-PJC, 2015 WL 4694045, at *1 (N.D. Okla. Aug. 6, 2015); *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. CIV-10-651-D, 2011 WL 691204, at *4 (W.D. Okla. Feb. 16, 2011) (explaining standing principles and applying to specific document requests). Generally, "an individual has a personal interest in certain records – e.g., bank records, mental health or medical records, employment records – sufficient to provide standing to challenge a subpoena for their disclosure, even where that information is maintained by a third party." *Clark*, 2115 WL 4694045, at *1. However, "[e]ven if a party has standing to challenge a subpoena directed to a third party on privilege grounds, he may not challenge that subpoena on the grounds that the information imposes an undue burden on the subpoenaed party." *Pub. Serv. Co. of* Okla., 2011 WL 691204, at *4.

### C. Court's Inherent Authority to Limit Discovery and Quash/Modify Subpoenas

In cases where a moving party lacks standing to challenge a third-party subpoena, a court may exercise its inherent authority to limit irrelevant or non-proportional discovery requests pursuant to Federal Rule of Civil Procedure 26(b)(2)(C). *See* Fed. R Civ. P. 26(b)(2)(C)(iii) (explaining that court "must limit the frequency or extent of discovery" if court determines that proposed discovery is outside the scope permitted by Rule 26(b)(1)); *Gov't Employees Ins. Co. v. Trnovski*, No. CV 16-4662 (CCC), 2018 WL 5281424, at *3 (D.N.J. Oct. 23, 2018) ("Although the Court finds that defendants lack standing to quash the Subpoenas, the Court will nevertheless address whether the information that Plaintiffs seek is relevant under Rule 26."). A court may also exercise its inherent authority to quash or modify an unduly burdensome subpoena. *See Griggs v. Vanguard Grp., Inc.*, No. CIV-17-1187-SLP, 2019 WL 3058982, at *1 (W.D. Okla. May 7, 2019)

5

("The Court can (and, here, does) issue a protective order to guard the [] nonparties from unnecessarily burdensome discovery regardless of whether Plaintiff, herself, has standing to assert specific objections to the subpoenas issued by Defendants.") (collecting cases); 9A Wright & Miller, *Federal Practice and Procedure* § 2463.1 (3d ed.) (explaining that "[f]ederal courts always have had the inherent power to protect persons subject to subpoena from undue burden" but that Rule 45(d)(3)(A) *requires* a court to quash a subpoena imposing an undue burden upon a timely motion).

## IV. Analysis

### A. Moving Defendants' Standing

Plaintiffs argue that Moving Defendants lack standing to challenge the majority of requests in the subpoenas. Although Moving Defendants likely have standing to challenge certain aspects of the subpoenas to Bank and Accountant for Moving Defendants' financial records, they lack standing to challenge certain requests to Counselors and Cox for those individuals' certifications, licenses, and tax records. As to requests from all Subpoenaed Parties for all documents that "refer or relate to" CAAIR, its predecessors, its principals, its founders, and ODMHSAS, Moving Defendants argue that these requests necessarily sweep in Moving Defendants' private records, as well as CAAIR participants' private mental health records, providing Moving Defendants standing to object.

In this case, the Court will not parse through the requests and analyze Moving Defendants' standing as to each. As explained below, the vast majority of these requests suffer from facial overbreadth, lack of relevance, and lack of particularity, and they subject third parties to undue burden. Further, Cox and Counselors have authorized counsel for Moving Defendants to object to the subpoenas on their behalf. If the Court denies the Motion to Quash for lack of standing,

Cox and Counselors intend to object and force Plaintiffs to file a motion to compel raising the substantive issues already addressed in the current briefing and during the hearing. In the interest of efficient resolution of these issues and avoiding further motion practice, the Court exercises its inherent authority under Rule 26 and Rule 45 to issue a protective order and/or modify the subpoenas for the reasons explained below. *See Griggs*, 2019 WL 3058982, at *3 (finding subpoenas facially overbroad and unduly burdensome and issuing protective order to extent subpoenas exceeded allowable scope of discovery).

B.     **Relevance/Facial Overbreadth/Undue Burden**

Plaintiffs contend the requests to third parties are primarily relevant to their RICO claims, which include an inquiry of whether Defendants committed predicate federal violations of the TVPRA. Plaintiffs argue their requests are not facially overbroad, because any documents these third parties possess that refer or relate to the listed individuals/entities are necessarily relevant to their claims.

