IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

**ARTHUR COPELAND, et al.,**

Plaintiffs,

v.

**C.A.A.I.R., INC., a not-for-profit
corporation, et al.,**

Defendants.

Case No. 17-CV-564-JFH-JFJ

Jury Trial Demanded

## ANSWER TO THIRD AMENDED COMPLAINT OF DEFENDANTS
## SIMMONS FOODS, INC. AND SIMMONS PET FOOD, INC.

Defendants Simmons Foods, Inc. and Simmons Pet Food, Inc. (collectively, the "Simmons Defendants") answer the *Third Amended Complaint* filed by Plaintiffs. For each allegation, the Simmons Defendants recite the allegation and, thereafter, state their answer:

## I.    INTRODUCTORY STATEMENT

1.    Defendants conspired to profit from a vulnerable workforce under the guise of providing alcohol and drug counseling and rehabilitation services to Plaintiffs and Putative Class Members.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 1.

2.    Named Plaintiffs performed taxing, manual labor for Defendants in poultry and pet food processing plants.

**ANSWER:** The Simmons Defendants admit some Plaintiffs performed labor at certain poultry and pet food plants but deny the remaining allegations in paragraph 2.

3.    Defendants failed to pay Named Plaintiffs and Putative Class Members any compensation whatsoever for the work they performed, in violation of state and federal law.

**ANSWER:** The Simmons Defendants admit that neither they nor any other Simmons entity had a remunerative relationship with Named Plaintiffs or putative class members during their time in the CAAIR program. The Simmons Defendants deny the remaining allegations in paragraph 3.

4.     Instead, Defendants only "payment" to Plaintiffs and Putative Class Members consisted of daily bologna sandwiches and a bunkbed in a cramped, unsanitary dorm room. In short, Defendants established and maintained a labor camp designed to generate profit and business advantages based on the exploitation of vulnerable young men.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 4.

5.     Defendants' conduct constitutes unjust enrichment, and violations of the Fair Labor Standards Act, the Racketeer Influenced and Corrupt Organizations Act, the Oklahoma Protection of Labor Act, the Oklahoma Minimum Wage Act, Arkansas minimum wage and overtime law, Missouri minimum wage and overtime law, Oklahoma's Human Trafficking statutes, and the Trafficking Victims Protection Reauthorization Act ("TVPRA").

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 5.

6.     Named Plaintiffs, individually, and Proposed Class Representatives, on behalf of themselves and the Putative Class Members, seek to recover all unpaid minimum and overtime wages as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Proposed Class Representatives also seek equitable relief on behalf of current and future employees of Defendants to prohibit such illegal conduct in the future.

**ANSWER:** The Simmons Defendants deny Plaintiffs are entitled to alleged unpaid wages, damages, or equitable relief and deny engaging in any illegal activity.

7.     Named Plaintiffs also seek to recover, for their own individual benefit, all unpaid minimum and overtime wages and for the full value of their losses, including but not limited to personal

injury, pain and suffering, emotional distress, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees and costs.

**ANSWER:** The Simmons Defendants deny Plaintiffs are entitled to alleged unpaid wages, damages, or equitable relief and deny engaging in any illegal activity.

## II.   PARTIES, JURISDICTION AND VENUE

8.      Named Plaintiffs and the Putative Class Members are current or former employees of Defendants who work or worked at Simmons Foods, Inc.'s ("Simmons") and/or Simmons Pet Food, Inc.'s ("Simmons Pet Food") facilities in Oklahoma, Arkansas, and Missouri while residing at Christian Alcoholics and Addicts in Recovery's ("C.A.A.I.R." or "CAAIR") dormitories, located in Jay, Oklahoma.

**ANSWER:** The Simmons Defendants admit some Plaintiffs and putative class members resided at CAAIR's dormitories near Jay, Oklahoma. The Simmons Defendants further admit that some Plaintiffs and putative class members have gone on to secure employment with various Simmons entities following their graduation from the CAAIR program. The Simmons Defendants deny that any Plaintiffs or putative class members are or were "employees" of the Simmons Defendants or any other Simmons-affiliated entity during their time in the CAAIR program.

9.      Plaintiff Arthur Copeland ("Copeland") is a resident of Oklahoma and was a resident at CAAIR from January 11, 2016 to July 14, 2016. Copeland seeks to be named a class representative for the Rule 23 Class.

**ANSWER:** The Simmons Defendants admit Copeland was a resident at CAAIR from on or around January 11, 2016 to July 14, 2016. The Simmons Defendants are without sufficient knowledge as to whether Copeland is a resident of Oklahoma and, therefore, deny the same. The Simmons Defendants acknowledge that Copeland seeks to be named a class representative for the Rule 23 Class but deny that a certifiable class exists.

10.     Plaintiff David Brandon Spurgin ("Spurgin") is a resident of Oklahoma and was a resident at CAAIR from approximately March 20, 2014 to September 15, 2014. Spurgin seeks to be named a class representative for the Rule 23 Class.

**ANSWER:** The Simmons Defendants admit Spurgin was a resident at CAAIR from on or around March 20, 2014, to September 15, 2014. The Simmons Defendants are without sufficient knowledge as to whether Spurgin is a resident of Oklahoma and, therefore, deny the same. The Simmons Defendants acknowledge that Spurgin seeks to be named a class representative for the Rule 23 Class but deny that a certifiable class exists.

11.     Plaintiff Brad McGahey ("McGahey") is a resident of Oklahoma and was a resident at CAAIR from approximately April 2010 to June 2010. McGahey seeks to be named a class representative for the Rule 23 Class.

**ANSWER:** The Simmons Defendants admit McGahey was a resident at CAAIR from on or around April 2010 to June 2010. The Simmons Defendants are without sufficient knowledge as to whether McGahey is a resident of Oklahoma and, therefore, deny the same. The Simmons Defendants acknowledge that McGahey seeks to be named a class representative for the Rule 23 Class but deny that a certifiable class exists.

12.     Plaintiff Brandon Mills ("Mills") is a resident of Oklahoma and was a resident at CAAIR from February 2017 to November 2017. Mills worked at Simmons Foods in Decatur, AR. Mills seeks to be named a class representative for the Rule 23 Class.

**ANSWER:** The Simmons Defendants admit Mills was a resident at CAAIR from on or around February 2017 to November 2017. The Simmons Defendants further admit that Mills worked in Decatur, AR, but deny he worked at Simmons Foods, Inc. While Mills participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants acknowledge that Mills seeks to be named a class representative for the Rule 23 Class but deny that a certifiable class exists.

The Simmons Defendants are without sufficient knowledge as to the remaining allegations in paragraph 12 and, therefore, deny the same.

13.   Plaintiff Nathan Taylor ("Taylor") is a resident of Oklahoma and was a CAAIR client from February 2017 to October 2017. While at CAAIR, Taylor worked for Simmons Foods in Southwest City, MO. Taylor seeks to be named a class representative for the Rule 23 Class.

**ANSWER:** The Simmons Defendants admit Taylor was a resident at CAAIR from on or around February 2017 to October 2017. The Simmons Defendants further admit that Taylor worked in Southwest City, MO, but deny that he worked for Simmons Foods, Inc. While Taylor participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants acknowledge that Taylor seeks to be named a class representative for the Rule 23 Class but deny that a certifiable class exists. The Simmons Defendants are without sufficient knowledge as to the remaining allegations in paragraph 13 and, therefore, deny the same.

14.   Plaintiff Jason Baker ("Baker") is a resident of Oklahoma and was a resident at CAAIR from February 29, 2016 to November 2016. While at CAAIR, Mr. Baker worked at Simmons Foods in Jay, OK from approximately September 2016 to November 2016 in the night sanitation department. For the remainder of his time at CAAIR, Mr. Baker was forced to work at other private businesses in Oklahoma and on the CAAIR grounds in Jay, OK. Baker seeks to be named a class representative for the Rule 23 Class.

**ANSWER:** The Simmons Defendants admit Baker was a resident at CAAIR from on or around February 29, 2016 to November 2016. The Simmons Defendants deny the allegations in the second sentence of paragraph 14. The Simmons Defendants acknowledge that Baker seeks to be named a class representative for the Rule 23 Class but deny that a certifiable class exists. The Simmons Defendants are without sufficient knowledge as to the remaining allegations in the third sentence of paragraph 14 and, therefore, deny the same.

15.     Stanley Shane Alexander, Keith Alspaugh, Pablo Angeles, David Banks, Jesse Brown, Craigory Blue, Cody Bumpas, Caleb Byrd, Steven Cook, Joe Cotrone, Ryan Dorland, Patrick Doyle, Josh Foran, Kenneth Gentry, Johnny Gilmore, Charles Greenhaw, Michael Greenhaw, Clinton Harms, Michael Harper, Michael Wayne Harrell, Jackie Johnson, Jarret Jones, Ikaika Kamai, Caleb Kleier, Marquis Luckey, Dexter Mackay, Michael McCartney, Clinton Meyer, Jason Miqueli, Robert Nashert, Bobby Gene Nichols, Shane O'Neal, Travis Owens, Brian Pearson, Charles Rickman, Thomas Rico, Gilbert Sanders, Jr., Titus Staton, Nathan Turner, Jason Vallandingham, Michael Welge, Daniel West, Michael Travis Wyche, De'Undre Woodard each as "Named Plaintiffs" assert all causes of action alleged in their individual capacities only and are not seeking to serve as class representatives.

**ANSWER:** The Simmons Defendants admit that the listed individuals have asserted claims against the Simmons Defendants but deny that those claims are actionable and further deny that these individuals are entitled to any of the relief they request.

16.     Defendant Christian Alcoholics & Addicts in Recovery, Inc. ("C.A.A.I.R." or "CAAIR") is an Oklahoma corporation, registered as a charitable organization, with its principal place of business in Jay, Oklahoma. C.A.A.I.R. does substantial business in this judicial district.

**ANSWER:** The Simmons Defendants admit the first sentence of paragraph 16. The Simmons Defendants are without sufficient information as the second sentence of paragraph 16 and, therefore, deny the same.

17.     Defendant Simmons Foods, Inc. ("Simmons") is an Arkansas, for-profit business corporation headquartered in Siloam Springs, Arkansas. Simmons Foods does substantial business in Oklahoma and in this judicial district. Simmons Foods operates a processing plant in Fairland, Oklahoma, and contracts for labor with C.A.A.I.R. in Oklahoma. Simmons Foods also operates processing plants in Southwest City, Missouri, and Decatur, Arkansas.

**ANSWER:** The Simmons Defendants admit the allegations in the first and second sentences of paragraph 17. The Simmons Defendants further admit that Simmons Foods, Inc. has a contract for labor with CAAIR, as alleged in the second half of the third sentence. The Simmons Defendants deny the remaining allegations in paragraph 17.

18.     Defendant Simmons Pet Food, Inc. ("Simmons Pet Food") is an Arkansas for-profit business corporation headquartered in Siloam Springs, Arkansas. Simmons Pet Food does substantial business in Oklahoma and in this judicial district. Simmons Pet Food maintains operations in Fort Gibson, Oklahoma, and contracts for labor with C.A.A.I.R. in Oklahoma. Simmons Pet Food also operates a processing plant in Decatur, Arkansas.

**ANSWER:** The Simmons Defendants admit the allegations in the first, second, and fourth sentences of paragraph 18. The Simmons Defendants deny the third sentence of paragraph 18.

19.     Defendant Janet Wilkerson is a natural person. Ms. Wilkerson is a co-founder of C.A.A.I.R. and is C.A.A.I.R.'s chief executive officer.

**ANSWER:** The Simmons Defendants admit the allegations in paragraph 19.

20.     Defendant Don Wilkerson is a natural person. Mr. Wilkerson is a co-founder of C.A.A.I.R. and is C.A.A.I.R.'s vice president of operations.

**ANSWER:** The Simmons Defendants admit the allegations in paragraph 20.

21.     Defendant Louise Dunham is a natural person. Ms. Dunham is a co-founder of C.A.A.I.R. and is C.A.A.I.R.'s vice president of finance.

