IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ARTHUR COPELAND**, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>**C.A.A.I.R., INC.**, **a not-for-profit corporation**, et al.,<br><br>  Defendants. | Case No. 17-CV-564-JFH-JFJ |

### SIMMONS DEFENDANTS' MOTION TO COMPEL NON-PARTY CENTER FOR INVESTIGATIVE REPORTING, INC. TO COMPLY WITH SUBPOENA DUCES TECUM

Simmons Defendants seek an Order compelling the Center for Investigative Reporting, Inc. d/b/a Reveal or Reveal News ("Reveal") to produce full, unredacted copies of all documents sought by the Subpoena Duces Tecum ("Subpoena") served on May 14, 2020. Reveal refuses to produce *any* responsive documents that would reveal what Plaintiffs and other putative class members have said and think about the CAAIR program and the Simmons Defendants. On July 2, 2020, counsel met and conferred and could not resolve their differences.

### I.  BACKGROUND

What does it take to get evidence that reveals the truth about what Plaintiffs have said and think about CAAIR and the vocational rehabilitation opportunities made available to them by the Simmons Defendants? For nearly three years now, Defendants have fought to obtain evidence from Plaintiffs showing what they have said and what they really think about the CAAIR program. To this day, however, not one of the 55 Plaintiffs in this case has produced a single text message or email. *Not one*. It's inconceivable that *none* of the 55 Plaintiffs has ever sent or received a text message or email to or from friends, family, or others about their participation in the CAAIR program. And it's equally inconceivable that none of the 55 Plaintiffs has ever sent or received a text message or email to or from friends, family, or others about their experience work-

ing for and receiving valuable job skills and training from the Simmons Defendants or about all of the things their Simmons supervisors did to help them graduate from the CAAIR program.[1]

Having been unable to obtain that type of critically relevant evidence from Plaintiffs, the Simmons Defendants turned to another source to reveal what Plaintiffs really think about the CAAIR program and about Simmons Defendants. In October 2017, just days before Plaintiffs filed this lawsuit, Reveal published multiple articles about CAAIR. The articles discussed the CAAIR program, its participants, and the vocational rehabilitation opportunities that Simmons Defendants make available to help participants break the self-destructive cycle of addiction, crime, and incarceration. To prepare the articles, Reveal "interviewed *scores* of former participants."[2] The articles confirm CAAIR participants disagree with the Plaintiffs' baseless allegations of human trafficking and enslavement. For instance, Reveal reported that participant Bradley Schott said the CAAIR program "*saved my life*."[3] Similarly, participant Harvey Fields told Reveal that "the program *helped him recover* from his addiction . . . ."[4]

To get evidence of what Plaintiffs and other CAAIR participants have said and think, the Simmons Defendants served a narrowly tailored Subpoena on Reveal, requesting the following:

> Please produce all documents in your possession, custody, or control, containing statements of current or former CAAIR participants that relate to
>
> 1. the participant's entry into the CAAIR program;
>
> 2. the participant's experiences while in the CAAIR program;
>
> 3. the participant's experiences working at Simmons while in the CAAIR

---

[1] Plaintiffs failure to fully comply with their discovery obligations and the agreed consequence of noncompliance—dismissal with prejudice—has been fully briefed. Mot. to Extend (Dkt. #181), Response (Dkt. #182), Reply (Dkt. #188), Sur-reply (Dkt. #194).

[2] *They thought they were going to rehab. They ended up in chicken plants*, Reveal (Oct. 4, 2017) (emphasis added).

[3] *They thought they were going to rehab. They ended up in chicken plants*, Reveal (Oct. 4, 2017) (emphasis added).

[4] *These are the rehabs that make people work in chicken plants*, Reveal (Oct. 5, 2017) (emphasis added).

   program;

   4. the participant's views or opinions of CAAIR or Simmons;

   5. the participant's history of sobriety and/or addiction, both before and after completing the CAAIR program; or

   6. any planned or pending legal action against CAAIR or Simmons.

