#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARTHUR COPELAND, et al., <br><br> **Plaintiffs,** <br> v. <br><br> C.A.A.I.R., INC., a not-for-profit corporation, et al., <br><br> **Defendants.** | Case No. 17-CV-564-JFH-JFJ |

### RESPONSE OF NON–PARTY THE CENTER FOR INVESTIGATIVE REPORTING, INC. IN OPPOSITION TO
### <u>MOTION TO COMPEL OF DEFENDANT SIMMONS</u>

On May 14, 2020, Defendant Simmons served a subpoena *duces tecum* [Doc. 225–1] on The Center for Investigative Reporting ("CIR"), the oldest nonprofit investigative newsroom (incorporated under the laws of California) that publishes an online news site and produces *Reveal*, a weekly public radio show with approximately 1 million listeners. The subpoena demanded that CIR produce all documents within its possession, including unpublished reporters' notes and recordings, relating to its October 2017 article, "All Work No Pay".[1]

CIR objected to producing *unpublished* information, including any reporters' notes and other work product, relying on the journalists' privilege afforded by California and Oklahoma statutes and by the First Amendment. Dissatisfied with CIR's refusal to produce that privileged information, Simmons moved to compel on October 2, 2020 [Doc. 225] ("Simmons Mot.").

For the reasons which follow, CIR respectfully submits that Simmons has filed a motion to compel in the wrong court, to enforce a subpoena procedurally defective under Federal Rule

---

[1] The Pulitzer–finalist article is found at https://www.revealnews.org/article/they-thought-they-were-going-to-rehab-they-ended-up-in-chicken-plants/. CIR published additional stories that augmented the original article. *See* https://www.pulitzer.org/finalists/amy-julia-harris-and-shoshana-walter-reveal-center-investigative-reporting.

of Civil Procedure 45. Additionally, the defendant's motion papers clearly demonstrate on their face that the material is privileged, as it seeks from non–party CIR information that is not relevant nor admissible—and certainly does not "go to the heart" of Simmons' defenses in this case, *and* is available from alternative sources, which the defendant has not exhausted, as required by the First Amendment and relevant state privilege laws. The defendant's motion to compel should be denied and costs—including a reasonable attorneys' fees necessary to respond to the motion—should be awarded to CIR.

**ARGUMENT AND AUTHORITIES**

**I.     Procedural Defects in the Subpoena and Motion to Compel.**

At the outset, the Court should deny Simmons' motion for two reasons.

First, the subpoena is procedurally defective under Federal Rule of Civil Procedure 45(c)(2)(A) because it directs compliance at the office of Simmons' counsel, which is well over 100 miles from CIR's offices in Emeryville, California. Rule 45(c)(2)(A) only allows for "production of documents, electronically stored information, or tangible things at a place *within 100 miles* of where the person resides, is employed, or regularly transacts business in person" (emphasis added). A recent case, *RSUI Indemnity Co. v. National Rifle Association*, from the Western District of Oklahoma—this Court's sibling court—is instructive on this point. No. MC-20-6-D, 2020 WL 4194526, at *2 (W.D. Okla. July 21, 2020). There, the subpoenaed third party was organized under the laws of New Hampshire and was headquartered in Georgia. The court explained that although "a subpoenaed third party can waive the 100–mile requirement by agreeing to transmit production by electronic means," that had not occurred here, and thus "the subpoena exceed[ed] the geographical limits of Rule 45(c)." *Id.*

Second, this Court does not have jurisdiction to compel compliance with the subpoena

2

even if it were valid. Rule 45(d)(2)(B)(i) provides that enforcement of a subpoena is done by motion in "the court for the district where compliance is required" (in this case, the Northern District of California). *See EMW Women's Surgical Ctr., P.S.C. v. Meier*, No. 3:18CV-00224-JHM-RSE, 2018 WL 10215971, at *3 (W.D. Ky. Nov. 9, 2018) ("[A]ny motion to compel production of documents requested by subpoena must be made in the court where compliance is required."); *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (finding "no jurisdiction over Plaintiffs' motion to compel" where third party was headquartered in the Northern District of California).

