IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARTHUR COPELAND, individually and on behalf of all others similarly situated; et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 17-CV-564-SEH-JFJ<br>) |
| C.A.A.I.R., INC., a domestic not for profit corporation; et al., | )<br>)<br>) |
| Defendants. | )<br>) |

**OPINION AND ORDER**

Before the Court is Simmons Defendants' Motion to Compel Non-Party Center for Investigative Reporting, Inc. ("CIR") to Comply with Subpoena Duces Tecum ("Motion to Compel") (ECF No. 225). The Motion to Compel is **DENIED**.

**I.      Factual Background**

Plaintiffs brought this proposed class action in 2017 to recover unpaid wages and various other losses against Defendants Simmons Foods, Inc., and Simmons Pet Food, Inc. (together, "Simmons"), as well as Christian Alcoholics and Addicts in Recovery, Inc. ("CAAIR") and four individuals associated with CAAIR. *See* ECF No. 193 (Third Amended Complaint). Plaintiffs allege they participated in CAAIR's residential drug and alcohol recovery program, typically in lieu of serving prison time. Plaintiffs allege that, rather than receiving rehabilitation, they were forced to work for Simmons by processing chickens for over 40 hours a week without wages and in dangerous conditions. Plaintiffs allege that they provided free labor to Simmons and that CAAIR provided no rehabilitative services. Plaintiffs allege that, when they were injured or sick, CAAIR still required them to work, provided inadequate or no medical care, and kept their workers' compensation payments.

Nonparty CIR is a nonprofit investigative newsroom that publishes an online news site and produces a weekly public radio show with approximately one million listeners. CIR has an office in Emeryville, California and is incorporated under the laws of California. In October 2017, CIR published articles relating to the facts of this lawsuit. The articles quote named Plaintiffs and other potential class members. The articles indicate CIR reporters interviewed multiple individuals who participated in the CAAIR program.

On May 15, 2020, Simmons issued a subpoena to CIR to produce documents containing statements of current or former CAAIR participants on six topics ("Subpoena"). The Subpoena lists the place of compliance as the office of Simmons' counsel, which is in Tulsa, Oklahoma, in the Northern District of Oklahoma federal judicial district (the "NDOK"). ECF No. 225-1.

On June 4, 2020, the date of compliance in the Subpoena, CIR objected by letter pursuant to Federal Rule of Civil Procedure 45(d)(2)(B). ECF No. 225-2. In the letter, CIR objected only on grounds of a reporter's privilege, citing California law. Simmons then filed the pending Motion to Compel in the NDOK, seeking to compel the documents over CIR's privilege objection.

On December 10, 2020, while the Motion to Compel was pending, the district judge granted Defendants' motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 237. The district judge filed a judgment terminating the entire case, and Plaintiffs appealed. On May 1, 2023, the Tenth Circuit Court of Appeals reversed the district court's order and remanded the case with instructions to vacate the judgment and reinstate the case as to 53 of 55 Plaintiffs. ECF No. 251. Following remand, the Motion to Compel was reinstated, and the district judge renewed referral of the Motion to Compel to the undersigned. On January 26, 2024, the Court dismissed several Plaintiffs as a discovery sanction. ECF Nos. 259, 260.

In the Motion to Compel, Simmons argues that the applicable reporter's privilege is qualified, and that Simmons' need for the information overcomes the privilege. In response, CIR

2

argues that the privilege protects the requested information and raises two other objections: (1) the "subpoena is procedurally defective" as it directs compliance beyond the 100-mile limit in Rule 45(c)(2)(A); and (2) this Court "does not have jurisdiction to compel compliance with the subpoena even if it were valid," because this is not "the court for the district where compliance is required" under Rule 45(d)(2)(B)(i). ECF No. 229 at 2-3.

## II.   Jurisdictional/Procedural Objections

This case presents two threshold questions: (1) whether this Court has jurisdiction to decide the Motion to Compel; and (2) if yes, whether to sustain CIR's objection to the place of compliance. The Court has jurisdiction and overrules CIR's procedural objections.

