IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) PABLO ANGELES,<br>(2) JASON BAKER,<br>(3) DAVID BANKS,<br>(4) RYAN COLE,<br>(5) STEVE COOK<br>(6) RYAN DORLAND<br>(7) CHARLES GREENHAW<br>(8) MICHAEL GREENHAW<br>(9) MICHAEL HARPER<br>(10) MARQUIS LUCKEY,<br>(11) BRAD MCGAHEY<br>(12) CLINTON MEYER,<br>(13) BOBBY NICHOLS,<br>(14) CHARLES RICKMAN,<br>(15) TITUS STATON,<br>(16) MICHAEL MCCARTNEY,<br><br>   Individually and on behalf of all others<br>      similarly situated<br><br>            Plaintiffs,<br><br>v.<br><br>(1) C.A.A.I.R., Inc., a domestic not for profit corporation,<br>(2) SIMMONS FOODS, INC., a foreign for profit business corporation,<br>(3) SIMMONS PET FOOD, INC.,<br>(4) JANET WILKERSON,<br>(5) DON WILKERSON,<br>(6) LOUISE DUNHAM,<br>(7) JIM LOVELL (deceased).<br><br>            Defendants. | CASE NO. 17-CV-00564-SEH-JFJ<br>(PROPOSED CLASS ACTION)<br>ATTORNEY LIEN CLAIMED<br>JURY TRIAL DEMANDED |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION [DKT. 304]**

i

**COME NOW** the Plaintiffs ("Plaintiffs" or "Proposed Class Representatives"), individually and on behalf of all those similarly situated ("Putative Class Members"), by and through their counsel of record, and for their Reply in Support of their Motion for Class Certification (Dkt. 304), state as follows:

**ARGUMENT & AUTHORITY**

I.     Class Definition

Simmons Defendants incorrectly argue that Plaintiffs have impermissibly expanded the definition of the proposed classes. Dkt. 315 at pp. 8-12. These arguments, however, ignore that Plaintiffs actually narrowed the class definitions. Plaintiffs refined those definitions to conform with the discovery obtained after filing the Third Amended Complaint (Dkt. 193) (hereinafter "TAC") to comply with the underlying statute of limitations, and to refine the definitions for the sake of notice to the Class. The Court has the authority to make such refinements itself. *N.B. v. Hamos*, 26 F. Supp. 3d 756, 769 (N.D. Ill. 2014); FRCP 23(c)(1)(B).

Courts routinely allow Plaintiffs to refine the class definition to conform to facts ascertained with the benefit of discovery, to narrow the class to match the applicable statute of limitations, and to allow for amendment of the operative complaint to conform to the certified class definition. *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (rejecting arguments of prejudice where the defendant claimed "class discovery was premised on the class pled in the TAC and, discovery would have been conducted differently if it was premised on the new definition."); *Coppel v. SeaWorld Parks & Entm't, Inc.*, 347 F.R.D. 338, 350 (S.D. Cal. 2024) (allowing new class definition where "[t]he new proposed class definition imposes a temporal limitation based on the statute of limitations [].")*; Chieftain Royalty Co. v. SM Energy Co.*, CIV-18-1225-J, 2020 WL 13582565, at *2 (W.D. Okla. Aug. 31, 2020) (granting leave to amend "to align with the narrower

1

proposed class definition contained in Plaintiff's motion for class certification."); *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 608 (S.D. Cal. 2007) (same). In the TAC, Plaintiffs proposed the same definition for all class claims and subclasses:

> All persons who, at any time from November 16, 2009 through the trial date, have performed work at any Simmons Foods or Simmons Pet Food facility while residing at C.A.A.I.R.

Dkt. 193 at pp. 25-26. In their motion for class certification, Plaintiffs seek to certify the following refined class definition:

> All individuals who were CAAIR participants at any time from [DATE] until the trial date, and who performed work at a Simmons Facility during their time at CAAIR.

Dkt. 304 at pp. 24-25. The class definition must be "clear and precise" so that absent class members can readily determine if they are a member. 3 Newberg and Rubenstein on Class Actions § 7:27 (6th ed.). Simply "residing" at CAAIR is unclear, so Plaintiffs adopted Defendants' own terminology of "participants," as class members would be more familiar with that terminology.