To establish liability under RICO, Plaintiffs must show that Defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2019 WL 4307125, at *10 (N.D. Okla. Sept. 11, 2019) (citing *Tal v. Hogan*, 453 F.3d 1244, 1269-70 (10th Cir. 2006)). "'Racketeering activity' is defined, in pertinent part, as any 'act which is indictable' under federal law and specifically includes violations of the TVPRA." *Id.* (citing 18 U.S.C. § 1961(1)(B); *Tal*, 453 F.3d at 1261-62). To satisfy the "enterprise" element, "Plaintiffs must show that the group has (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The group must have a common purpose to engage in a course of conduct, but that purpose need not exist beyond or independent of this

7

group's pattern of racketeering activity." *Id.* (citing *Crowe v. Clark*, 552 F. App'x 796, 800 (10th Cir. 2014)).

In this case, the district judge held that Plaintiffs' factual allegations adequately stated a RICO claim, based on the alleged association and actions of CAAIR and Simmons:

> Simmons and C.A.A.I.R. had a contract, and the common purpose of C.A.A.I.R. supplying its agricultural interests, including Simmons, with unpaid labor at below-market costs. While it is unclear exactly how long C.A.A.I.R. and Simmons have been associated, Plaintiffs have further alleged that their arrangement lasted for at least several months, which appears to be enough time for both to pursue the enterprise's purpose – using unpaid labor purchased at below-market costs to increase both parties' profits. . . . . Similarly, because Plaintiffs have alleged that [Janet] Wilkerson was responsible for devising and implementing C.A.A.I.R.'s policies – including their association with Simmons and threats of prison – they have alleged her participation.

*Id.* at *10. The district judge further concluded that Plaintiffs adequately alleged Simmons' participation in the RICO enterprise's affairs. *Id.* at *11.

As indicated at the hearing on the Motion to Quash, the Court concludes that these subpoenas are facially overbroad, and that Plaintiffs cast their discovery net too wide. The requests use the phrase "refer or relate to" and then simply reference a litany of individuals or entities associated with CAAIR, its predecessors, its principals, ODHMHSAS, or its alleged RICO associate, Simmons Foods. The Court disagrees with Plaintiffs' assertion that all documents in the possession of the Subpoenaed Parties that refer or relate to these individuals and entities associated with CAAIR are relevant to their RICO claim or any other claims in this litigation. While these requests encompass some relevant information as to the elements of Plaintiffs' RICO and TVPRA claims, the requests sweep in a large amount of irrelevant information and are not adequately particularized to permit reasonable compliance by third parties.

Following are examples of facial overbreadth (and therefore undue burden) within these requests. A request for all documents in the possession of Counselors that refer or relate to

CAAIR, its predecessors, or its principals encompasses any number of records, including mental health information about individual clients who are not parties to the litigation, and irrelevant personnel matters. A request for all documents in the possession of Counselors that refer or relate to ODMHSAS encompasses communications from that state agency to Counselors about any number of patients or other mental-health services unrelated to CAAIR. It also extends to mental health records of CAAIR participants who are not named Plaintiffs in this case. In a stark example of facial overbreadth, one Counselor is a relative of the Wilkersons, such that the request for all documents referring or relating to the Wilkersons would extend to any number of irrelevant personal documents. Cox is a CAAIR board member. A request for all documents in Cox's possession that refer or relate to CAAIR encompasses all board minutes and correspondence, whether relevant to the litigation or not. CAAIR and the Wilkersons are long-standing customers of Bank and Accountant. The requests to Bank and Accountant indiscriminately request all documents "referring or relating to" CAAIR and the Wilkersons, which extends beyond financial records to all manner of communications and other correspondence over the entire span of their service relationship. As to requests for documents referring or relating to non-customers of Bank and Accountant, these are a fishing expedition that imposes too great a burden on Bank and Accountant to search all records for documents possibly referring to these other individuals and entities.

Because the requests are overly broad, they request large amounts of irrelevant information and are unduly burdensome on their face. *See Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006) (holding that requests may be overly broad or unduly burdensome on their face if they use an omnibus term such as "relating to" or "concerning" and apply to a general category of documents or a broad range of information); *Howard v. Segway*, Inc., No. 11-CV-688-GKF-PJC,

2013 WL 869955, at *2 (N.D. Okla. Mar. 7, 2013) (explaining that use of omnibus phrases may "set the stage for discovery problems because the recipient does not know specifically what is being requested" and must engage in "mental gymnastics"). The requests therefore exceed the scope of permissible discovery under Rules 26 and 45.