**ANSWER:** The Simmons Defendants admit the allegations in paragraph 21.

22.     Defendant Jim Lovell is a natural person. Mr. Lovell is C.A.A.I.R.'s vice president of program management.

**ANSWER:** The Simmons Defendants admit the allegations in paragraph 22.

23.     Jurisdiction over Plaintiffs' FLSA Claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

**ANSWER:** Paragraph 23 states a legal conclusion to which no answer is required. To the extent an answer is required, the Simmons Defendants deny the allegation.

24.     Subject Matter Jurisdiction is also conferred on this Court by 28 U.S.C. §1337 and over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

**ANSWER:** Paragraph 24 states a legal conclusion to which no answer is required. To the extent an answer is required, the Simmons Defendants deny the allegation.

25.     This Court has supplemental subject matter jurisdiction under 28 U.S.C § 1367 for all claims asserted under the laws of Oklahoma, Missouri, and Arkansas (the "State Law Claims") because these claims are part of the same case and controversy as the federal claims; the federal and State Law Claims derive from a common nucleus of operative fact; the State Law Claims will not substantially dominate over the federal claims; and exercising supplemental jurisdiction will be in the interests of judicial economy, convenience, fairness, and comity.

**ANSWER:** Paragraph 25 states a legal conclusion to which no answer is required. To the extent an answer is required, the Simmons Defendants deny the allegation.

26.     Independently, this Court has original subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, in that the estimated damages involved in this action will exceed $5,000,000, [and] there are believed to be more than 100 Proposed Class Members in total, some of whom reside in different states from at least one of the Defendants.

**ANSWER:** Paragraph 26 states a legal conclusion to which no answer is required. To the extent an answer is required, the Simmons Defendants deny the allegation.

27.     This Court has specific personal jurisdiction for all claims against the Defendants because the Defendants have availed themselves of the privileges of conducting business in Oklahoma and a substantial portion of the events giving rise to this suit, including the contracting and transmission of unlawful labor, occurred in Oklahoma and resulted from defendants' contacts with this forum.

**ANSWER:** The Simmons Defendants admit personal jurisdiction exists. The Simmons Defendants deny the remaining allegations and characterizations in paragraph 27.

28.     This Court has general personal jurisdiction for all claims against the Defendants because their affiliations with the State of Oklahoma are sufficiently continuous and systematic to render the Defendants essentially at home in this state. Further, this Court has general person jurisdiction over Defendants C.A.A.I.R., Janet Wilkerson, Don Wilkerson, Rodney Dunham, Louise Dunham, and Jim Lovell because C.A.A.I.R. is incorporated and has its principal place of business in Oklahoma, and because the individually named Defendants are residents of Oklahoma.

**ANSWER:** The Simmons Defendants admit that personal jurisdiction exists. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 28 and, therefore, deny the same.

29.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events, acts, and or omissions giving rise to the claims asserted in this suit occurred in this District.

**ANSWER:** The Simmons Defendants admit that venue is proper in this District.

30.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food are subject to this Court's personal jurisdiction and therefore reside in this District, and because defendant[s] Janet Wilkerson, Don Wilkerson, Rodney Dunham, Louise Dunham, and Jim Lovell are natural persons who reside in this District.

**ANSWER:** The Simmons Defendants admit that venue is proper in this District but deny the remaining allegations in paragraph 30.

### III.   FACTUAL ALLEGATIONS

31.     C.A.A.I.R. holds itself out as a long-term residential drug and alcohol recovery program. In fact, however, C.A.A.I.R., is not certified as a treatment provider by the Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS"), and C.A.A.I.R. provides no meaningful treatment for its residents.

**ANSWER:** The Simmons Defendants admit CAAIR is a long-term drug and alcohol recovery program that provides meaningful and desperately needed services for its clients and that it is not certified as a "treatment provider" by the ODMHSAS. The Simmons Defendants deny the remaining allegations and characterizations in paragraph 31.

32.     43A Okl. St. § 3-415(A) provides that only facilities certified by the Oklahoma Board of Mental Health and Substance Abuse Services ("OBMHSAS") may provide alcohol and drug treatment and rehabilitation services. C.A.A.I.R. does not meet, and has never met, the requirements for such certification, and provides virtually nothing in the way of legitimate treatment services for its residents, which it calls "clients."

**ANSWER:** The Simmons Defendants admit that CAAIR is not a treatment provider as defined by the ODMHSAS and Title 43A, and that CAAIR does not provide "treatment" (as defined by statute) to its clients. CAAIR is a long-term recovery program that provides legitimate and desperately needed services for its clients, and the Simmons Defendants therefore deny the remaining allegations in paragraph 32.

33.     In fact, drug and alcohol treatment was never the intended purpose of C.A.A.I.R. Rather, C.A.A.I.R. was started by Defendant Janet Wilkerson, a former executive at Peterson Farms, Inc. ("Peterson"), a chicken processing company acquired by Simmons in 2008; by Rodney Dunnam, also a former executive at Peterson; and by Louise Dunnam, a purported HR specialist. None

of these founders had any background in drug and alcohol treatment. C.A.A.I.R.'s purpose was and is to provide income to itself and its founders while providing cheap labor to third-party agricultural interests affiliated with C.A.A.I.R. C.A.A.I.R.'s business model is to locate and control vulnerable persons, many of whom are desperately in need of meaningful treatment; compel them to work fulltime for Simmons Foods, Simmons Pet Food, and other corporations with whom C.A.A.I.R. contracts; and keep all of their wages. C.A.A.I.R. calls this forced labor "treatment" while denying its patients any semblance of actual psychiatric or medical care.

**ANSWER:** The Simmons Defendants admit CAAIR is a recovery program founded by Janet Wilkerson, Donald Wilkerson, Rodney Dunnam, and Louise Dunnam. The Simmons Defendants deny the remaining allegations in paragraph 33.

34.     Many residents arrive at C.A.A.I.R. by way of Oklahoma's drugs courts. This stream of forced laborers is procured by C.A.A.I.R.'s uniform misrepresentations that it is a legitimate treatment facility. Once clients are sent to C.A.A.I.R. for supposed treatment, C.A.A.I.R. immediately denies them any treatment and instead sends them to work for private corporations. The work performed for these third-parties, including Simmons Foods and Simmons Pet Food, is grueling and frequently dangerous. The Putative Class Members, including Named Plaintiffs, who comprise C.A.A.I.R.'s residents regularly work over 40 hours a week at Simmons Foods and Simmons Pet Food facilities. They receive no wages for this work, let alone premium wages for overtime worked. Instead, the Simmons defendants make donations to C.A.A.I.R. in return for the free labor and/or pays C.A.A.I.R. a discounted rate for the work performed, and C.A.A.I.R. keeps all such compensation.

**ANSWER:** The Simmons Defendants admit many of CAAIR's clients are referred by Oklahoma drug courts, and the clients are not paid wages for the work they perform in the program. The Simmons Defendants deny the remaining allegations in paragraph 34.

35.     Plaintiff Arthur Copeland ("Copeland") was led to believe, through the mails of the United States, in a letter dated January 8, 2016, that C.A.A.I.R. was a drug and alcohol program offered through Oklahoma's "drug court." Based on this misrepresentation, Copeland agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to Copeland that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide free chicken processing services for Simmons without pay. Upon arriving at C.A.A.I.R., Copeland was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. Copeland quickly learned that C.A.A.I.R. was not a drug and alcohol rehabilitation program, but rather a work camp program, under which he was required to provide free labor for Simmons Foods under constant threat of incarceration. Copeland worked on what was called the "live hang line" at Simmons Foods. As part of this work, he was expected to hang 60-62 chickens per minute. He worked full time on the live hand [sic] line in a totally dark room except for black light. Copeland was eventually "promoted" to position of sharpening knives and scissors of other workers who slaughtered the chickens. Copeland suffered a work-related fall at Simmons Foods, which caused serious injury and pain and suffering. Despite his injury and need for physician care, Copeland was threatened with return to prison if he was unable to work. Contrary to the representations upon which he relied, during his time in C.A.A.I.R., Copeland never received any professional drug or alcohol counseling/treatment. Rather, he was simply part of a full-time work camp labor force who was expected to work full time for Simmons Food, without compensation, and with threat of incarceration if he did not complete the one-year "program." Copeland worked for Simmons Foods through C.A.A.I.R.'s work camp for several months, without pay. Copeland routinely worked over 40 hours per workweek at Simmons Foods. Without any professional rehabilitation services, Copeland, who suffers from drug addiction, relapsed and was sent to prison after seven months in C.A.A.I.R., with nothing to show for his involuntary servitude.

**ANSWER:** The Simmons Defendants deny that CAAIR is a "work camp" or that any Simmons entity (or to their knowledge, CAAIR) threatened Copeland with incarceration. The Simmons Defendants admit Copeland performed work on a live hang production line, but deny that Copeland worked for Simmons Foods, Inc. While Copeland participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants admit Copeland suffered a fall while at the facilities of a Simmons-affiliated entity. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 35 and, therefore, deny the same.

36.    Plaintiff David Brandon Spurgin ("Spurgin") was led to believe, through the mails of the United States, that C.A.A.I.R. was a drug and alcohol program offered through Oklahoma's "drug court." Based upon this misrepresentation, Spurgin agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to Spurgin that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide chicken processing services for Simmons Foods without pay. Upon arriving at C.A.A.I.R., Spurgin was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. Spurgin quickly learned that C.A.A.I.R. was not a drug and alcohol rehabilitation program, but rather a work camp program, under which he was required to provide free labor for Simmons Foods under constant threat of incarceration. Spurgin worked full-time at the Simmons Foods chicken processing plants without compensation under threat of incarceration. Spurgin routinely worked over 40 hours per workweek at Simmons Foods. Spurgin was working in a chicken processing plant one night in 2014 when a metal door crashed down on his head, damaging his spine and leaving him with chronic pain, according to medical records. C.A.A.I.R. filed for workers' compensation on his behalf and fraudulently pocketed the $4,500 in insurance payments. Spurgin received nothing. Three years later, Spurgin is still in pain and can no longer hold a full-time job.

**ANSWER:** The Simmons Defendants deny that CAAIR is a "work camp" or that any Simmons entity (or to their knowledge, CAAIR) threatened Spurgin with incarceration. The Simmons Defendants deny Spurgin worked at Simmons Foods, Inc. The Simmons Defendants admit Spurgin was involved in an accident at the facilities of a Simmons-affiliated entity. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 36 and, therefore, deny the same.

37.     Plaintiff Brad ("McGahey") [sic] was led to believe, through the mails of the United States, that C.A.A.I.R. was a drug and alcohol rehabilitation program offered through Oklahoma's court system. Though McGahey was not addicted to anything, he was led to believe that this "rehabilitation" program was his only alternative to serving prison time for violating the terms of probation for a receipt of stolen property plea deal. Based upon this misrepresentation, McGahey agreed to enter the C.A.A.I.R. program, for at least a year, as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the C.A.A.I.R., was it disclosed to McGahey that C.A.A.I.R. was a work camp where he would be required, by threat of incarceration, to provide chicken processing services for Simmons Foods without pay. Upon arriving at C.A.A.I.R., McGahey was not allowed to have any contact with family for the first 30 days. He was not allowed to have visits with his family for several months. McGahey quickly learned that C.A.A.I.R. was not a rehabilitation program, but rather a work camp program, under which he was required to provide labor for Simmons Foods, without pay, under constant threat of incarceration. Beginning in 2010, at Simmons Foods, McGahey first went to work in evisceration, suctioning guts and blood out of slaughtered chickens speeding past him on metal hooks. Then he became a grader, arranging raw breasts, thighs and legs into orderly piles as they moved up a conveyor belt to packaging. It was monotonous work. During his time working in the processing plants, if McGahey got hurt or worked too slowly, his bosses threatened him with prison. McGahey routinely worked over 40 hours per workweek at Simmons Foods. McGahey was never paid a dime while working manual labor for the benefit of C.A.A.I.R. and Simmons Foods.