Ex. 1, Reveal Subpoena. The Subpoena permitted Reveal to "redact your reporters' undisclosed personal thoughts, mental impressions, strategies, or research endeavors."

On June 4, 2020, Reveal sent a blanket objection to producing any of the requested records. Ex. 2, Letter from Baranetsky to Thrutchley (June 4, 2020). On June 17, 2020, the Simmons Defendants responded to Reveal's objections, noting Reveal applied the wrong law and reminding Reveal that the Simmons Defendants weren't requesting the journalists' thoughts or analysis. Ex. 3, Letter from Thrutchley to Baranetsky (June 17, 2020). On June 23, 2020, Reveal again sent a blanket objection that ignored applicable law and flatly refused to provide any documents. Ex. 4, Letter from Baranetsky to Thrutchley (June 23, 2020). On July 2, 2020, counsel for Simmons Defendants and Reveal met and conferred telephonically. Counsel were unable to come to an agreement.

## II.  ARGUMENT AND AUTHORITIES

**A.   Documents Requested Are Not Protected By The Limited Journalist Privilege.**

Reveal's only objection to production is a claim of absolute journalist privilege under California law. (Ex. 2). This is incorrect for two reasons: (1) federal common law applies to this federal question lawsuit, not California law; and (2) the federal journalist privilege is not absolute. Because the Simmons Defendants narrowly tailored the Subpoena to comply with the limited journalist privilege, the Court should compel Reveal to fully comply with the subpoena.

   1. <u>Federal common law governs journalist privilege claim.</u>

Reveal's objection is entirely based on inapplicable California state law. The Federal Rules of Evidence differentiate between cases in which "state law supplies the rule of decision" where

state law privilege rules apply and cases, like here, involving federal questions where "[t]he common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege." Fed. R. Evid. 501.

In federal question cases, federal district courts "will not ordinarily recognize state-created privileges." *Dillon v. City & Cty. of San Francisco*, 748 F. Supp. 722, 724–25 (N.D. Cal. 1990) ("Because this is a federal question rather than a diversity case, the court must apply federal law."). Even in cases with both federal and pendent state law claims, federal privilege law applies. *See, e.g.*, *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (applying federal privilege law in a case involving both federal and pendent state law claims); *Vondrak v. City of Las Cruces*, 760 F. Supp. 2d 1170, 1175 (D.N.M. 2009) ("Ultimately, where there is a federal cause of action and pendent state-law claims, and where the asserted privilege relates to evidence that is relevant both to the federal and state-law claims, the Court finds that federal privilege law should apply.").

Here, the evidence sought from Reveal is relevant to Plaintiffs' claims. It's relevant to Plaintiffs' federal and state wage claims to the extent it may reveal more about why Plaintiffs chose to enter the CAAIR program and what they expected to gain from it—rehabilitation and avoidance of incarceration or remuneration. *See* Third Am. Compl. (Dkt. #193). The evidence is also relevant to Plaintiffs' federal and state human trafficking claims and their federal RICO claims, as well as to the class action certification issues related to those claims. Participants' positive experience in the CAAIR program undermines the purported class allegations that participants suffered "forced labor," "involuntary servitude," or "emotional distress." *Id.* ¶¶ 174-210.

Because Plaintiffs are pursuing federal claims, federal common law governing journalist privilege applies. Thus, Reveal's reliance on California law is misplaced.

2.  Under federal common law, the requested documents are not privileged.

Federal common law does *not* provide an absolute journalist privilege. The seminal Supreme Court case recognizing some journalist privilege might exist explicitly rejected an absolute privilege: "We are asked to create another by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do." *Branzburg v. Hayes*, 408 U.S. 665, 690 (1972); *see also Dillon*, 748 F. Supp. at 725 ("the California shield law . . . was specifically designed to go beyond" the limits recognized in *Branzburg*).