Here, it is undisputed that CIR is at home in the Northern District of California—where it is incorporated and has its only offices. That is where compliance with a valid subpoena would be required, and where any motion to compel has to be filed. Simmons' motion must be denied.[2]

## II. Substantive Defects in the Subpoena.

Any information collected as part of its newsgathering function but not published by CIR—such as unedited or "raw" video, audio recordings, reporters' work product such as notes, as well as the journalist's thoughts, impressions, and recollections—is privileged by law from disclosure in any judicial or other governmental proceeding. That privilege is afforded by California law (where CIR is incorporated and located), *see* Cal. Evid. Code § 1070; *Shoen v. Shoen*, 5 F. 3d 1289 (9th Cir. 1993); by Oklahoma law (where CAAIR Inc. is located and this case is brought), *see* Okla. Stat. tit. 12, § 2506; *Taylor v. Miskovsky*, 1981 OK 143, 640 P.2d 959; and—most significantly—by the First Amendment, *see Silkwood v. Kerr-McGee*, 563 F.2d 433 (10th Cir. 1977).[3] As *Silkwood*, and other applicable cases have held, disclosure of

---

[2] By filing this opposition and overall, CIR does not waive Rule 45's geographical limit or submit to any exception to this rule.

[3] Simmons devotes nearly a fourth of the legal argument in its motion (Simmons Mot. at 3–4) to

3

unpublished information can be obtained from a journalist consistent with the First Amendment only if the person seeking the information demonstrates that the information is:

- of "certain relevance" to a significant issue in the case;
- goes to the heart of the claim of the party seeking disclosure, and
- is unavailable from alternative sources.

563 F.2d at 438. Simmons has failed to show that the balance of interests weighs in its favor or demonstrate that these factors have been satisfied.

### A. CIR is protected by the reporters' privilege, outweighing any other factors.

In its motion to compel, Simmons argues that it needs the information garnered by CIR in its reporting, as will be rebutted *infra*, but it gives no consideration to CIR's interests, observing

---

the proposition that California law does not apply. This Court need not decide among the various legal foundations for the privilege, for they all wind up at the same place: A journalist has at least a qualified privilege against compelled disclosure of sources and unpublished information. That said, the large majority of circuits, including the Tenth in *Silkwood*, have held that "a qualified reporter's privilege under the First Amendment should be readily available in civil cases." *Zerilli v. Smith*, 656 F.2d 703, 712 (D.C. Cir. 1981); *see Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 593-99 (1st Cir. 1980); *Baker v. F & F Inv.*, 470 F.2d 778, 783 (2d Cir. 1972); *Riley v. City of Chester*, 612 F.2d 708, 715–16 (3d Cir. 1979); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir. 1980); *Cervantes v. Time, Inc.*, 464 F.2d 986, 992-93 (8th Cir.1972); *Shoen*, 48 F.3d 412, 415–16 (9th Cir. 1995); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986). While the qualified federal privilege applies, a number of federal courts of appeals have found state law also provides the privilege. *See*, *e.g.*, *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) ("In examining the boundaries of the journalist's privilege, we may consider the applicable state law….Although we are not bound [by] New York law, neither should we ignore New York's policy of [protecting journalists]."); *Riley*, 612 F.2d at 715 ("Although we are not bound to follow the Pennsylvania [shield] law, neither should we ignore Pennsylvania's public policy giving newspaper reporters protection from divulging their sources."); *L.A. Memorial Coliseum Comm'n v. National Football League*, 89 F.R.D. 489, 492 (C.D. Cal. 1981) (quashing subpoena in action under First Amendment and California Shield Law); Notes of the Conference Committee, House Rep. No. 93-197 to Fed. R. Evid. 501 (a "federal court sitting in a non–diversity case...may see fit…to give the law of a particular state highly persuasive or even controlling effect"). Thus, even if the Court concludes it is not bound to apply California or Oklahoma's shield laws, it may consider them in determining the scope of the federal privilege, as discussed *infra* n. 5.