### A.   Jurisdiction is Proper in the NDOK

#### 1.   Rule 45's Scheme for Document Subpoenas

Rule 45 governs document subpoenas to nonparties. A subpoena must issue from the court where an action is pending, or the "issuing court." Fed. R. Civ. P. 45(a)(3). Rule 45(a)(1)(A)(iii) requires that a subpoena command the person to produce documents, electronically stored information, or tangible items "at a specified time and place." Rule 45(c), entitled "place of compliance," provides that a document subpoena may command production "at a place within 100 miles where the subpoenaed party resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). "Although Rule 45(a)(1)(A)(iii) permits the subpoena to direct a place of compliance, that place must be selected under Rule 45(c)." Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment.[1]

Rule 45 also provides where to file a motion regarding a document subpoena. The subpoenaed person may move to quash or modify the subpoena in "the court for the district where

---

[1] Other portions of the notes state that "parties often agree that production, particularly of electronically stored information, be transmitted by electronic means." *Id.* The notes further provide that "[s]uch arrangements facilitate discovery, and nothing in these amendments limits the ability of parties to make such arrangements." *Id.*

compliance is required." Fed. R. Civ. P. 45(d)(3). Similarly, the serving party may move to compel subpoenaed documents in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). When the "court where compliance is required" did not issue the subpoena, it may transfer a motion to the "issuing court" only if the subpoenaed party consents to transfer or upon a finding of exceptional circumstances. Fed. R. Civ. P. 45(f).

The "place of compliance" rules in Rule 45(c), the motion filing rules in Rule 45(d) and (e), and the transfer rules in Rule 45(f) are designed to protect nonparties from the inconvenience of litigating outside their local district. The notes explain:

> **To protect local nonparties, local resolution of disputes is assured by the limitations of Rule 45(c) and the requirements in Rule 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c)**. . . . The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions . . . .

Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment (emphasis added).

### 2.   Split in Authority

Rule 45's document subpoena scheme assumes that a serving party will issue a facially valid subpoena that complies with Rule 45(c)(2)(A). If the serving party does so, the "court for the district where compliance is required" is tethered to the location of the subpoenaed person. This ensures "local resolution of disputes" regarding the subpoena, as contemplated by the 2013 amendment. Further, if a subpoena lists an invalid place of compliance, the subpoenaed party may serve a written objection suggesting a proper place of compliance within the 100-mile limit. If the serving party agrees it violated Rule 45(c), it may issue a new subpoena with a corrected place of compliance. Again, this would ensure that any motion practice occurs in a nonparty's local district.

But litigation does not always follow this model, and confusion arises when the "place of compliance" on the subpoena may not comply with Rule 45(c). This can occur, for example, when a serving party fails to comply with Rule 45(c) out of ignorance of the rule, or based on hope that

4

a subpoenaed party will waive any objection. It can also occur when a serving party attempts to comply with Rule 45(c), but a legitimate dispute arises over whether the selected location complies with the 100-mile limit.

In these types of cases, courts grapple with whether the "court for the district where compliance is required" is: (1) a court encompassing the location listed on the subpoena, or (2) a court within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person. Courts adopting the first approach reason that the only way to determine whether a subpoena violates Rule 45(c) is to receive argument or evidence from the subpoenaed party, which requires exercising jurisdiction over the motion. This approach is aimed at practicality. *See, e.g., CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 710 (N.D. Tex. 2017) ("It is at the least impractical for a court to be required to formally decide if the nonparty or the subpoenaing party wins a Rule 45(c) issue on a Rule 45(d) motion in order to determine whether the court actually can decide which side prevails on the motion on that or any other issue."); *Henry Schein, Inc. v. Drea*, 21-CV-192-RGE-HCA, 2022 WL 18584628, at *3 (S.D. Ia. May 31, 2022) (explaining split in authority, siding "with the courts that look to the face of the subpoena," and reasoning that alternative would be "impractical and a waste of judicial resources"); *Adams v. Symetra Life Ins. Co.*, No. 19-MC-401-EFM-ADM, 2020 WL 489523, at *3 (D. Kan. Jan. 28, 2020) (following reasoning of *CSS, Inc.*). This appears to be the majority view among district courts in the Tenth Circuit. *See RSUI Indem. Co. v. Nat'l Rifle Ass'n of Am.,* No. MC-20-6-D, 2020 WL 4194526, at *1 (W.D. Okla. July 21, 2020) (stating, without discussion, that "[m]ost courts agree that the district where compliance is required is determined by the location or place of compliance identified on the subpoena").