Further, class members will better understand that they worked at a "Simmons Facility" rather than at "any Simmons Foods or Simmons Pet Food facility." Defendants argue the term "Simmons Facility" is undefined and impermissibly seeks to expand the Class. Dkt. 315 at p. 10. Plaintiffs have maintained that Simmons Foods, Inc. is responsible to Plaintiffs and the Class for liability stemming from the Staffing and Placement Agreements and Participants' labor in Simmons Facilities. The TAC explicitly claims Simmons Foods operates poultry processing plants in Oklahoma, Missouri, and Arkansas and conspired with CAAIR to provide unlawful labor to its operating businesses. Dkt. 193 at pp. 6, 24, ¶¶ 17, 73. Defendants are not allowed to unilaterally redefine Plaintiffs' claims to suit their own arguments.

Most importantly, Plaintiffs' refined class definition matches exactly with Defendants' terminology and representations made in the Staffing and Placement Agreements, a *fact* Defendants wholly ignore in response to Plaintiffs' Motion for Class Certification. See Dkt. 304 at ¶¶ 35-42; Exs. 67, 68, 71, 137 (filed under seal at Dkt. 305). Plaintiffs' proposed class definitions match exactly with the factual relationship between Simmons Foods, Inc. and CAAIR.

However, a further narrowing refinement argued by Defendants should be implemented by the Court. Defendants argue "non-criminal participants are included within the putative classes sought by Plaintiffs." Dkt. 315 at p. 28. Plaintiffs have always maintained that class members only include those who were attending CAAIR by means of a court program, whether Drug Court, Community Sentencing, or as a condition of Probation. Dkt. 193 at pp. 8-9, n. 1, 2, ¶¶ 31-34; Dkt. 304 at p. 26 ("The Placement Sheets can be combined with information available through OSCN to confirm the court-ordered status of each Class Member.") It is this court-ordered coercion that binds the class members to a common and predominating experience. *Menocal v. GEO Grp., Inc.*, 635 F. Supp. 3d 1151, 1185–86 (D. Colo. 2022). Plaintiffs propose a further refinement of the class definitions to clarify that class members must have been CAAIR Participants via a court-ordered program. Indeed, Defendants' Staffing and Placement Agreement expressly provide that participants would be court-ordered. Ex. 71 at p. 3 (filed under seal at Dkt. 305). Therefore, the Court should refine the class definition to include such a further restriction to class membership, as follows:

> All individuals who were court-ordered (ex. Drug Court, Community Sentencing, Probation, etc.) to participate in CAAIR at any time from [DATE] until the trial date, and who performed work at a Simmons Facility during their time at CAAIR.

Defendants did not object to the dates proposed in Plaintiffs' class definition, as those dates track the applicable statute of limitations for each claim from the date of filing of this action.

## II. Class Representatives

Defendants take issue with Plaintiffs naming alternative class representatives in their Motion for Class Certification, but they ignore previous agreements that class representatives could be substituted upon a dismissal of a former class representative. In agreeing to the filing of the TAC, the parties agreed to three joint stipulations, including "[t]hat Plaintiffs will not seek to add to or substitute their proposed class representatives, prior to an order granting class certification, except in event of a class representative's []dismissal from the case." Dkt. 159 at p. 5; Dkt. 164 at p. 8.

As four of the proposed class representatives in the TAC were dismissed for failing to fulfil their discovery obligations, Plaintiffs do seek to substitute those class representatives. Defendants feign that they would have approached discovery differently, but this bald assertion is belied by Defendants' previous representations to the Court that Defendants engaged in unrestrained merits and certification discovery. Dkt. 313 at p. 7 ("And that's what Defendants did. They deposed the remaining, cooperative Plaintiffs not only about class certification issues, but also about the merits of their claims.") (citing Ex. 6, Thrutchley Decl. at ¶ 5).