### C. Protective Order to Limit Scope of Discovery/Avoid Undue Burden

Rather than quash the subpoenas or issue a blanket protective order, the Court exercises its inherent authority to limit and modify these requests to more specific categories of documents and for limited time periods. Although it is not the Court's responsibility to redraft discovery requests that are obviously overbroad, *see Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at *8 (D. Colo. Feb. 8, 2010), Plaintiffs offered clarification during the hearing of what categories of documents they were seeking within the overbroad requests. Based on these clarifications, the Court limits the scope of the subpoenas, as set forth below, to more narrow requests that are relevant and not unduly burdensome to third parties.[7]

#### 1. Counselors and Cox

With respect to Counselors and Cox, the Court will permit particularized discovery aimed at determining the scope of work performed by Counselors; whether CAAIR and Simmons were engaged in illegal acts; the formation of the alleged RICO enterprise; and requests for Counselors' licenses and certifications, which are aimed at determining whether and to what extent Counselors were qualified to provide services to CAAIR. For some requests, the Court limits the time frame to four years prior to the Second Amended Complaint, which is the statute of limitations for civil

---

[7] Plaintiffs are not precluded from issuing further subpoenas to these third parties but may not duplicate requests allowed by this Order.

RICO damages claims. *See Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014).

**Counselors** are ordered to produce:[8]

1. Documents showing or discussing the scope and nature of services you perform for CAAIR.

2. Documents showing or discussing the formation of BJR, WD-4, or CAAIR.

3. Documents showing or discussing the nature of the business relationship between CAAIR and Simmons, from 2013 to the present.

4. Documents showing or discussing any investigation of CAAIR by ODMHSA, from 2013 to the present.

5. Certifications held by you while providing services for CAAIR.

6. Licenses held by you while providing services for CAAIR, including any suspensions or revocations.

**Cox** is ordered to produce:

1. Documents explaining or showing the formation of BJR, WD-4, or CAAIR.

2. Documents explaining or showing the nature of the business relationship between CAAIR and Simmons, from 2013 to the present.

3. Documents showing or discussing any investigation of CAAIR by ODMHSAS, from 2013 to the present.

With respect to Plaintiffs' request for Cox's and Counselors' tax returns for years they provided services or served on CAAIR's board, the Court issues a protective order for those requests at this time. As discussed during the hearing, Plaintiffs have not issued any discovery

---

[8] The terms used below by the Court have the definitions used in Plaintiffs' subpoenas.

requests to CAAIR or Simmons in the first instance to determine what documents the parties possess that would reveal methods, amounts, and sources of payment to Counselors and/or Cox. The parties are a more convenient source, and a request to parties is necessarily more targeted to relevant information. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (permitting protective order where information may be obtained from more convenient source). Plaintiffs may re-issue subpoenas for tax returns or other financial information from third parties after first discovering relevant information from the parties and determining whether a remaining need exists.

## 2. Bank and Accountant

The Court will permit discovery aimed at determining whether CAAIR and Simmons were engaged in a RICO association-in-fact, the flow of money between the two entities, and other financial dealings between the two entities. *See Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2016 WL 10788070, at *10 (W.D. Ky. Oct. 11, 2016) (explaining that discovery of "tax returns, general ledgers and bank records" are routinely permitted as discovery in RICO actions). Although RICO has a four-year statute of limitations, the Court finds that document requests to Bank and Accountant have a higher degree of relevance to the alleged RICO violations than requests to other third parties. Therefore, the Court permits a broader time frame for the financial information requested from these entities.

**Bank** is ordered to produce:[9]

1. Financial records of customers Janet Wilkerson, Joe Wilkerson, and CAAIR from 2009 to the present.

---

[9] During the hearing, Plaintiffs' counsel stated that he had a phone conversation with Bank regarding the requests. The documents permitted by this Order are consistent with Plaintiffs' explanations of the categories of documents discussed.

2. Loans obtained by CAAIR and/or Simmons from 2009 to the present, including applications and supporting documentation.

**Accountant** is ordered to produce:[10]

1. Documents explaining or showing the formation of BJR, WD-4, or CAAIR.

2. Documents explaining or showing the nature of the business relationship between CAAIR and Simmons.

3. Tax returns and supporting documentation for WD-4, CAAIR, Janet Wilkerson, and Joe Wilkerson from 2009 to the present.

## V. Conclusion

Because Moving Defendants lack standing to object to certain aspects of the third-party subpoenas, Moving Defendants' Motion to Quash (ECF No. 128) is denied.

However, acting pursuant to its inherent authority to issue protective orders and/or modify subpoenas, the Court limits and modifies the subpoenas as set forth in this Opinion and Order. Third parties need only respond to the requests as limited in this Opinion and Order, and need not respond to any other requests in the subpoenas. Third parties may produce any confidential documents under the terms of the Stipulated Protective Order entered on November 7, 2018.

**SO ORDERED** this 28th day of February, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[10] According to Moving Defendants, Accountant is the tax and accounting firm utilized by Joe and Janet Wilkerson and CAAIR. ECF No. 128 at 18. It does not appear that Accountant performs services for other individual Defendants.