**ANSWER:** The Simmons Defendants deny that CAAIR is a "work camp" and that McGahey was "required, by threat of incarceration, to [work] for Simmons Foods without pay." The Simmons Defendants deny McGahey worked for Simmons Foods, Inc. While McGahey participated in the CAAIR program, he was assigned to work at Simmons Feed Ingredients, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants admit that they did not pay McGahey wages, because he was not an employee. The Simmons Defendants are without sufficient information as to McGahey's position and job duties at this time and, therefore, deny the same. The Simmons Defendants deny the remaining allegations in paragraph 37.

38.     On May 27, 2010, three months into his time at C.A.A.I.R., while working at the Simmons processing plant, and while attempting to help an injured co-worker, McGahey's hand got stuck in the conveyor belt. McGahey suffered a "severe crush injury." The machine smashed his hand, breaking several bones and nearly severing a tendon in his wrist. When he finally yanked his wrist free, his hand was bent completely backward. One of C.A.A.I.R.'s top managers picked McGahey up at the plant and drove him to the local hospital. Doctors took X- rays of McGahey's hand, gave him a splint and ordered him not to work. After returning to the C.A.A.I.R. work camp, McGahey suffered in pain, and expected not to work in compliance with the doctor's orders. However, C.A.A.I.R. mandated that he work while injured. The C.A.A.I.R. administrators called McGahey lazy and accused him of hurting himself on purpose to avoid working. C.A.A.I.R. told him that he had to go back to work—either at Simmons or around the campus until his hand healed, which wouldn't count toward his one-year sentence. "You can either work or you can go to prison," a C.A.A.I.R. administrator told him. McGahey's hand is permanently injured. In 2012, McGahey went to court for workers' compensation. C.A.A.I.R. fought him every step of the way. In court in 2012, the program's attorneys argued that McGahey's recurring symptoms weren't the result of the accident in the chicken plant. Suffering in constant pain and from depression, McGahey is now addicted to pain medication.

**ANSWER:** The Simmons Defendants admit McGahey suffered an injury to his hand at the facilities of a Simmons-affiliated entity. The Simmons Defendants are without sufficient information as to the other allegations in paragraph 38 and, therefore, deny the same.

39.     Plaintiff Brandon Mills ("Mills") was led to believe, by his probation officer, that CAAIR was a legitimate rehabilitation program. Based upon this misrepresentation, Mr. Mills agreed to enter the CAAIR Program as a condition of probation and in lieu of serving prison time. At no time prior to his agreement to enter the CAAIR program was it disclosed to Mr. Mills that CAAIR was a work camp where he would be required, by threat of incarceration, to provide chicken processing services for Simmons Foods without pay. Beginning on February 1, 2017, MR. Mills worked at Simmons Foods in Decatur, AR in evisceration, suctioning guts and blood out of slaughtered chickens speeding past him on metal hooks. His job title was EVIS Tech. He worked 40-45 hours per week at Simmons Foods. On the weekends, CAAIR employees forced Mr. Mills (and other CAAIR clients) to perform "community service," which amounted to various manual labor jobs, such as yard work, construction, or repairs, either on the CAAIR campus or at the homes of CAAIR employees. On one occasion, Mr. Mills complained about the compulsory "community service," and CAAIR dorm manager Shawn Jacobs replied that if Mr. Mills didn't like the work, "he could just go to jail."

**ANSWER:** The Simmons Defendants deny that CAAIR is a "work camp" and that Mills was "required, by threat of incarceration, to [work] for Simmons Foods without pay." The Simmons Defendants admit Mills worked in Decatur, AR, but deny that he worked at Simmons Foods, Inc. While Mills participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants admit that they did not pay Mills wages, because he was not an employee. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 39, and, therefore, deny the same.

40.      On at least one occasion, Mr. Mills complained about the working conditions at Simmons, and even filled out an incident report detailing his complaints. CAAIR considered extending Mr. Mills' sentence solely for complaining, but ultimately decided not to and simply told him to keep his mouth shut. While at CAAIR, Mr. Mills severely injured his ankle. CAAIR employees told him to put ice on the ankle and forced him to go to work at Simmons. After his shift ended, Mr. Mills could hardly walk due to the swelling and pain in his ankle. Due to the obvious severity of the injury, CAAIR sent Mr. Mills to a doctor in Siloam Springs, AR and a chiropractic center in Gentry, AR. It was determined that Mr. Mills had torn two tendons in his ankle. Instead of permitting Mr. Mills to receive badly-needed treatment for his serious injury, CAAIR just allowed Mr. Mills to take two weeks off from work at Simmons, but CAAIR did not count those weeks towards Mr. Mills' court-manded sentence. Mr. Mills' family brought him an ankle brace since CAAIR refused to provide medical treatment. Mr. Mills ultimately left CAAIR in November 2017 because he could not continue to perform strenuous labor seven days a week with such a debilitating ankle injury, from which he still suffers complications. Once Mr. Mills left CAAIR, he entered the Northeastern Oklahoma Council on Alcoholism ("NOCA") program, where he stayed for ten months. He is now drug and alcohol free due only to his own determination.

**ANSWER:** The Simmons Defendants are without sufficient information as to the allegations in paragraph 40 and, therefore, deny the same.

41.      Plaintiff Nathan Taylor ("Taylor") entered the CAAIR program in February 2017 and left the program in October 2017. During that time, he worked at Simmons Foods in Southwest City, MO in the evisceration department, where he removed the guts of chickens. Mr. Taylor experienced an issue with one of his teeth while at the CAAIR program for which he was not permitted to seek dental treatment. As a result, the issue worsened to the point that the tooth required extraction. CAAIR took Mr. Taylor to a dentist for the extraction, and when he returned to CAAIR, he was punished for missing work and forced to scrub boards at CAAIR all night before having to go back to work at Simmons the following morning on hardly any sleep.

**ANSWER:** The Simmons Defendants admit Taylor was a CAAIR participant from on or around February 2017 to October 2017. The Simmons Defendants further admit that Taylor worked in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Taylor participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 41 and, therefore, deny the same.

42.     Plaintiff Stanley Shane Alexander ("Alexander") entered the CAAIR program on October 23, 2012 for a brief time until November 2012. He then returned to CAAIR on May 1, 2013 and was there until he left the program on November 26, 2013. Mr. Alexander worked at the Simmons plant in Southwest City, MO in the meat bay as a "meat receiver." He cleaned the backs of semi-trucks that contained chicken. Mr. Alexander became extremely ill on two occasions while he was at CAAIR with what is known as the "chicken flu." Mr. Alexander also suffers from various mental illnesses, for which he was provided absolutely no treatment while he was at CAAIR.

**ANSWER:** The Simmons Defendants admit Alexander was a CAAIR participant from on or around October 2012 to November 2012 and from on or around May 2013 to November 2013. The Simmons Defendants further admit that Alexander worked in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Alexander participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 42 and therefore, deny the same.

43.     Plaintiff Jason Baker ("Baker") was convinced to join the CAAIR program by Jim Lovell in February 2016 and stayed at the program until November 2016, when he was unjustly expelled from the program by Jim Lovell for allegedly refusing to take a urinary analysis ("UA") test, which allegation Mr. Baker maintains was completely false. Mr. Baker worked at the Simmons

plant in Jay, OK for approximately two months in the night sanitation department. He also worked at various other private businesses at CAAIR's demand.

**ANSWER:** The Simmons Defendants admit Baker was a CAAIR participant from on or around March 2016 to November 2016. The Simmons Defendants deny the second sentence in paragraph 43. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 43 and, therefore, deny the same.

44.     Plaintiff Craigory Blue ("Blue") entered the CAAIR program pursuant to a court order on October 13, 2013 and was there until he graduated on October 13, 2014. Mr. Blue worked for Simmons Foods in Southwest City, MO hanging chickens. Mr. Blue worked under constant threats of incarceration if he didn't follow every order given by CAAIR and Simmons employees, and therefore he kept his head down and made no complaints during his time at CAAIR, despite being forced to live and work in unsanitary conditions.

**ANSWER:** The Simmons Defendants admit Blue entered CAAIR pursuant to a court order and that he was a CAAIR participant from on or around October 2013 to October 2014. The Simmons Defendants admit Blue worked in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Blue participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants deny Blue "worked under constant threats of incarceration" and deny that he was "forced to live and work in unsanitary conditions." The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 44 and, therefore, deny the same.

45.     Plaintiff Cody Bumpas ("Bumpas") entered the CAAIR program in January 2013 upon the recommendation of his probation officer, who told Mr. Bumpas that he would be working on a chicken farm and would "make a little money," a claim that was obviously false. Mr. Bumpas stayed at CAAIR until July 2014, and worked at Simmons Foods in Southwest City, MO. He hung

chickens and performed maintenance. Mr. Bumpas was forced to work at Simmons for 16 months in exchange for no wages, and his family was forced to sell personal belongings just to be able to afford groceries. The Bumpas family lost their home due to Mr. Bumpas not being allowed to earn wages.

**ANSWER:** The Simmons Defendants admit Bumpas entered the CAAIR program in January 2013 but deny that he was a CAAIR resident between January 2014 and July 2014. The Simmons Defendants admit Bumpas performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Bumpas participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants deny that Bumpas "was forced to work at Simmons." The Simmons Defendants admit they did not pay Bumpas wages, because he was not an employee. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 45 and, therefore, deny the same.

46.     Plaintiff Ryan Cole ("Cole") was at CAAIR from December 20, 2012 to June 26, 2013. He had been incarcerated in the Marshall County Jail when Jim Lovell recruited him to CAAIR. Lovell claimed that if Mr. Cole entered the CAAIR program, his prison sentence would be reduced. While at CAAIR, Mr. Cole worked for Simmons Foods in Southwest City, MO in the re-hang and live hang departments. While working at Simmons, Mr. Cole suffered severe burns when acid fell on his head. He was treated by a nurse and forced to return to work. He also contracted a Staph infection and was ordered to not work for 30 days while he recovered, but CAAIR ordered him back to work at Simmons after about two weeks. Mr. Cole was ultimately kicked out of the CAAIR program after six months for refusing to allege that another CAAIR client was selling drugs to other clients. Mr. Cole did not know whether the client in question was actually selling drugs, so he stayed silent, against the wishes of Jim Lovell, who then sent Mr. Cole to jail, where he spent four years due to previous charges.

**ANSWER:** The Simmons Defendants admit Cole was a CAAIR participant from December 21, 2012 to June 26, 2013. The Simmons Defendants admit Cole performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Cole participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 46 and, therefore, deny the same.

47.     Plaintiff Caleb Byrd ("Byrd") entered the CAAIR program on April 28, 2016 upon the recommendation of Clancy Davis, a friend of Jim Lovell and Don and Janet Wilkerson, who worked for Addiction Behavior and Health. Mr. Byrd remained at CAAIR until he graduated on April 29, 2017. He worked in the meat bay of the Southwest City, MO Simmons plant and spent his entire shifts washing out large bins that contained chicken guts and bones. Mr. Byrd's infant son tragically passed away while Mr. Byrd was at CAAIR. Mr. Byrd was allowed leave for one day to attend his son's funeral services, and then was immediately sent back to CAAIR to work for Simmons. CAAIR did not offer Mr. Byrd any type of counseling after his son's death, which resulted in Mr. Byrd falling into a deep depression.

**ANSWER:** The Simmons Defendants admit Byrd was a CAAIR participant from on or around April 2016 to April 2017. The Simmons Defendants admit Byrd worked in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Byrd participated in the CAAIR program he was assigned to work at Simmons Feed Ingredients, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 47 and, therefore, deny the same.

48.     Plaintiff Steven Cook ("Cook") was at CAAIR from October 19, 2012 until he graduated in July 2013. He worked in the Southwest City, MO Simmons plant stacking frozen boxes of chicken. Mr. Cook injured his shoulder while stacking heavy boxes of chicken, but was denied any

medical treatment for the injury. He still experiences problems with his shoulder to this day as a result of the untreated injury he suffered while working for Simmons.