Instead, federal courts apply a common law balancing test to determine the scope of the limited journalist privilege. *See Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977). After *Silkwood*, courts in the Tenth Circuit consider at least four criteria:

(1) the relevance of the evidence;

(2) the necessity of receiving the information sought;

(3) whether the information is available from other sources; and

(4) the nature of the information.

*Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987). Weighing these factors, Simmons Defendants requests the Court compel the narrowly-tailored discovery requests.

   a.  *Requested Documents Are Highly Relevant*

The narrowly tailored Subpoena is not a "fishing expedition." *Silkwood*, 563 F.2d at 438. Reveal announced it interviewed at least 40 CAAIR program participants about their experience in the work recovery program. *They thought they were going to rehab. They ended up in chicken plants*, Reveal (Oct. 4, 2017) (stating Reveal interviewed "scores" of participants). Several participants reported having a positive experience while at CAAIR that contradicts the Plaintiffs' allegations of human trafficking and enslavement. Participant Bradley Schott said "it saved my life," *id.*, and participant Harvey Fields explained that "the program helped him recover from his addiction . . . ." *These are the rehabs that make people work in chicken plants*, Reveal (Oct. 5, 2017). The Simmons

Defendants seek to learn whether Plaintiffs and other program participants have made similar statements praising the CAAIR program, making admissions against interest, or saying things that are relevant to the disputed issues in the case.

Whether CAAIR's work-based rehabilitation program is trafficking humans or whether it is a place that actually "save[s]" lives and helps men "recover from [their] addition" is a central issue in the case. The information and statements that Reveal has obtained from Plaintiffs and from "scores" of CAAIR participants is certainly relevant to this high-stakes controversy that not only threatens to eradicate the CAAIR program, but also threatens the viability of hundreds of similar vocational rehabilitation programs around the country that give men and women desperately needed cost-free opportunities to overcome addiction, avoid incarceration, and gain the vocational skills and experience necessary for long-term recovery.

The information sought is also relevant to class certification issues including commonality. If some participants believe they were not permitted to leave the program but others recognize they could leave at any time, then commonality is undermined. If some believe the program hurt them while others proclaim that it "saved their life" and "helped" them "recover from addiction" and secure gainful employment, then commonality is undercut.

   b. *Requested Documents Are Necessary To Permit A Just Litigation Of The Claims*

Information is necessary if it is needed for "just litigation" of the case claims. *In re Bacon for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings v. Archer*, 2018 WL 4467182, at *6 (D. Colo. Sept. 17, 2018); *Amaya v. Bregman*, 2016 WL 10296798, at *7 (D.N.M. May 13, 2016). Simmons Defendants have been accused of heinous actions and Reveal possesses otherwise unavailable material showing those heinous accusations are not true. The information is needed for a "just litigation" of Plaintiffs' claims.

   c. *Simmons Defendants Have Attempted To Obtain The Information Elsewhere*

"The party seeking disclosure must demonstrate it has independently attempted to obtain the information elsewhere and has been unsuccessful." *In re Bacon for an Order Pursuant to 28*

*U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings v. Archer*, 2018 WL 4467182, at *6 (citing *Silkwood*, 563 F.2d at 438). The Tenth Circuit standard is "less restrictive" than some Circuits, "requiring only an independent attempt to obtain the information elsewhere" and not proof that all "reasonable alternative sources of information are exhausted." *Id.*

Simmons Defendants have tried for nearly three years to obtain information about what the Plaintiffs and other program participants have said and think about CAAIR and the Simmons Defendants. None of the 55 named Plaintiffs has produced a single text message or email reflecting communications about CAAIR or the Simmons Defendants. Reveal withholding texts or emails with the Plaintiffs as part of a blanket refusal to produce responsive items reinforces Plaintiffs' attempt to hide anything they have said about the program from the ultimate factfinders.