only that "[t]here are no undisclosed insider sources here. No state secrets." (Simmons Mot. at 7). But, CIR has significant, protected interests in preventing disclosure of the information it has chosen not to publish. As *Shoen* explained, there are at least four interests justifying the journalists' privilege: (1) the threat of administrative and judicial intrusion into the newsgathering and editorial process; (2) the disadvantage of a journalist's appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; (3) the disincentive to compile and preserve unpublished material; and (4) the burden on journalists' time and resources in responding to subpoenas.[4] 5 F.3d at 1294–95 (citing *United States v. La Rouche Campaign*, 841 F.2d 1176 (1st Cir. 1988)).

The journalist's privilege is "a recognition of the importance this society places on the integrity of the news gathering process and the vitality with which the news is reported," and because the privilege facilitates the free flow of information to the public. *Penland v. Long*, No. 1:94CV119, 1995 WL 805177, at *1 (W.D.N.C. Sept. 12, 1995) (*citing Shoen*, 5 F.3d at 1292). As numerous courts have recognized, the journalist's privilege is needed because:

> [t]he compelled production of a reporter's resource materials can constitute a significant intrusion into the news gathering and editorial processes, . . . may create a disincentive for compiling and preserving research material, and will burden the time and resources of journalists in responding to subpoenas. . . Further, it is undesirable that a journalist perform investigative work for the judicial system or a private citizen.

*Neal v. City of Harvey*, 173 F.R.D. 231, 234 n.6 (N.D. Ill. 1997) (citing *United States v. Burke*, 700 F.2d 70, 77 (2d Cir.), *cert. denied*, 464 U.S. 816 (1983) (internal quotation marks omitted); *accord Gonzales v. National Broadcasting Co.*, 194 F.3d 29, 35 (2d Cir. 1999) ("wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena

---

[4] Rule 45(d)(1), of course, provides that the attorney issuing a subpoena must take reasonable steps not to impose an undue burden on the subpoenaed party.

5

compliance, and could otherwise impair its ability to perform its duties, . . . [and] would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties"); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) (compelled disclosure of unpublished information is significant intrusion into newsgathering process and undercuts public policy favoring free flow of information). *See also North Carolina v. McKillop*, 24 Media L. Rep. 1638 (N.C. Dist. Ct. 1995) ("it is only by preserving the right of the press to avoid being made part of a controversy merely as a result of its performing its constitutionally protected duties that the press may avoid the 'chilling effect' that the enforcement of this subpoena would have on the flow of information").

Balanced against these compelling interests, Simmons has failed to show that it can overcome even the qualified privilege outlined in *Silkwood*. Indeed, Simmons does not demonstrate that it can meet *any* of the Silkwood factors for compelled disclosure. Instead, it misuses the judicial system as its own investigative tool, thus the motion should be denied.

### B. The unpublished information does not "go to the heart" of the case.

In its subpoena and reiterated in its motion (Simmons Mot. at 2–3), Simmons seeks unpublished information from CIR that it hopes will reveal the reason for CAAIR participants' entry into the program, their experiences and opinions of the CAAIR program or working at Simmons, their history of sobriety or addiction, and their plans for litigation against CAAIR or Simmons. Simmons asserts generally that this information is "highly relevant" (Simmons Mot. at 5) or "relevant and necessary" (Simmons Mot. at 7), but offers little explanation as to why, other than to suggest that some CAAIR participants may have made statements to CIR that are inconsistent with the claims in the suit.