Courts adopting the second approach reason that: (1) Rule 45 contemplates that subpoena disputes must be litigated in courts convenient to the nonparty; and (2) Rule 45's purposes would be defeated if a serving party can demand compliance in violation of Rule 45(c) and then require

5

the nonparty to adjudicate any dispute over that subpoena in a distant forum. *See, e.g., Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017) (concluding that court in which "compliance is required" is the court in the district within 100 miles of where subpoenaed person resides, is employed, or regularly transacts business in person); *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *20 (D.N.M. Apr. 1, 2016) (stating, without discussion, that "where compliance is required" describes district in which subpoena recipient resides or works).

### 3. Court Adopts "Face of Subpoena" Approach

Both lines of decisions have persuasive reasoning. The former line of cases provides a bright-line rule for where to file any motion in the first instance, including to resolve a Rule 45(c) dispute. A court generally cannot know whether a subpoena violates Rule 45(c) without some record or information from the subpoenaed party; in contrast, a court can quickly determine whether the address on the subpoena is within its jurisdiction. The latter line of cases is more consistent with the purpose of Rule 45 to protect nonparties from litigating subpoena disputes outside a district where they reside or regularly transact business. Permitting the serving party to disregard the 100-mile rule, and then litigate any issue in its selected forum (whether the issuing court or some other court of its choosing), is contrary to Rule 45's purpose.

In the interest of practicality and uniformity, the Court holds that a "court for the district where compliance is required" is the court encompassing the address listed on the subpoena. Rule 45's direction to file motions in the "district for the court where compliance is required" does not address the practical necessity of deciding that issue in the first instance. Although this approach results in some inconvenience to a subpoenaed party, it provides a practical rule governing where to litigate Rule 45(c) disputes. The best result is one that provides courts with maximum flexibility to decide "place of compliance" objections while also protecting nonparties from litigating more substantive issues in inconvenient forums. *See, e.g., RSUI Indem. Co.*, 2020 WL 4194526, at *2

(holding that, for purposes of that motion, it was the "compliance court," but then quashing subpoena that improperly required production of documents outside Rule 45(c)(2)(A)'s geographical limits). If the subpoena is invalid, a court can grant a motion to quash or deny a motion to compel.[2] Presumably, the subpoena will be reissued with a valid place of compliance, and any further disputes will be resolved in a valid "compliance court" or transferred to the "issuing court" if appropriate under Rule 45(f).

In this case, the face of the Subpoena lists Tulsa, Oklahoma, as the place where compliance is required. Tulsa is within the NDOK, and this Court has jurisdiction to decide the Motion to Compel.

### B. CIR Waived Objection to Place of Compliance By Failing to Object Within 14 Days or File Motion to Quash

CIR argues that it does not regularly transact business in person in Tulsa, Oklahoma, and that the Subpoena violates Rule 45(c)(2)(A). Simmons does not attempt to argue that Tulsa, Oklahoma, is within 100 miles of where CIR regularly transacts business in person. Instead, Simmons argues that CIR waived this objection by failing to timely object under Rule 45(d)(2)(B) and/or file a motion to quash under Rule 45(d)(3)(A)(ii). Simmons argues that, if CIR "had made its procedural objections in its letter, they would have been resolved months ago." ECF No. 236 at 3.

In response to a document subpoena, a subpoenaed entity must serve written objections by the earlier of the date of compliance or within 14 days after the subpoena is served. *See* Fed. R. Civ. P. 45 (d)(2)(B). Failure to object within the required 14-day time period generally results in waiver of the contested issues. *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

---

[2] If a serving party unreasonably and without justification forces a nonparty to file or defend a motion in what is ultimately deemed an invalid forum, a court may consider imposing fees and costs as a sanction against a serving party. This would promote the purpose of Rule 45 and incentivize resolution of "place of compliance" disputes before they reach any court.

7

*and Procedure* § 2463 (3d ed. 2023). *See also Metro Mart, Inc. v. N. Star Mut. Ins. Co.,* No. CIV-14-1215-W, 2015 WL 13567095, at *2 (W.D. Okla. June 9, 2015); *Electro-Mech. Prod., Inc. v. Alan Lupton Assocs. Inc.*, No. 1:22-CV-00763-PAB-SBP, 2023 WL 6461235, at *6 (D. Colo. Sept. 21, 2023). Waiver occurs whether the objections are substantive or procedural in nature. *See Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006) (rejecting government's argument that Rule 45(c)(2)(B)'s 14-day time limit extends only to substantive objections and not to procedural objections). Timely asserting one type of objection does not preserve other types of objections under Rule 45(c)(2)(B). *See In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (explaining that "Rule 45(c)(2)(B) does require the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game'"). Courts may excuse untimely objections upon a showing of "unusual circumstances and good cause." *Yousuf*, 451 F.3d at 252. *See also Metro Mart, Inc.*, 2015 WL 13567095, at *2 (applying same standard). A subpoenaed person may also file a timely motion to quash, which would preserve the objection and bring the issue directly to a court. *See* Fed. R. Civ. P. 45(d)(3).