"[T]he need to substitute new plaintiffs as class representatives does not frequently arise at convenient times, such as prior to the deadlines contemplated in Rules 15 and 16." *In re Motor Fuel Temperature Sales Practices Litig.*, 07-MD-1840-KHV, 2009 WL 3122501, at *2 (D. Kan. Sept. 24, 2009). "Courts in the Tenth Circuit have therefore taken a rather liberal approach in permitting the substitution of class representatives at various stages in the proceedings." *Id.*, n. 17 (cited by *Culver v. Saint Francis Health Sys., Inc.*, 24-CV-0078-CVE-MTS, 2025 WL 2848493, at *3 (N.D. Okla. Oct. 8, 2025)). Indeed, courts in this circuit have expressly allowed class representatives to be substituted where they were dismissed for discovery deficiencies and found no prejudice to a defendant, as the new class representative had fulfilled their discovery obligations. *Davis v. TTEC Healthcare Sols., Inc.*, 18-CV-03098-RM-NRN, 2022 WL 130972, at *2-3, 4-5 (D. Colo. Jan. 14,

2022) ("[T]he Court also understands the difficulties Plaintiffs faced in securing individuals willing to actively participate in this litigation, as well as the desire to avoid multiple rounds of amendment for small, non-substantive changes."). As Plaintiffs are not seeking to change or modify the underlying claims or theories of recovery, the Court should consider the newly proposed class representatives to protect the interests of absent class members' Arkansas and Missouri wages claims. *In re Motor Fuel Temperature Sales Practices Litig.*, 07-MD-1840-KHV, 2009 WL 3122501, at *2 (D. Kan. Sept. 24, 2009) ("Given that the denial of substitution in this case would therefore result in the Utah putative class members losing two significant claims, the court finds that it is in the interest of justice to allow substitution.").

### III.    Wage Class/Subclasses Definition

Defendants further argue that Plaintiffs' Motion deviates from the TAC in consolidating the proposed wage classes into a single class definition. Dkt. 315 at pp. 11-12. Defendants simply argue that Plaintiffs are attempting to cover for the dismissed class representatives who were named in the TAC as representing these subclasses. *Id.* Plaintiffs have not expanded the class through this refinement. In fact, Plaintiffs are seeking to significantly restrict the wage class by clarifying the time period as beginning October 10, 2014, to match the three (3) year statute of limitations for such wage claims. *Compare* TAC Dkt. 193 at pp. 25-26, *with* Motion Dkt. 304 at pp. 24-25. Plaintiffs find the single wage class definition to be more easily understood by class members and substantively indistinct from having three separate wage classes.

Jason Baker, Marquis Luckey, Ryan Dorland, Michael Harper, Titus Stanton, Bobby Nichols, Michael McCartney, and Pablo Angeles all have claims within the applicable statute of limitations and worked through CAAIR in a Simmons Facility within Oklahoma, Arkansas, or Missouri. Dkt. 304 at ¶¶ 60-82. The Oklahoma wage subclass is adequately represented by Jason

5

Baker. The Arkansas subclass is adequately represented by Ryan Dorland, Michael Harper, Marquis Luckey, Titus Stanton, Bobbie Nichols, and Pablo Angeles. The Missouri subclass is adequately represented by Michael McCartney. The Court would simply need to include a reference to a state in the three (3) class definitions.

However, given that CAAIR sent the Plaintiffs and Class to work for Simmons under the Staffing and Placement Agreements, Oklahoma law applies to all wage claims and the single wage class is most appropriate. Where an agent in Oklahoma has the authority to hire on behalf of another business located out of state, the employment contract is created in Oklahoma and Oklahoma law applies. *Garrison v. Bechtel Corp.*, 1995 OK 2, ¶¶ 22-23, 889 P.2d 273, 283. Travel of the employee to another location is immaterial. *Id.* at ¶ 19 ("To establish that an employment contract was entered into within Oklahoma, the employee must prove that an employment offer was made by the employer or its agent and that it was accepted by the employee in Oklahoma."). Since Plaintiffs and class members were directed to Simmons Facilities by CAAIR, the employment relationship began in Oklahoma with each Participant's entry to the CAAIR program.

Furthermore, because the relationship between CAAIR and Simmons is directly analogous to a staffing agency relationship, Simmons is considered a joint employer. *Miller v. Nordam Grp., Inc.*, 12-CV-563-TCK-PJC, 2013 WL 6080268, at *3-4 (N.D. Okla. Nov. 19, 2013) (holding "a typical 'staffing agency' situation" creates joint employers and that "[c]ontractual language is generally not controlling as to the issue of joint employment."); *accord Zachary v. Rescare Oklahoma, Inc.*, 471 F. Supp. 2d 1175, 1181 (N.D. Okla. 2006); *Thomas v. Pauls Valley Boomarang Diner, LLC*, 320 F. Supp. 3d 1253, 1258 (W.D. Okla. 2018). Thus, a single class seeking unpaid wages under Oklahoma law is the most appropriate for certification in this matter.