**ANSWER:** The Simmons Defendants admit Cook was a CAAIR participant from on or around October 2012 to July 2013. The Simmons Defendants admit Cook performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Cook participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 48 and, therefore, deny the same.

49.     Plaintiff Joe Cotrone ("Cotrone") was at CAAIR from May 31, 2011 to approximately September 2011. He initially worked for Simmons Foods in Jay, OK on the salvage line before being transferred to the Southwest City, MO plant, where he cleaned out trucks that had contained un-used chicken parts. Mr. Cotrone became extremely ill while working for Simmons and had to miss three days of work due to a temperature that reached 103 degrees. He was fired from Simmons for missing work, and was therefore discharged from CAAIR. He was told he had ten minutes to find a ride and was then sent walking down the highway with his belongings in hand.

**ANSWER:** The Simmons Defendants admit Cotrone was a CAAIR participant from on or around June 2011 to August 2011. The Simmons Defendants admit Cotrone performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Cotrone participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 49 and, therefore, deny the same.

50.     Plaintiff Ryan Dorland ("Dorland") was at CAAIR from April 17, 2014 until he grad-uated on July 7, 2014. Mr. Dorland worked at Simmons Pet Foods in Decatur, AR stacking 50-pound bags of dog food. After four months of stacking bags of dog food, Mr. Dorland was promoted to a position where he operated a machine to fill bags with dog food. Mr. Dorland was an excellent

employee, as evidenced by his promotion, and often filled in for paid Simmons employees when they missed a shift for some reason. Mr. Dorland also sprained his ankle while he was at CAAIR, but was simply given an ankle brace and sent back to work.

**ANSWER:** The Simmons Defendants admit Dorland was at CAAIR from on or around April 2014 to July 2014. The Simmons Defendants admit that Dorland worked at Simmons Pet Food, Inc. in Decatur, AR. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 50 and, therefore, deny the same.

51.     Plaintiff Patrick Doyle ("Doyle") was at CAAIR from November 2014 to August 2015, when he graduated. Mr. Doyle worked at the Simmons plant in Southwest City, MO, and was an excellent employee. After stacking boxes of frozen chicken for three months, he was promoted to an intake operator, and filled out inventory forms on a computer. Despite being a model employee at Simmons, Mr. Doyle was frequently harassed by CAAIR employees, such as Jim Lovell and Gary Repuddle. On one occasion, Mr. Doyle was falsely accused of using alcohol, and CAAIR charged him $50 for a laboratory test, which Mr. Doyle passed.

**ANSWER:** The Simmons Defendants admit Doyle was a CAAIR participant from on or around November 2014 to August 2015. The Simmons Defendants admit Doyle performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Doyle participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 51 and, therefore, deny the same.

52.     Plaintiff Kenneth Gentry ("Gentry") was at CAAIR from December 9, 2009 until he graduated on September 15, 2010. He worked for Simmons Foods in Southwest City, MO hanging chickens for six months until he became injured on the job. After Mr. Gentry became injured, he was reassigned as a driver who transported CAAIR clients to their jobs at the various Simmons plants in Oklahoma, Arkansas, and Missouri.

**ANSWER:** The Simmons Defendants admit Gentry was a CAAIR participant from on or around December 2009 to September 2010. The Simmons Defendants admit Gentry performed work in Southwest City, MO, but deny Gentry worked for Simmons Foods, Inc. While Gentry participated in the CAAIR program he was assigned to work at Simmons Feed Ingredients Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 52 and, therefore, deny the same.

53.     Plaintiff Raphael Grajeda ("Grajeda") was at CAAIR from October 2014 until November 2015. He worked for Simmons Foods in Southwest City, MO emptying chicken guts out of trucks and then cleaning the back of the trucks. Mr. Grajeda's family suffered financial difficulties while he was forced to work for 13 months for no wages.

**ANSWER:** The Simmons Defendants admit Grajeda was a CAAIR participant from on or around October 2014 to November 2015. The Simmons Defendants admit Grajeda performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Grajeda participated in the CAAIR program he was assigned to work at Simmons Feed Ingredients, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 53 and, therefore, deny the same.

54.     Plaintiff Michael Greenhaw ("Greenhaw") was at CAAIR from September 18, 2012 until he graduated in September 2013. He performed janitorial duties at the Southwest City, MO Simmons plant. On M. Greenhaw's first day at CAAIR, CAAIR employee George Maynor told the clients that they were "criminals first." In addition to his janitorial duties at Simmons, M. Greenhaw was forced to do yard work and other strenuous manual labor duties on the CAAIR grounds. He suffered severe toothaches during his time at CAAIR and after complaining for several months, he was finally sent to a dentist in Grove, OK to get a tooth pulled.

**ANSWER:** The Simmons Defendants admit Greenhaw was a CAAIR participant from on or around September 18, 2012, to September 2013. The Simmons Defendants admit Greenhaw performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Greenhaw participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 54 and, therefore, deny the same.

55.     Plaintiff Clinton Harms ("Harms") was at CAAIR from October 2010 until he [sic] January 2011. Mr. Harms worked for Simmons Foods in Southwest City, MO sorting chicken parts. He severely injured his wrist on the job at Simmons, as was discharged from the CAAIR program because the injury rendered him unable to work. Mr. Harms was forced to go to the Tulsa County Courthouse with no advance notice to beg his drug court judge to place him in another program so he would not have to go to jail. Mr. Harms ultimately was allowed to enter the Oxford House.

**ANSWER:** The Simmons Defendants admit Harms was a CAAIR participant from on or around October 2010 to January 2011. The Simmons Defendants admit Harms performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Harms participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants admit Harms suffered an injury to his wrist at the facilities of a Simmons-affiliated entity. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 55 and, therefore, deny the same.

56.     Plaintiff Michael Harper ("Harper") was at CAAIR from September 2013 to September 2014. He worked at Simmons Pet Foods in Decatur, AR stacking 50-pound bags of dog

food and occasionally operating the fork lifts. Mr. Harper never received any drug or alcohol treatment or any other counseling while he was at CAAIR.

**ANSWER:** The Simmons Defendants admit Harper was a CAAIR participant from on or around September 2013 to September 2014. The Simmons Defendants further admit Harper performed work at Simmons Pet Food, Inc. in Decatur, AR. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 56 and, therefore, deny the same.

57.     Plaintiff Michael Harrell ("Harrell") was at CAAIR from January 7, 2014 until he graduated on February 9, 2015. He worked at the Simmons Pet Foods plant in Siloam Springs, AR for three months packaging dog treats until the plant closed. After that, Mr. Harrell worked in the sanitation department at the Simmons plant in Jay, OK. Mr. Harrell suffered from a severe bout of pneumonia due to the conditions at CAAIR. Further, he made a complaint about the conditions when he had only a week left of his sentence, and in response, CAAIR added 30 days to his sentence.

**ANSWER:** The Simmons Defendants admit Harrell was a CAAIR participant from on or around January 2014 to February 9, 2015, and further admit he performed work at Simmons Pet Food, Inc, in Siloam Springs, AR. Regarding the third sentence of paragraph 57, the Simmons Defendants admit that Harrell performed work in Jay, OK, but deny he worked for Simmons Foods, Inc. While Harrell participated in the CAAIR program he was assigned to work at Simmons Custom Processing, Inc., now Simmons Prepared Foods, Inc.,[1] a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 57 and, therefore, deny the same.

---

[1] Simmons Custom Processing, Inc. was statutorily merged into Simmons Prepared Foods, Inc. on December 29, 2016. It no longer exists.

58.     Plaintiff Jarret Jones ("Jones") was at CAAIR from December 2015 until he gradu-ated on December 12, 2016. He worked at Simmons Foods in the evisceration department, where he removed the guts from chickens.

**ANSWER:** The Simmons Defendants admit Jones was a CAAIR participant from December 2015 to December 12, 2016. The Simmons Defendants deny that Jones worked for Simmons Foods, Inc. While Jones participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 58 and, therefore, deny the same.

59.     Plaintiff Ikaika Kamai ("Kamai") was at CAAIR from July 2015 until he graduated in May 2016. He worked at Simmons Foods in Decatur, AR as a shoulder cutter, where he cut chick-ens on overnight shifts. Mr. Kamai suffered injuries to his hands from cutting chicken for 8-10 hours straight in freezing cold rooms. He also became ill with the flu while at CAAIR but was forced to work at Simmons while he was sick.

**ANSWER:** The Simmons Defendants admit Kamai was a CAAIR participant from on or around July 2015 to May 2016. The Simmons Defendants admit that Kamai performed work in Decatur, AR, but deny he worked for Simmons Foods, Inc. While Kamai participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 59 and, therefore, deny the same.

60.     Plaintiff Marquis Luckey ("Luckey") was at CAAIR from July 1, 2015 to August 30, 2015. He worked at Simmons Pet Foods in Decatur, AR stacking 50-pound bags of dog food. Mr. Luckey complained that he was unable to perform his duties because he had screws in his ankle and could not stand and lift heavy bags of dog food for 12 hours straight. He was told that if he kept

complaining, he would receive a three-month addition to his sentence. Unable to bear the pain in his ankle any longer, Mr. Luckey left CAAIR after two months.

> **ANSWER:** The Simmons Defendants admit Luckey was a CAAIR participant from on or around July 1, 2015 to August 30, 2015 and further admit he performed worked at Simmons Pet Food, Inc. in Decatur, AR. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 60 and, therefore, deny the same.

61.     Plaintiff Clinton Meyer ("Meyer") was at CAAIR from June 23, 2017 to October 26, 2017. He worked at Simmons Foods in Decatur, AR on the salvage table. He worked at a conveyor belt that carried poultry that had been rejected by the USDA, picking various parts off the belt to be salvaged. While Mr. Meyer was at CAAIR, there was a bedbug infestation at the CAAIR dorms.

> **ANSWER:** The Simmons Defendants admit Meyer was a CAAIR participant from on or around June 2017 to October 2017. The Simmons Defendants admit Meyer performed work in Decatur, AR, but deny he worked for Simmons Foods, Inc. While Meyer participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 61 and, therefore, deny the same.

62.     Plaintiff Jason Miqueli ("Miqueli") was at CAAIR from August 2016 to May 2017. He worked at Simmons Foods in Southwest City, MO in the protein division cleaning the backs of trucks with acid and power washers. One day, while working at Simmons, a vat of acid spilled onto Mr. Miqueli. The rubber gloves that Simmons provided Mr. Miqueli were not capable of with-standing the acid, which resulted in Mr. Miqueli suffering severe burns to his hands, arms, and one of his legs. Mr. Miqueli still suffers from disabilities related to the accident and has multiple scars on his body. Two days before Mr. Miqueli was set to graduate from CAAIR, he was discharged for allegedly engaging in "horse-play," which, in reality, consisted of another CAAIR client grabbing Mr. Miqueli's shoulders from behind to congratulate him on almost completing the program. This

unspeakably unjust event denied Mr. Miqueli the $1000 "graduation gift" from CAAIR and caused Mr. Miqueli to fall into a deep depression. Since he was expelled from CAAIR, Mr. Miqueli has struggled to maintain employment due to both his injuries and the mental anguish he suffered at CAAIR, which has caused him multiple relapses. Mr. Miqueli is currently homeless and was recently arrested for larceny, for which he pleaded guilty, as he was simply trying to keep himself alive. Plaintiff Dwayne Moss ("Moss") was at CAAIR from July 19, 2012 until he graduated in April 2013. He worked at Simmons Foods in the salvage department as well as the "second processing" department, where he iced down chicken meat and packaged it. While working at Simmons, Mr. Moss began to suffer from stiff wrists because of the repetitive work he was forced to perform.

> **ANSWER:** The Simmons Defendants admit Miqueli was a CAAIR participant from on or around August 2016 to May 2017. The Simmons Defendants admit Miqueli performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Miqueli participated in the CAAIR program he was assigned to work at Simmons Feed Ingredients, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants admit Moss was a CAAIR participant from on or around July 19, 2012, to April 2013. The Simmons Defendants deny that Moss worked for Simmons Foods, Inc. While Moss participated in the CAAIR program he was assigned to work at Simmons Custom Processing, Inc., now Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 62 and, therefore, deny the same.