### d. The Nature of the Information Is Relevant And Necessary

The nature of the information sought is "relevant and necessary" to the case. *In re Bacon for an Order Pursuant to 28 U.S.C. §?1782 to Conduct Discovery for Use in Foreign Proceedings v. Archer*, 2018 WL 4467182, at *8. Simmons Defendants carefully tailored the requests to *exclude* any journalists' personal thoughts or mental impressions. While journalists' work product can be discoverable under the federal common law balancing test, Simmons Defendants purposefully made the subpoena as narrow as possible to avoid those difficult balancing issues.

Here, the material sought is from program participants (*i.e.* Plaintiffs and putative class members), not journalists. For the reasons outlined above, the information sought is relevant and necessary to the claims Plaintiffs brought.

\*     \*     \*

The federal common law journalist privilege is limited and does not prevent the parties here from obtaining the truth that exists within Reveal's custody and control. There are no undisclosed insider sources here. No state secrets. Instead, Reveal asks this Court to defy the Supreme Court and Tenth Circuit to erect an absolute privilege that would impede this Court's

7

factfinding mission about the experience of program participants and facts indisputably relevant to the case—what Plaintiffs and other participants *themselves* have said and think about the program.

**B.      Reveal Waived Any Objections Other Than Journalist Privilege.**

Reveal lodged only one objection within the 14-day deadline for written objections: absolute journalist privilege. Fed. R. Civ. P. 45(d)(2)(B). Because a "failure to object within the fourteen-day period usually results in waiver of the contested issue," Reveal has waived any other potential objections. Wright & Miller, Fed. Prac. & Proc. § 2463 - Protection of Persons Subject to Subpoenas; *see also Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 397 (N.D. Ill. 2002) (finding non-party waived an objection to the lack of attorney signature on the subpoena where non-party objected based on privilege but did not object to lack of attorney signature).

### III. CONCLUSION

For the reasons above, Simmons Defendants respectfully request an order of the Court compelling non-party CIR to provide all responsive documents to the Subpoena.

Dated: October 2, 2020              Respectfully submitted,

/s/Christopher S. Thrutchley
Christopher S. Thrutchley, OBA No. 15859
John D. Russell, OBA No. 13343
Philip D. Hixon, OBA No. 19121
Justin A. Lollman, OBA No. 32051
**GableGotwals**
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103-4217
Telephone: 918.595.4800
Facsimile: 918.595.4990
*cthrutchley@gablelaw.com*

–and–

Amy M. Stipe, OBA No. 18361
**GableGotwals**
One Leadership Square, Suite 1500
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: 405.235.5500
Facsimile: 405.235.2875
*astipe@gablelaw.com*

**Counsel for Defendants Simmons Foods, Inc. and Simmons Pet Food Inc.**

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October, 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of the Electronic Filing to the following ECF registrants:

Daniel E. Smolen—*danielsmolen@ssrok.com*
David A. Warta—*davidwarta@ssrok.com*
Robert M. Blakemore—*bobblakemore@ssrok.com*
Megan E. Lambert—*mlambert@aclu.org*
**Counsel for Plaintiffs**

Denelda L. Richardson— *drichardsoncourts@rhodesokla.com*
Michael P. Robertson—*mrobertson@rhodesokla.com*
Randall E. Long—*rlong@rhodesokla.com*
**Counsel for Defendants,**
**C.A.A.I.R. Inc., Janet Wilkerson,**
**Don Wilkerson, and Jim Lovell**

In addition, I hereby certify that on the 2nd day of October, 2020, I served via email and via certified mail, the following:

D. Victoria Baranetsky, General Counsel
The Center for Investigative Reporting
1400 65th Street, Ste. 200
Emeryville, CA  94608
*vbaranetsky@revealnews.org*

                                                    */s/Christopher S. Thrutchley*
                                                  Christopher S. Thrutchley