The June 17, 2020 letter to CIR's counsel from the defendant's counsel [Doc. 225–3 at 2]

says that "[w]hen participants praise the recovery program for the help it provided them and then join a lawsuit alleging those who helped them recover were enslaving them, their praise of the program goes to the heart of the lawsuit." In essence, Simmons speculates that the CIR's unpublished materials would be useful for impeachment of the plaintiffs, or perhaps that it would reveal opinions of others whose experiences were different than the plaintiffs.[5]

It is evident that Simmons is merely fishing in CIR's privileged waters for whatever it might find, for putative purposes. The First Amendment prohibits such generalized and speculative compulsion for non–party journalists' unpublished information. *See Silkwood*, 563 F.2d at 438 ("compulsory disclosure in the course of a 'fishing expedition' is ruled out in the First Amendment case"). Simmons' groundless hope to find some useful—and non–hearsay— material in CIR's unpublished information is not a sufficiently important objective to overcome the journalists' privilege. *See*, *e.g*., *Krase v. Graco (In re: National Broadcasting Co.)*, 79 F.3d 346, 351 (2d Cir. 1996) (deeming information which was likely to contain admissions against plaintiff's interest, not to be "highly material and relevant" or "critical or necessary" to the proof of a claim or defense, even if information was "useful"); *Riley v. City of Chester*, 612 F.2d 708, 718 (3d Cir. 1979) (disclosure not required where "the information sought to be disclosed appears to have only marginal relevance to the plaintiff's case").

Moreover and most importantly, information sought for its impeachment value does not "go to the heart" of a case so as to overcome the critical relevance requirement of the privilege.

---

[5] Simmons cites positive comments about the CAAIR program from Bradley Schott and Harvey Fields. (Simmons Mot. at 2.) To the best of CIR's knowledge, Mr. Fields did not attend CAAIR and CIR is not informed if either Mr. Schott or Mr. Fields is a plaintiff in this suit. To the extent that they or "scores of former participants" (Simmons Mot. at 2 [quoting CIR article "All-Work No Pay"]) possibly interviewed by CIR are not plaintiffs, it is hard to understand how any information obtained by CIR from those sources would be anything other than hearsay, and thus inadmissible under Federal Rules of Evidence 802. And to the extent these individuals did not attend CAAIR (putatively Mr. Fields), evidentiary relevance is even more tenuous.

*See*, *e.g.*, *Krase*, 79 F.3d at 352 ("impeachment material is not critical or necessary to the maintenance or defense of a claim"); *Shoen v. Shoen*, 48 F.3d at 418 (unpublished materials sought for impeachment purposes "do not relate to an important issue in this case"); *Re/Max Intern. v. Century 21 Real Estate*, 846 F. Supp. 910 (D. Colo. 1994) (information wanted for impeachment purposes by defendant had *de minimis* value insufficient to overcome privilege); *Lamberto v. Brown*, 326 N.W.2d 305, 307 (Iowa 1982) ("Testimony to be used solely for testing credibility can scarcely be said to go to the 'heart' of the case."). Simply put, Simmons' efforts to obtain materials to show that plaintiffs who complained about the program also "praise[d it]" must be barred, as impeachment does not "go[] to the heart of the lawsuit."

CIR respectfully submits that Simmons has not clearly and convincingly demonstrated that the unpublished information sought in the subpoena is of critical relevance to its case. Absent that demonstration, the motion to compel should be denied.

### C. There are alternative sources for the information sought.

To compel CIR to disclose its unpublished information, *Silkwood* says that Simmons must also show clearly and convincingly that, with due diligence, the information it seeks cannot be obtained from alternative sources, that is, that it has exhausted all reasonable sources of the information.[6] 563 F.2d at 438; *Zerilli v. Smith*, 656 F.2d at 713 ("Even when the information is