In this case, CIR waived its objection to the place of compliance listed in the Subpoena. CIR did not file a motion to quash pursuant to Rule 45(d)(3)(A)(ii) in any court. By letter, CIR objected to the Subpoena on grounds of privilege pursuant to Rule 45(d)(2)(B) and/or Rule 45(e)(2). However, CIR did not assert any objection under Rule 45(c)(2)(A) to the place of compliance. In the briefing before the Court, CIR did not attempt to make any showing of good cause and unusual circumstances to excuse its untimely objection to the place of compliance.

Therefore, CIR's objection to the place of compliance under Rule 45(c)(2)(A) is waived and overruled.[3]

### III. Reporter's Privilege Objection

The requested materials are protected by the qualified reporter's privilege under federal common law.

#### A. Requested Materials/Parties' Arguments

The Subpoena requests all documents containing "statements of current or former CAAIR participants that relate to" six topics listed on the Subpoena. ECF No. 225-1. Those topics include the participant's entry into the CAAIR program; experiences in the CAAIR program; experiences working at Simmons while in the CAAIR program; views or opinions of CAAIR or Simmons; their history of sobriety and/or addiction before and after completing the CAAIR program; and any planned legal action against CAAIR or Simmons. The Subpoena carves out exceptions for publicly available documents and for reporters' "undisclosed personal thoughts, mental impressions, strategies, or research endeavors." ECF No. 225-1. "Documents" is defined as "writings, videos, sound recordings, images, and other data or data compilations . . . stored in any medium from which information can be obtained either directly or . . . [by] translation . . . into a reasonably usable form." *Id.* The Subpoena excepts publicly available materials and provides that, for any responsive materials, CIR may "redact [its] reporters' undisclosed personal thoughts, mental impressions, strategies, or research endeavors." *Id.*

---

[3] Nonparties are cautioned to preserve "place of compliance" objections if they desire to litigate subpoena disputes in a local forum. Nonparties are also cautioned that electronic production of documents to a place of compliance listed in the subpoena may waive objections to any Rule 45(c)(2)(A) violations. *See RSUI Indem. Corp.*, 2020 WL 4194526, at *2 (stating in dicta that a "subpoenaed third party can waive the 100-mile requirement by agreeing to transmit production by electronic means," but noting that subpoenaed party in that case withheld production and filed motion to quash).

9

CIR objects to producing any unpublished statements of CAAIR participants based on a reporter's privilege.[4] Simmons argues that, under federal common law, its need for disclosure outweighs the First Amendment considerations underlying the reporter's privilege. CIR asserts that, whether the Court applies California law, Oklahoma law, or the qualified privilege under federal common law, First Amendment considerations outweigh the need for disclosure.

B.  **Scope of Discovery/Burden of Proof**

Rule 45 subpoenas are considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. United States*, 164 F.R.D. 556, 556-57 (N.D. Okla. 1995). A subpoena is therefore subject to Federal Rule of Civil Procedure 26(b)(1)'s requirements. *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *2 (N.D. Okla. Feb. 28, 2020). Under Rule 26(b)(1), discovery extends to "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

CIR claims the requested discovery is privileged and therefore beyond the scope of Rule 26(b)(1). The entity claiming a reporter's privilege bears the burden of proving it applies. *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) (party asserting any privilege bears burden of proving it applies); *Amaya v. Bregman*, No. 14-CV-599 WJ/SMV, 2016 WL 10296798, at *8 (D.N.M. May 13, 2016) (objecting party bears burden of proving reporter's privilege); *In re Bacon for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceeding v. Archer*, No. 17-MC-192-KLM, 2018 WL 4467182, at *6 (D. Colo. Sept. 17, 2018) (same).