### IV. Numerosity

6

Defendants claim Plaintiffs have only shown the Court a class of 12 people. Dkt. 315 at p. 13. Plaintiffs have shown that upwards of 2,000 men entered CAAIR by referral from Oklahoma courts. Dkt. 304 at ¶¶ 13, 29, 43-44; PX 15 (Dkt. 304-4). Further, between January 1, 2015 and May 3, 2018, 484 CAAIR participants worked at a Simmons Facility. Tooley PX 164 (Dkt. 304-40) at 311:7-11 (Dkt. 305- Filed under Seal). Indeed, PX 15 (Dkt. 304-4) shows the number of court-ordered participants at CAAIR by year, including the geographic dispersion of such class members, totaling 1,585 from 2009-2018.

V.   Typicality

Defendants argue Plaintiffs lack standing to represent the proposed class because they never worked "at a facility operated by the Simmons Defendants." Dkt. 315 at p. 15. However, Defendants offer no evidence rebutting that all Plaintiffs worked at a Simmons Facility under the Staffing and Placement Agreements. Dkt. 204 at ¶¶ 53 (McGahey), 62 (Baker), 64 (Luckey), 66 (Harper), 68 (Dorland), 71 (Staton), 77 (Angeles), 79 (Cole), 81 (McCartney); Nichols- PX 177 (Dkt. 304-53) at pp. 28-31.

Second, Defendants argue the Plaintiffs were not "personally threatened by a Simmons Defendant." Dkt. 315 at p. 15. Other than a bald conclusion, Defendants do not explain how this affects typicality at all. "Typicality requires only that 'the claims of the class representative and Class Members are based on the same legal or remedial theory.'" *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 917 (10th Cir. 2018) (quoting *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014)). "'[D]iffering fact situations of Class Members do not defeat typicality ... so long as the claims of the class representative and Class Members are based on the same legal or remedial theory.'" *Id.* at 915. Furthermore, each Plaintiff and class member is not required to prove that they individually were directly threatened by a Simmons Defendant. The

7

threat of incarceration was contained in CAAIR's Major and Minor Rules and the Staffing and Placemen Agreement with Simmons. *Menocal,* 635 F. Supp. 3d at1185–86 (D. Colo. 2022) (Denying decertification because "the threat of segregation was made both via the written policies and verbally—and was always looming."). Because Plaintiffs and Class Members were court-ordered to attend CAAIR, CAAIR's Major and Minor Rules required full-time work a Simmons Facility upon a threat of dismissal from CAAIR, and those Rules were enforced by the Simmons Defendants, the threat of going to prison for refusing to work "was always looming." *Id.*

Finally, the Simmons Defendants argue that the statute of limitations makes each class representative not typical. Dkt. 315 at pp. 15-16. However, every class action requires management of the statute of limitations. Defendants provide no explanation why the Placement Sheets, Admission Agreements, and hours worked data are not common and predominant evidence of every class member's statute of limitations. Dkt. 304 at ¶¶ 15, 43; PX 30 (Dkt. 304-11); PX 18, 19, 20 (Dkt. 304-5,6, 7).

## VI. Adequacy of Representation

Defendants again cite the statute of limitations as defeating Plaintiffs adequacy but provide no discussion of how the statute of limitations raises any unique defenses. Dkt. 315 at p. 18. Defendants also argue Plaintiffs are inadequate because they seek only economic damages on a class-wide basis and not also non-economic damages. *Id.* at pp. 18-19. Plaintiffs have no doubt Defendants would argue the class cannot be certified had Plaintiffs sought class-wide personal injury damages. Case law is clear that personal injury and other special damages require individualized proof. *Augustin v. Jablonsky,* 819 F. Supp. 2d 153, 167 (E.D.N.Y. 2011) ("Importantly, while each of these cases stand for the proposition that the presence of such individualized damages issues will

not preclude class certification, none of the courts involved unconditionally extended certification of these classes to cover class members' claims for individual damages.").