63.     Plaintiff Shane O'Neal ("O'Neal") was at CAAIR from December 30, 2014 to December 31, 2015. He worked at Simmons Pet Foods in Decatur, AR stacking 50-pound bags of dog food for about six months, until he was promoted to line operator, where he operated a machine that filled bags with dog food. Mr. O'Neal worked for 12 months in horrible conditions but never complained because he feared being sent to jail or having his sentence at CAAIR increased.

**ANSWER:** The Simmons Defendants admit O'Neal was a CAAIR participant from on or around December 2014 to December 2015 and further admit he performed work at Simmons Pet Food, Inc. in Decatur, AR. The Simmons Defendants deny O'Neal worked "in horrible conditions." The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 63 and, therefore, deny the same.

64.     Plaintiff Travis Owens ("Owens") was at CAAIR from June 2013 to March 2014. He worked at Simmons Foods in Southwest City, MO on the millwright crew as an assistant to welders and painters. Mr. Owens never complained while he was at CAAIR, despite the horrible conditions, because he saw that complaining only resulted in punishment from CAAIR and/or Simmons.

**ANSWER:** The Simmons Defendants admit Owens was a CAAIR participant from on or around June 2013 to March 2014. The Simmons Defendants admit Owens performed work in Southwest City, MO, but deny he worked for Simmons Foods, Inc. While Owens participated in the CAAIR program he was assigned to work at Simmons Feed Ingredients, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants deny that Owens's work conditions were "horrible." The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 64 and, therefore, deny the same.

65.     Plaintiff Brain Pearson ("Pearson") was at CAAIR from April 2014 to June 2014. A friend of his father's told him that CAAIR was a rehab but Mr. Pearson had no idea that he would be going to a work camp where he would receive no wages. Mr. Pearson left CAAIR after approximately three months because he could not stand the conditions and was not facing a sentence of incarceration.

**ANSWER:** The Simmons Defendants admit Pearson was a CAAIR participant from on or around April 2014 to June 2014. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 65, and, therefore, deny the same.

66.      Plaintiff Thomas Rico ("Rico") was at CAAIR from September 2014 until he graduated on July 31, 2016. Mr. Rico mostly worked at Simmons Pet Foods in Decatur, AR stacking 50-pound bags of dog food. On his days off, he was also forced to work at the Southwest City, MO Simmons plant hanging chickens. Mr. Rico was forced to work for 22 months for no wages, often working 50 or more hours per week.

**ANSWER:** The Simmons Defendants admit Rico entered the CAAIR program in September 2014 but deny he remained in the program after September 25, 2015. The Simmons Defendants admit Rico performed work at Simmons Pet Food, Inc. in Decatur, AR. The Simmons Defendants deny the third sentence of paragraph 66. The Simmons Defendants deny that they or any Simmons-affiliated entity "forced" Rico to work and further deny that Rico was in the CAAIR program for 22 months. The Simmons Defendants admit Rico did not receive wages for work he performed in the CAAIR program, because he was not an employee. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 66 and, therefore, deny the same.

67.      Plaintiff Titus Staton ("Staton") was at CAAIR from April 2016 until he graduated in April 2017. He worked at Simmons Foods in Decatur, AR trimming and pulling the guts out of chickens. Mr. Staton injured his elbow due to the repetitive nature of his work, but never received any medical treatment while at CAAIR. He still has issues with the injured elbow. Mr. Staton also contracted the "chicken flu" several times while working at Simmons through CAAIR and became violently ill and [sic] causing him significant distress.

**ANSWER:** The Simmons Defendants admit Staton was a CAAIR participant from on or about April 2016 to April 2017. The Simmons Defendants admit Staton performed work in Decatur, AR, but deny he worked for Simmons Foods, Inc. While Staton participated in the CAAIR program he was assigned to work at Simmons Prepared Foods, Inc., a separate entity, not a party to this lawsuit. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 67 and, therefore, deny the same.

68.     Michael Welge ("Mr. Welge") entered the CAAIR program on April 12, 2013 through the McClain County Drug Court program until he graduated on April 16, 2014. Mr. Welge's drug court sentence was actually due to expire in January 2014, but CAAIR forced him to stay until April 2014. Mr. Welge worked on the sanitation crew in the Simmons plant in Decatur, AR, where he and his crew were tasked with cleaning the entire plant. While Mr. Welge resided at CAAIR, bedbugs infested the CAAIR dorms. CAAIR's response to the bedbugs was woefully in-adequate and Mr. Welge and the other CAAIR clients at the time were forced to suffer numerous bites and were constantly anxious due to the bugs.

**ANSWER:** The Simmons Defendants admit Welge was a CAAIR participant from on or about April 2013 until he graduated the program in April 2014. The Simmons Defendants admit Welge performed work in Decatur, AR, but deny he worked for Simmons Foods, Inc. The Simmons Defendants are without sufficient information as to the remaining allegations in paragraph 68 and, therefore, deny the same.

69.     C.A.A.I.R.'s mistreatment of its residents does not stop with forced labor for no pay. When putative-class-member-workers are injured they are not provided with adequate, or often any, medical care and are instead ordered to work while injured. C.A.A.I.R. staff, as well as staff at Simmons Foods and Simmons Pet Food facilities, threaten to send the Putative Class Members to prison if their work is deemed unsatisfactory or if they complain that they cannot work due to in-juries. C.A.A.I.R. even files workers compensation claims on behalf of its injured residents, and then keeps every penny paid for such claims. Defendant Wilkerson has openly admitted to this conduct, publicly stating: "That's the way it works." "Yes, we did keep [the workers compensa-tion money of clients]," Wilkerson stated. "Right, wrong or indifferent, that's what happened."

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 69.

70.     Defendants are and were joint and co-employers of Plaintiffs and all C.A.A.I.R. resi-dents because, inter alia, all Defendants direct, control, and supervise the work performed by these

employees; these employees' work is an integral part of the Defendants' businesses; and the Defendants control the employment conditions of these employees.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 70.

71.     Defendants acted in concert to engage in the conduct complained of herein by virtue of mutual arrangements and contracts to provide labor for the production of agricultural products for commerce, to withhold wages, and to hold Named Plaintiffs and all C.A.A.I.R. residents in involuntary servitude.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 71.

72.     Defendant Wilkerson is chief executive officer of C.A.A.I.R., which is an enterprise engaged in and affecting interstate commerce by virtue of its provision of labor to Defendants Simmons Foods and Simmons Pet Food, which manufacture products for interstate commerce, and by virtue of its transportation of that labor across state lines. As C.A.A.I.R.'s CEO, defendant Wilkerson is employed by and is associated with C.A.A.I.R. Further, as C.A.A.I.R.'s CEO, Ms. Wilkerson is responsible for devising and implementing C.A.A.I.R. policy, a fundamental and essential component of which is involuntary servitude, a racketeering activity under 18 U.S.C. § 1961. Defendant Wilkerson therefore conducts the affairs of C.A.A.I.R. through a pattern of racketeering activity, which is, in fact, the basis of C.A.A.I.R.'s entire business model.

**ANSWER:** The Simmons Defendants admit Janet Wilkerson is CAAIR's CEO, and that other Simmons entities make work opportunities available to help CAAIR fulfill its charitable mission and to help CAAIR clients break the self-destructive cycle of addiction, crime, and incarceration. The Simmons Defendants deny the remaining allegations in paragraph 72.

73.     Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food conspire with Defendant Wilkerson to engage in this conduct by executing explicit agreements and contracts for the provision of involuntary labor, agreeing to withhold wages from C.A.A.I.R. residents, transmitting

earned wages directly to C.A.A.I.R., receiving labor transported across state lines by C.A.A.I.R., and operating businesses which substantially rely on unpaid, unlawful labor.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 73.

74.     The violations of law described herein were and are knowing, intentional, and willful. Defendants have engaged, and continue to engage, in the conduct alleged herein by systematic, calculated policy. Defendants are advised by sophisticated and informed legal counsel and human resources professionals who were, or should have been, aware of the legal requirements violated by the conduct alleged herein. Defendants therefore acted in knowing violation of the law.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 74.

## IV.   FRCP 23 CLASS ACTION ALLEGATIONS

### A.   Rule 23 Class Definitions

**The Class:**

75.     Proposed Class Representatives seek to represent the following Class with respect to the claims of Proposed Class Representatives and the Putative Class Members under Counts 3, 4, 5, 10, 12, 13, and 14 (the "Class"):

All persons who, at any time from November 16, 2009 through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R.

**ANSWER:** Paragraph 75 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate for these claims.

**The Oklahoma Wage Claims Subclass:**

76.     Plaintiff Jason Baker seeks to represent the following Subclass with respect to the claims of Plaintiffs and the Putative Class Members under Count 11 (the "Oklahoma Wage Claims Subclass"):

> All persons who, at any time from November 16, 2009 through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R.

> **ANSWER:** Paragraph 76 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate for these claims.

### The Arkansas Wage Claims Subclass

77.     Plaintiff Brandon mills seeks to represent the following Subclass with respect to the claims of Plaintiffs and the Putative Class Members under Counts 6 and 7 (the "Arkansas Wage Claims Subclass"):

> All persons who, at any time from November 16, 2009 through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility in the State of Arkansas while residing at C.A.A.I.R.

> **ANSWER:** Paragraph 77 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate for these claims.

### The Missouri Wage Claims Subclass

78.     Plaintiff Nathan Taylor seeks to represent the following Subclass with respect to the claims of Plaintiffs and the Putative Class Members under Counts 8 and 9 (the "Missouri Wage Claims Subclass"):

> All persons who, at any time from November 16, 2009 through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility in the state of Missouri while residing at C.A.A.I.R.

**ANSWER:** Paragraph 78 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate for these claims.

## B.   Propriety of Certification Under FRCP 23(a)

### 1.   Numerosity

79.     The Class likely includes between 800 and 1,500 Putative Class Members. The Oklahoma, Arkansas, and Missouri Subclasses represent a portion of the broader Class. The members of the Class and Subclasses are readily identifiable from Defendants' business records and are so numerous that joinder of all members is impracticable.

**ANSWER:** Paragraph 79 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate for these claims or that the numerosity requirement is met.

### 2.  Adequacy

80.     Plaintiffs Copeland, Spurgin, McGahey, Mills, Taylor, and Baker will fairly and adequately represent the interests of the Class. Jason Baker will fairly and adequately represent the Oklahoma Subclass; Brandon Mills will fairly and adequately represent the Arkansas Subclass; and Nathan Taylor will fairly and adequately represent the Missouri Subclass. Proposed Class Representatives are members of these classes and were subject to the same policies and practices as the other members of the Class. Proposed Class Representatives have retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class action litigation. Proposed Class Representatives and their counsel are committed to prosecuting this action vigorously on behalf of the various classes and have the financial resources to do so. Neither Proposed Class Representatives nor their counsel have interests that are contrary to or that conflict with those of the proposed Class.

**ANSWER:** Paragraph 80 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate for these claims or that the adequacy requirement is met.

### 3. **Commonality**

81.    There are numerous question of law and fact common to the Class and the Oklahoma, Arkansas, and Missouri Subclasses. These questions include, but are not limited to, the following: (1) Whether the practices complained of herein are unlawful; (2) whether the practices alleged herein were willful; (3) whether the actions complained of herein constitute holding persons to involuntary servitude; and, if so, (4) whether defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food conspired with defendant Wilkerson to conduct the affairs of C.A.A.I.R. through a pattern of racketeering activity.

**ANSWER:** Paragraph 81 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate for these claims or that the commonality requirement is met.

## C.    **Propriety of Certification Under FRCP 23(b)(3)**

### 1. **Predominance**

82.    Questions of law and fact common to class members predominate over any questions affecting only individual members. The predominant issues in this litigation will be whether the common practices of the defendants violate the RICO Act, the TVPRA and the laws of Oklahoma, Arkansas, and Missouri. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Moreover, there are no unusual difficulties likely to be encountered in the management of this case as a class action.