---

[6] Simmons cites a magistrate judge's opinion in *In re Bacon for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery v. Archer*, No. 17–MC–00192–KLM, 2018 WL 4467182, at *3 (D. Colo. Sept. 17, 2018) for the proposition that the Tenth Circuit approach to exhaustion of alternative sources in a *Silkwood* balancing test is "less restrictive" than some circuits, "requiring only an independent attempt to obtain the information elsewhere." (Simmons Mot. at 7.) That is a questionable reading of *Silkwood*, and is not supported by any other Tenth Circuit authority. It is here that resort to California or Oklahoma privilege law informs the contours of the federal common law privilege. Cal. Evid. Code § 1070 proscribes holding a journalist in contempt for refusing to disclose unpublished information; that statute has been interpreted to be nearly absolute, *New York Times Co. v. Superior Court*, 51 Cal. 3d 453, 456 (1990), and it does not contain an exception even if "alternative sources" have been exhausted. Oklahoma law does contain an exhaustion of sources requirement, using the phrase "could not with due diligence be

8

crucial to a litigant's case," reporters can be compelled to disclose information "only after the litigant has shown that he has exhausted every reasonable alternative source of information."). Stated differently, when a party seeking unpublished information from the media has other sources to obtain the same information and failed to exhaust these sources, the party cannot overcome the reporter's privilege.

Simmons' sole basis for saying that it does not have alternative sources is its lament that the plaintiffs have not been cooperative and have failed to provide the information Simmons now demands from CIR.[7] Simmons says that the plaintiffs have not produced emails and text messages (Simmons Mot. at 1–2, 7), but curiously and significantly, Simmons makes no representation that it served the plaintiffs with interrogatories or deposed them through *duces tecum* notices. Nevertheless, the plaintiffs, no matter how uncooperative, remain not merely alternative—but indeed, the best—sources. When others, especially one of the parties, can speak to what that party or a witness knows or has said, there are alternative sources. *See, e.g.*, *Krase*, 79 F.3d at 353 (plaintiff "clearly was available to answer questions about the circumstances surrounding her son's death");[8] *Shoen*, 5 F.3d at 1296–97 (9th Cir. 1993) (defendant, who reporter interviewed, was an alternative source, even though defendant had given uninformative interrogatory answers about his statements made to the reporter); *Zerilli*, 656 F.2d at 714–15

---

obtained by alternate means." Okla. Stat. tit. 12, § 2506. The Supreme Court of Oklahoma has held that § 2506 comports with the First Amendment and described *Silkwood* as "reaffirm[ing]" the test that "relevancy, critical importance, and exhaustion of alternate sources be established before judicial power could be used to force disclosure" of information from a journalist. 640 P.2d at 961 (citing *Garland v. Torre*, 259 F.2d 545 (2d Cir. 1958).

[7] Simmons notes that it has sought dismissal of the suit as a sanction against the uncooperative plaintiffs. (Simmons Mot. at 2 n.1.) The imposition of sanctions against uncooperative plaintiffs, rather than compelled disclosure from CIR, is an alternative and preferable course of action.

[8] The court observed that "[t]he fact that [the plaintiff] testified in her deposition that she was unable to 'reconstruct' everything that she said during her Dateline interview does not seem pertinent to this [alternative sources] inquiry." *Krase*, 79 F.3d at 353.

9

(sources not exhausted where party had not deposed four persons identified in discovery responses as having knowledge of events); *Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 122 (D.D.C. 2002) (difficulty of finding identifiable alternative sources does not relieve exhaustion burden); *Wright v. Fred Hutchinson Cancer Research Center*, 206 F.R.D. 679, 682 (W.D. Wash. 2002) (denying motion to compel reporter's unpublished communications with plaintiff where defendants had not deposed plaintiff); *Neal*, 173 F.R.D. at 233 (same).

Aside from discovery from the plaintiffs themselves, there are additional alternative sources that Simmons should have to explore, but has not, before requiring CIR to disclose its privileged information by means of subpoena:

- Simmons requested documents pertaining to the participants' entry into the CAAIR program, but this information is available in public records, many of which CIR cited and hyperlinked in its published story. Most of the plaintiffs in the case and participants who attend the program do so by court order. Therefore, Simmons can access documents pertaining to the entry of plaintiffs into the CAAIR program through public court records.