---

[4] In this case, there is no dispute that CIR is the type of entity entitled to assert the privilege. *Cf. In re Bacon for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceeding v. Archer*, No. 17-MC-192-KLM, 2018 WL 4467182, at *3 (D. Colo. Sept. 17, 2018) (discussing whether privilege extended to independent journalists); *Amaya v. Bregman*, No. 14-CV-599 WJ/SMV, 2016 WL 10296798, at *8 n.9 (D.N.M. May 13, 2016) (discussing whether privilege extended to political operatives).

10

## C. Federal Common Law Governs Scope of Privilege

Federal Rule of Evidence 501, entitled "Privilege in General," provides that federal common law governs a claim of privilege, unless the U.S. Constitution, federal statute, or Supreme Court rules provide otherwise. Fed. R. Evid. 501. "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *Id.* Generally, under Tenth Circuit law, federal privilege law applies to federal claims or defenses, and state privilege law to state claims or defenses. *See Motley v. Marathon Oil, Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995) ("Motley asserted both federal and state causes of action. As to state causes of action, a federal court should look to state law in deciding privilege questions.").

But this rule from *Motley* is "unhelpful in many instances," such as where "the privilege asserted goes to evidence that is relevant to both a federal and a state-law claim." *Vondrak v. City of Las Cruces*, 760 F. Supp. 2d 1170, 1175-76 (D.N.M. 2009). The Court adopts the reasoning of its sister court in New Mexico that federal privilege law applies in such instances. That court reasoned:

> [T]he weight of circuit-court authority, combined with the practical considerations involved with running discovery and trials, indicate that the Tenth Circuit would follow the majority and find that federal privilege law applies under such circumstances. First, at the discovery phase, any attempt to bifurcate privileges along the border between federal and state-law claims would be hollow if the allegedly privileged evidence impacted both sets of claims. If, for example, state law privileged the evidence, but federal law did not, a court would be in the conundrum of preventing the discovery of evidence as to the state-law claims because of the state-law privilege[], while simultaneously ordering the disclosure of the same evidence as non-privileged as to the federal-law claims. Thus, one privilege needs to be applied to a discovery determination to avoid such a problem. Second, it would be impracticable to apply two different bodies of privilege law in front of one jury. . . . The Court would . . . give a limiting instruction to the jury, but such a limiting instruction would be of little value, given that evidence which should have been privileged has been heard, and the privilege effectively lost. In light of such considerations, the Court believes the best course of action is to apply one body of privilege law. Moreover, it makes sense that the body of privilege law that the Court applies should be federal law. Jurisdiction in this case is based on a federal question rather than on diversity.

*Vondrak*, 760 F. Supp. 2d at 1176-77 (citations omitted). *See also United States v. Osage Wind, LLC*, No. 14-CV-704-GKF-JFJ, 2021 WL 149266, at *4 n.5 (N.D. Okla. Jan. 16, 2021) ("[C]ourts have held that, where jurisdiction is based on a federal question and a court has supplemental jurisdiction over state-law claims, practical considerations mandate application of federal privilege rules in the entire case.").

In this potential class action, Plaintiffs assert both federal and state claims. Simmons contends the requested documents are relevant to both federal and state claims, and Simmons seeks to use the materials to defend both federal and state claims. In these circumstances, and where the Court's jurisdiction is based on a federal question, federal common law governs the scope of the reporter's privilege asserted by CIR.

>    D.      **First Amendment Concerns Outweigh Need For Disclosure**

Federal common law recognizes a reporter's privilege in civil cases. *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1970) (explaining that, based on Supreme Court precedent, "the present privilege is no longer in doubt"). *See also Shoen v. Shoen*, 48 F.3d 412, 414 (9th Cir. 1995) (recognizing "qualified privilege for journalists against compelled disclosure of information gathered in the course of their work") (citation omitted). The privilege is rooted in the First Amendment, and it recognizes that society's interest in protecting the integrity of the newsgathering process justifies sacrifices of sources of facts needed in the administration of justice. *See id. See also Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) ("Although the First Amendment does not normally restrict the actions of purely private individuals, the amendment may be applicable in the context of discovery orders, even if all of the litigants are private entities.").