Plaintiffs seek a declaratory judgment that Defendants' practices are illegal, the award of economic damages on a class-wide basis, and a bifurcated trial for individualized damages. TAC at ¶ 211. In moving for permission to file the TAC, Plaintiffs told the Court and Defendants they would seek a bifurcated trial. Dkt. 159 at p. 3. This approach has been followed by many courts in various class action contexts. *See, e.g., Augustin*, 819 F. Supp. 2d at 174. Indeed, the 5th Circuit approved a trial plan that reserved individual damages for a separate phase of trial. *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1018 (5th Cir. 1992), *on reh'g*, *Watson v. Shell Oil Co.*, 53 F.3d 663 (5th Cir. 1994). Plaintiffs' request for bifurcation does not render them inadequate nor raise a conflict. Rather, a phased trial benefits admittedly vulnerable class members by allowing them to appear on predetermined dates and support their non-economic damages without requiring them to file individual actions against Defendants, entities worth billions of dollars.

Defendants' additional argument that some of Plaintiffs' prior criminal history bars them from class representation is without merit. Dkt. 315 at p. 20. Defendants provide no support for this position. It is illogical that the exact characteristics that make Plaintiffs part of the Class can simultaneously preclude them from serving as a class representative. The *Fochtman* Court easily dismissed these "specious" arguments. *Fochtman v. DARP, Inc.*, 5:18-CV-5047, 2019 WL 406146, at *6 (W.D. Ark. Jan. 31, 2019). Each of the proposed class representatives have fulfilled their discovery obligations and prosecuted their claims herein and on behalf of the Class.

Finally, Defendants argue Plaintiffs' counsel are inadequate because their deposition preparation failed to meet some wholly unarticulated standard asserted by Defendants and because Mr. Smolen is known to be a vigorous and capable advocate for his clients. Dkt. 315 at pp. 19-20.

9

First, Defendants wholly failed to articulate if Plaintiffs' deposition preparation frustrated the discovery process or if it affected any aspect of this litigation because it did not. The Plaintiffs lived through the experience and needed no input from counsel to testify to their experiences. Further, Mr. Smolen obtaining "a very large verdict" of $14 milllion and punitive damages of $68 million only shows his talent and the vigor with which he will prosecute and try this class action. *Young v. Corr. Healthcare Companies, Inc.*, 721 F. Supp. 3d 1209, 1249 (N.D. Okla. 2024). Proposed class counsel are experienced in complex, class litigation and are fully prepared try this class action.

## VII. Predominance

### A. Wage Claims

Defendants argue that Plaintiffs' "claims require an inquiry into the personal expectations and motivations of each putative class member" is unsupported and unavailing. Dkt. 315 at p. 22. Defendants did not provide the Court with a single citation rejecting certification of a wage class. Defendants also hide in a footnote that the *Fochtman* court and the 8th Circuit not only certified a similar class, but decided the class-wide merits of those claims on appeal. Dkt. 315 at p. 24, n. 18; *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 642 (8th Cir. 2022). As Defendants admit, *Fochtman* found no issue with certifying a wage class under the "economic reality" test because "all putative class members in this case shared the same economic reality." *Fochtman*, 2019 WL 406146, at *5 (citing *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 301 (1985)) ("The law is clear that the test for employment is one of "economic reality."). It is axiomatic that "[c]ollective actions can be certified as to the very question of whether a specific group of individuals qualify as 'employees' under the FLSA." *Klick v. Cenikor Found.*, 94 F.4th 362, 369 (5th Cir. 2024).

However, Simmons Defendants continue to ask the Court to adopt the wrong legal standard. Dkt. 315 at p. 23 . However, the 10th Circuit has rejected the primary beneficiary test. *Nesbitt v. FCNH, Inc.*, 908 F.3d 643, 647 (10th Cir. 2018); *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1160 (10th Cir. 2018). This Court should consider the economic realities of court-ordered rehabilitation participants with no meaningful choice but to work full-time in poultry processing plants at the command of CAAIR in determining that Plaintiffs and the class members are statutory employees.

### B. Involuntary Servitude/Forced Labor- Causation

Defendants argue that "the involuntary servitude claim presents highly individualized issues regarding whether each putative class member voluntarily worked at a Simmons Defendant." Dkt. 315 at p. 27. However, Defendants provide no substance nor legal authority to support this contention. Further, Defendants argue the forced labor "claim will rise or fall on the evidence of each individual class member as to his subjective reasons for performing the work at issue." Dkt. 315 at p. 27. Defendants ignore that the entire premise of the CAAIR program was that if participants refused to work, "they simply go back to jail," as was the Simmons Defendants' Staffing and Placement Agreements Dkt. 304 at ¶¶ 14, 17, 38-40.