**ANSWER:** Paragraph 82 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate in this this case. The Simmons Defendants allege that individual questions will predominate.

2. **Superiority**

83.     The class action mechanism is superior to any alternatives that might exist for the fair and efficient adjudication of these claims. Prosecution of this case as a class action will permit a large number of injured parties to pursue their common claims in a single forum, at the same time, which will promote efficiency, prevent duplication of evidence and efforts, and preserve judicial resources and the resources of the parties. A class action will avoid potentially inconsistent results in numerous individual trials or other judicial actions. Further, class treatment is the only realistic means by which Named Plaintiffs and the proposed class members can effectively litigate against a large, well-represented corporate entities like defendants. In the absence of a class action, the defendants will be unjustly enriched by the retention of the fruits and benefits of their unlawful conduct. A multiplicity of repetitive individual actions would also place an enormous burden on the courts.

**ANSWER:** Paragraph 83 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any class is appropriate in this case.

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Failure to Pay Minimum Wages in Violation of the FLSA**
**29 U.S.C. § 206(a)**

84.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

85.     Named Plaintiffs bring this cause of action on their individual behalf against Defend-ants C.A.A.I.R., Simmons Foods, and Simmons Pet Food, Janet Wilkerson, Don Wilkerson, and Louise Dunham.

**ANSWER:** Paragraph 85 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

86.     Named Plaintiffs are or were, at all relevant times, employees engaged in commerce or the production of goods for commerce, and are or were employed by enterprises (namely, C.A.A.I.R., Simmons Foods, and Simmons Pet Food) engaged in commerce or the production of goods for commerce as contemplated by 29 U.S.C. § 206(a) and 207(a).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 86.

87.     Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Rodney Dunham and Louise Dunham are "employers" as that term is defined by 29 U.S.C. § 203(d); and are "enterprises engaged in commerce or in the production of goods for commerce" as that term is defined by 29 U.S.C. § 203(s)(1)(A), including by virtue of respective annual gross volumes of sales and business exceeding $500,000.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 87.

88.     None of the exemptions from the FLSA's minimum wage and overtime require-ments, including those contained in 29 U.S.C. § 213, apply to Named Plaintiffs.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 88.

89.     At all times material herein, the Named Plaintiffs have been entitled to the rights, protections, and benefits provided by the FLSA, 29 U.S.C. § 201, *et seq.*

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 89.

90.     As alleged herein, Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Rodney Dunham and Louise Dunham have violated the FLSA, including 29 U.S.C. § 206(a), by failing to pay minimum wages.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 90.

91.     As a direct and proximate result of these Defendants' failure to pay minimum wages in violation of the FLSA, Named Plaintiffs have been injured and have sustained damages, including lost compensation, in an amount to be proved at trial.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 91.

92.     Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have acted neither in good faith nor with reasonable grounds to believe that their actions complied with the FLSA. Accordingly, Named Plaintiffs are entitled to recover liquidated damages pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find that these Defendants acted in good faith, Named Plaintiffs are entitled to an award of pre-judgment interest at the applicable legal rate.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 92.

93.     Accordingly, pursuant to 29 U.S.C. § 216(b), Named Plaintiffs seek, on their individual behalf, damages, liquidated damages, interest, attorney's fees, costs, and such other legal and equitable relief as the Court deems just and proper.

**ANSWER:** Paragraph 93 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207(a)

94.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

95.     Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food, Janet Wilkerson, Don Wilkerson, and Louise Dunham.

**ANSWER:** Paragraph 95 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

96.     Named Plaintiffs bring causes of action one and two, pursuant to 29 U.S.C. § 2016(b), on behalf of themselves only and not as a collective action.

**ANSWER:** Paragraph 96 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

97.     Named Plaintiffs are or were, at all relevant times, employees engaged in commerce or the production of goods for commerce, and are or were employed by enterprise (namely, C.A.A.I.R., Simmons Foods, and Simmons Pet Food) engaged in commerce or the production of goods for commerce as contemplated by 29 U.S.C. § 206(a) and 207(a).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 97.

98.     Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Rodney Dunham and Louise Dunham are "employers" as that term is defined by 29 U.S.C. § 203(d); and are "enterprises engaged in commerce or in the production of goods for commerce" as that term is defined by 29 U.S.C. § 203(s)(1)(A), including by virtue of respective annual gross volumes of sales and business exceeding $500,000.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 98.

99.     None of the exemptions from the FLSA's minimum wage and overtime require-
ments, including those contained in 29 U.S.C. § 213, apply to Named Plaintiffs.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 99.

100.    At all times material herein, Named Plaintiffs have been entitled to the rights, protec-
tions, and benefits provided by the FLSA, 29 U.S.C. § 201, *et seq*.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 100.

101.    As alleged herein, Named Plaintiffs have worked, and continue to work, on a regular
basis, more than 40 hours a week.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 101.

102.    As alleged herein defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food
have failed to pay Named Plaintiffs any compensation when they work more than 40 hours in a
week, and have thereby violated the FLSA, including 29 U.S.C. § 207(a).

**ANSWER:** The Simmons Defendants admit Defendants did not pay Plaintiffs any
wages because they were not employees. The Simmons Defendants deny the remaining alle-
gations in paragraph 102.

103.    As a direct and proximate result of these Defendants' failure to pay overtime wages
in violation of the FLSA, Named Plaintiffs have been injured and have sustained damages, includ-
ing lost compensation, in an amount to be proved at trial.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 103.

104.    Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have acted neither
in good faith nor with reasonable grounds to believe that their actions complied with the FLSA.
Accordingly, Named Plaintiffs are entitled to recover liquidated damages pursuant to 29 U.S.C. §

216(b). Alternatively, should the Court find that these defendants acted in good faith, Named Plaintiffs are entitled to an award of pre-judgment interest at the applicable legal rate.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 104.

105.     Accordingly, pursuant to 29 U.S.C. § 216(b), Named Plaintiffs seek, on their individual behalf, damages, liquidated damages, interest, attorney's fees, costs, and such other legal and equitable relief as the Court deems just and proper.

**ANSWER:** Paragraph 105 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

### THIRD CAUSE OF ACTION

**Violation of the RICO Act, 18 U.S.C. §§ 1961 and 1962(c)**

106.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

107.     Named Plaintiffs bring this cause of action on their individual behalf against Defendant Janet Wilkerson.

**ANSWER:** Paragraph 107 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

108.     Proposed Class Representatives bring this cause of action on their individual behalf and as class representatives on behalf of the Class against Defendant Janet Wilkerson.

**ANSWER:** Paragraph 108 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

109.     As alleged herein, defendant Janet Wilkerson has conducted the affairs of C.A.A.I.R. through a pattern of racketeering activity (namely, holding persons in involuntary servitude) in violation of 18 U.S.C. § 1962(c).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 109

110.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Class have been injured in an amount to be proved at trial.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 110.

111.     Accordingly, pursuant to 18 U.S.C. § 1964(c), Named Plaintiffs, on their individual behalf, seek treble damages, attorney's fees, and costs.

**ANSWER:** Paragraph 111 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

112.     Also, accordingly, pursuant to 18 U.S.C. § 1964(c), Proposed Class Representatives, on their individual behalf and as class representatives on behalf of the Class[,] seek treble damages, attorney's fees, and costs.

**ANSWER:** Paragraph 112 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

## FOURTH CAUSE OF ACTION

### Violation of the RICO Act, 18 U.S.C. §§ 1961 and 1962(d)

113.      Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

114.     Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 114 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

115.     Proposed Class Representatives bring this cause [sic] on their individual behalf and as class representatives on behalf of the Class against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 115 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

116.     As alleged herein, defendant Janet Wilkerson has conducted the affairs of C.A.A.I.R. through a pattern of racketeering activity (namely, holding persons in involuntary servitude) in violation of 18 U.S.C. § 1962(c).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 116.

117.     As alleged herein, Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have conspired with Defendant Wilkerson in this conduct in violation of 18 U.S.C. § 1962(d).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 117.

118.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Class have been injured in their person and/or property.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 118.

119.     Accordingly, pursuant to 18 U.S.C. § 1964(c), Named Plaintiffs, on their individual behalf, seek treble damages, attorney's fees, and costs.

**ANSWER:** Paragraph 119 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

120.     Also, accordingly, pursuant to 18 U.S.C. § 1964(c), Proposed Class Representatives, on their individual behalves and as class representatives on behalf of the the [sic] Class[,] seek treble damages, attorney's fees, and costs.

**ANSWER:** Paragraph 120 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

## FIFTH CAUSE OF ACTION

### Violation of Oklahoma Law Prohibiting Human Trafficking
### 21 O.S. § 748 and 21 O.S. § 748.2

121.     Named Plaintiffs incorporate the preceding paragraphs herein by reference.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

122.     Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 122 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

123.     Proposed Class Representatives bring this cause of action on their individual behalf and as class representatives on behalf of the Class against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 123 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

124.     Defendants enticed, harbored, maintained, transported, provided or obtained Named Plaintiffs and Putative Class Members through deception, force, fraud, threat or coercion for the purposes of engaging Plaintiffs and Putative Class Members in labor.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 124.

125.     Defendants benefited financially from participation in a venture that has engaged in an act of trafficking Named Plaintiffs and Putative Class Members for labor.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 125.

126.     Named Plaintiffs and Putative Class Members suffered harm due to the illegal acts of Defendants.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 126.

127.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Class have been injured in an amount to be proved at trial.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 127.

128.     The conduct of Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food as alleged herein has resulted in serious damage to the public welfare; has resulted in substantial profit to Defendants in excess of $10,000,000; has been ongoing for an extended period exceeding eight years; was undertaken with the full knowledge of Defendants; and was perpetrated by a substantial number of Defendants' employees.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 128.

129.     Accordingly, pursuant to 21 O.S. § 748.2(B), Named Plaintiffs, on their individual behalf, seek actual damages, punitive damages, attorney's fees, and costs.

**ANSWER:** Paragraph 198 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

130.    Also accordingly, pursuant to 21 O.S. § 748.2(B), Proposed Class Representatives, on their individual behalf and as class representatives on behalf of the Class[,] seek actual damages, punitive damages, attorney's fees, and costs.

**ANSWER:** Paragraph 130 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

## SIXTH CAUSE OF ACTION

### Failure to Pay Minimum Wages in Violation of Arkansas Law
### A.C.A. § 11-4-210(a)

131.    Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

132.    Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 132 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

133.    Plaintiff Brandon Mills brings this cause of action on his individual behalf and as class representatives [sic] on behalf of the Arkansas Wage Claims Subclass against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 133 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

134.    As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Arkansas Wage Claims Subclass minimum wages in violation of A.C.A. § 11-4-210(a).

**ANSWER:** The Simmons Defendants admit they did not pay Plaintiffs any wages because Plaintiffs were not employees. The Simmons Defendants deny the remaining allegations of paragraph 134.

135.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Arkansas Claims Subclass have been injured in an amount to be proved at trial.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 135.

136.     Accordingly, pursuant to A.C.A. § 11-4-218(a), Named Plaintiffs, on their individual behalf, seek damages, liquidated (double) damages, attorney's fees, and costs.

**ANSWER:** Paragraph 136 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

137.     Also accordingly, pursuant to A.C.A. § 11-4-218(a), Plaintiff Brandon Mills, on his individual behalf and as class representatives [sic] on behalf of the Arkansas Wage Claims Subclass[,] seeks damages, liquidated (double) damages, attorney's fees, and costs.

**ANSWER:** Paragraph 137 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

## SEVENTH CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of Arkansas Law
### A.C.A. § 11-4-211(a)

138.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

139.    Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 139 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

140.    Plaintiff Brandon Mills brings this cause of action on his individual behalf and as class representatives [sic] on behalf of the Arkansas Wage Claims Subclass against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 140 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

141.    As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Arkansas Wage Claims Subclass overtime wages in violation of A.C.A. § 11-4-211(a).