- Simmons requested documents pertaining to the participants' experiences while in the CAAIR program. CIR already published some of this information in its various articles. In addition, there are online reviews of the CAAIR program, available on Google and Facebook, which offer first–hand accounts of participants' experiences in the program.

- Simmons requested documents pertaining to the participants' views or opinions of CAAIR or Simmons. CIR already published some of this information. In addition, there is a wealth of public records available that show the experience of participants at CAAIR and Simmons. For example, workers compensation records detail injuries that participants experienced on the job. Online reviews on Google and Facebook also include first–hand accounts of participant views and opinions.

- Simmons requested documents pertaining to the participants' history of sobriety or addiction, both before and after completing the CAAIR program. This information is readily available in the courts that sent participants to CAAIR. CIR even published some of these court records in its story. The majority of participants at CAAIR are court–ordered and courts are required to assess a participant's need for treatment, and document that need and history in the record. Simmons should request public court records.

- Simmons requested documents pertaining to any planned or pending legal action against CAAIR or Simmons. CIR has no such records, as its work on CAAIR is entirely journalistic and it has had no role whatsoever in the planning for or filing of lawsuits.

In sum, Simmons has not exhausted alternative sources for the information it seeks to compel CIR to disclose.[9] Absent a clear and convincing demonstration, the motion should be denied.

## Conclusion

For the foregoing reasons, Simmons has failed to show that CIR is subject to the subpoena *duces tecum* or that the subpoena can be enforced in this Court, in the first instance. Simmons has also failed to overcome the journalists' privilege asserted by CIR under the First Amendment or any applicable state law. The motion to compel should be denied, and CIR should be awarded its costs, including a reasonable attorneys' fee, incurred in having to respond to the motion.

---

[9] Even under the "less restrictive" interpretation of *Silkwood* that Simmons proposes—that it make an independent attempt to obtain the information elsewhere (*see* n. 6 above)—Simmons wholly fails to meet that standard.

Dated:  October 22, 2020

Respectfully submitted,

s/*Robert D. Nelon*

Robert D. Nelon, OBA #6610
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
BancFirst Tower, Suite 2900
100 North Broadway
Oklahoma City, OK  73102-8865
Telephone (405) 553-2828
Facsimile (405) 553-2855
Email: bnelon@hallestill.com


D. Victoria Baranetsky, (*pro hac vice* pending)

**THE CENTER FOR INVESTIGATIVE REPORTING**
1400 65th St., Ste. 200
Emeryville, CA 94608
Telephone (201) 306-4831
Email: vbaranetsky@revealnews.org

**ATTORNEYS FOR NON–PARTY THE CENTER FOR INVESTIGATIVE REPORTING (d/b/a/ REVEAL)**

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the Following ECF registrants:

| | |
|---|---|
| Christopher S. Thrutchley<br>John D. Russell<br>Philip D. Hixon<br>Justin A. Lollman<br>**GABLEGOTWALS**<br>1100 ONEOK Plaza<br>100 East Fifth Street<br>Tulsa, OK 74103–4217 | Daniel E. Smolen<br>David A. Warta<br>Robert M. Blakemore<br>**SMOLEN, ROYTMAN**<br>701 South Cincinnati Avenue<br>Tulsa, OK 74119 |
| Amy M. Stipe<br>**GABLEGOTWALS**<br>One Leadership Square, Suite 1500<br>211 North Robinson Avenue<br>Oklahoma City, OK 73102 | Demelda L. Richardson<br>Michael P. Robertson<br>Randall E. Long<br>**RHODES HIERONYMUS**<br>Two West Second Street, 10th Floor<br>Tulsa, OK 74103 |
| | Megan E. Lambert<br>ACLU of Oklahoma<br>P O Box 13327<br>Oklahoma City, OK 73113 |

                                                     s/*Robert D. Nelon*
                                                     Robert D. Nelon

2226805.1:007635:00001