The reporter's privilege extends to "both confidential and nonconfidential *information* and sources," because discovery of such information has a chilling effect on the flow of information to the public. *United States v. Rosenschein*, No. CR 16-4571 JCH, 2020 WL 4141775, at *2

12

(D.N.M. July 20, 2020) (collecting district court decisions within Tenth Circuit). *See also Shoen*, 48 F.3d at 416 (explaining media's various interests in avoiding compliance with discovery requests for even nonconfidential sources and information). Courts have recognized that "routine court-compelled disclosure of research materials poses a serious threat to the vitality of the newsgathering process," and would result in reporters' becoming "an investigative arm of the judicial system or a research tool of the government or of a private party." *Shoen*, 48 F.3d at 416 (cleaned up).

Originally, the Tenth Circuit outlined the following factors to consider before ordering disclosure over a reporter's privilege objection: (1) whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful; (2) whether the information goes to the heart of the matter; (3) whether the information is of certain relevance; and (4) the type of controversy. *Silkwood*, 563 F.2d at 438. In a later decision, the Tenth Circuit restated the factors as: "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Grandbouche*, 825 F.2d at 1466. After considering the facts related to each factor, the court must apply a balancing test to decide "whether the privilege must be overborne by the need for the requested information." *Id.* at 1467. *See also Silkwood*, 563 F.2d at 438 (stating ultimate test as whether "First Amendment considerations outweigh[] the need for the requested information"). The need for disclosure generally does not outweigh First Amendment concerns when information is of only "questionable relevance"; when the party seeking the discovery is on a mere "fishing expedition"; or where a demand is overly "vague." *Silkwood*, 563 F.3d at 438.

After carefully considering all factors, CIR has met its burden of showing that First Amendment considerations in protecting the newsgathering process outweigh the need for disclosure of the documents to defend this civil lawsuit.

**1.      Relevance**

This is a complex class action that includes fourteen causes of action arising under federal and three states' laws. The claims include federal and state wage and hour claims; federal RICO claims; a Missouri unjust enrichment claim; and federal Trafficking Victims Protection Reauthorization Act ("TVPRA") claims, including forced labor, involuntary servitude, and trafficking.[5]

As part of its TVPRA forced labor claim, Plaintiffs allege:

> Defendants held [plaintiffs] in a state of forced labor, **under false pretenses of a 'rehabilitation' program**, forcing them to work full time at Simmons Foods' poultry processing plants, without pay, and under constant threat of abuse of law or legal process; and/or a scheme, plan, or pattern intended to cause Named Plaintiffs and Members of the Class to believe that if they did not perform the labor or services, they would suffer serious harm, including psychological, financial, or reputational harm, or incarceration . . . . Defendants executed a scheme, plan, or pattern **(i.e., a forced labor camp billed as a drug and alcohol rehabilitation program)** intended to cause Named Plaintiffs and Members of the Class to believe that if they did not continue to work for Defendants, they would suffer serious harm by threats of incarceration and by controlling their living conditions.

Third Am. Compl. ¶¶ 179, 180 (emphasis added). In a response to Simmons' motion to dismiss the TVPRA involuntary servitude claim in a former version of the complaint, Plaintiffs argued:

> Simmons argues that a resident's initial entry into CAAIR is a "choice." Even if true, any such choice – made before arrival at CAAIR – is irrelevant to Plaintiffs' claims. The relevant inquiry is not whether Plaintiffs "chose" to enter CAAIR, but whether the alternative they ultimately faced – work at Simmons or go to prison – was a legitimate one. It was not. **Once a resident arrives at CAAIR, he discovers that he is in a labor camp with no rehabilitative purpose. Any legitimate choice has vanished. CAAIR conceals its origins and misrepresents itself as a treatment facility to gain total control.**

ECF No. 54 at 13 (emphasis added).

---

[5] The district judge dismissed Plaintiffs' trafficking claim under the TVPRA (18 U.S.C. § 1590) as to Simmons, because Plaintiffs did not allege facts establishing that Simmons was involved in bringing Plaintiffs to the CAAIR facility to participate in the rehabilitation program or that Plaintiffs were under the complete, long-term control of Simmons. *See* ECF No. 115 at 18-19. However, Plaintiffs still maintain TVPRA claims against Simmons for forced labor and involuntary servitude.

14

The requested information is relevant. Positive statements about CAAIR's rehabilitative services, if they exist in CIR's files, are relevant to defend against Plaintiffs' TVPRA claims and, specifically, Plaintiffs' allegations that CAAIR did not provide rehabilitative or drug treatment services. If CAAIR participants stated they recovered from addiction while at CAAIR, and described CAAIR's rehabilitative services in positive terms, this helps refute Plaintiffs' allegations and arguments.[6] The relevance of the evidence goes beyond mere impeachment of any individual Plaintiff's testimony and would assist in defending global allegations that the CAAIR program is a forced labor camp rather than a rehabilitative drug treatment program.