Defendants claim *Menocal* is distinguishable because the CAAIR Major and Minor Rules and the Simmons Staffing and Placement Agreements do not expressly threaten incarceration. Dkt. 315 at pp. 30-31. Defendants further argue each class member will have to testify about the explicit threats made to them by Defendants. *Id.* at 34. But the *Menocal* Court was presented with the exact same arguments as Defendants here make in a later Motion to Decertify. GEO therein argued, "Plaintiffs' experiences, which point to isolated experiences during their stay, fail to establish a classwide policy whereby every detainee was regularly warned that segregation was a potential

11

consequence for not participating in post-meal clean-up." *Menocal*, 635 F. Supp. 3d at 1186 (D. Colo. 2022) . The court dismissed these arguments easily:

> GEO's policies are not established by Plaintiffs' testimony, though; the policies are documented. Plaintiffs' reports of their individual experiences are used to counter GEO's arguments, based on the testimony of its employees and officers, that the policies are not applied. Moreover, regularly warning every detainee of the consequences for not laboring is not a requirement of the TVPA.

*Id.* GEO further argued that the threat of segregation was not clear in its handbook, but the court dismissed these arguments as well. *Id.* ("GEO disregards key language in the written policy. [T]he Handbook states '[c]ontinued refusal to clean the area will result in further disciplinary action.' [] Logically, 'further disciplinary action' covers the disciplinary scale included in the Handbook.").

This Court should be equally dismissive of Defendants' request to find no uniform policy here. CAAIR's Rules are clear that one cannot leave CAAIR or Simmons' facilities without permission, one must follow Simmons' rules, and one must maintain their position with Simmons. Dkt. 304 at ¶17. Major Rule violations subject participants to dismissal, which means "they simply go back to jail." Dkt. 304 at ¶14. All class members received these rules. Dkt. 304 at ¶17; *Menocal*, 635 F. Supp. 3d at 1185–86 (D. Colo. 2022) ("[] the threat of segregation was made both via the written policies and verbally—and was always looming."). The Staffing and Placement Agreements expressly require Participants to be under court-ordered participation in CAAIR. Dkt. 304 at ¶40. Simmons policy was to enforce CAAIR rules. Dkt. 304 at ¶45. This uniform scheme is on all fours with *Menocal*. *Menocal*, 882 F.3d at 920 (10th Cir. 2018) ("[]because the TVPA class allegations are based on a single, common scheme, class members share the relevant circumstantial evidence in common, thus making class-wide proof possible."). Defendants have provided no evidence to rebut Plaintiffs' reasonable inference that the threat of incarceration was always looming.

Simmons Defendants attempt to skirt their liability by claiming only CAAIR made threats of incarceration. Dkt. 315 at pp 32, 34. However, the Simmons Defendants ignore that liability attaches to anyone who knowingly benefits in CAAIR's scheme. 18 U.S.C.A. § 1595(a); 18 U.S.C.A. § 1595(c)(1).

### C. RICO

Defendants citations to *Gaddy* and *Sandwich Chef of Tex., Inc,* are wholly irrelevant to deciding if certification of Plaintiffs' RICO claims are appropriate. Dkt. 315 at pp. 34-35. Both cases relied on mail and wire fraud as the underlying predicate acts. *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025); *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 211 (5th Cir. 2003).

### C. Unjust Enrichment

Defendants, again, raise red herring arguments by citing case law that is wholly inapplicable to Plaintiffs' claims. Dkt. 315 at p. 35. *Am. Standard Ins. Co. of Wis.* said nothing about unjust enrichment. That case involved a declaratory judgment action concerning an insurance policy. *Am. Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 284 (Mo. Ct. App. 2003). Further, *Sw. Bell Tel. Co.* involved a claim of *quantum meruit* in a dispute over "'locate and mark' services." *Sw. Bell Tel. Co. v. United Video Cablevision of St. Louis, Inc.*, 737 S.W.2d 474, 474 (Mo. Ct. App. 1987).