**ANSWER:** The Simmons Defendants admit they did not pay Plaintiffs any wages because Plaintiffs were not employees. The Simmons Defendants deny the remaining allegations of paragraph 141.

142.    As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Arkansas Wage Claims Subclass have been injured in an amount to be proved at trial.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 142.

143.    Accordingly, pursuant to A.C.A. § 11-4-218(a), Named Plaintiffs, on their individual behalf, seek damages, liquidated (double) damages, attorney's fees, and costs.

**ANSWER:** Paragraph 143 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

144.    Also accordingly, pursuant to A.C.A. § 11-4-218(a), Plaintiff Brandon Mills, on his individual behalf and as class representatives [sic] on behalf of the Arkansas Wage Claims Sub-class[,] seeks damages, liquidated (double) damages, attorney's fees, and costs.

**ANSWER:** Paragraph 144 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

## EIGHTH CAUSE OF ACTION

### Failure to Pay Minimum Wages in Violation of Missouri Law § 290.502 R.S.Mo.

145.    Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

146.    Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 146 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

147.    Plaintiff Nathan Taylor brings this cause of action on his individual behalf and as class representative on behalf of the Missouri Wage Claims Subclass against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 147 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

148.    As alleged herein, Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Missouri Wage Law Rule 23 Class minimum wages in violation of § 290.502 R.S.Mo.

**ANSWER:** The Simmons Defendants admit they did not pay Plaintiffs any wages because Plaintiffs were not employees. The Simmons Defendants deny the remaining allegations of paragraph 148.

149.     As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Missouri Wage Claims Subclass have been injured in an amount to be proved at trial.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 149.

150.     Accordingly, pursuant to § 290.527 R.S.Mo., Named Plaintiffs, on their individual behalf, seek damages, liquidated (double) damages, attorney's fees, and costs.

**ANSWER:** Paragraph 150 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

151.     Also accordingly, pursuant to § 290.527 R.S.Mo., Plaintiff Brandon Mills, on his individual behalf and as class representative on behalf of the Missouri Wage Claims Subclass[,] seeks damages, liquidated (double) damages, attorney's fees, and costs.

**ANSWER:** Paragraph 151 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

## NINTH CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of Missouri Law
### § 290.505 R.S.Mo.

152.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

153.    Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 153 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

154.    Plaintiff Brandon Mills brings this cause of action on his individual behalf and as class representative on behalf of the Missouri Wage Claims Subclass against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 154 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

155.    As alleged herein, Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have failed to pay Named Plaintiffs and the Members of the Missouri Wage Claims Subclass overtime wages in violation of § 290.505 R.S.Mo.

**ANSWER:** The Simmons Defendants admit they did not pay Plaintiffs any wages because Plaintiffs were not employees. The Simmons Defendants deny the remaining allegations of paragraph 155.

156.    As a direct and proximate result of this conduct, Named Plaintiffs and the members of the Missouri Wage Claims Subclass have been injured in an amount to be proved at trial.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 156.

157.    Accordingly, pursuant to § 290.527 R.S.Mo., Named Plaintiffs, on their individual behalf, seek damages, liquidated (double) damages, attorney's fees, and costs.

**ANSWER:** Paragraph 157 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

158.     Also accordingly, pursuant to § 290.527 R.S.Mo., Plaintiff Brandon Mills, on his in-dividual behalf and as class representative on behalf of the Missouri Wage Claims Subclass[,] seeks damages, liquidated (double) damages, attorney's fees, and costs.

**ANSWER:** Paragraph 158 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs are entitled to the relief requested.

## TENTH CAUSE OF ACTION

### Unjust Enrichment in Violation of Missouri Common Law

159.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding para-graphs by reference as though fully set forth herein.

160.     Named Plaintiffs bring this cause of action on their individual behalf against Defend-ants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 160 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

161.     Proposed Class Representatives bring this cause of action on their individual behalf and as class representatives on behalf of the Class against Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food.

**ANSWER:** Paragraph 161 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

162.     As alleged herein, defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food have failed to pay Named Plaintiffs and the Class wages for their hours worked.

**ANSWER:** The Simmons Defendants admit they did not pay Plaintiffs any wages because Plaintiffs were not employees. The Simmons Defendants deny the remaining allegations of paragraph 162.

163.     As a result of this conduct, Named Plaintiffs and the Class were forced to forfeit money for the benefit of these Defendants, and these Defendants thus knowingly and willingly obtained monetary benefits to which they were not entitled.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 163.

164.     Under these circumstances, it would be inequitable for these defendants to retain these monetary benefits at the expense of Named Plaintiffs and the Members of the Class.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 164.

165.     By engaging in this conduct, Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Foods have been unjustly enriched at the expense of Named Plaintiffs and the Class, and are required, in equity and good conscience, to compensate Named Plaintiffs and the Class for harm suffered as a result of these actions.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 165.

166.     As a direct and proximate result of this unjust enrichment, Named Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by of the benefit conferred by Named Plaintiffs and the Class.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 166.

## ELEVENTH CAUSE OF ACTION

**Violation of Oklahoma Protection of Labor Act 40 O.S. § 161, *et seq.*
and
Oklahoma Minimum Wage Act, 40 O.S. § 197.1, *et seq.*

167.     Named Plaintiffs incorporate by reference all preceding paragraphs as though fully

set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

168.     Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louis Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 168 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

169.     Plaintiff Jason Baker brings this cause of action on his individual behalf and as class representative on behalf of the Oklahoma Wage Claims Subclass against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 169 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

170.     Defendants are employers covered by and subject to the Oklahoma Protection of Labor Act, 40 O.S. § 161, et seq. and the Oklahoma Minimum Wage Act, 40 O.S. § 197.1, *et seq.*

**ANSWER:** The Simmons Defendants admit they are employers but deny they employed Plaintiffs or any other CAAIR clients. The Simmons Defendants deny the remaining allegations in paragraph 170.

171.     Defendants had a statutory duty under Oklahoma law to compensate Named Plaintiffs and Members of the Oklahoma Wage Claims Subclass at a regular hourly wage for all hours worked.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 171.

172.     Defendants' failure to pay all wages due to Named Plaintiff [sic] and Members of the Oklahoma Wage Claims Subclass was willful. More specifically, Defendant's [sic] wrongful acts violate 40 O.S. § 165.3 (B).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 172.

173.     Defendants' willful failure to pay all wages due to Named Plaintiff [sic] and Members of the Oklahoma Wage Claims Subclass, in violation of 40 O.S. § 165.3 and 40 O.S. § 197.9, permits Named Plaintiff [sic] and Members of the Oklahoma Claims Subclass to recover liquidated damages in addition to their unpaid wages, penalties, interest, expenses, reasonable attorneys' fees and costs.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 173.

## TWELFTH CAUSE OF ACTION

### Forced Labor in Violation of the
### Trafficking Victims Protection Reauthorization Act ("TVPRA")
### 18 U.S.C. §§ 1589(A), 1595

174.     Named Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

175.     Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louis Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 175 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

176.     Proposed Class Representatives bring this cause of action on their individual behalf and as class representatives on behalf of the Class against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 176 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

177.     Named Plaintiffs and the Class bring this claim for relief under the private cause of action for violation of the TVPRA (§ 1589(a)), which prohibits forced labor.

**ANSWER:** Paragraph 177 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs have stated or can state an actionable claim for relief under the TVPRA.

178.     Under 18 U.S.C. § 1589(a), it is unlawful to "knowingly provid[e] or obtain[] the labor or services of a person ... (1) by means of force, threats of force, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

**ANSWER:** The Simmons Defendants admit paragraph 178 accurately quotes 18 U.S.C. § 1589(a). The Simmons Defendants deny they or any other Defendants have violated the provision.

179.     As alleged herein, the Defendants held Named Plaintiffs and Members of the Class in a state of forced labor, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of abuse of law or legal process; and/or a scheme, plan, or pattern intended to cause Named Plaintiffs and Members of the Class to believe that if they did not perform the labor or services, they would suffer serious harm, including psychological,

financial, or reputational harm, or incarceration, in violation of the forced labor provision of the TVPRA, 18 U.S.C. § 1589(a).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 179.

180.     Defendants executed a scheme, plan, or pattern (i.e., a forced labor camp billed as a drug and alcohol rehabilitation program) intended to cause Named Plaintiffs and Members of the Class to believe that if they did not continue to work for Defendants, they would suffer serious harm by threats of incarceration and by controlling their living conditions. Such a scheme is prohibited by 18 U.S.C. § 1589(a)(1) and (2).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 180.

181.     Under 18 U.S.C. § 1589(b), it is unlawful to "knowingly benefit[], financially or by receiving anything of value, from participating in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any such means."

**ANSWER:** The Simmons Defendants admit paragraph 181 accurately quotes 18 U.S.C. § 1589(b). The Simmons Defendants deny they or any other Defendants have violated the provision.

182.     As alleged herein, Defendants knowingly benefited, financially or by receiving something of value, from participation in a venture that violated 18 U.S.C. § 1589(a), knowing or in reckless disregard of the fact that the venture was engaging in activity that violated § 1589(a).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 182.

183.    C.A.A.I.R. benefitted financially by receiving funding from Simmons Foods and others in connection with its maintenance of an illegal forced labor program. Simmons Foods benefitted financially from this enterprise by utilizing the cheap and captive, and unlawful, work force provided by C.A.A.I.R.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 183.

184.    The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

**ANSWER:** Paragraph 184 does not contain any factual allegations to which a response is required. The Simmons Entities deny that Plaintiffs have stated or can state an actionable claim for relief under the TVPRA.

185.    As a direct and proximate result of these actions, Named Plaintiffs and Members of the Class have suffered economic and non-economic damages.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 185.

186.    Named Plaintiffs are therefore entitled to recover damages to account for the full value of their losses, including but not limited to personal injury, pain and suffering, emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 186.

187.    Proposed Class Representatives and Members of the Class are therefore entitled to recover damages to account for the value of their lost wages suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 187.

## THIRTEENTH CAUSE OF ACTION

### Involuntary Servitude in Violation of TVPRA
### 18 U.S.C. §§ 1584 and 1595

188.    Named Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

189.    Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louis Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 189 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

190.    Proposed Class Representatives bring this cause of action on their individual behalf and as class representatives on behalf of the Class against Defendants C.A.A.I.R., Simmons Foods, Simmons Pet Food, Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 190 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

191.    Named Plaintiffs and Members of the Class bring this claim for relief under the private cause of action for violation of the TVPRA (§ 1584), which prohibits involuntary servitude.

**ANSWER:** Paragraph 191 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs have stated or can state an actionable claim for relief under the TVPRA.

192.     Under 18 U.S.C. § 1584(a), it is unlawful to "knowingly and willfully hold[] to involuntary servitude or sell[] into any condition of involuntary servitude, any other person for any term, or bring[] within the United States any person so held."

**ANSWER:** The Simmons Defendants admit paragraph 192 accurately quotes 18 U.S.C. § 1584(a). The Simmons Defendants deny they or any other Defendants have violated the provision.

193.     "Involuntary servitude" includes "a condition of servitude induced by means of... any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or... the abuse or threatened abuse of the legal process." 22 U.S.C. § 7102(5).

**ANSWER:** The Simmons Defendants admit paragraph 193 accurately quotes 22 U.S.C. § 7102(5). The Simmons Defendants deny Plaintiffs were held in involuntary servitude.

194.     As alleged herein, the Defendants held Named Plaintiffs and Members of the Class in involuntary servitude, under false pretenses of a "rehabilitation" program, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of serious harm, including incarceration.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 194.

195.     Defendants' threats and coercion caused Named Plaintiffs and Members of the Class to reasonably believe that they had no alternative but to continue to work for Defendants.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 195.

196.     The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

**ANSWER:** Paragraph 196 does not contain any factual allegations to which a response is required. The Simmons Defendants deny that Plaintiffs have stated or can state an actionable claim for relief under the TVPRA.

197.     As a direct and proximate result of these actions, Named Plaintiffs and Members of the Class have suffered economic and non-economic damages.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 197.