Further, Simmons is not engaging in an unwarranted fishing expedition by requesting these statements. The relevant articles directly quote at least two of the original named Plaintiffs, and CIR likely possesses unpublished, relevant information from these interviews. A complete version of these Plaintiffs' interviews is relevant to defending the claims and for potential impeachment. The articles also quote a potential class member, and that individual's mother, as praising CAAIR's rehabilitative services. This indicates a likelihood that other positive notes or interviews exist in CAAIR's files.

The requested information is specific, relevant, and likely to be possessed by CAAIR. This factor weighs in favor of disclosure.

     **2.    Necessity**

As to the second factor, courts within the Tenth Circuit consider whether the information is needed to prove a claim, or for "just litigation" of a claim. *In re Bacon*, 2018 WL 4467182, at *6. The first factor of "relevance" must not be conflated with the second factor of "necessity." *Id.*

---

[6] The Court need not reach the question of whether Plaintiffs must demonstrate the absence of true rehabilitative services to prove any of their fourteen claims. For this relevance analysis, it is sufficient that Plaintiffs portray CAAIR as a forced labor camp devoid of any meaningful rehabilitative services.

15

The requested information is not "necessary" for a just litigation of Plaintiffs' claims. Simmons' two cited cases supporting the "necessity" factor demonstrate why this factor weighs against disclosure. In one case, a reporter was accused of wrongdoing, and the reporter was uniquely able to provide information needed for the plaintiff to prove her case. *See Amaya*, 2016 WL 10296798, at *8 (finding defendant accused of violating plaintiffs' privacy was uniquely capable of providing information necessary to proving claim). In the second cited case, a reporter was a "first-hand witness and record-keeper" of statements alleged to be defamatory or libelous, although the reporter was not directly sued. *See In re Bacon*, 2018 WL 4467182, at *6-8 (finding reporter who witnessed alleged defamatory statements was uniquely capable of having knowledge of a "smear campaign" that was the subject of foreign defamation lawsuits). In both cases, the reporter was deemed uniquely capable of providing information necessary to prove a claim, because the reporter either committed or directly witnessed the alleged wrongdoing at the heart of the civil case.

Here, CIR is not accused of wrongdoing and did not witness any wrongdoing by CAAIR or Simmons. Neither CIR nor any other party is being sued by CAAIR or Simmons for publishing a defamatory article. Instead, CIR is an innocent third party that possesses relevant information and asserts privilege solely for the purpose of protecting society's interests in the newsgathering process. This weighs in favor of protection. *See generally Zerilli v. Smith*, 656 F.2d 705, 715 (D.C. Cir. 1981) (upholding privilege where privilege proponent was not asserting privilege to "protect [himself] from liability," but rather solely to protect First Amendment interests in newsgathering).

Further, although CIR obtained statements from CAAIR participants who are Plaintiffs or may be class members, CIR is not uniquely capable of obtaining participants' subjective perceptions of the CAAIR program. Presumably, CAAIR and Simmons have lists, or could have maintained lists, of all CAAIR program participants. The individuals running the CAAIR program

16

should know who experienced recovery in the program or have means of uncovering that information. CIR is not "uniquely capable" of asking these individuals questions, taking their statements, or gathering information relevant to Plaintiffs' allegation that CAAIR failed to provide rehabilitative services. Although CIR is the only entity that possesses statements made by CIR's interviewees on or around October 2017, those precise statements are not "necessary" to a just and fair defense of this lawsuit.

Statements possessed by CIR, if they praise the CAAIR program, would be relevant and useful to Simmons. They would also be a convenient discovery tool, as CIR has already done the investigative work. But relevance, usefulness, and convenience are not sufficient showings for the necessity factor. The Court finds this factor weighs against disclosure.

### 3. Availability From Other Sources

This factor weighs in favor of disclosure where the requesting party makes a "clear and specific showing that the information is not obtainable from other available sources." *In re Bacon*, 2018 WL 4467182, at *6. The requesting party "must demonstrate it has independently attempted to obtain the information elsewhere and has been unsuccessful." *Id.* (citing *Silkwood*, 563 F.2d at 438).[7]

Simmons argues it attempted to obtain this information from named Plaintiffs through written discovery, but Plaintiffs failed to produce any text messages or emails reflecting their communications about CAAIR or Simmons. Simmons argues that CIR's "withholding texts or emails with the Plaintiffs as part of a blanket refusal to produce responsive items reinforces Plaintiffs' attempt to hide anything they have said about the program from the ultimate factfinders." ECF No. 225 at 7.