### VIII. Superiority

Defendants argue that more than 1,500 individual lawsuits are more efficient than trying one case. Dkt. 315 at pp. 36-37. Defendants further argue that class members could proceed under administrative processes. *Id.* The *Fochtman* court easily dismissed these same arguments. *Fochtman*, 2019 WL 406146, at *4, 7 (W.D. Ark. Jan. 31, 2019); *Fochtman*, 2019 WL 406146, at

*7 ("[T]he Court does not believe that the management of this class action will be overly complex or burdensome—and will certainly not be more burdensome than litigating 180 separate lawsuits on the same question of liability."). Defendants provide no citation to any case denying certification because some, but not all, claims possibly had an administrative proceeding.

Defendants further argue that damages for each individual are high enough that each class should have an incentive to pursue their own claims. Dkt. 315 at p. 36. However, Defendants have not shown any attempt by class members to pursue their own claims nor to participate in this action. *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 489 (D. Colo. 2007), *aff'd*, *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134 (10th Cir. 2009)("Numerous Plaintiffs have already filed related individual suits in various Colorado state and federal courts. [] State Farm already has taken the unusual step of providing the entire putative class with the opportunity to receive the maximum payment to which they would be entitled if this class action resolves fully in their favor."); *Jeter & Jeter*, 12-CV-411-JDR-CDL, 2024 WL 2875042, at *11 (N.D. Okla. June 7, 2024). Defendants arguments are pure speculation. *Menocal*, 882 F.3d at 921 (10th Cir. 2018) (rejecting speculative arguments.)

Defendants also argue that Plaintiffs have not shown the class consists of vulnerable individuals. Dkt. 315 at p. 36. This assertion is patently frivolous. See Dkt. 304 at p. 3, ¶ 14 .

## IX. Damages

Defendants argue "that calculating each participant's gross lost wages requires extensive individualized information[]." Dkt. 315 at p. 39. However, this information is all contained in Defendants' business records and requires no testimony from any individual Plaintiff or class member. Defendants further argue "[t]he finder of fact must also determine whether the 'yardstick method' [] or the 'contract rate method' [] applies." Dkt. 315 at p. 39. Defendants are clearly positing

a strawman argument by ignoring Plaintiffs' actual damages theory. Even worse, Defendants do not explain how this determination is individualized at all.

Finally, Defendants argue "the value of various benefits received by each putative class member, such as food, lodging, and transportation" and "tax treatment" are highly individualized. Defendants provide no factual or legal argument for this assertion. The *Fochtman* court was "not persuaded that these variations [for in-kind benefits] were so significant that they cannot be easily accounted for in the calculation of damages, if such becomes necessary." *Fochtman*, 2019 WL 406146, at *5. Further, Defendants have not shown that taxes are relevant at all to the damages calculation. Tax implications arise only after receipt of a damages award. *Ruffin v. C.I.R.*, 11785-10S, 2011 WL 6089940, at *2 (T.C. Dec. 7, 2011); *Thompson v. C.I.R.*, 866 F.2d 709, 712 (4th Cir. 1989). Mr. Lopp's expert report clearly shows that damages can be calculated on a class-wide basis. Dkt. 340-52. Indeed, Defendants have not shown any need for individual testimony to support Plaintiffs' claims for economic damages and restitution on a class-wide basis.

## CONCLUSION

Defendants have wholly failed to support their arguments that class certification is not appropriate. Defendants provided the Court with no analysis of any actual evidence. Indeed, Defendants failed to provide legal citations for most of their arguments. Such rank speculation cannot defeat Plaintiffs' evidentiary showing that this case can be tried on a class-wide basis with a bifurcated proceeding for determination of non-economic damages.

**WHEREFORE**, premises considered, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Class Certification, name the Plaintiffs herein as class representatives, and undersigned counsel as class counsel. Upon certification, Plaintiffs will provide the Court with a proposed plan to provide notice to the Class.

Respectfully submitted,

/s/ Mark Smith
Mark A. Smith, OBA No. 31231
Caruso & Smith, PLLC
2021 South Lewis Ave, Suite 720
Tulsa, Oklahoma 74104
(918) 583-5900 (Office)
(918) 583-5902 (Fax)
mark.smith@smithlegalok.com

Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Lauren G. Lambright, OBA #22300
SMOLEN & ROYTMAN
701 S. Cincinnati Avenue
Tulsa, Oklahoma 74119
Phone (918) 585-2667
Fax (918) 585-2669
danielsmolen@ssrok.com
bobblakemore@ssrok.com
laurenlambright@ssork.com
*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

/s/ Mark A. Smith