198.     Named Plaintiffs are therefore entitled to recover damages to account for the full value of their losses, including but not limited to personal injury, pain and suffering, emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 198.

199.     Proposed Class Representatives and Members of the Class are therefore entitled to recover damages to account for the value of their lost wages suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 199.

## FOURTEENTH CAUSE OF ACTION

**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of the TVPRA 18 U.S.C. §§ 1590 and 1595**

200.     Named Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

**ANSWER:** The Simmons Defendants incorporate their answers to all preceding paragraphs by reference as though fully set forth herein.

201.     Named Plaintiffs bring this cause of action on their individual behalf against Defendants C.A.A.I.R., Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 201 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

202.    Proposed Class Representatives bring this cause of action on their individual behalves and as class representatives on behalf of the Class against Defendants Janet Wilkerson, Don Wilkerson, Louise Dunham and Jim Lovel [sic].

**ANSWER:** Paragraph 202 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

203.    Under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit[], harbor[],transport[], provide[], or obtain[] by any means, any person for [peonage, slavery, involuntary servitude, or forced labor]."

**ANSWER:** The Simmons Defendants admit paragraph 203 accurately quotes 22 U.S.C. § 1590(a). The Simmons Defendants deny that any Defendant violated the statute.

204.    As alleged herein, the Defendants C.A.A.I.R., Janet Wilkerson, Don Wilkerson, Louise Dunham, and Jim Lovell knowingly recruited, harbored, transported, provided and/or obtained Plaintiffs and the Putative Class Members, bringing them to the C.A.A.I.R. facility, under false pretenses of a "rehabilitation" program, for the purpose of involuntary servitude and forced labor in violation of the trafficking provision of the TVPRA, 18 U.S.C. § 1590(a).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 204.

205.    As alleged herein, Defendants C.A.A.I.R., Janet Wilkerson, Don Wilkerson, Louise Dunham, and Jim Lovell attempted to and did violate the prohibitions against involuntary servitude and forced labor set forth in 18 U.S.C. §§ 1584(a) and 1589(a) and (b).

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 205.

206.    The TVPRA civil claims for relief are brought pursuant to 18 U.S.C. § 1595.

**ANSWER:** Paragraph 206 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that any Defendants are liable to Plaintiffs.

207.     As a direct and proximate result of these actions, Named Plaintiffs and Members of the Class have suffered economic and non-economic damages.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 207.

208.     Named Plaintiffs and Members of the Class are therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 208.

209.     Named Plaintiffs are therefore entitled to recover damages to account for the full value of their losses, including but not limited to personal injury, pain and suffering, emotional distress, lost wages, punitive damages, and other losses suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 209.

210.     Proposed Class Representatives and Members of the Class are therefore entitled to recover damages to account for the full value of their lost wages suffered as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

**ANSWER:** The Simmons Defendants deny the allegations in paragraph 210.

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** Named Plaintiffs, on behalf of themselves, pray for relief for Defendants' FLSA violations as follows:

211.     Declaratory judgment that the practices complained of herein are unlawful under the FLSA;

**ANSWER:** Paragraph 211 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

212.     An award of unpaid minimum and overtime wages and liquidated damages to be paid by Defendants C.A.A.I.R., Simmons Foods, and Simmons Pet Food to Named Plaintiffs;

**ANSWER:** Paragraph 212 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

213.     Costs and expenses of this action, including reasonable expert and attorney's fees;

**ANSWER:** Paragraph 213 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

214.     Pre-judgment and post-judgment interest, as provided by law; and

**ANSWER:** Paragraph 214 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

215.     All further legal and equitable relief deemed necessary, just, and proper by this Court.

**ANSWER:** Paragraph 215 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

**FURTHER WHEREFORE,** Named Plaintiffs, on behalf of themselves, and Proposed Class Representatives on behalf of themselves and all Putative Class Members, pray for relief as follows:

216.     Certification of the Class and the Arkansas, Missouri, and Oklahoma Wage Claims Subclasses pursuant to FRCP 23;

**ANSWER:** Paragraph 216 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

217.     Designation of Proposed Class Representatives of the Class, and the Arkansas, Missouri, and Oklahoma Wage Claims Subclasses as follows:

   A)    Plaintiffs Copeland, Spurgin, McGahey, Taylor, Mills, and Baker as class representatives of the Class,

   B)    Plaintiff Brandon Mills as class representative of the Arkansas Wage Claims Subclass,

   C)    Plaintiff Nathan Taylor as class representative of the Missouri Wage Claims Subclass,

   D)    Plaintiff Jason Baker as class representative of the Oklahoma Wage Claims Subclass;

**ANSWER:** Paragraph 217 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

218.     That Defendants, at their own expense, be ordered to provide full and adequate notice as required in class actions to all Putative Class Members;

**ANSWER:** Paragraph 218 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

219.     That Defendants be ordered to pay all amounts owed to the Named Plaintiffs arising out of the actions complained of herein, including unpaid wages, economic and non-economic damages, statutory penalties, liquidated damages, punitive damages, interest, and costs;

**ANSWER:** Paragraph 219 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

220.    That Defendants be ordered to pay all amounts owed to the Putative Class Members arising out of the actions complained of herein, including unpaid wages, statutory penalties, liquidated damages, interest, and costs;

**ANSWER:** Paragraph 220 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

221.    That this Court determine, and provide declaratory judgment, that the practices complained of herein were done willfully, knowingly, and intentionally;

**ANSWER:** Paragraph 221 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

222.    For attorney's fees as provided by statutory and common law;

**ANSWER:** Paragraph 222 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

223.    For such other legal and equitable relief as the Court may deem just and proper.

**ANSWER:** Paragraph 223 does not contain any factual allegations to which a response is warranted. The Simmons Defendants deny that Plaintiffs are entitled to any of the relief they seek.

## AFFIRMATIVE DEFENSES AND AVOIDANCES

The Simmons Defendants assert the following affirmative defenses and avoidances:

1.      Plaintiffs' *Third Amended Complaint* fails to state a claim upon which relief may be granted.

2.      Plaintiffs' *Third Amended Complaint* fails to plead fraud with particularity.

3.      Plaintiffs' and putative class members' claims are barred by applicable statute of limitations, statutes of repose, and/or latches.

4.      Plaintiffs' and putative class members' claims are barred by waiver, estoppel, and/or release.

5.      Plaintiffs' and putative class members' claims are not appropriate for resolution via a class or collective action.

6.      Plaintiffs and putative class members entered the CAAIR program with full knowledge of what the program entailed and were free to leave at any time. Defendants did not coerce, much less unlawfully coerce, Plaintiffs and/or putative class members to provide labor.

7.      Neither Simmons Defendant nor any Simmons-affiliated entity has or had an employment relationship with Plaintiffs or putative class members during their time in the CAAIR program. Plaintiffs and putative class members performed work in the program without promise or expectation of compensation and solely for personal purposes.

8.      Plaintiffs' *Third Amended Complaint* fails to state a claim for punitive damages.

9.      Plaintiffs' and putative class members' claim for punitive damages are limited and capped by applicable provisions of federal and state law, including the United States Constitution and the Oklahoma, Arkansas and Missouri Constitutions.

10.     Plaintiffs' and putative class members' FLSA and state wage claims are barred to the extent any of the work performed was de minimis.

11.　　To the extent Plaintiffs and/or putative class members seek to recover for personal injuries, their recovery is limited or barred by the doctrine of contributory or comparative negligence. Further, if Plaintiffs and/or putative class members are found to be employees, any claims for personal injuries are limited under applicable state workers' compensation laws. Any alleged damages for personal injury are barred or limited the extent they are the result of preexisting injuries or conditions or causes independent from Defendants.

12.　　In the event either Simmons Defendant is found liable to Plaintiffs, the Simmons Defendants claim a setoff or credit for the value of all services, accommodations, goods and benefits provided to Plaintiffs, either directly or in conjunction with CAAIR.

13.　　Plaintiffs and putative class members would be unjustly enriched and given a windfall if awarded any damages.

14.　　Simmons Defendant and all Simmons-affiliated entities acted in good faith and on reasonable grounds in determining that Plaintiffs and putative class members were not "employees" of the Simmons Defendants or any Simmons-affiliated entity during their time in the CAAIR program.

15.　　The Simmons Defendants did not willfully or recklessly violate the FLSA or state wage law.

16.　　In the event either Simmons Defendant is found liable to Plaintiffs, any such liability is based on a bona fide and reasonable dispute of fact and law.

17.　　Plaintiffs and putative class members failed to mitigate their alleged damages. Their recovery is limited and/or barred under the doctrine of avoidable consequences.

18.　　Plaintiffs failed to join necessary and indispensable parties.

19.　　Plaintiffs' claims against any the Simmons Defendants and/or any Simmons-affiliated entities are barred by the doctrine of payment. The Simmons entities at which Plaintiffs and

putative class members worked paid CAAIR competitive rates, well over minimum wage for Plaintiffs' and putative class members' labor.

20.     Plaintiffs' and putative class members' claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

21.     For Plaintiffs and putative class members currently in the CAAIR program pursuant to a drug court order, suspended or deferred sentence, or any other court-ordered program, their claims are barred under *Younger v. Harris*, 401 U.S. 37 (1971).

22.     Plaintiffs' claims are barred in whole or in part to the extent the work they performed falls within exemptions or exceptions provided under the FLSA or under Oklahoma, Arkansas, or Missouri minimum wage statutes. The Simmons Defendants further invoke and are entitled to any exemptions or exceptions applicable to CAAIR.

23.     Plaintiffs' and putative class members' claims are barred by assumption of risk.

24.     Plaintiffs' and putative class members' claims are barred by the doctrine of judicial estoppel.

25.     Plaintiffs' and putative class members' claims are barred by the doctrine of consent (express or implied).

26.     If Plaintiffs and putative class members are determined to be employees of either Simmons Defendant, their federal and state wage claims are barred by the doctrine of assignment, having assigned the hourly wages paid by Simmons to CAAIR.

27.     Plaintiffs' and putative class members' claims are barred as a matter of law because they amount to false claims.

28.     The Simmons Defendants reserve the right to assert further affirmative defenses as they become evident through discovery and further investigation.

29.     The Simmons Defendants adopt and incorporate by reference any defenses asserted by any other Defendant to the extent they are applicable to either or both Simmons Defendants.

WHEREFORE, Simmons respectfully requests that the Court enter judgment in favor of the Simmons Defendants, and against Plaintiffs, and further requests that the Court award the Simmons Defendants such other relief as the Court deems just and proper, including its attorneys' fees and costs.

DATED: 21 JULY, 2020                Respectfully submitted,

/s/Christopher S. Thrutchley
Christopher S. Thrutchley, OBA No. 15859
John D. Russell, OBA No. 13343
Philip D. Hixon, OBA No. 19121
Justin A. Lollman, OBA No. 32051
GABLEGOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone: 918.595.4800
Facsimile: 918.595.4990

–and–

Amy M. Stipe, OBA No. 18361
GABLEGOTWALS
One Leadership Square, Suite 1500
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: 405.235.5500
Facsimile: 405.235.2875

COUNSEL FOR DEFENDANTS
SIMMONS FOODS, INC. AND
SIMMONS PET FOOD, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of the Electronic Filing to the following ECF registrants:

Daniel E. Smolen—*danielsmolen@ssrok.com*
David A. Warta—*davidwarta@ssrok.com*
Robert M. Blakemore—*bobblakemore@ssrok.com*
Megan E. Lambert—*mlambert@aclu.org*
Mark A. Smith—*msmith@carusolawfirm.com*
Dennis Caruso—*dcaruso@carusolawfirm.com*
**Counsel for Plaintiffs**

Denelda L. Richardson—*drichardsoncourts@rhodesokla.com*
Randall E. Long—*rlong@rhodesokla.com*
Nicholas J. Foster—*nfoster@rhodesokla.com*
**Counsel for Defendants,**
**C.A.A.I.R. Inc., Janet Wilkerson,**
**Don Wilkerson, and Jim Lovell**


*/s/Christopher S. Thrutchley*
Christopher S. Thrutchley