---

[7] Other circuits have required a party to demonstrate that "all reasonable alternative sources" of the information have been exhausted in order to overcome the privilege. *See, e.g., Shoen*, 48 F.3d at 418. The Court applies the test as articulated by the Tenth Circuit.

The requested information is available from other sources. Simmons issued written discovery to the 55 named Plaintiffs. Some discovery was aimed at uncovering Plaintiffs' statements about CAAIR and/or Simmons, including texts, emails, and social media posts. Although Simmons is not satisfied with Plaintiffs' responses to document requests, this does not justify overriding privilege for three reasons. First, many named Plaintiffs have already been dismissed based on their failures to respond to written discovery as an agreed discovery sanction. *See* ECF Nos. 259, 260. Simmons obtained a complete remedy in relation to these Plaintiffs, and there is no justification for invading a reporter's privilege to further remedy any former Plaintiffs' noncompliance with written discovery. Second, Simmons may depose the remaining named Plaintiffs regarding their experience at CAAIR, which is an alternative method of obtaining subjective statements about the rehabilitative services provided, or not provided, in the CAAIR program. *See Zerilli*, 656 F.2d at 714-15 (finding First Amendment considerations outweighed disclosure where party seeking privileged information failed to depose four individuals with greatest knowledge of case). Finally, as to potential class members, CAAIR and Simmons know or should know who participated in the program and received rehabilitative services. Defendants, even more than CIR, are uniquely situated to identify witnesses or potential class members whose statements will counter allegations that CAAIR and/or Simmons ran a "forced labor camp" rather than a drug rehabilitation program. Although it would be convenient to piggyback on the investigative work already completed by CIR, defense counsel can obtain the same information by other means. This factor weighs against disclosure.

### 4. Nature of Information

The Court has already analyzed relevance and necessity, and those discussions are incorporated to this factor. *See In re Bacon*, 2018 WL 4467182 at *8 (reiterating discussions of relevance and necessity in discussing fourth factor). In addition, the Court considers whether the source or information sought is confidential or nonconfidential, with the recognition that

18

confidential sources or information receive greater First Amendment protection. *See generally Shoen v. Shoen*, 5 F.3d 1289, 1295 (9th Cir. 1993) (explaining that "the absence of confidentiality may be considered in the balance of competing interests as a factor that diminishes the journalist's, and the public's, interest in non-disclosure").

In its response brief, CIR did not assert that it was protecting any confidential sources or information. At least some of the sources for the article agreed to be quoted, including some who criticized the program and some who praised it. For purposes of this factor, the Court assumes the statements sought are not confidential and that CAAIR participants did not demand anonymity when being interviewed for the article. Because the "nature of the information" is relevant and not confidential, the fourth factor weighs in favor of disclosure.

### 5. Balancing

This is not a clear-cut case for protecting privilege. Simmons made a specific request for relevant information and has reason to believe the information is in CIR's possession based on information in the published articles. Instead, this case requires careful balancing of (1) Simmons' interest in obtaining relevant information to defend a civil lawsuit, against (2) First Amendment interests in protecting investigative journalism and avoiding a chill on the newsgathering and publishing processes.

On balance, and based on the facts discussed above, the Court concludes the First Amendment considerations override the need for relevant documents in this case. CIR is not uniquely able to provide information about participants' subjective perceptions of the CAAIR program. Simmons can obtain these perceptions from other sources, including depositions and its own investigation. CIR is not a party or a witness to the alleged wrongdoing, and it invokes the privilege solely to defend its First Amendment right to investigate and publish news. In light of these considerations, the First Amendment considerations prevail over the need for disclosure.

## IV.  Conclusion

CIR's jurisdictional and procedural objections to the Subpoena are OVERRULED, and CIR's privilege objection to the Subpoena is SUSTAINED.  Defendants' Motion to Compel Non-Party Center for Investigative Reporting, Inc. to Comply with Subpoena Duces Tecum (ECF No. 225) is DENIED.

**SO ORDERED** this 28th day of February, 2024.

JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT